MAYER BROWN LLP
Edward D. Johnson (SBN 189475)
wjohnson@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone:  (650) 331-2000
Facsimile:  (650) 331-2060

Attorneys for Defendant Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICK WOODS, Individually and On Behalf of Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE INC.,<br><br>    Defendant. | CASE NO.  5:11-CV-01263-JF<br><br>**MOTION TO DISMISS**<br><br>**Hearing Date: July 8, 2011**<br>**Time: 9 a.m.**<br>**Before: Honorable Jeremy Fogel**<br><br>Complaint filed:  March 15, 2011 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................................. 1

II.  BACKGROUND ................................................................................................................ 3

    A.   AdWords is for advertisers; AdSense is for website owners who display Google ads on their sites ..................................................................................... 3

    B.   Woods' complaints as an AdWords advertiser ...................................................... 4

    C.   Scope of the AdWords Agreement ........................................................................ 5

III. ARGUMENT ..................................................................................................................... 6

    A.   Legal standards...................................................................................................... 7

    B.   Woods has not pleaded breach of contract............................................................ 7

        1.   The Agreement itself does not prohibit the alleged conduct..................... 7

        2.   None of the materials referred to in the Agreement prohibits Google's alleged conduct ......................................................................... 8

            a.   Section 1 of the Agreement ........................................................... 9

            b.   Section 2 of the Agreement ......................................................... 10

            c.   Section 7 of the Agreement ......................................................... 10

        3.   Woods cannot "incorporate" far-flung, unrelated materials into the Agreement ................................................................................................ 11

    C.   Woods has not pleaded an independent claim for breach of implied covenant .............................................................................................................. 13

    D.   Woods' UCL and FAL claims are deficient ........................................................ 14

        1.   Woods lacks standing as a matter of law to assert UCL and FAL claims based on alleged misrepresentations............................................ 14

        2.   Even if he had standing, Woods fails to plead his UCL and FAL claims with the required particularity ...................................................... 17

IV.  CONCLUSION ................................................................................................................ 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 7

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371 (Cal. Ct. App. 1990)........ 13

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) ................................... 7

*Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570 (7th Cir. 2001) ............. 16

*Dual-Temp of Illinois, Inc. v. Hench Control Corp.*, No. 09-cv-595,
2011 WL 1642513 (N.D. Ill. May 2, 2011) ........................................................ 19

*Goddard v. Google*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................... 9, 12

*Gray v. Don Miller & Associates, Inc.*, 35 Cal. 3d 498 (Cal. 1984).......................... 16

*Guido v. Koopman*, 1 Cal. App. 4th 837 (Cal. Ct. App. 1991)............................... 15-16

*Hackethal v. Nat'l Cas. Co.*, 189 Cal. App. 3d 1102 (Cal. Ct. App. 1987) ................. 18

*In re Facebook PPC Advertising Litigation*, No. 5:09-CV-03043-JF,
2010 WL 5174021 (N.D. Cal. Dec. 15, 2010) ........................................... *passim*

*In re Tobacco II Cases*, 46 Cal. 4th 298 (Cal. 2009) ....................................... 14

*JM Vidal, Inc. v. Texdis USA, Inc.*, ___ F. Supp. 2d ___, No. 08 Civ. 6398,
2011 WL 347608 (S.D.N.Y. Feb. 2, 2011) ....................................................... 16

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994) ................................................ 18

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)............................... 17

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (Cal. 2011).................................... 14

*Lucas v. Dep't of Corrs.*, 66 F.3d 245 (9th Cir. 1995).................................... 19

*Malcolm v. JPMorgan Chase Bank, N.A.*, No. 09-4496-JF,
2010 WL 934252 (N.D. Cal. Mar. 15, 2010)........................................... 13

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ................... 7

*Moreing v. Weber*, 3 Cal. App. 14 (Cal. Ct. App. 1906) ........................................ *passim*

*Nielsen v. Swanberg*, 99 Cal. App. 270 (Cal. Ct. App. 1929)........................... 8, 11, 12

*Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061,
2005 WL 645446 (N.D. Cal. Mar. 21, 2005)................................................. 17

*Seeger v. Odell*, 18 Cal. 2d 409 (Cal. 1941) ................................................ 16

**TABLE OF AUTHORITIES - Continued**

**Cases**                                                                   **Page(s)**

*Superior Dispatch, Inc. v. Insurance Corp. of New York*,
    97 Cal. Rptr. 3d 533 (Cal. Ct. App. 2009) ........................................................... 7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .................................... 17

*VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp. 2d 1073 (E.D. Cal. 2009)..... 18

*Wolschlager v. Fidelity Nat. Title Ins. Co.*, 111 Cal. App. 4th 784 (Cal. Ct. App. 2003) ....... 8, 11

*Zepeda v. PayPal, Inc.*, ___ F. Supp. 2d ___, No. 5:10-CV-02500-JF,
    2011 WL 570231 (N.D. Cal. Feb. 15, 2011) ............................................................. 7, 13


**Statutes and Rules**                                                      **Page(s)**

Cal. Bus. & Prof. Code § 17200 ........................................................... *passim*

Cal. Bus. & Prof. Code § 17500 ........................................................... *passim*

Fed. R. Civ. P. 9(b) ............................................................................. 2, 14, 18

Fed. R. Civ. P. 12(b)(6)........................................................................... 1, 7


**Other Authorities**                                                       **Page(s)**

17A Am. Jr. 2d Contracts (2011)........................................................ 9, 12, 13

Williston on Contracts § 30:25 (4th ed. 2011) ..................................... *passim*

**NOTICE OF MOTION & MOTION TO DISMISS**

Please take notice that on July 8, 2011, at 9 a.m., before the Honorable Jeremy Fogel, Defendant Google Inc. will and hereby does move to dismiss with prejudice Plaintiff's Class Action Complaint (Complaint). Docket No. 1.  Google's motion is based on this notice, the accompanying memorandum of points and authorities, arguments of counsel and any other matters that the Court deems appropriate.

