UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| RICK WOODS, | ) | Case No.: 5:11-CV-01263 EJD |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING-IN-PART AND** |
| | ) | **DENYING-IN-PART MOTION TO** |
| v. | ) | **DISMISS FIRST AMENDED** |
| | ) | **COMPLAINT** |
| GOOGLE, INC., | ) | |
| | ) | **(Re: Docket No. 73)** |
| Defendant. | ) | |
| | ) | |

Presently before the court is Defendant Google Inc.'s ("Google") Motion to Dismiss the First Amended Complaint ("FAC") filed by Plaintiff Rick Woods ("Woods"), on behalf of himself and all others similarly situated. See Docket No. 73. Woods filed written opposition to the motion. See Docket No. 74. The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing date. Jurisdiction in this court arises pursuant to 28 U.S.C. § 1332(d)(2). For the reasons discussed below, Google's motion to dismiss the FAC is DENIED IN PART and GRANTED IN PART with leave to amend.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    AdWords and AdSense

Google offers two advertising products: AdWords and AdSense. FAC, Docket No. 68, ¶¶ 1, 107. AdWords allows advertisers to display advertisements on google.com and other web sites across the Internet. Id. ¶ 1. AdWords advertisers pay Google each time their ad is "clicked." Id.

United States District Court
For the Northern District of California

AdSense, by contrast, allows third parties to host or "publish" Google ads on their web sites. Id. ¶ 1 n.1. These third parties receive a share of the revenue Google receives for each click on an AdWords advertisement that appears on their web sites. Id.

**B.    The Agreement**

Advertisers can join the AdWords program online by clicking through and accepting the Google Inc. Advertising Program Terms ("Agreement"). Id. ¶¶ 2, 8. The Agreement states that it "constitutes the entire and exclusive agreement between the parties with respect to the subject matter" thereof, and that "[n]o statements or promises have been relied upon in entering into this Agreement except as expressly set forth" and "any conflicting or additional terms contained in any other document . . . or oral discussions are void." Id. Ex. A § 9.

According to the Agreement, "[p]rogram use is subject to all applicable Google and Partner policies" and such policies "may be modified at any time." Id. Ex. A § 1. Under Section 2 of the Agreement, AdWords ads:

> may be placed on (y) any content or property provided by Google ("Google Property"), and, unless Customer opts out of such placement in the manner specified by Google, (z) any other content or property provided by a third party ("Partner") upon which Google places ads ("Partner Property"). Customer authorizes and consents to all such placements.

Id. Ex. A § 2. The Agreement also provides that "[t]o the fullest extent permitted by law, Google disclaims all guarantees regarding positioning, levels, quality, or timing of" clicks and the adjacency or placements of ads within a program. Id. Ex. A § 5.

Under the Payment Terms, the Agreement asserts "[c]harges are solely based on Google's measurements for the applicable Program, unless otherwise agreed to in writing." Id. Ex. A § 7. The "[c]ustomer's exclusive remedy, and Google's exclusive liability, for suspected invalid impressions or clicks is for [c]ustomer to make a claim for a refund in the form of advertising credits." Id. Ex. A § 5. Furthermore, "[t]o the fullest extent permitted by law, [c]ustomer waives all claims relating to charges (including without limitation any claim for charges based on suspected invalid clicks) unless claimed within 60 days after the charge." Id. Ex. A § 7.

**C.    Smart Pricing**

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1    The AdWords help site promotes its "automatic pricing discount feature" called Smart

2  Pricing. Id. Ex. B. Smart Pricing is "a feature that automatically reduces the price advertisers pay

3  for clicks if [Google's] data shows that a click from a Display Network[1] page is less likely to result

4  in a conversion."[2] Id. Smart Pricing works as follows:

5          For clicks arising from websites having conversion scores less than google.com,
          Google discounts the price of all the clicks. The total amount of the discount is
6          equal to the price of that click multiplied by (1 minus the conversion score for the
          website or property originating the click). The Smart Pricing formula is expressed as
7          follows: Smart Pricing discount = Price of Click x (1 - Conversion Score)

8  Id. ¶ 28.

9          Woods alleges Google overcharged him by not applying the Smart Pricing discount formula

10  to numerous clicks. Id. ¶ 9. Additionally, Woods believes Google deprived him of the Smart

11  Pricing discount because it made preferential secretive deals with Special Partners. Id. Woods

12  brings four causes of action regarding the Smart Pricing issue: (1) breach of contract; (2) breach of

