1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICK WOODS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No.: 5:11-CV-01263-EJD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** <br><br> **[Re: Docket No. 95]** |

Presently before the Court is Defendant Google Inc.'s ("Defendant" or "Google") Motion to Dismiss the Second Amended Complaint filed by Plaintiff Rick Woods ("Plaintiff" or "Woods") on behalf of himself and all others similarly situated. See Docket Item No. 95. The Court found this matter appropriate for determination without oral argument pursuant to Civil Local Rule 7–1(b), and therefore vacated the associated hearing. Having reviewed the parties' papers, the Court has determined that Defendant's Motion will be GRANTED IN PART AND DENIED IN PART.

I.      **Background**

The factual allegations described herein have been pleaded by Plaintiff in the Second Amended Complaint ("SAC").

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A. AdWords**

Plaintiff Woods is an individual who resides and practices law in Arkansas. SAC ¶ 26. Woods signed up for Defendant Google's advertising service, Google AdWords ("AdWords"), to find new clients for his law practice. Id. ¶¶ 7, 26. The causes of action in the SAC arise out of Woods' relationship with Google with regard to Woods' use of AdWords.

AdWords allows advertisers to display advertisements on google.com and other websites that belong to Google's "partners." Id. ¶ 1 & n.1. Essentially, the AdWords payment method is such that advertisers who use AdWords pay Google each time their ad is "clicked." Id.

**B. The Agreement**

Users of AdWords, including Woods, agree to accept the Google Inc. Advertising Program Terms ("the Agreement") which forms an agreement between the user and Google. Id. ¶ 2. The Agreement states that it "constitutes the entire and exclusive agreement between the parties with respect to the subject matter" thereof, and that "[n]o statements or promises have been relied upon in entering into this Agreement except as expressly set forth" and "any conflicting or additional terms contained in any other document . . . or oral discussions are void." Id. Ex. A § 9.

According to the Agreement, "[p]rogram use is subject to all applicable Google and Partner policies" and such policies "may be modified at any time." Id. Ex. A § 1. Under Section 2 of the Agreement, AdWords ads:

> may be placed on (y) any content or property provided by Google ("Google Property"), and, unless Customer opts out of such placement in the manner specified by Google, (z) any other content or property provided by a third party ("Partner") upon which Google places ads ("Partner Property"). Customer authorizes and consents to all such placements.

Id. Ex. A § 2. The Agreement also provides that "[t]o the fullest extent permitted by law, Google disclaims all guarantees regarding positioning, levels, quality, or timing of" clicks and the adjacency or placements of ads within a program. Id. Ex. A § 5.

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    Under the Payment Terms, the Agreement asserts "[c]harges are solely based on Google's

2  measurements for the applicable Program, unless otherwise agreed to in writing." [1] Id. Ex. A § 7

3  The "[c]ustomer's exclusive remedy, and Google's exclusive liability, for suspected invalid

4  impressions or clicks is for [c]ustomer to make a claim for a refund in the form of advertising

5  credits." Id. Ex. A § 5. Furthermore, "[t]o the fullest extent permitted by law, [c]ustomer waives all

6  claims relating to charges (including without limitation any claim for charges based on suspected

7  invalid clicks) unless claimed within 60 days after the charge." Id. Ex. A § 7.

8

9    **C.  Smart Pricing**

10    The AdWords help site promotes Smart Pricing, the site's "automatic pricing discount

11  feature." See id. ¶ 31 & Ex. B. This feature "automatically reduces the price advertisers pay for

12  clicks if [Google's] data shows that a click from a Display Network[2] page is less likely to result in

13  a conversion."[3] Id. Smart Pricing works as follows:

14    For Display Network clicks arising from websites and properties having conversion
15    scores[4] less than google.com, Google discounts the price of all such clicks. The
     total amount of the discount is equal to the price of that click multiplied by (1 minus
16    the conversion score for the website or property originating the click). The Smart
     Pricing formula is expressed as follows: Smart Pricing discount = Price of Click x
17    (1 –Conversion Score)[.]

