| | |
|---|---|
| **KESSLER TOPAZ**<br>**MELTZER & CHECK, LLP**<br>Ramzi Abadou (Bar No. 222567)<br>Stacey M. Kaplan (Bar No. 241989)<br>One Sansome Street, Suite 1850<br>San Francisco, CA 94104<br>Telephone: (415) 400-3000<br>Facsimile: (415) 400-3001<br><br>-and-<br><br>Sean M. Handler (*Pro Hac Vice*)<br>Joseph H. Meltzer (*Pro Hac Vice*)<br>Naumon A. Amjed (*Pro Hac Vice*)<br>Ryan T. Degnan (*Pro Hac Vice*)<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Telephone: (610) 667-7706<br>Facsimile: (610) 667-7056<br><br>*Interim Co-Class Counsel* | **NIX, PATTERSON & ROACH, LLP**<br>Jeffrey J. Angelovich (*Pro Hac Vice*)<br>Brad E. Seidel (*Pro Hac Vice*)<br>Andrew G. Pate (*Pro Hac Vice*)<br>Chad E. Ihrig (*Pro Hac Vice*)<br>3600 N. Capital of Texas Highway<br>Building B, Suite 350<br>Austin, TX 78746<br>Telephone: (512) 328-5333<br>Facsimile: (512) 328-5335 |

**MAYER BROWN LLP**
Edward D. Johnson (SBN189475)
wjohnson@mayerbrown.com
Donald M. Falk (SBN150256)
dfalk@mayerbrown.com
Eric B. Evans (SBN 232476)
eevans@mayerbrown.com
Jonathan A. Helfgott (SBN 278969)
jhelfgott@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

*Attorneys for Defendant Google Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| RICK WOODS, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>  v.<br><br>GOOGLE INC.,<br><br>          Defendant. | Case No. 5:11-cv-1263-EJD<br><br>**DISCOVERY DISPUTE JOINT REPORT # 2** |

The parties, by and through undersigned counsel, submit this Discovery Dispute Joint Report # 2 ("Joint Report") under this Court's Standing Order Re: Civil Discovery Disputes.

Issue: Whether the appropriate relevant time period applying to Plaintiff's discovery requests related to his "Smart Pricing" allegations is April 1, 2004 to the present, and whether Defendant's duty to supplement its discovery responses under Rule 26(e) terminates on the fact discovery cutoff date.

Joint Meeting Information: After several hours of teleconferences and multiple exchanges of correspondence, counsel for the parties met in person to discuss numerous discovery issues on July 10, 2013 in Palo Alto, California at the offices of Defendant's counsel for approximately three and a half hours. On July 11, Plaintiff informed Defendant if it did not have responses on the issues identified above by July 16, the parties would be at an impasse. On July 17, having received no response, Plaintiff informed Defendant they were at an impasse regarding the issues above and requested Defendant prepare its sections of this Joint Report. On July 18, Defendant provided a written response, which did not resolve the issues. The parties remain at an impasse.

Relevant Dates: Plaintiff served his Second Requests for Production of Documents on May 6, 2013. Defendant served its Objections and Responses on June 10, 2013. The fact discovery cutoff date is October 31, 2014.

Attestations:

I, Brad E. Seidel, Lead Counsel for Plaintiff, attest that I have complied with Magistrate Judge Lloyd's Standing Order Re: Civil Discovery Disputes.

*/s/ Brad E. Seidel*

I, Edward D. Johnson, Lead Counsel for Defendant, attest that I have complied with Magistrate Judge Lloyd's Standing Order Re: Civil Discovery Disputes.

(attestation withheld)

## I. PLAINTIFF'S POSITION

This dispute relates to the "Relevant Period" that should apply to a portion of Plaintiff's Second Requests for Production ("Second Requests"), particularly those requests for documents related to Plaintiff's "Smart Pricing" claims (the "Smart Pricing Requests").[1] Plaintiff, an advertiser, alleges UCL and contract claims against Defendant for breaching its obligation to "Smart Price" certain categories of clicks on his online ads, which should have resulted in discounts based on the Smart Pricing formula. *See* Complaint, ¶32.[2] Contrary to this obligation, Defendant did not Smart Price certain clicks as represented, and, therefore, overcharged Plaintiff and the putative class. *See* Complaint, ¶49. Moreover, this wrongful conduct continues today. *See* Complaint, ¶146 (alleging class period for the harm as April 1, 2004 to "the day the Court certifies this action as a class action").

