*E-FILED: July 26, 2013*

1 **MAYER BROWN LLP**
Edward D. Johnson (SBN 189475)
2 wjohnson@mayerbrown.com
Eric B. Evans (SBN 232476)
3 eevans@mayerbrown.com
Jonathan A. Helfgott (SBN 278969)
4 jhelfgott@mayerbrown.com
Two Palo Alto Square, Suite 300
5 3000 El Camino Real
Palo Alto, CA 94306-2112
6 Telephone: (650) 331-2000
Facsimile: (650) 331-2060
7
*Attorneys for Defendant Google Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| RICKS WOODS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No. 11-cv-1263-EJD (HRL)<br><br>**[STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION** |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **LIAISON**

(a) The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

(b) Google appoints Eric B. Evans, a partner at Mayer Brown LLP, as its e-discovery liaison.

(c) Plaintiff appoints Brad Seidel as his e-discovery liaison.

4. **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a) Subject to Google's assertion of the attorney-client privilege and work-product doctrine, the parties have discussed the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." Specifically, in Section 7(b) below, Defendant has

1

informed Plaintiff that it has produced, or will produce, information from the following information sources and custodians during its first phase of production: the "TRAX" customer relationship management database, Google's internal and external web documentation of Location Targeting, Plaintiff's AdWords account information, custodial information from Smita Hashim, Aileen Tang, and Derek Coatney. Ms. Hashim, Ms. Tang, and Mr. Coatney are all Product Managers. Defendant is preserving information from at least these information sources and custodians. The parties shall add or remove custodians as reasonably necessary;

(b) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced, unless otherwise ordered by the Court upon a motion of a party:

1. backup systems and/or tapes used for disaster recovery;
2. systems no longer in use that cannot be accessed;

(c) Among the sources of data the parties agree are not reasonably accessible, based on the mutual representation of the parties' counsel, the parties agree not to preserve the following:

1. voicemail messages;
2. information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;
3. automatically saved versions of documents and emails;
4. deleted, slack, fragmented, or other data only accessible by forensics;
5. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
6. dynamic fields of databases or log files that are not retained in the usual course of business; and

7. information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

(d) The parties have not yet identified other sources of electronically stored information that (a) could contain relevant information but (b) under the proportionality factors, should not be preserved but reserve the right to identify such sources, should they be found.

**5. SEARCH**

(a) The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

(b) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

(c) No provision of this Order affects any inspection of source code that is responsive to a discovery request consistent with the protective order governing this case.

(d) Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

**6. PRODUCTION FORMATS**

(a) The parties agree to produce documents in a format described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

-3-

The parties agree not to degrade the searchability of documents as part of the document production process.

**7.  PHASING**

(a) When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI.

(b) Defendant's initial production will be from the following sources and custodians: the "TRAX" customer relationship management database, Google's internal and external web documentation of Location Targeting, Plaintiff's AdWords account information, custodial information from Smita Hashim, Aileen Tang, and Derek Coatney.  Ms. Hashim, Ms. Tang, and Mr. Coatney are all Product Managers.

(c) Plaintiff's initial production will be from the following sources and custodians: Plaintiff's hard copy files and personal computer.

(d) Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**8.  NON-WAIVER OF PRIVILEGE**

(a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

(b) When a party gives notice to the other party that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the party receiving notice are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

(c) Nothing in this Order alters the ethical obligations of any party in the event that any other party identifies discovery material that may be subject to a claim of

-4-

protection under the attorney-client privilege, work-product doctrine, or any other privilege or immunity.

**9.    MODIFICATION**

(a)    This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," in the case of the first such order, for example, and will supersede this Stipulated Order.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: March 27, 2013         Brad E. Seidel
                                              Counsel for Plaintiff

Dated: March 27, 2013         Eric B. Evans
                                              Counsel for Defendant

*The filer attests that concurrence in the filing of this document has been obtained from Mr. Brad E. Seidel for Plaintiff.*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: 7/26/13

UNITED STATES ~~DISTRICT~~/MAGISTRATE JUDGE
HOWARD R. LLOYD

## APPENDIX 1: PRODUCTION FORMAT AND METADATA

1. **Metadata Fields and Metadata File.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for that document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGDOC, (b) ENDDOC, (c) BEGATTACH, (d) ENDATTACH, (e) CASENAME, (f) PARTYNAME, (g) PRODNUMBER, (h) PRODDATE, (i) PRODVOL, (j) CONFIDENTIALITY, (k) CUSTODIAN, (l) DEDUPED_CUSTODIAN, (m) NATIVEFILE, (n) NATIVEFILEPATH, (o) TEXTFILEPATH, and (p) PAGECOUNT, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct. The metadata file must be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII: 174)

| Field Name | Field Description |
|---|---|
| BEGDOC | Beginning Bates number as stamped on the production image |
| ENDDOC | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CASENAME | Name of this case |
| PARTYNAME | Name of producing party |
| PRODNUMBER | Sequential number of production |

| Field Name | Field Description |
|---|---|
| PRODDATE | Date of production |
| PRODVOL | Production volume name |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| CUSTODIAN | Individual from whom the documents originated |
| DEDUPED_CUSTODIAN | Individual(s) whose documents de-duplicated out; only relevant for global de-duplication. |
| FILENAME | Filename of an electronic document (Edoc only) |
| DOCTYPE | Type of document |
| NATIVEFILE | "Yes" for Edoc produced in its native file format |
| LANGUAGE | Primary language of document |
| DOCEXT` | File extension associated with document (if any) |
| FILESIZE | File size, in bytes |
| FULLPATH | The directory structure of the original file(s). Any container name is included in the path. (Filer data only) |
| TITLE | Any value populated in the Title field of the document properties (Edoc only) |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc only) |
| SUBJECT | Any value populated in the Subject field of the document properties (Edoc only) |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc only) |
| TIMECREATED | Timestamp when document was created (Edoc only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (Edoc only) |
| HASHVALUE | MD5 hash value of document |
| PARENTID | BEGBATES of parent document (Edoc attachments only) |
| HASATTACH | "Yes" for parent Edocs |
| ATTACHCOUNT | Number of attachments to parent document (Edoc parents only) |
| ATTACHID | BEGBATES of child items in family group of attachment Edocs |

