**MAYER BROWN LLP**
Edward D. Johnson (SBN189475)
wjohnson@mayerbrown.com
Eric B. Evans (SBN 232476)
eevans@mayerbrown.com
Jonathan A. Helfgott (SBN 278969)
jhelfgott@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| RICK WOODS, Individually and On Behalf of Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | CASE NO. 5:11-CV-01263-EJD<br><br>**DEFENDANT GOOGLE INC.'S OBJECTION TO PLAINTIFF'S UNILATERAL FILING OF "JOINT" DISCOVERY REPORTS NOS. 1 & 2** |

On July 24, 2013, Plaintiff filed two Discovery Dispute "Joint" Reports ("JRs") that Defendant had never seen.[1] On July 17, 2013, Plaintiff had unilaterally declared impasse and said he was going to file two JRs. In the days prior to the filing, Defendant repeatedly sought a copy of Plaintiff's draft JRs. Defendant offered to respond to Plaintiff's drafts and provide its part of the JRs within 24 hours. Plaintiff refused, citing concerns over "delay." Even as late as the date of his filing, Plaintiff refused to show Defendant his completed JR portions.

Of course, Plaintiff's JR filings were anything but "joint" and violate the letter and spirit of this Court's Standing Order re Civil Discovery ("Standing Order").[2] Specifically, Plaintiff:

- "[R]efus[ed] to participate meaningfully in the preparation of the ***Joint*** Report"[3] by refusing to share his draft JRs;
- Denied Defendant the opportunity to respond to Plaintiff's statements in the JRs, including arguments and documents that Plaintiff never raised in meet and confer;
- Curtailed an essential part of the meet and confer process that joint preparation of the JR provides. The JR process required Plaintiff to provide a concise and focused statement of his supposed grievances. By refusing to share those statements prior to filing, Plaintiff denied the parties a last chance to reach agreement without Court intervention;
- Ignored Defendant's multiple compromise offers after Plaintiff's premature declaration of impasse; and
- Skirted this Court's page limits for JRs by taking up far more than his share of a filing specifically limited to 11 pages.

As a result, Defendant respectfully requests that the Court order that (a) Plaintiff's July 24, 2013 JRs and ancillary filings be stricken;[4] (b) lead counsel for the parties be required to continue the meet and confer process; and (c) any party seeking to file a JR in this matter must provide its portion of that report to the opposing party at least 72 hours prior to filing.

## I.     Background

### *Plaintiff's refusal to share the substance of his Joint Report*

On July 10, 2013, lead counsel for the parties met in person to discuss the parties' discovery

---

[1] *See* Dkt. 130; *see also* Plaintiff's Joint Discovery Dispute #1, lodged provisionally under seal.
[2] Standing Order re Civil Discovery § D.vi., ("Standing Order)" *available at* http://www.cand.uscourts.gov/filelibrary/722/Standing Order re Civil Discovery Disputes.pdf.
[3] *Id.* § 2(D)(vi).
[4] "It is well established that district courts have inherent power to control their docket. This includes the power to strike items from the docket[.]" *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (citations and quotations omitted); *see also Franklin v. U.S.*, 2012 WL 5954016, at *1 ("The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings. Instead, trial courts make use of their inherent power to control their dockets when determining whether to strike documents or portions of documents") (quotation and citation omitted).

disputes, and succeeded in resolving most of them in follow-up discussions and correspondence.

On July 17, however, Plaintiff's counsel wrote to Defendant's counsel and declared an impasse on a few remaining issues, and said that Plaintiff would file JRs on July 24. Plaintiff also demanded that Defendant send its portion of the JRs by 10:00 a.m. on Wednesday, July 24, upon which Plaintiff would "combine both parties' sections for filing."[5] Finally, Plaintiff declared he intended to file the JRs by 3:00 p.m. on July 24 whether or not he received Defendant's sections. *Id.*

Defendant responded that Plaintiff's declaration of impasse was premature. Defendant also noted that Plaintiff's proposed filing procedure was unfair, as it would (1) allow Plaintiff to modify his portion of the JR based on Defendant's portion while denying Defendant any opportunity to do the same, and (2) deny Defendant the opportunity to authorize filing of the final document. As a result, Plaintiff's proposed process would make it impossible for the report to be "joint."[6]

On July 22, Plaintiff's counsel again stated that Plaintiff intended to file a JR without ever showing Defendant his sections.[7] Defendant's counsel responded:

> A crucial part of the meet and confer process is for Plaintiff to advise us of the issue or issues he still believes to be in dispute and worthy of the Court's attention. But you've said that you will continue to withhold Plaintiff's draft DDJR statement until just before you file it with the Court. Of course, **a report that doesn't give us a chance to see your position and offer our own comments can't be the joint report Magistrate Judge Lloyd contemplates.** But just as importantly, **your refusal to show us your draft statement has the effect of cutting off an essential opportunity for final dialogue to resolve the dispute without Court intervention.**
>
> If you are determined to declare impasse, you must already know what you plan to say in your portion of the DDJRs. We know of no principled reason for you to continue to withhold your draft from us. This apparently tactical delay appears to be the kind of **"[u]njustified delay or refusal to participate meaningfully in the preparation of the Joint Report"** that Magistrate Judge Lloyd discourages.[8]

Between Plaintiff's initial unilateral declaration of impasse and the date of his filings, Defendant's counsel repeatedly requested that Plaintiff's lead counsel share his draft JRs so that the parties could prepare a joint report and narrow the issues.[9] Defendant repeatedly offered to "provide

---

[5] Letter from C. Ihrig (Plaintiff) to E. Evans (Google) dated July 17.
[6] Letter from E. Evans to C. Ihrig, dated July 18
[7] Letter from C. Ihrig to E. Evans, dated July 22.
[8] Email from E. Evans to C. Ihrig, dated July 22 (emphasis added).
[9] Letter from E. Evans to C. Ihrig, dated July 18; email from E. Evans to C. Ihrig dated July 22; Email from W. Johnson (Google) to B. Seidel (Plaintiff) dated July 23; Email from W. Johnson

(cont'd)

comments within 24 hours of receiving [Plaintiff's portions]."[10]

However, prior to his filings, Plaintiff refused to provide anything more than the broad categories of relief he intended to seek.

At 8:19 a.m. on the date of filing, Plaintiff sent Defendant two shell documents with "cover pages" for the JRs. At 10:08 a.m., lead counsel for Defendant wrote lead counsel for Plaintiff

> We notice you still have not provided Plaintiff's substantive statements, the crucial portion of the []JR, which you said you would be done reviewing by this morning. When can we expect them? Obviously, we can't consent to a joint filing that we haven't seen.[11]

Plaintiff never provided his draft. He unilaterally filed his "Joint" reports at 3:23 p.m. that day.[12]

### *Plaintiff's refusal to consider Defendant's bridging proposals*

In the days prior to the filing, Defendant also made an effort to continue the meet and confer process, and made multiple bridging proposals to try and resolve the parties' disputes informally. Defendant was forced to make these proposals in the dark because Plaintiff refused to disclose his substantive positions on the issues he intended to discuss in his JRs.[13] Plaintiff rejected these proposals and refused to engage in any substantive discussion on them.

## II. Plaintiff's Filings Violate This Court's Procedures for Discovery Disputes And Should Be Stricken.

Plaintiff's unilateral filing was improper for several reasons.

*First,* **Plaintiff refused to show its Joint Report prior to filing, let alone give Defendant an opportunity to respond.** Plaintiff continually refused to share his portions of the report so that the parties could prepare a joint filing, ignored multiple compromise offers, and refused to engage in *any* substantive discussion on Defendant's compromise proposals. Defendant attempted to work

---

to B. Seidel dated July 24.
[10] Email from E. Evans to C. Ihrig, dated July 22; *see also* Email from W. Johnson to B. Seidel, dated July 23; Email from W. Johnson to B. Seidel, dated July 24.
[11] Email from W. Johnson (Google) to B. Seidel (Plaintiff) dated July 24.
[12] Dkt. 130 (Plaintiff's DDJR #2). Plaintiff did not e-file his DDJR #1, which was filed provisionally under seal.
[13] Specifically, Defendant offered to (1) produce Smart Pricing-related documents created on or before July 1, 2012 (six months later than Defendant's previous offer during the parties' in-person meet and confer on July 10); (2) make the computer code that describes the log files and database tables that track clicks and impressions related to Location Targeting and Smart Pricing available to Plaintiff for inspection under the source code provisions of the Protective Order; and (3) produce the expert reports from *In re Google AdWords Litigation* (Case No. 5:08-cv-3369-EJD), along with the documents and deposition testimony relied on in those expert reports.

together, and promised to return comments within 24 hours of receipt of Plaintiff's portions, but Plaintiff never acknowledged this offer and proceeded with his unilateral filing.