**STATEMENT OF ISSUE TO BE DECIDED**

Whether the Complaint states a claim for which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff Rick Woods brings contract claims based on promises never made to him.  He brings unfair competition claims based on statements that he could not have reasonably relied upon as a matter of law.  As a result, Woods cannot state any cause of action.

Woods is an Arkansas trial lawyer who alleges that he used Google's online advertising service, AdWords, to find clients for his law practice.  He alleges that Google mistreated him as an AdWords participant in two ways.  First, Google displayed his advertisements in ways he did not expect.  Second, Woods claims that Google did not uniformly apply a particular discount tool in determining the charges he owed.  Based on those allegations, Woods has brought four claims. Each should be dismissed without leave to amend.

*Breach of contract*: The contract claim should be dismissed because Woods has not alleged a breach of any provision contained in the three-page contract attached as Exhibit A to the Complaint.  Instead, Woods attempts to import into the contract a smorgasbord of statements that Google has made elsewhere, including statements from Google's AdWords Help Center, FAQs, instructional videos posted on YouTube, blog entries by Google employees, and even a litigation report prepared by an independent expert in a separate case.  Nowhere in the contract does Google say that it is incorporating any of these alleged statements into the four corners of the Agreement.  Quite the opposite, the contract expressly states that "[t]he Agreement constitutes the

1   entire and exclusive agreement between the parties" and "[n]o statements or promises have been

2   relied upon in entering into this Agreement except as expressly set forth herein, and any

3   conflicting or additional terms contained in any other documents (e.g. reference to a purchase

4   order number) or oral discussions are void."   Compl. ¶ 54 & Exh. A at § 9.  It is hornbook law

5   that the doctrine of incorporation-by-reference is a limited tool to be used sparingly.  Woods'

6   Complaint turns that doctrine on its head.

7       *Implied Covenant*: Woods' implied covenant claim rises and falls with his contractual

8   claim, and should be dismissed for the same reasons.  And, in any case, because the covenant

9   claim alleges the same conduct and the same damages as his contract claim, it should be

10  dismissed as superfluous.

11      *UCL Claims*: Woods lacks standing as a matter of law to assert claims that Google has

12  violated §§ 17200 and 17500 of California's Business & Professions Code by making

13  misrepresentations.

14      To establish standing for these claims, Woods must plead that he actually and reasonably

15  relied on Google's alleged misstatements.  But the statements that Woods claims deceived him

16  were posted on the Internet in obviously inapplicable contexts.  Woods *expressly agreed not to*

17  *rely* on any such extraneous statements when he entered into his commercial relationship with

18  Google.

19      As this Court recently has held, Woods must show at the pleadings stage that any alleged

20  reliance on alleged misstatements was "reasonable . . . in light of those disclaimers."  *In re*

21  *Facebook PPC Advertising Litigation*, No. 5:09-CV-03043-JF, 2010 WL 5174021, at *6 (N.D.

22  Cal. Dec. 15, 2010).  Because Woods signed a contract in which he expressly agreed not to rely

23  on such extraneous statements—a disclaimer he surely understood as a practicing lawyer—he

24  cannot show actual or reasonable reliance on them as a matter of law.  Even if he could plead

25  reliance, Woods' UCL claims should be dismissed for failure to plead any allegedly fraudulent

26  conduct with the particularity required under Fed. R. Civ. P. 9(b).

27      Woods' entire lawsuit is premised on the idea that any statements Google makes outside

28  of a contract can be transformed into "promises" that bind Google within that contract.  The law

- 2 -

of contracts does not recognize this theory. And because Woods' UCL claims are rooted in Google's alleged breach of these "promises"—and on Woods' breach of his own agreement not to rely on extraneous materials—the UCL does not recognize this theory either.

The deficiencies in the Complaint arise from the substance of Woods' written contract with Google, and cannot be remedied with additional facts, no matter how imaginatively pleaded. This action should end now.

## II. BACKGROUND

Woods alleges that Google generates revenues primarily through online advertising. Compl. ¶¶ 26-28. Google's online advertising business includes two products relevant here: AdWords and AdSense. *Id.* ¶ 28. Although Woods alleges he has been mistreated by Google as an AdWords advertiser, his primary gripe relates to the operation of AdSense.

### A. AdWords is for advertisers; AdSense is for website owners who display Google ads on their sites

AdWords and AdSense are separate products with distinct purposes. With AdWords, Google interacts with advertisers, like Woods, who wish to have their ads displayed on Google.com and other websites across the Internet. Compl. ¶ 28. Advertisers such as Woods who join the AdWords program in an online process do so by clicking-through and accepting the Google Inc. Advertising Program Terms (Agreement). *Id.* ¶¶ 53-54, *id.* Exh. A (attaching the Agreement). Under the Agreement, advertisers expressly agree that their ads "may be placed on (y) any content or property provided by Google ('Google Property'), and, unless Customer opts out of such placement in the manner specified by Google, (z) any other content or property provided by a third party ('Partner') upon which Google places ads ('Partner Property'). Customer authorizes and consents to all such placements." *Id.* Exh. A at ¶ 2.