13  the implied covenant of good faith and fair dealing; (3) violation of the California Unfair

14  Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (4) violation of the

15  California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

16  **D.      Non-Compliant Sites**

17          According to the FAC, Google represents to AdWords advertisers that "all web sites and

18  products are reviewed and monitored according to Google's rigorous standards," and "AdWords

19  ads will continue to appear only on high-quality sites and products." Id. ¶ 105. These rigorous

20  standards include the AdSense Program Policies ("AdSense Policies"), which state how and where

21  Google's publishers may display AdWords ads. Id. ¶ 107. The AdSense Policies prohibit certain

22  conduct such as the display of ads in connection with incentivized searching, tool bars, mobile

23  _____

24  [1] The "Google Network" consists of two components: the "Search Network" and the "Display
    Network." The Search Network consists of websites, like www.google.com or www.aol.com, that
    contain a Google search box. In contrast, the Display Network consists of websites that partner
25  with Google (like www.mapquest.com and www.nytimes.com), specific Google properties (like
    YouTube and Gmail), and websites and search engines available on mobile devices with full
26  Internet browsers. Id. ¶ 22 n.6.

27  [2] Google defines a conversion as a click resulting in an actual business result (e.g., online sale,
    registration, phone call, or newsletter sign-up). Id. ¶ 23

28

3

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    applications, and clickable backgrounds. Id. Woods alleges the Agreement mandates Google to

2    enforce the AdSense Policies to its third-party publishers. Id. ¶ 106.

3            Moreover, Woods believes Google secretly entered into preferential agreements with its

4    Special Partners whereby the Special Partners were exempted from compliance with the AdSense

5    Policies. Id. ¶ 113. Woods further alleges Google exempted mobile publishers from compliance

6    with the AdSense Policies. Id. ¶ 145. As a result of Google's actions, "advertisers had to pay for

7    accidental and meaningless clicks that are worth less than what Google charged for them." Id. ¶

8    114. Woods brings four causes of action regarding the non-compliant site issue: (1) breach of

9    contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the

10   UCL; and (4) violation of the FAL.

**E.      Location Targeting**

12           During the sign-up and ad creation process Google provides advertisers with the option to

13   specify the geographic locations in which they want their ads to appear. Id. ¶ 203. Specifically,

14   advertisers are presented with the following question in the sign-up and ad creation process:

15   "Location [help link] In what geographical location do you want your ads to appear?" Id. ¶ 204,

16   Ex. J. The help link embedded in the foregoing question, when clicked, opens a text box stating:

17               "Location targeting
                 You can target your ads to almost any set of locations, including countries,
18               territories, regions, cities and custom areas. For example, you could target specific
                 regions within the United States and a few large English-speaking cities in Europe.
19               You can view or edit your targeting options from the Settings tab for your
                 campaign.
20               Learn more about location targeting options. [hyperlink]"

21   Id. ¶ 205, Ex. K. Woods responded to the location question by selecting "Metro area: Ft. Smith-

22   Fayetteville-Springdale-Rogers AR, US[.]" Id. ¶ 206. Later, Woods discovered that Google

23   distributed his ads to users outside of his designated geographic location. Id. ¶ 208. Woods alleges

24   the location setting statements were fraudulent in violation of the UCL.

**E.      Procedural History**

26           Woods commenced the instant action in this court on March 15, 2011. Following Google's

27   Motion to Dismiss (see Docket No. 41), Judge Fogel dismissed Wood's original Complaint

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

*United States District Court*
*For the Northern District of California*

because it failed to state a claim upon which relief may be granted. <u>See</u> Docket No. 64. Woods filed its FAC on September 9, 2011.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008).

When deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. <u>Love v. United States</u>, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555. Moreover, anything beyond the pleadings generally may not be examined. <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). But "material which is properly submitted as part of the complaint may be considered." <u>Twombly</u>, 550 U.S. at 555.

Finally, although their claims arise under state law, Woods' allegations are subject to the Federal Rules of Civil Procedure. <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1102 (9th Cir. 2003)) ("[T]he Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal."). Specifically, allegations sounding in fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). <u>See</u> <u>Ciba-Geigy</u>, 317 F.3d at 1103-04 (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

particularity requirement of Rule 9(b)."); <u>Kaplan v. Rose</u>, 49 F.3d 1363, 1370 (9th Cir. 1994)

(claims based in fraud 'must state precisely the time, place, and nature of the misleading

statements, misrepresentations, and specific acts of fraud.").