18

19  [1] This clause is referred to as the Agreement's "measurements clause."
   [2] The SAC describes the "Display Network" as follows:
20
21    The "Google Network" consists of two components: the "Search Network" and the "Display
     Network." The Search Network consists of websites, like www.google.com or other search sites
     powered by Google, where users input search terms in a Google search box and ads appear alongside
22    the search results. In contrast, the Display Network consists of websites that partner with Google
     (like www.mapquest.com and www.nytimes.com), specific Google properties (like YouTube and
23    Gmail), and mobile apps. According to Google, Smart Pricing applies, at a minimum, to clicks on
     ads occurring on the Display Network. Additionally, according to Google, Smart Pricing applies to
24    ads that appear on mobile devices with full Internet browsers.

25  SAC ¶ 31 n.9.
   [3] A "conversion" is defined by Google as a click resulting in an actual business result (e.g., an online sale, registration,
26  phone call, or newsletter sign-up). Id. ¶ 32.
   [4] A "conversion score" is "Google's measurement of the likelihood that clicks from a particular website will result in a
27  business transaction. Id. ¶ 35 n.15.

28                                                    3

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Id. ¶ 37.

Woods alleges that Google overcharged him by not applying the Smart Pricing discount formula to approximately 60% of the Display Network clicks (471 clicks of 787 total clicks) his ads received during the seventeen months he used AdWords. Id. ¶ 8. Woods also alleges that Google deprived him of the Smart Pricing discount on these clicks because it made preferential secret deals with certain of its partners he deems as "Special Partners." Id.

Woods identifies specific clicks which he asserts were not Smart Priced. First, he alleges that Google failed to Smart Price at least six clicks from the reference.com website, which he asserts is operated by Google Special Partner IAC/InterActiveCorp ("IAC"). Id. ¶¶ 17, 39–42. The following table provided in the SAC summarizes this allegation:

| Date | IAC Site | Actual Charges to Woods | IAC Smart Pricing Discount (9.31%) | Amount Woods should have paid |
|---|---|---|---|---|
| 02/17/10 | Reference.com | $0.99 | $0.09 | $0.90 |
| 05/24/10 | Reference.com | $1.29 | $0.12 | $1.17 |
| 05/27/10 | Reference.com | $1.60 | $0.14 | $1.46 |
| 06/07/10 | Reference.com | $1.29 | $0.12 | $1.17 |
| 12/09/10 | Reference.com | $1.48 | $0.13 | $1.35 |
| 02/22/11 | Reference.com | $1.88 | $0.17 | $1.71 |

Id. ¶¶ 17, 42. Next, Woods alleges that he received 464 non-Smart Priced clicks from Display Network mobile apps from absenseformobileapps.com and nextmobileweb.com. Id. ¶¶ 18, 44–46. The following table, also provided in the SAC, summarizes this allegation:

| Time Period | No. of Clicks | Total Cost | Avg. CPC [cost per click] |
|---|---|---|---|
| 9/1/09 to 8/31/10 | 464 | $489.88 | $1.06 |
| 9/1/10 to 3/15/11 | 3 | $1.24 | $0.41 |
| **Total** | **467** | **$491.12** | |

4

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Id. ¶ 45. Finally, Woods alleges that Google failed to properly Smart Price a click originating from the website savysode.com (a Display Network property) that was accessed from a mobile device with a full Internet browser. Id. ¶¶ 19, 47.

Woods bases four causes of action in the SAC on Google's alleged failure to Smart Price: breach of contract (count 1); breach of the implied covenant of good faith and fair dealing (count 2); violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (count 3); and violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq. (count 4).

### D.  Location Targeting

During the sign-up and ad creation process Google provides AdWords users with the option to specify the geographic locations in which they want their ads to appear. Id. ¶ 114. Woods responded to this location question by selecting "Metro area: Ft. Smith-Fayetteville-Springdale-Rogers AR, US[.]" Id. ¶ 117. Woods states that he "reasonably expected that his ads would be shown only to users in Ft. Smith, Fayetteville, Springdale, and Rogers, Arkansas," id.¶ 118, and alleges that Google distributed his ads to users outside of his designated geographic location, id. ¶ 120. Woods claims that Google's statements and actions related to Location Targeting were fraudulent and in violation of the UCL (count 5 of the SAC).