Based on the continuing misconduct alleged, the Second Requests define the "Relevant Period" for Defendant's responses as "April 1, 2004 to the present." *See* Exhibit A, Relevant Period (p. 11).[3] Defendant objected to the Relevant Period proposed by Plaintiff as "overbroad as to time, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." *See* Exhibit A, Gen. Obj. 32. During the meet and confer process, Plaintiff explained his position that, based on Defendant's duty to timely supplement its discovery responses under Rule 26(e) and the fact that Defendant's wrongdoing is ongoing, the Relevant Period for the Second Requests continues until the date of trial (or until the misconduct ceases). While Defendant agrees the Relevant Period should begin on April 1, 2004, it has consistently proposed an arbitrary date to end the Relevant Period. Defendant first proposed the Relevant Period should end on January 1, 2012 and later suggested July 1, 2012,[4] but provided no factual basis for either date related to the claims or defenses at issue. As such, the parties

---

[1] The Smart Pricing Requests are Second Requests Nos. 3–33. *See* Exhibit A, RFP 3–33.
[2] References to the "Complaint" are to Plaintiff's Second Amended Class Action Complaint, Dkt. No. 87.
[3] Exhibit A, attached hereto, is a true and correct copy of Plaintiff's Second Requests and Defendant's Objections and Responses.
[4] Defendant's responses state it "will limit its responses to the time period of April 1, 2004 to April 9, 2013," but during the parties' conferences, Defendant stated the "April 9, 2013" date in its discovery responses was an error, and the date should have read January 1, 2012.

3

disagree as to when the Relevant Period should end for purposes of the Second Requests. Secondary to this issue is whether Defendant's duty to timely supplement its discovery responses ceases at the close of fact discovery or continues through and including the time of trial. Defendant takes the untenable position that its duty to supplement prematurely terminates at the conclusion of fact discovery.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Zamora v. D'Arrigo Bros. Co.*, 2007 U.S. Dist. LEXIS 21418, at *2–4 (N.D. Cal. Mar. 15, 2007) (overruling Defendant's objection to proposed time period for Plaintiff's discovery requests; information sought was potentially relevant to claims).

   *a. Defendant Cannot Satisfy Its Burden of Arbitrarily Shortening the Relevant Period*

Defendant proposes a completely arbitrary cutoff date for the Smart Pricing Relevant Period of January 1, 2012 or July 1, 2012. "A party resisting discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *In re Toyota Motor Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 124438, at *34 (C.D. Cal. Mar. 9, 2012) (citations omitted). "As the Supreme Court has held, relevancy is defined to include both directly relevant material and material likely to lead to the discovery of admissible evidence. Discovery is not to be arbitrarily limited because it is intended to help clarify the issues. Thus, for purposes of discovery, relevancy is to be interpreted 'very broadly.'" *In re Seagate Tech. II Sec. Litig.*, 1993 U.S. Dist. LEXIS 18065, at *2–3 (N.D. Cal. June 10, 1993) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (rejecting defendant's proposal for an "artificial" and "arbitrary" relevant period for discovery which would "avoid the production of relevant documents")). Defendant has offered no explanation related to the facts of this case for why the Relevant Period for the Smart Pricing Requests should end on either January 1, 2012 or July 1, 2012. Unlike Plaintiff's other claims, for which the parties agreed to limit the Relevant Period based on Defendant's removal of the actionable misrepresentations from its website, Defendant's proposed limitation for the Smart Pricing Requests is arbitrary and

4

ignores the scope of discovery afforded under the Federal Rules. Defendant has wholly failed to meet its burden of demonstrating why discovery should not be allowed and cannot articulate any "undue burden" in complying with Plaintiff's proposed Relevant Period beyond mere conclusory statements.[5] Having failed to carry its burden, Defendant's objections should be overruled.