| Field Name | Field Description |
|---|---|
| ATTACHNAMES | Names of attachments to parent Edocs |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| EMAILSUBJECT | Subject of email |
| DATRECEIVED | Date email was received (format: MM/DD/YYYY) |
| TIMERECEIVED | Time email was received |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent |
| HEADER | Header information (if any) |
| MESSAGEID | Value of MessageID field |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| PAGECOUNT | Number of TIFF pages in document |

2. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except for audio, video, and multi-media files and spreadsheets and databases as provided below. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding bates number associated with the document. Each image shall be branded according to the bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where

the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

3. **Native files.** Spreadsheets (e.g. MS Excel) will be produced in native format unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR Text Files. Web pages that do not include redactions that will be included in future Google production volumes will be converted to searchable .pdf format and produced in that format (with links preserved), along with TIFF images and OCR Text Files. Web pages in Google production volumes that have already been produced will be produced in color .pdf format, without hyperlinks, along with TIFF images and OCR Text Files. Web pages that include redactions will be produced as TIFF images with OCR Text Files. Google will have no obligation to reprocess any web page that it has already collected, specifically, production volumes PROD001 through PROD004. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 1 above. For each native file produced, a Bates numbered TIFF placeholder indicating that the document was provided only in native format must accompany the native file. The parties will make reasonable efforts to ensure that any native files that are produced only as TIFF images are formatted so as to be readable and so as to not degrade the image quality of the original.

4. **Databases.** The parties will produce Microsoft Access files and other database files in native format with associated metadata as detailed in Paragraph 1 above. Extracted text for these file types need not be

-9-

produced. Alternatively, for selected databases, the Parties may determine that all relevant information would be best provided by querying the databases for discoverable information and generating reports in a reasonably usable and exportable electronic file (for example, Excel, MDB, CSV or SQL format). If such a format is agreed upon to process a database, the producing party will provide a description of the information contained in the fields of each such reasonably usable and exportable electronic file produced. For each database file or report produced, a Bates numbered TIFF placeholder indicating that the file was provided only in native format must accompany the native file.

5. **Text Files.** A text file shall be provided as a single text file for each document, and the filename itself should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

6. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file. Each data load file shall conform to the following requirements:

   o  Is a Concordance ready load file;

- o Is UTF-8 encoded;
- o Contains a separate record, on a separate line, for every document in the production;
- o Includes a file path to the associated text and native files for each document;
- o Includes all required metadata for each document;
- o Contains a field header with the delimited metadata field names in the order.
- o Does not include escape characters, tabs, carriage return/line feed combinations, embedded separators, or embedded carriage returns in any delimited metadata fields; and
- o Terminates each record, including the last record, with a carriage return or carriage return/line feed pair.

Each image load file shall conform to the following requirements:

- o Is Opticon (OPT) formatted;
- o Is UTF-8 encoded;
- o Production Numbers in the OPT load file must match the corresponding documents' beginning bates numbers in the data load file;
- o Contains a separate record, on a separate line, for every image file in the production;
- o Does not include escape characters, tabs, carriage return/line feed combinations, embedded separators, or embedded carriage returns in any comma delimited fields; and
- o Terminates each record, including the last record, with a carriage return or carriage return/line feed pair.

Load files shall not vary in format or structure within a production, or from one production to another.

-11-

| | | |
|---|---|---|
| 1 | 7. | **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. Image file names and Bates numbers must meet the following requirements: (i) have a consistent format within and between productions, including a consistent number of characters; (ii) have the same number of numerals to prevent issues with image display and use leading zeros where necessary to achieve this; (iii) not use a space or special characters to separate the prefix from numbers; and (iv) be sequential within a given document. |
| | 8. | **Presentations.** The parties shall process presentations (e.g. MS PowerPoint) with hidden slides and speaker's notes unhidden, and show both the slide and the speaker's notes on the TIFF image. |
| | 9. | **Word Processing Documents**. The parties shall process word processing documents (e.g., MS Word) with tracked changes and comments unhidden and shown on the TIFF image. |
| | 10. | **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the originally, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therewith. |
| | 11. | **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file. As required by the Stipulated Protective Order for Litigation Involving Highly Sensitive Confidential Information and/or Trade Secrets (Modified by the Court) entered on December 12, 2012 (Dkt. No. 103), "in all load files relating to |

|     |     |
| --- | --- |
| 1   | Disclosures or Discovery Materials the Producing Party shall include a |
| 2   | data field within such load files reserved for confidentiality designations |
| 3   | made pursuant to this order and shall include within that data field any |
| 4   | designations made ('CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL- |
| 5   | ATTORNEYS' EYES ONLY' or 'HIGHLY CONFIDENTIAL-SOURCE |
| 6   | CODE') pursuant to this Order." |

12. **Production Media.** Documents shall be produced on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001", "VOL002"), as well as the volume of the material in that production (e.g. "-001", "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced. Where possible, the parties agree Production Media shall consist of USB drives (external or flash drives) suitable for attachment of a separate 2" x 3" label onto the Production Media itself or via cable tie.