Plaintiff's filings violate the letter and spirit of the Standing Order.[14] The Standing Order requires parties to "diligently strive to resolve such disputes without court involvement" and prohibits parties' "refusal to participate meaningfully in the preparation of the Joint Report." Standing Order § 2(D)(vi). Plaintiff's refusal also flies in the face of this Court's policy to encourage the parties to resolve their discovery disputes informally. It is standard practice in procedures designed to foster informal dispute resolution to require the moving party to initiate the preparation of a joint report by providing its portions so that the non-moving party can provide a meaningful response.[15]

Moreover, the very act of working together cooperatively on the JR requires Plaintiff to provide a concise and focused statement of his supposed grievances, something he never did in the voluminous correspondence with Defendants.[16] By refusing to share his statements prior to filing, Plaintiff scuppered a final chance to reach agreement without court intervention.

***Second,*** **Plaintiff prematurely declared impasse.** The Standing Order only authorizes filing JRs "after reaching impasse as to a particular issue." Standing Order § 2(D). As explained above, Defendant continued to try and resolve the parties' disputes informally. Defendant offered compromise positions on each of the items for which Plaintiff now seeks Court intervention, but Plaintiff rejected these offers without any substantive discussion and moved ahead with his filing based on his premature declaration of impasse.

***Third,*** **Plaintiff's filings make arguments never before raised with Defendant during the meet and confer process.** In both of Plaintiff's JRs, he raises arguments *never made prior to*

---

[14] Plaintiff's proposed procedure does not appear to have allowed for Defendant to review and authorize filing of the joint reports, had they actually been prepared. *See* Civil L.R. 5-1(i)(3) (requiring attestation of all parties' concurrence to "documents requiring multiple signatures.").
[15] *See, e.g.*, C.D. Cal. Civil L.R. 37-2.2 ("counsel for the moving party shall personally deliver, e-mail, or fax to counsel for the opposing party the moving party's portion of the stipulation . . . within seven (7) days of receipt of the moving party's material, counsel for the opposing party shall personally deliver . . . the opposing party's portion of the stipulation[.]").
[16] Email from W. Johnson to B. Seidel, dated July 23 ("To know whether a dispute really exists you need to share your DDJR and give us the chance to address it ourselves, and hopefully find a way to agree.").

*his filings.*[17]

Plaintiff tried to insulate these eminently rebuttable new arguments from Defendant's scrutiny in his own JR sections. Plaintiff's new JR arguments also bypassed the meet and confer process in violation of the Standing Order that the parties meet and confer on any issue before filing a JR. Standing Order § 2(D). This is exactly what the Standing Order's requirement of joint filings is intended to prevent. Plaintiff should not benefit from his attempt to engage in ambush filings.

***Finally*, Plaintiff's "Joint" Report exceeds the Court's page limits, leaving Defendant only three pages for its substantive response.** Each of Plaintiff's JRs appropriated seven of the ten substantive pages the Court allows for such reports.[18] Plaintiff demanded a filing procedure where only he would be allowed to see the entire report prior to filing.[19] He then proceeded to prepare a submission that would have left Defendant with only three pages to respond. Plaintiff's actions again show that he had no intention of working on a joint report as required by the Court.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court order that (a) Plaintiff's July 24, 2013 JRs and ancillary filings be stricken; (b) lead counsel for the parties be required to continue the meet and confer process; and (c) any party seeking to file a JR in this matter must provide its portion of that report to the opposing party at least 72 hours prior to filing.

Respectfully Submitted,

Dated July 27, 2013                          MAYER BROWN LLP.

                                                          /s/ Edward D. Johnson
                                                       EDWARD D. JOHNSON

                                                       *Attorneys for Defendant Google Inc.*

---

[17] For example, in Plaintiff's JR #1, he refers, for the first time, to numerous Google documents produced in discovery. *See* JR #1 at 3-5. In Plaintiff's JR #2 (Dkt.130) he claims for the first time that he is entitled to ongoing discovery simply because he asserted that the "class period for harm" continues to "the day the court certifies this action as a class action" and because Defendant cannot introduce any evidence at trial without first supplementing its discovery to produce that evidence. Dkt. 130 at 3 (Citing ¶ 146 of the Second Amended Complaint); 6 (citing *Huynh v. J.P. Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 54714 at *75-76 (D. Ariz. July 17, 2008)).
[18] *See* Standing Order § 2(D)(iii) ("The Joint Report, including the cover page, shall not exceed 11 pages.").
[19] Letter from C. Ihrig to E. Evans, dated July 17.