Google's AdSense product allows third-party website owners (defined above as "Partners") to display Google ads on their websites. In Internet parlance, these Partners are often called "publishers" because they allow ads to be published on their websites. When an AdWords advertiser pays Google for an ad that appears on an AdSense publisher's website, Google shares a percentage of that revenue with the publisher. Compl. ¶ 28. AdSense publishers are not a parties

1   to the AdWords Agreement.  *Id.* ¶ 54 & Exh. A.  Instead, AdSense publishers enter into their

2   own, separate agreements with Google.  Woods has not alleged that he signed any AdSense

3   agreement, nor has he alleged that any AdSense agreement is the basis for a contract claim in this

4   case.

5          **B.      Woods' complaints as an AdWords advertiser**

6          In September 2009, Woods entered into the Agreement with Google to become an

7   AdWords advertiser.  Compl. ¶ 21.  Under that Agreement, Google provided services that

8   resulted in the publication of advertisements for Woods' law practice on Internet properties

9   controlled by Google and its partners.  Woods, in turn, owed charges to Google based on "clicks"

10  by Internet users on his advertisements.  Compl. ¶¶ 245-50.

11         Woods asserts four causes of action based on his participation in AdWords: (i) breach of

12  contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) violation of

13  California's Bus. & Prof. Code § 17200 (UCL); and (iv) violation of California's Bus. & Prof.

14  Code § 17500 (FAL).

15         Although Woods' Complaint is 76 pages long and includes four causes of action spanning

16  nearly 300 paragraphs, his allegations reduce to two grievances.  First, Woods alleges that Google

17  broke a "promise" to him, as an *AdWords* advertiser, that Google would apply all *AdSense*

18  policies uniformly and without exception to all third parties who publish Google ads on their

19  websites.   In particular, Woods alleges that Google wrongfully allowed certain AdSense

20  publishers to display "Banned Ad Implementations" (Disputed Ads), and that Google charged

21  Woods for those ads.  Compl. ¶¶ 10, 60 & 247.  Specifically, Woods complains that Google:

22    •  Failed to universally prevent all AdSense publishers from displaying advertisements

23        with a "hard coded direct link," in which an Internet user who clicks on the ad is

24        shown content that appears to be the results of an Internet search, even though the

25        user never entered any search term.  Compl. ¶¶ 145-60.

26    •  Failed to universally prevent all AdSense publishers from displaying advertisements

27        resulting from the use of "tool bars" or other downloaded software applications.  *Id.*

28        at ¶¶ 161-73.

- Failed to universally prevent all AdSense publishers from displaying advertisements that display "shadow websites," in which an Internet user who clicks on an ad is directed to a website that differs in some respect from the advertiser's website that would have been presented if the user had navigated directly to the advertiser's website. *Id.* ¶¶ 174-88.

- Failed to universally prevent all AdSense publishers from displaying advertisements for which an AdSense publisher promises compensation or other rewards to the Internet user for clicking on the ad, such as lottery websites. *Id.* ¶¶ 189-200.

- Failed to universally prevent all AdSense publishers from displaying advertisements on mobile applications. *Id.* ¶¶ 201-13.

Second, Woods alleges that Google broke a "promise" to give him a "Smart Pricing" discount for all ads that were placed on third-party websites (*i.e.*, websites other than Google.com). Compl. ¶¶ 11, 61, 214-27, 248.

### C.    Scope of the AdWords Agreement

The asserted contract in this case is short and simple: less than three pages in 12-point font. Compl. ¶ 54 & Exh. A. It has an introduction followed by nine enumerated paragraphs. In the introduction, Google expressly incorporates by reference "any insertion orders or service agreements ('IO')" that an AdWords advertiser may have agreed to. As the introduction makes clear, "[t]hese Terms and any applicable IO are collectively referred to as the 'Agreement.'" *Id.* Section 9 of the Agreement states:

> The Agreement constitutes the entire and exclusive agreement between the parties with respect to the subject matter hereof. No statements or promises have been relied upon in entering into this Agreement except as expressly set forth herein, and any conflicting or additional terms contained in any other documents (e.g. reference to a purchase order number) or oral discussions are void.

*Id.* Exh. A § 9.

The Agreement imposes certain obligations on advertisers in exchange for Google's obligation to provide AdWords advertising services. In Section 1, for example, the Agreement states that an advertiser's use of Google's AdWords program (defined as "Program") is "subject to all applicable Google and Partner policies" and that such policies "may be modified at any

1    time." *Id.* Exh. A § 1.  In Section 2, the advertiser is required to provide Google "with all

2    relevant Creative" (*i.e.*, information about the ad it wishes to display) by the due date "set forth in

3    that Program's applicable frequently asked questions at www.google.com ('FAQ')." *Id.* Exh. A

4    § 2.  And in Section 7, the advertiser is required to "pay all charges in accordance with the

5    payment terms in the applicable IO or Program FAQ." *Id.* Exh. A § 7.  Other than the insertion

6    orders and service agreements mentioned in the introduction, the "Google and Partner policies"

7    mentioned in Section 1, and the specific AdWords FAQs mentioned in Sections 2 and 7—

8    pertaining to due dates for ad content and terms of payment—the Agreement does not mention

9    any other outside materials.