### III.   DISCUSSION

**A.     Breach of Contract**

Under California law, a claim for breach of contract requires "(1) existence of the contract;

(2) plaintiff's performance or excuse of nonperformance; (3) defendant's breach; and (4) damages

to plaintiff as a result of the breach." <u>CDF Firefighters v. Maldonado</u>, 158 Cal. App. 4th 1226,

1239 (2008).

#### 1.     Smart Pricing (Count 1)

Woods' contract claim centers on Section 7 of the Agreement, which provides in pertinent

part: "Charges are solely based on Google's measurements for the applicable Program[.]" FAC Ex.

A § 7. Woods interprets "measurements" to mean and include Google's Smart Pricing

measurement. <u>Id.</u> ¶ 49. Woods attached printouts from the AdWords Help Center site to the FAC

(Exhibits B-G) to support this interpretation. <u>Id.</u> ¶ 51. Google argues that (1) the Agreement

contains no Smart Pricing obligation, (2) the court should not consider Exhibits B-G to interpret the

term "measurements," and (3) the FAC fails to allege Google did not apply the Smart Pricing

formula to clicks on the "Display Network." Mot. at 9:8-13:17.

Under California law, "'[t]he fundamental goal of contract interpretation is to give effect to

the mutual intent of the parties as it existed at the time of contracting.'" <u>Miller v. Glenn Miller

Prods., Inc.</u>, 454 F.3d 975, 989 (9th Cir. 2006) (per curiam) (quoting <u>U.S. Cellular Inv. Co. of L.A.

v. GTE Mobilnet, Inc.</u>, 281 F.3d 929, 934 (9th Cir. 2002)). "Because California law recognizes that

the words of a written instrument often lack a clear meaning apart from the context in which the

words are written, courts may preliminarily consider any extrinsic evidence offered by the parties."

<u>Id</u>. at 989–90; <u>see</u> <u>also</u> <u>Dore v. Arnold Worldwide, Inc.</u>, 39 Cal. 4th 384 (2006) ("'[E]ven if a

contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence

which reveals more than one possible meaning to which the language of the contract is yet

United States District Court
For the Northern District of California

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1   reasonably susceptible.'" (quoting <u>Morey v. Vannucci</u>, 64 Cal. App. 4th 904 (1998))). "'If the court

2   decides, after consideration of this evidence, that the language of a contract, in the light of all the

3   circumstances, is fairly susceptible of either one of the two interpretations contended for, extrinsic

4   evidence relevant to prove either of such meanings is admissible.'" <u>Miller</u>, 454 F.3d at 990

5   (quoting <u>Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.</u>, 69 Cal.2d 33 (1968)).

6        A "court may not dismiss on the pleadings when one party claims that extrinsic evidence

7   renders the contract ambiguous." <u>A. Kemp Fisheries Inc. v. Castle & Cookie, Inc.</u>, 852 F.2d 493,

8   496 n.2 (9th Cir. 1988). A party's assertion of ambiguity, however, "does not require the district

9   court to allow additional opportunities to find or present extrinsic evidence if the court considers

10  the contract language and the evidence the parties have presented and concludes that the language

11  is reasonably susceptible to only one interpretation." <u>Skilstaf, Inc. v. CVS Caremark Corp</u>, 669 F.

12  3d 1005, 1017 (9th Cir. 2012). "That conclusion can be reached on a motion for summary

13  judgment or, as here, on a motion to dismiss if the evidence can properly be considered under Rule

14  12(b)(6)." <u>Id.</u>

15        Google argues that the contract imposes obligations on the advertiser only and does not

16  obligate Google to base charges on the Smart Pricing formula. Google further argues that

17  interpreting the contract in a manner that obligates Google to base charges on the Smart Pricing

18  formula would add new terms and vary the term of the contract. <u>See</u> Mot. at 11-12.

19          "Although extrinsic evidence cannot be used to add to, detract from, or vary the
20          terms of a written contract, the terms must first be ascertained before it can be
            determined whether the extrinsic evidence is being used impermissibly. At least a
21          preliminary consideration of all evidence offered to prove the parties' intention—
            including testimony as to the circumstances surrounding the contract—is necessary
22          to determine those terms."

23  <u>Zenger-Miller, Inc. v. Training Team, GmbH</u>, 757 F. Supp. 1062, 1067 (N.D. Cal. 1991).