### E.  Procedural History

Woods commenced the instant action on March 15, 2011. See Docket Item No. 1. Following an Order Granting Google's Motion to Dismiss with Leave to Amend issued August 10, 2011 ("8/10/2011 Order"), see Docket Item No. 64, Woods filed his First Amended Complaint ("FAC"), see Docket Item No. 73. The FAC asserted a total of nine causes of action: four counts

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1   were based on the allegations of Google's failure to Smart Price; four counts were based on

2   allegations regarding non-compliant sites;[5] and one count was related to Location Targeting.

3       On August 24, 2012, the Court issued an Order Granting in Part and Denying in Part

4   Google's Motion to Dismiss the FAC ("8/24/2012 Order"). See Docket Item No. 85. The

5   8/24/2012 Order dismissed with leave to amend the eight causes of action related to Smart Pricing

6   and non-compliant sites. The Order denied the Motion to Dismiss with respect to the ninth count,

7   which concerned Location Targeting.

8       On September 21, 2012, Woods filed the SAC. See Docket Item No. 87. Google filed the

9   Motion to Dismiss presently before the Court on October 22, 2012. See Docket Item No. 95.

10

11   **II.    Legal Standard**

12       Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

13   specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

14   rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A

15   complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

16   upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is

17   appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a

18   cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.

19   2008). Moreover, the factual allegations "must be enough to raise a right to relief above the

20   speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556–57.

21       When deciding whether to grant a motion to dismiss, the court generally "may not consider

22   any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

23   1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual

24   allegations." Ashcroft v. Iqbal, 556 U.S. 662 (2009). The court must also construe the alleged facts

25   in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.

26

27   ---
    [5] Woods did not reassert claims related to non-compliant sites in the SAC.

28
                                            6

United States District Court
For the Northern District of California

1988). "[M]aterial which is properly submitted as part of the complaint may be considered." Twombly, 550 U.S. at 555. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. Proc. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

**III.     Discussion**

    **A.  Count 1: Breach of Contract (Failure to Smart Price)**

Under California law, a claim for breach of contract requires "(1) existence of the contract; (2) plaintiff's performance or excuse of nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal.App.4th 1226, 1239 (2008).

In the 8/24/2012 Order, the Court dismissed the FAC's breach of contract claim related to Smart Pricing for two reasons. First, the Court concluded that Woods failed to sufficiently allege

7

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

that the "measurements clause" of the AdWords Agreement was "reasonably susceptible to Woods' interpretation that Smart Pricing applies to all clicks." See 8/24/2012 Order, at 9. Second, the Court found that Woods had not sufficiently alleged that Google failed to apply the Smart Pricing formula to clicks on his advertisements that were on the Display Network. Specifically, the Court noted that "even if the contract were interpreted to require Google to apply Smart Pricing to all Display Network clicks, Woods had not stated a claim for a breach of contract because he has not pleaded that any of the clicks that Google failed to Smart Price were from the Display Network."[6] Id. at 10.

Turning to the SAC, the Court finds that Woods has stated a claim for breach of contract due to Google's alleged failure to Smart Price. With regard to the issue of interpretation of the "measurements clause," the Court had already concluded that the "measurements clause" could be reasonably interpreted as requiring Google to base its charges for Display Network clicks at least in part on the Smart Pricing formula. See 8/24/2012 Order, at 8 ("The exhibits [to the FAC] . . . do support the interpretation that the contract language, '[c]harges are solely based on Google's measurements for the applicable Program,' means that Google must base the charges for Display Network clicks, at least in part, on the Smart Pricing formula."). In the SAC, Woods limits his claim to the allegation that Google failed to Smart Price clicks only on the Display Network. See, e.g., SAC ¶ 63 ("Google breached the Agreement by not applying Smart Pricing discounts to Display Network clicks charged to Woods and the Class."); id. ¶¶ 17–19 (alleging that Google