> b. *Plaintiff's Proposed Relevant Period Is Not Overbroad and Seeks Relevant Documents*

Defendant cannot carry its burden to justify its objections to the Relevant Period because the misconduct at issue has not ended and continues to harm the Class. As previously recognized twice by the Court, the contract at issue is reasonably interpreted to require Smart Pricing based on Defendant's obligation to apply its 'measurements' to calculate click charges.[6] This obligation exists under Defendant's current terms and conditions, which contain the same language.[7] Similarly, Plaintiff's UCL and FAL Smart Pricing claims are based on representations and omissions Defendant continues to make today.[8] Nothing has materially changed regarding Defendant's contractual obligations or representations related to Smart Pricing, and Defendant continues to breach those obligations.

As such, discovery related to Defendant's Smart Pricing conduct up to the date of trial is required to prove Defendant, *inter alia*: (1) continues its misrepresentations and omissions directed at putative class members regarding aspects of Smart Pricing; and (2) continues to deny putative class members the promised and represented Smart Pricing discounts (and the amount of such harm). Defendant's arbitrary cutoff date would prevent Plaintiff from obtaining proof of harm for any class members overcharged for clicks after Defendant's proposed cutoff date. For these reasons, Plaintiff's proposed Relevant Period for his Smart Pricing Requests is not

---

[5] Apparently, no undue burden exists, as Defendant has already produced numerous documents, for which the metadata indicates a document date after July 1, 2012, including some dated as recently as February 2013.
[6] *See* Order Granting in Part and Denying in Part Def's Motion to Dismiss, Dkt. No. 122 at 8; *see also* Dkt. No. 85 at 8.
[7] The most up-to-date version of the AdWords Terms & Conditions is available at: https://adwords.google.com/select/tsandcsfinder.
[8] *See, e.g.,* http://www.google.com/ads/displaynetwork/manage-your-ads/manage-costs.html#tab=money-saving-technology ("Google's Smart Pricing system analyzes and lowers your cost for Display Network clicks that are less likely to convert for you"); and https://support.google.com/adwords/answer/93148?hl=en ("Smart Pricing uses conversion data to help determine if Search and Display Network partner sites are likely to convert at different rates and discounts advertiser bids accordingly."); *cf.* Complaint, ¶85.

overbroad and is reasonably calculated to lead to the discovery of admissible evidence.

### c. Defendant Must Supplement Discovery Responses Beyond the Discovery Cutoff Date

During the parties' in-person meeting, Defendant objected to its obligation under Rule 26(e) to continue producing responsive documents located after the close of fact discovery. Under Rule 26(e), "A party who has . . . responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e); *see also Huynh v. J.P. Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 54714, at *75–76 (D. Ariz. July 17, 2008) (holding party had a duty to disclose document she attempted to rely on even if "it was 'impossible' to produce the document during discovery because it was not created until after the close of discovery"). Rule 26(e) is "broad enough to require supplemental disclosure under certain circumstances, regardless of whether discovery has closed." *Huynh*, 2008 U.S. Dist. LEXIS 54714, at *76 (citations omitted). Thus, a "continuing duty to supplement" is "consistent with the spirit behind the discovery rules." *Id.*, at *75–76 (holding party's argument "that she had no duty to supplement after the close of discovery is somewhat disingenuous"). After the close of fact discovery, Plaintiff will have no feasible means to determine whether Defendant is properly supplementing its responses. Thus, the Court should overrule Defendant's objection to its ongoing duty to supplement its discovery responses after the close of fact discovery.

### d. Plaintiff's Conclusion and Most Reasonable Proposal

Because the alleged misconduct concerning Smart Pricing is ongoing and continues to harm the putative class, the Court should overrule Defendant's objections and compel Defendant to produce documents responsive to the Smart Pricing Requests for the Relevant Period April 1, 2004 to the present, which, due to the ongoing harm and Defendant's duty to supplement, means through the date of trial. Additionally, the Court should overrule Defendant's recently asserted objection regarding its duty to supplement discovery responses after fact discovery closes and compel supplementation if Defendant discovers a response is incomplete or incorrect in a material respect based on information created or uncovered after the close of discovery.