10   **III.    ARGUMENT**

11          Plaintiff has offered this Court a 76-page Complaint filled with a long list of statements by

12   Google—none of which is contained in the AdWords Agreement he entered into—that he now

13   wants to incorporate into the Agreement.  Basic principles of contract law do not permit a

14   plaintiff to balloon this (or any other) Agreement in this way.  Nor do California's unfair

15   competition laws permit a plaintiff to assert liability under such a theory.  The Agreement at issue

16   in this case is short.  It is easy to read.  Its terms have been enforced by state and federal courts

17   around the country.  And most importantly, this Court has already held in a separate class action

18   lawsuit against Google that the Agreement's reference in Section 1 to "Google and Partner

19   policies" binds only *advertisers* to follow those policies, not Google.  *See Goddard v. Google*

20   *Inc.*, 640 F. Supp. 2d 1193, 1201 (N.D. Cal. 2009) (Fogel, J.).  Woods' attorneys have tried to

21   artfully plead a Complaint rooted entirely in a contract theory of liability. But their wishful

22   attempt to convert every Google statement on the Internet into a "promise" that gives rise to

23   contractual or other liabilities must fail as a matter of law.  Woods cannot change the content of

24   the AdWords Agreement, nor California's contract and unfair competition laws, nor the fact that

25   he entered into this commercial relationship based only on a short, clear agreement with Google.

26   The Complaint should be dismissed without leave to amend.

27

28

### A.     Legal standards

The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Although the Court must "accept" the plaintiff's allegations "as true," and afford the plaintiff the benefit of "reasonable inference[s]," "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Because "contract interpretation is a matter of law and solely a judicial function," the Court need not defer to a plaintiff's allegations regarding the terms or import of a written contract.  *Zepeda v. PayPal, Inc.*, __ F. Supp. 2d __, No. 5:10-CV-02500-JF, 2011 WL 570231, at *2 (N.D. Cal. Feb. 15, 2011) (Fogel, J.) (citing *Superior Dispatch, Inc. v. Insurance Corp. of New York*, 97 Cal. Rptr. 3d 533, 548 (Cal. Ct. App. 2009).  The Court need not accept as true any conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Here, the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," if that.  *Iqbal*, 129 S. Ct. at 1950.  Because Woods has not alleged a "plausible claim for relief" under any theory, his Complaint should be dismissed.  *Id.*

### B.     Woods has not pleaded breach of contract

Because he has not alleged that Google violated any obligation in the Agreement, Woods has not pleaded a claim for breach of contract.  Neither the Agreement nor any materials referenced in it prohibit Google from engaging in the conduct that Woods has alleged.

### 1.     The Agreement itself does not prohibit the alleged conduct

Woods claims that Google violated the Agreement by permitting certain AdSense publishers to display Disputed Ads on their websites and by failing to give Woods a "Smart Pricing" discount for clicks on some of his ads.  But Woods does not identify any provision in the Agreement that imposes either obligation on Google.

Nothing in the Agreement requires Google to restrict the placement or manner of Woods' advertisements on others' websites, let alone to prohibit Disputed Ads.  To the contrary, the Agreement provides that Woods:

> understands and agrees that ads may be placed on (y) any content or property provided by Google . . . and, unless [Woods] opts out of such placement . . . (z) any other content or property provided by a third party . . . upon which Google places ads. . . . [Woods] authorizes and consents to all such placements.

Compl. Exh. A § 2.

Similarly, the Agreement says nothing at all about Smart Pricing or any other pricing for particular clicks.

### 2.   None of the materials referred to in the Agreement prohibits Google's alleged conduct

Unable to point to anything within the four corners of the Agreement that prohibits Google from displaying Disputed Ads or from withholding the Smart Pricing discount for certain of his ads, Woods looks outside the contract for such prohibitions.  But it is hornbook law that courts may not incorporate an extraneous document into a contract unless there is a "clear reference" to it in the contract, and the contract must "describe[] it in such terms that its identity may be ascertained beyond doubt."  Williston on Contracts § 30:25 (4th ed. 2011); *see also Wolschlager v. Fidelity Nat. Title Ins. Co.*, 111 Cal. App. 4th 784, 790 (Cal. Ct. App. 2003) ("reference must be clear and unequivocal" for incorporation).

If the Agreement refers to only portions of a separate document, or to a separate document for specific purposes only, then those limitations must be honored strictly:

> The rule seems so well established that it may be said to be elementary, that where, in a contract, reference is made to another writing for a particular specified purpose, such other writing becomes a part of the contract for such specified purpose only . . . and is foreign to the contract for all other purposes.

*Moreing v. Weber*, 3 Cal. App. 14, 20 (Cal. Ct. App. 1906); *see also Nielsen v. Swanberg*, 99 Cal. App. 270, 279 (Cal. Ct. App. 1929) ("Where reference is made in a contract to another writing for a specified purpose, such writing becomes a part of the contract for such purpose only.");

1    Williston § 30:25 (matter incorporated "for a specific purpose . . . should be treated as irrelevant

2    for all other purposes"); 17A Am. Jur. 2d Contracts § 391 (2011) ("If, in a written contract, a

3    reference is made to another writing for a particularly designated purpose, the other writing

4    becomes a part of the contract only for the purpose specified, and is foreign to the contract for all

5    purposes other than the one specified.").