24        Here, Exhibits B-G are attached to the complaint and therefore can be properly considered

25  under Rule 12(b)(6). The court preliminarily considers this extrinsic evidence to determine whether

26  the "measurements" clause is reasonably susceptible to more than one interpretation. These

27  exhibits indicate that the Smart Pricing formula is one of the measurements Google uses to

28

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court
For the Northern District of California

1  calculate charges for clicks, is included in the AdWords program, and is applied to Display

2  Network clicks. For example, in Exhibit B, Google's AdWords Help Center site states that

3  AdWords includes two automatic pricing discount features, one of which is the Smart Pricing

4  formula. FAC Ex. B.[3] The Smart Pricing feature "automatically reduces the price advertisers pay

5  for clicks if [Google's] data shows that a click from a *Display Network* page is less likely to result

6  in a conversion." Id. (emphasis added). Exhibits C, D, and F also make clear that the Smart Pricing

7  formula only reduces the price for a click on a Display Network page that is likely to result in a

8  conversion. See id. Ex. C ("Smart Pricing is a feature that automatically reduces the price

9  advertisers pay for clicks if our data shows that a click *from a Display Network page* is less likely

10  to result in a conversion.") (emphasis added); Ex. D (Glossary entry for "Smart pricing" explains

11  that Google is "constantly analyzing data across our search and Display Network . . . . You may

12  notice a reduction in the cost of clicks *from Display Network sites*.") (emphasis added.); and Ex. F

13  ("*Content clicks* may be priced differently than search clicks. Using smart pricing, AdWords

14  automatically adjusts the cost of clicks for keyword-targeted ads that appear on *content network*

15  *pages*.") (emphasis added). Thus, these exhibits do not show that the "measurements" clause is

16  reasonably susceptible to Woods' interpretation that Smart Pricing applies to all clicks.[4] The

17  exhibits, however, do support the interpretation that the contract language, "[c]harges are solely

18  based on Google's measurements for the applicable Program," means that Google must base the

19  charges for Display Network clicks, at least in part, on the Smart Pricing formula. Id. ¶ 49.

20         The arguments regarding ambiguity here are very similar to the arguments in Checkmate

21  Strategic Group v. Yahoo!, Inc., No. 2:05-CV-4588-CAS-FMO, 2005 U.S. Dist. LEXIS 46959, at

---

[3] The AdWords Help Center printouts attached to Google's motion do not contradict this meaning.
Decl. John M. Neukom Exs. 1-3.

[4] Woods argues that the court must accept his allegation as true that Smart Pricing applies to the
Search Network as well as the Display Network. See Opp'n at 8 n.17. The court, however need not
accept as true allegations that contradict matters that are either subject to judicial notice or attached
as exhibits to the complaint. See In re Gilead Sciences Securities Litigation, 536 F.3d 1049, 1055
(9th Cir. 2008). Here, Exhibits B, C, D and F to the complaint contradict Woods' allegation that
Smart Pricing applies to clicks on the Search Network. Thus, the court need not accept that
allegation as true.

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    *14-15 (C.D. Cal. Dec. 19, 2005)). In <u>Checkmate Strategic Group</u>, the plaintiff alleged that it

2    entered into an agreement with Yahoo for the placement of pay-per-click advertisements, which

3    stated the advertiser would be "charged for all clicks on your search listing" and that the cost of

4    each of the listings "shall be computed according to Overture's Marketplace rules." <u>Id.</u> at *2. The

5    plaintiff argued that "Overture's Marketplace rules" were not defined in the Agreement but were

6    set forth in the "policies" section of Yahoo's website for the Overture program, which stated that

7    Yahoo had software that ensured advertisers do not get charged for invalid clicks. <u>Id.</u> at *2. The

8    plaintiff filed a breach of contract claim alleging Yahoo breached the contract by charging plaintiff

9    for invalid clicks. Yahoo moved to dismiss the claim arguing that the contract was unambiguous

10   that plaintiff would pay for "all clicks" and the phrase "Overture's Marketplace rules" could not be

11   interpreted to require Yahoo ensure charges did not include invalid clicks. The court denied

12   Yahoo's motion to dismiss and found that the term "Overture's Marketplace rules" was ambiguous

13   and was plausibly susceptible to the interpretation that they referred to the "policies" section of the