---

[6] The following passage from the 8/24/2012 Order explains the specific deficiencies in the FAC with regard to the failure to Smart Price breach of contract claim:

> Although Woods alleges that Google failed to Smart Price clicks on web sites operated by Google partner IAC (FAC ¶¶ 29–34, 41), he does not allege that IAC or the IAC web sites at issue are part of the Display Network. Woods alleges that Google failed to Smart Price clicks on web sites operated by Google partners Peeplo.com, Conduit, InfoSpace and Xacti (id. ¶ 42), but does not allege that these partners or the cited web sites are part of the Display Network. Woods alleges that Google failed to Smart Price "clicks from mobile devices" (id. ¶ 39), but does not allege that any such clicks "from mobile devices" were made on mobile devices with full Internet browsers, such that they would be on the Display Network (FAC ¶ 6 n. 6).

8/24/2012 Order, at 10.

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

breached the Agreement for failing to Smart Price clicks arising from Google Special Partners' websites in the Display Network, mobile apps in the Display Network, and Display Network clicks on mobile devices with full Internet browsers). As such and based on the reasonable interpretation of the Agreement that Smart Pricing would apply to Display Network clicks, Woods has sufficiently alleged that failure to do so would constitute a breach of the Agreement.

The Court finds that Woods has sufficiently alleged that in several instances Google failed to Smart Price clicks on the Display Network, thus constituting a breach of the Agreement. As noted, Woods enumerated in detail the Display Network clicks he alleges were not Smart Priced. The FAC states that between September 1, 2009 and August 31, 2010, Google failed to Smart Price over 460 Display Network clicks originating from mobile apps and Internet browsers within mobile devices. See SAC ¶¶ 18, 45 & Ex. K. Woods supports this assertion with statements made by a Google representative implying that Google had not been Smart Pricing Display Network clicks from mobile devices until the Third Quarter of 2010. See id. ¶ 44. The FAC also states that Google failed to Smart Price at least six Display Network clicks originating from IAC's reference.com website; such clicks would fall under the reasonable interpretation of the Agreement requiring Google to Smart Price such clicks as they originated from the Display Network. See id. ¶¶ 17, 39–42.

For these reasons, the Court finds that Woods has sufficiently alleged that Google failed to Smart Price several clicks from ads located on the Display Network. As such, Woods has stated a claim for breach of contract sufficient to withstand Google's motion.

**B. Count 2: Breach of the Implied Covenant of Good Faith and Fair Dealing (Failure to Smart Price)**

To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had

9

occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. <u>See</u> Judicial Counsel of California Civil Jury Instructions § 325 (2011); <u>see also</u> <u>Oculus Innovative Scis., Inc. v. Nofil Corp.</u>, No. C 06–01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007). A plaintiff must show "that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities." <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1395 (1990).

In the 8/10/2011 Order dismissing the original Complaint, the Court concluded that Woods' allegations that Google entered into secret agreements with its Special Partners to generate invalid clicks and failure to apply Smart Pricing would be sufficient at the pleading stage to suggest bad faith and therefore a violation of the implied covenant. <u>See</u> 8/10/2011 Order, at 10–11. However, as explained in that Order, the Court dismissed the claim for breach of the implied covenant because Woods failed to sufficiently allege that Google had an obligation to employ the Smart Pricing formula to such clicks. <u>Id.</u> at 11. Such deficiency has been rectified, as evinced by the Court's finding in the present Order that Woods has sufficiently pleaded a claim for breach of contract based on Google's obligation to Smart Price. As such, Woods has pleaded a cause of action for breach of the implied covenant of good faith and fair dealing.

### C.  Count 3: Violation of UCL (Failure to Smart Price)

In his third cause of action Woods alleges that Google's failure to Smart Price has amounted to fraudulent, unfair, and unlawful business practices in violation of the UCL. <u>See</u> Cal. Bus. & Prof. Code § 17200; <u>see also</u> <u>Cel-Tech Commc'ns, Inc. v Los Angeles Cellular Tel. Co.</u>, 20 Cal.4th 163, 180 (1999). Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. <u>See Pastoria v. Nationwide Ins.</u>, 112 Cal. App. 4th 1490, 1496 (2003). Woods appears to contend that Google's conduct has violated all three prongs.