6

Furthermore, the parties have had significant, ongoing discovery disputes as evidenced by this Joint Report and DDJR #1. Plaintiff repeatedly attempted to confer with Defendant regarding the issues contained in both this Joint Report and DDJR #1. After several months of telephonic conferences and correspondence, Plaintiff sent a detailed and comprehensive letter on June 24, 2013 regarding, *inter alia*, the issues raised in this Joint Report and DDJR #1. Despite indicating it would respond "as soon as possible," Defendant never provided a response to Plaintiff's June 24 letter. Plaintiff's lead counsel then traveled from Texas to Palo Alto to discuss the pending discovery issues. At the meeting, and in a letter the following day, Plaintiff requested confirmation of Defendant's position regarding the issues contained within this Joint Report and DDJR #1 by July 16, 2013. Defendant chose, once again, not to respond.

Defendant has unnecessarily drawn out discovery disputes for months while claiming it is "looking into" or "running issues to ground," when it unfortunately appears Defendant was merely trying to prejudicially delay the "impasse" element of this Court's Standing Order. *See, e.g.*, DDJR#1, §I(a)(i-ii).[9] Then, on the eve of filing this DDJR, Defendant suggests the seven-month meet and confer process has not concluded and accused Plaintiff of "ambush filing" the DDJRs despite numerous letters notifying Defendant of the impasse and need to timely prepare DDJRs. Tellingly, Defendant has not materially changed any of its positions on the requested discovery. Whether in good or bad faith, the delay caused by Defendant has only benefited Defendant as Plaintiff remains without much of the discovery it properly requested, even after numerous exhaustive letters, calls, and an in-person meeting. Because of Defendant's systematic conduct (including even disputing the DDJR filing procedures), Plaintiff understandably anticipates additional discovery disputes and, therefore, requests the Court suspend Plaintiff's meet and confer obligations under its Standing Order or, alternatively, appoint a Special Master to serve as a neutral decision maker regarding such future disputes.

---

[9] Defendant's conduct thus far in discovery, particularly its systematic delays in producing click data, is strikingly similar to the conduct described by the plaintiffs in *In re Google AdWords Litigation,* No. 08-03369 (N.D. Cal.). *See* Dkt. No. 112 at 6-8; Dkt. No. 125.

7

*e. Defendant Failed to Provide Statements for Inclusion in This Joint Report*

Despite numerous requests, Defendant has not provided a statement regarding its position on the issues described above and, therefore, Plaintiff leaves such section blank below. The parties reached an impasse on the issues in this Joint Report on July 17 after Defendant failed to provide the requested discovery. Plaintiff thereupon advised Defendant the parties were at an impasse and recommended Defendant begin preparing its section of the required DDJR for filing within five business days, as required by this Court's Standing Order. Instead of preparing its portion of this Joint Report, Defendant continued to delay the process by demanding to see Plaintiff's portions of the Joint Report before drafting its own. Plaintiff advised Defendant this approach appears inconsistent with this Court's Standing Order, which does not appear to require such a procedure, and would prevent the parties from meeting the five-day deadline. Moreover, Plaintiff was preparing its portion of the Joint Report up to the time of filing. Plaintiff repeatedly advised Defendant of the precise issues to be addressed by this Joint Report so that Defendant could timely prepare its sections. As such, both parties were well aware of the issues and each other's respective positions, having engaged in a seven month meet and confer process. Plaintiff repeatedly advised Defendant that it interprets this Court's order to require filing of this Joint Report within five days of the date an impasse occurs, which was July 17. Plaintiff also advised Defendant it would not be prejudiced by Defendant's delay in preparing its sections, and intended to timely file this Joint Report. As of the time of filing this DDJR, Defendant has still not provided its section addressing these issues.

**II. DEFENDANT'S POSITION**

Respectfully submitted.

Dated: July 24, 2013                              MAYER BROWN LLP

                                                  By:  (signature withheld)
                                                       EDWARD D. JOHNSON
                                                       DONALD M. FALK
                                                       ERIC B. EVANS
                                                       JONATHAN A. HELFGOTT

*Attorneys for Defendant Google Inc.*

NIX, PATTERSON & ROACH, LLP
By: */s/ Brad E. Seidel*
   Brad E. Seidel

*Interim Co-Lead Class Counsel*

I attest that Edward D. Johnson did not provide his concurrence in the filing of this document for Defendant, and Counsel for Plaintiff files this document solely on Plaintiff's behalf. Furthermore, Mr. Johnson did not provide Defendant's statement for inclusion within this Joint Report.

By: */s/ Brad E. Seidel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 24, 2013.

/s/ *Brad E. Seidel*