6                                    **a.    Section 1 of the Agreement**

7        Woods contends that the phrase in Section 1 of the Agreement that "[p]rogram use is

8    subject to all applicable Google and Partner policies" imposes a broad assortment of contractual

9    duties on Google.  Compl. ¶ 56.  Woods is mistaken.

10       First, this Court has already held that the language Woods tries to rely upon does not

11   impose *any* contractual duties *on Google*; rather, it imposes duties *on the AdWords advertiser.*

12       In *Goddard v. Google Inc.*, 640 F. Supp. 2d 1193 (N.D. Cal. 2009) (Fogel, J.), the

13   plaintiffs sought to certify a class of individuals who clicked on allegedly fraudulent ads that had

14   been placed by third-party advertisers who had allegedly violated Google's Content Policies.  The

15   plaintiffs alleged that, as consumers who click on Google ads, they were third-party beneficiaries

16   to the AdWords Agreement (the same Agreement attached as Exhibit A to Woods' Complaint).

17   The plaintiffs in *Goddard* argued that (a) Google's Content Policies were incorporated into the

18   Agreement by virtue of Section 1;  (b) Google "breached" those Policies by permitting fraudulent

19   ads; and (c) the plaintiffs were third-party victims of this "breach."  *Id.* at 1199-1200.  This Court

20   rejected the plaintiffs' theory on several grounds, including the following:

21              Google's Advertising Terms and incorporated Content Policy constituted a
                promise by Google's advertising customers to Google in exchange for
22              participation in Google's advertising service. Neither agreement contains any
                promise by Google to enforce its terms of use or otherwise to remove
23              noncompliant advertisements.

24   *Id.* at 1201; *see also Goddard v. Google*, No. 5:08-cv-02738-JF (N.D. Cal. filed May 30, 2008) at

25   Docket No. 1 (attaching the same Agreement that Woods has asserted in this case, with the same

26   Internet URL).

27       As this Court recognized in *Goddard*, Google doesn't "use" its own AdWords program;

28   AdWords advertisers like Woods do.  By stating that "[p]rogram use" is subject to certain

policies, Section 1 establishes that an advertiser's ongoing "use" of the AdWords program is contingent on that advertiser's own compliance with applicable policies of Google (*e.g.*, the advertiser may not post inappropriate ad content, compromise privacy interests of Internet users, or abuse Google trademarks). Nothing in Section 1 obliges Google in any way.

### b. Section 2 of the Agreement

Section 2 of the Agreement refers to "frequently asked questions" at www.google.com. But it refers only to particular FAQs and only for a strictly limited purpose. Section 2 provides that "Customer must provide Google with all relevant Creative [defined elsewhere in the Agreement as "ad content, ad information and ad URLs"] *by the due date set forth in that Program's* applicable frequently asked questions at www.google.com ('FAQ') or as otherwise communicated by Google." Compl. Exh. A § 2 (emphasis added). This reference to a "due date" does not include *all* FAQ content available at www.google.com for *all* purposes. Any portions of FAQ content available at www.google.com not specifying a "due date" for "Creative" content— even if pertaining to Disputed Ads or Smart Pricing—would be "foreign" and "irrelevant" to Google's obligations under the Agreement. *Moreing*, 3 Cal. App. at 20; Williston § 30:25. And in any case, these references to deadlines for "Creative" content set forth in AdWords FAQs relate to the *advertiser's* obligations under the Agreement, not Google's.

### c. Section 7 of the Agreement

Section 7 of the Agreement also refers to certain FAQ content. It provides that the "Customer shall pay all charges in accordance with the payment terms in the applicable IO or Program FAQ." Compl. Exh. A § 7.

Like the reference to "FAQ" in Section 2: This reference does not include *all* FAQ content for *all* purposes. Rather, Section 7 refers to only the specific AdWords FAQ content setting forth "payments terms" for an AdWords advertiser, *e.g.*, what forms of payment are acceptable, when payment is due, what minimum payments would be required by an advertiser owing a large balance, and/or what interest rate an advertiser would incur on a deferred balance. Each of these obligations, of course, is borne by advertisers, not Google. In any case, Woods has not alleged that any such AdWords FAQ content is relevant to his contract claims in this case. And any FAQ

content available at www.google.com not pertaining to "payment terms" would of course be "foreign" and "irrelevant" to Google's obligations under the Agreement.  *Moreing*, 3 Cal. App. at 20; Williston § 30:25.

### 3. Woods cannot "incorporate" far-flung, unrelated materials into the Agreement

Unable to identify any provision in the Agreement, or referred to in the Agreement, that prohibits Disputed Ads or guarantees Smart Pricing, Woods instead draws on miscellaneous Internet content with no relation to the Agreement itself.  These unrelated materials do not (and cannot) constitute binding provisions of the AdWords Agreement.  For that to be the case, the extraneous Internet materials that Woods has collected would have to be (i) referred to specifically in the AdWords Agreement, and (ii) referred to in the Agreement for the same *specific purpose* Woods seeks to enforce them here.  *Nielsen*, 99 Cal. App. at 279; *Moreing*, 3 Cal. App. at 20; Williston § 30:25; 17A Am. Jur. 2d Contracts § 391.