14   Yahoo website. <u>Id.</u> at *14. <u>See also</u> <u>Lambotte v. IAC/InterActiveCorp</u>, No. 08-CV-04263, 2008

15   U.S. Dist. LEXIS 91683, at *10–14 (C.D. Cal. Nov. 4, 2008) (recognizing plaintiff's interpretation

16   of the term "user" "may not be the most reasonable interpretation[]" but, nonetheless, denying the

17   dismissal motion concluding it "is required under California law to consider extrinsic evidence

18   regarding the possible ambiguity"); <u>In re Yahoo! Litig.</u>, 251 F.R.D. 459, 471–72 (C.D. Cal. 2008)

19   (allowing plaintiffs to conduct discovery regarding their interpretation that references to

20   "Sponsored Search" and "Content Match" products indicate a promise to target advertisements

21   because "[a]t this stage of the proceedings . . . the Court is unable to dismiss, out of hand, plaintiffs'

22   contention that extrinsic evidence will show that they bargained for targeted advertising services,

23   even if the Agreement appears on its face to state otherwise.").

24         Here, even if the court were to find that the phrase "[c]harges are solely based on Google's

25   measurements for the applicable" was reasonably susceptible to the interpretation that Google was

26   obligated to apply the Smart Pricing formula to clicks on the Display Network, Woods has not

27   sufficiently alleged that Google failed to do so. Although Woods alleges that Google failed to

28

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court
For the Northern District of California

1  Smart Price clicks on web sites operated by Google partner IAC (FAC ¶¶ 29-34, 41), he does not

2  allege that IAC or the IAC web sites at issue are part of the Display Network. Woods alleges that

3  Google failed to Smart Price clicks on web sites operated by Google partners Peeplo.com, Conduit,

4  InfoSpace and Xacti (id. ¶ 42), but does not allege that these partners or the cited web sites are part

5  of the Display Network. Woods alleges that Google failed to Smart Price "clicks from mobile

6  devices" (id. ¶ 39), but does not allege that any such clicks "from mobile devices" were made on

7  mobile devices with full Internet browsers, such that they would be on the Display Network (FAC

8  ¶ 6 n.6).[5] Thus, even if the contract were interpreted to require Google to apply Smart Pricing to all

9  Display Network clicks, Woods had not stated a claim for a breach of contract because he has not

10  pleaded that any of the clicks that Google failed to Smart Price were from the Display Network.

11  Therefore, the motion to dismiss Woods' breach of contract claim concerning Smart Pricing is

12  GRANTED with leave to amend.

13        **2.     Non-Compliant Sites (Count 5)**

14        Section 1 of the Agreement states, "[p]rogram use is subject to all applicable Google and

15  Partner policies." Id. Ex. A § 1. Woods argues that the potential ambiguities in Section 1 and

16  Section 2 of the Agreement, render this phrase reasonably susceptible to the interpretation that

17  Google is obligated to abide by the AdSense Policies. Mot. at 10:17-13:6. Google allegedly failed

18  to abide by the AdSense Policies by displaying Woods' ads on sites that Google exempted from the

19  AdSense Policies and charging for such ads. FAC ¶¶ 113-15, 156. On the contrary, Google argues

20  ─────────────────────

21  [5] Woods briefly argues that the FAC incorporates by referencing a billing statement. See Opp'n at
8 n.15; Degnan Decl. Ex. 1. This document is a screenshot of a billing record taken on August 20,

22  2011 showing that two web pages identified in the FAC are listed as Display Network pages.
Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the

23  contents of the complaint. Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). A court may
consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the

24  document; (2) the document is central to the plaintiff's claim; and (3) no party questions the
authenticity of the copy attached to the 12(b)(6) motion. Id. Woods argues he references the

25  document in paragraphs 36 and 43 of the FAC. Opp'n at 8 n.15. Paragraph 43 does not reference a
document. Paragraph 36 appears to refer to a different billing statement than the one provided in

26  the Degnan Declaration. Additionally, the screenshot itself was created after the FAC was filed,
(see Degnan Decl. ¶ 3 saying "created on August 10, 2012") and no further information is provided

27  about whether the information shown in the document was available prior to the filing of the FAC.
Thus, the complaint does not refer to the document, and Woods has not shown that the complaint

28  necessarily relies on this document.

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    that (1) the Agreement expressly disavows any guarantees regarding ad placement, (2) that nothing

2    in the AdWords Agreement requires Google to apply AdSense policies to advertisers who are not

3    parties to the AdSense agreement, and (3) Woods is barred from asserting contract claims based on

4    ad placement because he waived all claims related to the charges.