10

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

### 1.  Fraudulent Conduct

Woods argues that Google's conduct constitutes fraudulent business practices in that Google made statements and representations which "deceived him into believing that Google would apply Smart Pricing to all clicks from the Display Network." Pl.'s Opp'n to Def.'s Mot. to Dismiss the SAC, at 16; see also SAC ¶¶ 85–86. Specifically, Woods contends that these representations were made on Google's AdWords help webpage (see SAC Ex. B), in an online presentation about Smart Pricing that appeared on Google's website (see id. Ex. F), as well as in the "measurements clause" in the Agreement (see id. Ex. A).

Google brings forth two arguments as to why Woods' claim for violation of the UCL's fraudulent prong fails. First, Google contends that Woods' lacks standing because he could not have reasonably relied on statements outside the AdWords Agreement. See Def.'s Mot. to Dismiss the SAC, at 16. Second, Google argues that Woods has failed to plead the alleged misrepresentation with particularity, thus falling short of the heightened pleading standards for allegations of fraud or misrepresentation as set forth in Federal Rule of Civil Procedure 9.

In addition to showing a loss of money or property—which Woods has done—to establish standing under the UCL, a plaintiff must show an actual and reasonable reliance on the allegedly untrue or misleading statements. See In re Tobacco II Cases, 46 Cal.4th 298, 326–28, (2009). Reasonableness of reliance is ordinarily a question of fact. Guido v. Koopman, 1 Cal. App. 4th 837, 843 (1991). However, under California law, "whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." Id.; see also In re Facebook PPC Advertising Litig., Nos. 5:09–cv–03043-JF, 5:09–cv–03519-JF, 5:09–cv–03430-JF, 2010 WL 5174021, at *6 (N.D. Cal. Dec. 15, 2010) (holding that contractual disclaimers regarding advertising on that web property were unambiguous, and therefore that "Plaintiffs must show [at the pleadings stage] that they were reasonable in relying on the representations in the Help Center even in light of these disclaimers.").

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1    In the 8/24/2012 Order, the Court found that "Woods' reliance upon Google's Smart

2    Pricing statements . . . may have been justified because these statements were used to interpret an

3    ambiguous clause in the Agreement." 8/24/2012 Order, at 14. The Court found that the deficiency

4    in Woods' attempt to establish UCL standing related to the lack of a sufficient allegation that

5    Google had failed to apply the Smart Pricing formula to clicks from Display Network pages. Id. at

6    14–15. As noted, the Court has found that this deficiency has been rectified in the SAC: Woods has

7    sufficiently pleaded Google's failure to Smart Price. Accordingly, Woods has standing to proceed

8    with his claims under the fraudulent prong of the UCL.

9    The Court also rejects Google's argument that Woods has not sufficiently pleaded his claim

10   with particularity pursuant to Rule 9. As noted, Woods identifies particular and specific statements

11   made by Google and its representatives, which he alleges were false or deceptive:

12   - "AdWords includes two automatic pricing discount features: Smart Pricing – a feature

13     that automatically reduces the price advertisers pay for clicks if our data shows that a

14     click from a Display Network page is less likely to result in a conversion."

15   - "There are two ways Google automatically reduces your costs: the AdWords Discounter

16     and Smart Pricing."

17   - "'Smart Pricing' works all the time to adjust your bids when you advertise keyword

18     targeted ads on the Google Network. You set your CPC bid, and if your click is less

19     likely to turn into a conversion, such as a sale or signup, Google automatically reduces

20     your bid for that page."

21   - "Using smart pricing, AdWords automatically adjusts the cost of clicks for keyword

22     targeted ads that appear on content network pages. While you set one CPC bid, if our

23     data shows that a click from a content page is less likely to turn into actionable business

24     results—such as online sales, registrations, phone calls, or newsletter signups—we

25     reduce that price you pay for that click."