Ignoring these basic precepts of contract law and the strict limitations of the incorporation-by-reference doctrine, Woods nonetheless attempts to write the following into the AdWords Agreement:

- All "AdWords Help" entries on *any* topic, Compl. ¶ 58;

- All Internet statements regarding the *AdSense* product, including alleged Google policies for third parties, terms and conditions agreed to by Google and third parties, and "Help" entries intended for third parties, *id.* ¶¶ 58, 64-76, nn. 24-32, 37, 41-48, 54 (alleging the existence of "Google's Obligations [to AdWords advertisers] Concerning Ad Implementations" by citing to AdSense "Help" postings and other AdSense websites);

- All materials that may be accessed directly or indirectly by using a *search box* located in an AdWords Help website, *id.* ¶ 59 ("This search box . . . allow[s] a user to access every google.com page relied on in this Complaint.");

- All materials that may be accessed through the use of multiple, cascading hyperlinks, *id.* (alleging that "[t]hrough the hyperlinks in the AdWords [Agreement], Google

expressly incorporates not only those hyperlinked pages, but *also incorporates all pages accessible via additional hyperlinks* embedded in those linked pages") (emphasis added); and

- A motley collection of materials available on Google websites and even third-party websites, including blog posts by Google employees, *id.* ¶ 72 n.44; a litigation report submitted by an independent expert in a prior class action, *id.* ¶ 84 n.66; anecdotes collected and published on the Internet by Google, *id.* ¶ 84 n.65; online videos hosted by the YouTube service, *id.* ¶ 95 n.91; the Google "Ad Traffic Quality Resource Center," *id.* ¶ 70 n.35; and a "Year in Review" publication by Google, *id.* ¶ 95 n.90.

Woods tries to justify this incorporation of Google statements from around the Internet into the AdWords Agreement primarily by alleging that (i) Section 1 "expressly incorporate[s] by reference *all* Google and partner policies" and (ii) the Agreement's references to "FAQ" content unlock all "frequently asked questions at www.google.com." Compl. ¶ 56 (emphasis added). But, as explained above, that is a flawed reading of the Agreement and contrary to well-settled contract law. The Agreement's reference to "policies" in Section 1 is not binding on Google, *Goddard*, 640 F. Supp. 2d at 1201, and (even if it were) includes no prohibitions on Disputed Ads or guarantees of Smart Pricing. Similarly, the Agreement's references to FAQs are not binding on Google, and (even if they were) are expressly limited to deadlines for "Creative" ad content and payment terms. Any other portions of AdWords FAQ content—let alone FAQ content for other Google products like AdSense—remain "foreign" and "irrelevant" to Google's obligations to AdWords advertisers under the Agreement. *Nielsen*, 99 Cal. App. at 279; *Moreing*, 3 Cal. App. at 20; Williston § 30:25; 17A Am. Jur. 2d Contracts § 391.

Taken to its logical conclusion, Woods' Complaint would result in an AdWords Agreement literally boundless in scope. If, as Woods alleges (Compl. ¶ 59), a separate document is deemed incorporated into the AdWords Agreement simply because it could be located through the use of hyperlinks and a "search" function provided by Google, then the three-page AdWords Agreement could swallow anything and everything available over the Internet, so long as an

1  advertiser could navigate from hyperlink to hyperlink to find "promises" somewhere on the
2  World Wide Web that Google has "breached."

3      The law of contracts and the face of the AdWords Agreement contradict Woods'
4  allegations of what extraneous materials the Agreement incorporates.  Woods may not sidestep
5  that law or expand the Agreement through aggressive pleading allegations; determining the scope
6  of the Agreement remains "solely a judicial function."  *Zepeda*, 2011 WL 570231 at *2.

7      **C.    Woods has not pleaded an independent claim for breach of implied
             covenant**
8

9      Woods' claim for breach of the implied covenant of good faith and fair dealing should be
10 dismissed because it is superfluous to the contract claim.  As this Court has held: "If the
11 allegations in a breach of implied covenant claim do not go beyond the statement of a mere
12 contract breach and, relying on the same alleged acts, simply seek the same damages or other
13 relief already claimed in a companion contract cause of action, they may be disregarded as
14 superfluous as no additional claim is actually stated."  *Malcolm v. JPMorgan Chase Bank, N.A.*,
15 No. 09-4496-JF, 2010 WL 934252, at *6 (N.D. Cal. Mar. 15, 2010) (Fogel, J.) (quoting *Careau &*
16 *Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990)).

17     Woods' implied covenant and contract claims allege exactly the same conduct by Google
18 and seek redundant relief.  Woods alleges that Google breached the implied covenant by
19 permitting Disputed Ads and failing to implement Smart Pricing.  Compl. ¶ 263.  Of course, that
20 is the same conduct that Woods alleges as a breach of contract.  *Id.* ¶¶ 250-51.  For damages on
21 the implied covenant claim, Woods seeks to be "made whole" for all charges based on clicks on
22 Disputed Ads; clicks on advertisements published by third parties who, in other contexts, display
23 Disputed Ads; and alleged overcharges based on a failure to implement Smart Pricing.  *Id.*
24 ¶¶ 266-67.  These are the very same damages Woods seeks for contract breach.  *Id.* ¶¶ 254-55.

25     Because Woods' "allegations in support for [his] claim for breach of the implied covenant
26 are the same as those supporting [his] breach of contract claim," the covenant claim should be
27 dismissed.  *Zepeda*, 2011 WL 570231 at *4.

28

**D.      Woods' UCL and FAL claims are deficient**

Woods alleges that his UCL claim is based on two categories of alleged wrongs.  First, Woods alleges that Google has violated § 17200 by systematically breaching the AdWords Agreement.  Compl. ¶¶ 274-75.  But for reasons explained above—namely that Woods cannot identify any provisions in the Agreement that Google violated—there can be no contractual breach to support a § 17200 claim.  *See* III.B., *ante*.

Second, Woods alleges that Google has violated § 17200 by making fraudulent misrepresentations to Woods regarding the operation of AdWords.  Compl. ¶¶ 271, 273-74, 276-78.  Woods' FAL claim under § 17500 is also based on allegations of fraudulent statements regarding the operation of AdWords.  *Id.* ¶¶ 285, 289.  Woods' UCL and FAL claims based on fraudulent misrepresentations fail because (i) Woods lacks standing to pursue such claims as a matter of law, and, even if he had standing, (ii) the Complaint fails to plead these claims, sounding in fraud, with the required particularity under Fed. R. Civ. P. 9(b).

**1.      Woods lacks standing as a matter of law to assert UCL and FAL claims based on alleged misrepresentations**

To establish standing as a class representative for a misrepresentation claim under §§ 17200 or 17500 of California's Business & Professions Code, Woods must show he personally lost money or property because of his own actual and reasonable reliance on the allegedly untrue or misleading statements.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (Cal. 2009) (holding that California's Proposition 64 imposes an "actual reliance" requirement for a class representative to bring a §17200 claim based on alleged misstatements); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 n.9 (Cal. 2011) (applying the same actual reliance requirement to a § 17500 claim).  Whether an individual's reliance was actual and reasonable, for UCL and FAL purposes, is based on "well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco II Cases*, 46 Cal. 4th at 306.

Here, as a matter of law, Woods cannot have actually or reasonably relied on any statements outside the scope of the AdWords Agreement.  When he first entered into his

commercial relationship with Google, Woods expressly agreed he could not rely on such extraneous statements.  Section 9 of the Agreement that Woods accepted states clearly that:

> No statements or promises have been relied upon in entering into this Agreement except as expressly set forth herein[.]

Compl. Exh. A § 9.  Woods also agreed that any statements beyond the Agreement would have no effect:

> [A]ny conflicting or additional terms contained in any other documents . . . are void.

*Id.*

Any pleading allegation by Woods to the contrary—that he actually and reasonably relied on extraneous statements by Google—must be evaluated in light of his explicit agreement not to rely on statements of that kind.  As this Court held recently in the *Facebook* litigation regarding advertisements on that web property:

> The disclaimer in this case is unambiguous with respect to third-party click fraud, and Plaintiffs must show that they were reasonable in relying on the representations in the Help Center even in light of those disclaimers.

*In re Facebook PPC Advertising Litigation*, No. 5:09-CV-03043-JF, 2010 WL 5174021, at *6 (N.D. Cal. Dec. 15, 2010).

In light of the clear language in the Agreement, Woods cannot have reasonably relied on any statements beyond the scope of the AdWords Agreement itself.  The language in Section 9 of the Agreement is unambiguous, presented in plain language, in 12-point font, in a very short commercial contract. Woods does not allege that the language in Section 9 was ambiguous or confusing; nor could he allege any misunderstanding of this language, as he is a practicing attorney, specially trained to review and understand contracts and disclaimers.  Compl. ¶ 16.

Woods is therefore barred as a matter of law from alleging actual and reasonable reliance on the alleged misstatements.  *See Guido v. Koopman*, 1 Cal. App. 4th 837, 843-44 (Cal. Ct. App. 1991).  In *Guido*, the lead plaintiff Guido was—like Woods—a practicing attorney.  Guido was injured when horseback riding, and she proceeded to sue the defendant, her equestrian instructor

whom she alleged was responsible for the injury.  The trial court granted summary judgment in favor of the defendant, finding in part that Guido's claims were barred by a liability release form she had signed before saddling up.  Guido appealed and argued that (i) she had been defrauded into signing the release, because she relied on the defendant's promise that the release was unenforceable; and (ii) whether her reliance was justified was a question of fact not suitable for summary judgment.  The Court of Appeal rejected Guido's argument.  The court recognized that although "the reasonableness of [] reliance is ordinarily a question of fact," nonetheless "whether a party's reliance was justified may be decided *as a matter of law* if reasonable minds can come to only one conclusion based on the facts."  *Id.* at 843 (emphasis added).  The court then held:

> Guido's deposition testimony on which appellants rely also reveals that *she is a practicing attorney* and uses releases in her practice.  In essence, she is asking this court to rule that a practicing attorney can rely on the advice of an equestrian instructor as to the validity of a written release of liability that she executed without reading.  In determining whether one can reasonably or justifiably rely on an alleged misrepresentation, *the knowledge, education and experience of the person claiming reliance must be considered*.  Under these circumstances, we conclude as a matter of law that any such reliance was not reasonable.

*Id.* at 843-44 (emphasis added, citations removed) (citing *Gray v. Don Miller & Associates, Inc.*, 35 Cal. 3d 498, 503 (Cal. 1984), and *Seeger v. Odell*, 18 Cal. 2d 409, 414-15 (Cal. 1941)).

Like Ms. Guido, Plaintiff Woods is a practicing attorney who agreed to plain language in a short contract that is inconsistent with his after-the-fact allegations of reasonable reliance on representations outside the contract.  And like the court in *Guido*, this Court should find that attorney Woods is barred as a matter of law from making that allegation.  *See also Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 575 (7th Cir. 2001) (affirming trial court's dismissal of a claim for fraudulent inducement because the alleged misrepresentations were disavowed through a contractual "no reliance" clause); *JM Vidal, Inc. v. Texdis USA, Inc.*, __ F. Supp. 2d __, No. 08 Civ. 6398, 2011 WL 347608, at *23 (S.D.N.Y. Feb. 2, 2011) ("[T]he Franchise Agreement's express disclaimer, which specifically warrants that JMV did not rely on any representation regarding the potential success of its franchise, precludes JMV from proving

1   that it reasonably relied on Gomez's alleged statement (or others like it), just as it precludes JMV

2   from proving reasonable reliance in the context of its [statutory] fraud claims."); *Scognamillo v.*

3   *Credit Suisse First Boston LLC*, No. C03-2061, 2005 WL 645446, at *5 (N.D. Cal. Mar. 21,

4   2005) (Henderson, J.) (holding that dismissal at the pleadings stage may be appropriate for a

5   misrepresentation claim under California law if the plaintiff cannot show justified reliance, and

6   finding that pleading allegations by sophisticated businessmen and lawyers that they relied on

7   oral statements of defendants beyond the terms of a prospectus "appear to be unreasonable").

8        The question before this Court is whether this particular named plaintiff, Rick Woods,

9   could have reasonably relied on statements extraneous to the Agreement given that he agreed that

10  he was not legally entitled to do so—before or after its formation.  In making that determination,

11  "the knowledge, education and experience of [Woods] must be considered."  *Guido*, 1 Cal. App.

12  4th at 843-44.  Woods' "education and experience" as a practicing attorney make him as

13  sophisticated a contracting party as possible.  Given that, he cannot now plead that he actually

14  and reasonably relied on the very Google statements that he previously agreed to disregard.

15                  **2.**       **Even if he had standing, Woods fails to plead his UCL and**

16                            **FAL claims with the required particularity**

17       Even if Woods could (although he cannot) plead for UCL and FAL purposes that he

18  actually and reasonably relied on any statements by Google beyond the express terms of the

19  AdWords Agreement, he has not pleaded these claims pursuant to the heightened particularity

20  requirements of Fed. R. Civ. P. 9(b).  Woods is required to satisfy that heightened pleading

21  standard because both his §§ 17200 and 17500 claims are based on alleged misrepresentations by

22  Google, and sound in fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)

23  (holding that Rule 9(b) applies for claims sounding in fraud "irrespective of whether the

24  substantive law at issue is state or federal," and applying Rule 9(b) standards to a California UCL

25  claim); *see also Facebook PPC Advertising Litigation*, 2010 WL 5174021 at *10 (holding that a

26  § 17200 claim against Facebook, based on allegations of untrue and misleading statements about

27  online services, sound in fraud and must be pleaded in federal court with heightened particularity

28  pursuant to Rule 9(b)) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir.

- 17 -

1    2003)); *VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp. 2d 1073, 1085-86 (E.D.

2    Cal. 2009) (holding that § 17200 and § 17500 claims sounding in fraud must be pleaded pursuant

3    to Fed. R. Civ. P. 9(b)).

4         Because Woods must satisfy Rule 9(b) for his UCL and FAL claims, he "must state

5    precisely the time, place, and nature of the misleading statements, misrepresentations, and

6    specific acts of fraud." *Facebook PPC Advertising Litigation*, 2010 WL 5174021 at *3 (quoting

7    *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994)).

8         Woods does not even attempt to satisfy this heightened pleading standard.   The only

9    Google statements that he identifies with particularity as misrepresentations for his § 17200 claim

10   are (i) partial quotations of provisions of the three-page AdWords Agreement, and (ii) two

11   purported screen shots that are just plain *illegible*.   Compl. ¶ 271 (of eight bullet points alleging

12   untrue or misleading statements by Google, the first six quote exclusively from the face of the

13   AdWords Agreement, the latter two rely on Figures 8 and 9, which are reduced in size, blurred,

14   obscured by arrows that appear to be added by Woods, and do not even identify the Internet

15   location from which they were taken).   The § 17500 claim relies on exactly the same alleged

16   misstatements.   *Id.* ¶ 287.   Other than paragraphs 271 and 287 of the Complaint, Woods says

17   nothing about the misrepresentations that purportedly support his fraud-based UCL and FAL

18   claims.

19        The partial quotations from the AdWords Agreement cannot serve as fraudulent

20   "misrepresentations" for UCL and FAL claims given that Woods has not explained with

21   particularity the ways in which the express provisions of the Agreement were untrue or

22   misleading, nor has Woods even alleged that Google violated them.   *See* III.B., *ante*.   And given

23   that Figures 8 and 9 cannot even be read, they are far shy of particular.

24        Woods' UCL and FAL claims should be dismissed as a matter of law.   Woods, a lawyer,

25   agreed to be bound by a short, simple document (the Agreement) providing that he was not

26   relying (let alone reasonably relying) on extraneous statements.   No amended pleading could

27   remedy the deficiencies to Woods' claims, all of which are based on an illusory breach of

28

MOTION TO DISMISS
5:11-CV-01263-JF

1    contract.  Leave to amend should therefore be denied as futile.  *See Lucas v. Dep't of Corrs.*, 66

2    F.3d 245, 248 (9th Cir. 1995).

3    **IV.    CONCLUSION**

4         The Complaint should be dismissed without leave to amend.

5

6    Dated: May 5, 2011                                    MAYER BROWN LLP

7

8                                                    ____/s/ Edward D. Johnson_____
                                                     Edward D. Johnson

9
                                                     Attorneys for Defendant Google Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28