5           Woods contends the term, "program use," imposes an obligation on Google. However,

6    because advertisers are the only parties who "use" the AdWords Program, Woods' interpretation

7    contradicts the plain language of the Agreement. Additionally, Woods asserts that the phrase "upon

8    which Google places ads," which appears in Section 2 of the Agreement, "authorizes Google to

9    place ads only on sites in the 'Google Network.'" Opp'n at 12:18-13:1. That phrase, however,

10   appears within the sentence, "Customer understands and agrees that ads may be placed on . . . any

11   other content or property provided by a third party ('Partner') upon which Google places ads."

12   FAC Ex. A § 2. The phrase "upon which Google places ads" thus modifies "any other [third-party]

13   content or property," and therefore does not obligate Google to place ads only on sites in the

14   Google Network. Id. Both Section 2 and Section 5 of the Agreement expressly provide that Google

15   is not restricted in how it may place ads. See id. Ex. A § 2 ("ads may be placed . . . on any other

16   content or property provided by a third party ('Partner')"); Ex. A § 5 ("[t]o the fullest extent

17   permitted by law, Google disclaims all guarantees regarding positioning, levels, quality, or timing

18   of . . . clicks . . . [and] the adjacency or placements of ads within a Program.").

19          Thus, the Agreement expressly disavows any guarantees regarding ad placement and is

20   unambiguous on its face. Woods has not presented the court with any extrinsic evidence showing

21   there is more than one possible meaning to this portion of the contract. Because the Agreement is

22   reasonably susceptible to only one interpretation regarding ad placement, Woods' assertions of

23   ambiguity "does not require the district court to allow additional opportunities to find or present

24   [additional] extrinsic evidence . . . ." Skilstaf, Inc., 669 F.3d at 1017.

25          Accordingly, the FAC does not adequately allege Google breached any term in the

26   Agreement. Google's motion to dismiss Count 5 therefore is GRANTED with leave to amend.

27   **B.    Breach of the Implied Covenant of Good Faith and Fair Dealing (Counts 2 and 6)**

28

11
Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must

2    allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the

3    plaintiff did all or substantially all of the things that the contract required him to do or that he was

4    excused from having to do; (3) all conditions required for the defendant's performance had

5    occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the

6    contract; and (5) the defendant's conduct harmed the plaintiff. See Judicial Counsel of California

7    Civil Jury Instructions § 325 (2011); see also Oculus Innovative Sciences, Inc. v. Nofil Corp., No.

8    C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007). A plaintiff must show "that

9    the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract

10   term, demonstrates a failure or refusal to discharge contractual responsibilities." Careau & Co. v.

11   Security Pacific Business Credit, Inc., 22 Cal. App. 3d 1371, 1395 (1990).

12   Judge Fogel previously dismissed Woods' implied-covenant claims because Woods failed

13   to allege adequately that Google deprived Woods of a benefit to which he was entitled under the

14   Agreement. Order at 11:4-5. Here, Woods again fails to show that Google had any obligation to

15   enforce the AdSense Agreement against publishers. Similarly, Woods has not pleaded that Google

16   failed to apply the Smart Pricing formula to any Display Network page. Thus, the FAC does not

17   allege adequately that Google deprived Woods of a benefit to which he was entitled under the

18   Agreement. Accordingly, the motion to dismiss Woods' implied-covenant claims is GRANTED

19   with leave to amend.

20   **C.    Violation of the UCL (Counts 3 and 7)**

21   Woods contends that Google's conduct concerning the Smart Pricing issue and the non-

22   compliant sites has violated all three prongs of the UCL. With respect to these accusations, the

23   court GRANTS the motion with leave to amend for the following reasons.

24   **1.    Unlawful**

25   "By proscribing 'any unlawful' business practice, [the UCL] 'borrows' violations of other

26   laws and treats them as unlawful practices that the unfair competition law makes independently

27   actionable." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180

28

12

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1   (1999). "The only unlawful activities alleged in the [FAC] are Google's alleged breach of contract

2   and breach of the implied covenant of good faith and fair dealing. Because Woods did not plead

3   either of those claims adequately, he failed to state a claim under this prong of the UCL." Order at

4   11:23-26. Thus, for the same reason Judge Fogel dismissed the original Complaint, Woods has

5   failed to state a claim under the unlawful prong of the UCL.

6       **2.    Unfair**

7       "An act or practice is unfair if the consumer injury [1] is substantial, [2] is not outweighed

8   by any countervailing benefit to consumers or to competition, and [3] is not an injury the

9   consumers themselves could reasonably have avoided." Daugherty v. Am. Honda Motor Co., 144

10  Cal. App. 4th 824, 839 (2006). Plaintiffs must allege facts to support all three elements of a UCL

11  unfair business claim. Id. Woods argues that Google's alleged practices of not applying the Smart

12  Pricing formula and not complying with the AdSense Policies are unfair. Woods, however, has not

13  alleged that Google failed to apply Smart Pricing to clicks on Display Network pages or pleaded

14  facts showing that the Smart Pricing discount applies to clicks on other pages. Likewise, Woods

15  has not pleaded facts showing that Google owed an obligation to Woods to enforce its AdSense

16  Policies. Unless Woods can plead facts showing that he and other advertisers had a legal right to

17  the Smart Pricing discounts that was violated or to the enforcement of the AdSense Policies, he

18  cannot show any cognizable injury. Thus, for the same reason Judge Fogel dismissed the original

19  Complaint, Woods has failed to state a claim under the unfair prong of the UCL.

20      **3.    Fraudulent**

21      Woods alleges that Google's statements pertaining to its AdWords program were fraudulent

22  in violation of § 17200 because they were likely to deceive advertisers into believing (1) that

23  Google would apply Smart Pricing to all clicks that were less likely to convert than clicks from

24  google.com and (2) that Google would apply the AdSense Policies to all websites. Id. ¶¶ 84, 182.

25  Google contends that Woods has failed to establish standing for his misrepresentation claims. Mot.

26  at 22:5-23:7.

27

28

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

To establish standing as a class representative for a misrepresentation claim under the UCL, a plaintiff must show he personally lost money or property because of his own actual and reasonable reliance on the allegedly untrue or misleading statements. See In re Tobacco II Cases, 46 Cal. 4th 298, 326-28 (2009). Google argues that Woods cannot have actually or reasonably relied on any statement outside the scope of the AdWords Agreement because the Agreement itself expressly states that "[n]o statement or promises have been relied upon in entering into this Agreement except as expressly set forth herein," and that "any conflicting or additional terms contained in any other documents . . . are void." FAC Ex. A § 9. Google contends that as a practicing attorney, Woods was a sophisticated party in a position to understand the Agreement into which he was entering contained a no-reliance clause.

Reasonableness of reliance is ordinarily a question of fact. Guido v. Koopman, 1 Cal. App. 4th 837, 843 (1991). However, under California law, "whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." Id.; see also In re Facebook PPC Advertising Litigation, 2010 WL 5174021, at *6 (N.D. Cal. Dec. 15, 2010) (holding that contractual disclaimers regarding advertising on that web property were unambiguous, and therefore that "Plaintiffs must show [at the pleadings stage] that they were reasonable in relying on the representations in the Help Center even in light of these disclaimers."). In Guido, the California Court of Appeal concluded as a matter of law that reliance alleged by an attorney on statements outside a written, integrated contract was not reasonable. Guido, 1 Cal. App. 4th at 843-44.

In light of Woods' sophistication as an attorney, Woods could not have reasonably relied upon the AdSense Policies because, as discussed above, they contradict the clear language of the Agreement. Woods' reliance upon Google's Smart Pricing statements, however, may have been justified because these statements were used to interpret an ambiguous clause in the Agreement. Nevertheless, even if Woods reasonably relied on Google's Smart Pricing statements, Woods has not stated facts showing that the Smart Pricing statements were untrue or misleading. The statements that Woods alleged he relied upon state that Smart Pricing applies to clicks from

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1    Display Network pages, FAC ¶ 76, but Woods has not alleged that Google failed to apply the

2    Smart Pricing formula to Display Network pages.

3    **D.     Violation of the FAL (Counts 4 and 8)**

4           Woods' FAL claims fail for the same reason his UCL claims fail for lacking of standing.

5    Similar to a misrepresentation claim under the UCL, a FAL claim must show the plaintiff suffered

6    an injury due to his own actual and reasonable reliance on the allegedly untrue or misleading

7    statements. See Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 326 n.9 (2011). Because Woods

8    did not adequately establish standing, as discussed above, the motion to dismiss Woods' FAL

9    claims is GRANTED with leave to amend.

10   **E.     Location Targeting - Violation of the UCL (Count 9)**

11          To state a misrepresentation claim under the fraudulent prong of the UCL, "'it is necessary

12   only to show that members of the public are likely to be deceived' by the business practice . . . at

13   issue." Kowalsky v. Hewlett-Packard Co., 771 F. Supp. 2d 1156, 1159 (N.D. Cal. 2011) (quoting

14   In re Tobacco II Cases, 46 Cal. 4th at 312).

15          Woods alleges Google made fraudulent representations that were "likely to deceive

16   advertisers into believing that Google would limit the distribution of ads to users located in the

17   geographic locations designated by advertisers." FAC ¶ 223. Specifically, the FAC alleges that

18   when Woods was creating his advertisements on September 30, 2009, Google's AdWords site

19   asked him, "In what geographical locations do you want your ads to appear?" FAC ¶ 216. The help

20   link adjacent to this statement explained that Woods could

21          "target [his] ads to almost any set of locations, including countries, territories,
22          regions, cities and custom areas. For example, [Woods] could target specific regions
             within the United States and a few large English-speaking cities in Europe. [Woods]
23          can view or edit [his] targeting options from the Settings tab for [his] campaign."

24   Id. By answering this question, Woods expected he was establishing as his advertising "Settings"

25   the "geographical locations" in which his ads would appear. Id. ¶¶205-07, 216-17; Ex. J. Moreover,

26   Woods alleges Google distributed ads to users beyond the geographic locations designated by

27   advertisers, and charged advertisers for clicks on their ads originating outside the designated

28

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

United States District Court
For the Northern District of California

1 | geographic locations. Id. ¶ 223. Google contends the FAC does not allege Google made any

2 | representations, guarantees, or other commitments that all of Woods' ads would appear within only

3 | certain areas of Arkansas. Mot. at 23:19-22.

4 | Here, Woods has identified the specific statements that he alleges are likely to deceive—the

5 | geographical location question and text of the adjacent help link. Google argues that the court

6 | cannot infer a misrepresentation from this question without further allegations about whether

7 | Woods also read other web pages that disclose the possibility of ads appearing to users in other

8 | locations. Mot. at 23:19-24:4. Google, however, has not presented these additional web pages to

9 | the court or cited any authority that Google's statements about location targeting options would not

10 | mislead a reasonable consumer. Moreover, California courts "have recognized that whether a

11 | business practice is deceptive will usually be a question of fact not appropriate for decision on [a

12 | motion to dismiss]." Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008). Thus,

13 | Woods has sufficiently pleaded a claim under the fraudulent prong of the UCL.

14 | Additionally, Google argues Woods did not establish standing for his UCL claim because

15 | he failed to plead any cognizable injury. Reply, Docket No. 76, at 14:24-15:13. To establish

16 | standing under the UCL, a plaintiff must show he personally lost money or property because of his

17 | own actual and reasonable reliance on the allegedly untrue or misleading statements. See In re

18 | Tobacco II Cases, 46 Cal. 4th at 326-28. According to the FAC, Google distributed over $20.00 of

19 | exemplary clicks that were in violation of Woods' Campaign Settings. FAC ¶¶ 209, 212. Had

20 | Woods known Google distributed ads to users beyond the chosen geographic locations, he would

21 | not have advertised with Google. Id. ¶ 219. This qualifies as a legally cognizable injury under the

22 | UCL. See Degelmann v. Advanced Med. Optics Inc., 659 F.3d 835, 838 (9th Cir. 2011) (finding

23 | that plaintiffs had standing to bring a UCL claim because they alleged that "[h]ad the product been

24 | labeled accurately, they would not have been willing to pay as much for it as they did, or would

25 | have refused to purchase the product altogether").

26 | Thus, Woods has pleaded facts sufficient to state a UCL claim. Google's motion to dismiss

27 | Count 9 therefore is DENIED.

28 |

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT

## IV.   ORDER

Based on the foregoing, Defendant's Motion to Dismiss the FAC is GRANTED WITH

LEAVE TO AMEND as to Counts 1 through 8. Their Motion to Dismiss is DENIED as to Count 9.

Any amended complaint must be filed no later than 30 days from the filing of this order.

IT IS HEREBY ORDERED

Dated:  Cwi wuv46. 4234

                                        _____

                                        EDWARD J. DAVILA
                                        United States District Judge

Case No. 5:11-cv-01263-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO DISMISS FIRST
AMENDED COMPLAINT