26

27

28

12

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS

- "Smart pricing adjustments are automatically reflected in the Average CPC column in your account."

- By charging you less per click, Smart Pricing helps "you maximize your value."

- "Less likely to convert … Google reduces price."

- "Google keeps your costs down with … Smart Pricing."

Id. ¶ 85 (quoting id. Exs. B, F). Woods has attached the statements themselves as exhibits to the SAC. See, e.g., id. Exs. B, F.  He also alleges that these statements constitute misrepresentations in that Google did not apply the Smart Pricing formula on several clicks on Woods' advertisements originating from pages in the Display Network. Accordingly, the Court finds that Woods has pleaded his claims of misrepresentation so as to give Google "notice of the particular misconduct which is alleged to constitute the fraud" in satisfaction of the Rule 9 heightened pleading requirements. See Semegen, 780 F.2d at 731.

### 2.   Unfair Business Practices

Under the test for "unfair" business practices, "[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." Tietsworth v. Sears, Roebuck & Co., No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist. LEXIS 98532, at *23, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) (quoting Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 839 (2006)). Here, Woods claims that Google's fraudulent conduct and breaches of the Agreement and the implied covenant constitute unfair business practices as contemplated by the UCL. SAC ¶¶ 96–97. He alleges that these practices have caused unavoidable injury to Woods and other AdWords users and offered no countervailing benefit to consumers or competition. Id. Accordingly, Woods has sufficiently pleaded a violation of the UCL's "unfair" prong.

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

### 3.   Unlawful Business Practices

"By proscribing 'any unlawful' business practice, [the UCL] 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cel–Tech Commc'ns, Inc., 20 Cal.4th at 180 (1999). Here, Woods claims that Google's breaches of the Agreement and the implied covenant of good faith and fair dealing constitute unlawful conduct in violation of the UCL. See SAC ¶¶ 98–99.  He has not, however, identified a statute independent of the UCL which he claims that Google has violated so as to underlie his "unlawful" UCL claim. Accordingly, Woods has not sufficiently pleaded a violation of the UCL's "unlawful" prong.

### D.   Count 4: Violation of FAL (Failure to Smart Price)

The FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" in connection with the sale of "real or personal property" or "services." Cal. Bus. & Prof. Code § 17500.  The statute generally prohibits false statements in advertising. See Kwikset Corp. v. Superior Court., 52 Cal. 4th 310, 320 (2011) ("The state's false advertising law . . . is equally comprehensive within the narrower field of false and misleading advertising."). As stated above, the Court has found that Woods has sufficiently pleaded that particular statements made on Google's AdWords help webpage (see SAC Ex. B), in an online presentation about Smart Pricing that appeared on Google's website (see id. Ex. F), and in the "measurements clause" in the Agreement (see id. Ex. A) constituted misrepresentation. Woods has also alleged that Google failed to apply the Smart Pricing formula despite representing that it would. Accordingly, the Amended Complaint contains allegations that these statements were untrue or misleading so as to sufficiently state a claim for violation of the FAL.

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**E.  Count 5: Violation of UCL (Location Targeting)**

Finally, Google moves to dismiss Woods' UCL claim based on Google's conduct with regard to Location Targeting. In the 8/10/2011 Order, the Court found that this claim was sufficiently pleaded in the FAC. Because the SAC reasserts this claim without modification, see SAC ¶ 12, the Court again denies Google's motion to dismiss Woods' Location Targeting–based UCL claim.

**IV.    Conclusion and Order**

Based on the foregoing, Google's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. The cause of action under the UCL is DISMISSED WITHOUT LEAVE TO AMEND only with regard to the UCL's "unlawful" prong. The motion is DENIED in all other aspects.

The Court schedules this action for a Case Management Conference on **May 17, 2013, at 10:00 a.m.** The parties shall file a Joint Case Management Statement on or before **May 10, 2013.**

**IT IS SO ORDERED.**

Dated:  April 9, 2013



EDWARD J. DAVILA
United States District Judge

Case No.: 5:11-CV-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS