*E-Filed: March 28, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICK WOODS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>GOOGLE, INC.,<br><br>    Defendant. | No. C11-01263-EJD (HRL)<br><br>**INTERIM ORDER ON DDJR #1 AND DDJR #2; ORDER DENYING MOTION FOR LEAVE TO SUPPLEMENT**<br><br>**[Re: Docket Nos. 129, 130, 131, 135, 138]** |

  Plaintiff Rick Woods, representing a putative class, sues defendant Google, Inc. ("Google") for breach of contract and violations of California's Unfair Competition Law ("UCL") related to Google's alleged failure to apply as represented the "Location Targeting" and "Smart Pricing" features of its online advertising program "AdWords." Through the program, Google displays the ads of Woods and others, and they in turn pay Google each time their ad is "clicked." The Location Targeting feature purportedly allows advertisers to limit the geographic area of the persons to whom their ads are displayed. The Smart Pricing Feature purportedly reduces the cost per click when data indicates that the click is less likely to create business for the advertiser. Woods' First Requests for Production ("RFP") primarily sought documents and information related to Location Targeting. His Second RFP focused on Smart Pricing, including documents from a prior litigation. In July 2013, Woods filed Discovery Dispute Joint Report ("DDJR") #1 challenging the adequacy of Google's responses to his RFPs, and DDJR #2 concerning the "Relevant Period" of Woods' Second RFP. Neither DDJR contained any input from Google. Accordingly, Google objected to the DDJRs on

procedural grounds, namely noncompliance with the undersigned's Standing Order re Civil Discovery Disputes ("Standing Order"). However, Google has not substantively responded to or provided its position on either dispute. Woods later filed a Motion for Leave to Supplement DDJR#1, which Google again opposed on procedural grounds.[1]

## BACKGROUND

Woods' First and Second RFPs requested, among other things, "click data"[2] related to Location Targeting and Smart Pricing. In its responses to the RFPs, Google objected to the click data requests on numerous grounds but generally agreed to meet and confer regarding the scope of the requests. To effectively confer, Woods requested descriptions of the fields of data Google maintains related to its click data requests. Eventually, Google explained that it stores the relevant click data in "log files" and "database tables," and it provided lists of what it claimed to be all relevant fields of data contained therein. However, Woods asserts that other documents produced in discovery indicate that Google's descriptions are incomplete.

Woods' Second RFP also requested documents from an earlier litigation, *In re Google AdWords*, including all documents Google produced in the litigation related to Smart Pricing, all documents relied on by the expert who opined on Smart Pricing, and un-redacted copies of all court filings. Again, Google objected but agreed to meet and confer to narrow the scope of the requests. During conferences, however, Google asserted that the requested documents were irrelevant because the claims and theories of recovery were different. Nevertheless, Woods contends that there are certainly responsive documents in common.

At some point the parties agreed to limit the temporal scope of discovery for several of Woods' claims because Google removed from its website the alleged misrepresentations on which those claims were based. However, Woods asserts that his claims based on Smart Pricing allege ongoing wrongful activity that continues to the present. Accordingly, Woods' Second RFP defined the "Relevant Period" from April 1, 2004 to the present. In its response, Google objected to Woods'

---

[1] While procedurally proper, the Court nevertheless denies the motion for leave to supplement for lack of good cause.
[2] As defined by the First RFP: "'Click Data' means the complete uniform resource locator (URL) of the originating website of the click, the actual price the AdWords Advertiser paid for the click, the geographic origin of the click, the Location Targeting setting in effect for the AdWords user at the time of the click, and any other data Defendant maintains or tracks concerning the click."

description of the Relevant Period as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and it stated it would limit its responses to the time period of April 1, 2004 to April 9, 2013. However, Woods' asserts that in subsequent conferences, Google indicated that it would further limit the time period of its responses, its latest proposal being a cutoff of July 1, 2012.

In July 2013, lead counsel for both parties met in person for three and a half hours to discuss numerous discovery issues. According to Woods, he informed Google the following day that if he did not receive responses resolving the issues within five days, the parties would be at an impasse necessitating judicial intervention. Having received no response by the sixth day, Woods declared an impasse and requested that Google prepare its statement for inclusion in the DDJRs. Woods rejected Google's demand to see his portion of the DDJR before Google would prepare its own, but he did repeatedly advise Google of the precise issues to be addressed. Nevertheless, Google never provided its statements for inclusion in the DDJRs.

On the other side, Google explains that in the days following the in person meet and confer between lead counsel, the parties held several follow up discussions and resolved most of their discovery disputes. Despite this progress, Woods unilaterally declared impasse on the few remaining unresolved issues one week after the meet and confer. He also demanded that Google send him its portions of the DDJRs by the morning of one week later to be combined for filing in the afternoon. Google objected that Woods' declaration of impasse was premature and its proposed filing procedures unfair. Google requested just 24 hours' notice of Woods' portion of the DDJR in order to meaningfully respond. However, Woods refused and, having never provided with Google with anything more than broad categories of requested relief, unilaterally filed the DDJRs.

Woods' DDJR #1 requests an order compelling Google to produce, with a designation no greater than "Confidential – Attorney's Eyes Only": (1) descriptions of the log files Google maintains with respect to clicks and impressions; (2) identification and descriptions of the fields of data maintained within those log files; (3) data from such log files relating to six specific clicks (and related impressions) of Woods' ad referenced in ¶ 120 of the complaint, which alleged that the six clicks were by users outside of Woods' geographic target; (4) complete identification and

description of the database tables (and fields contained therein) Google maintains with respect to clicks and impressions. Additionally, Woods' seeks an order compelling Google to produce all documents responsive to its requests for production related to the *In re Google AdWords Litigation*.

In DDJR #2, Woods requests that the Court overrule Google's objections to the Relevant Period for his Smart Pricing requests and compel Google to produce responsive documents for the Relevant Period, which continues through the date of trial.

Google requests that the Court strike the DDJRs for noncompliance with the undersigned's Standing Order and order lead counsel to continue the meet and confer process. Moreover, any party seeking to file a DDJR in this matter should be required to provide its portion of the report at least 72 hours prior to filing.

**DISCUSSION**

A. <u>Preparation and Filing of the DDJRs</u>

Pursuant to the Standing Order, a DDJR has only a few basic components. First, a cover page with general information, relevant dates, a one sentence issue statement, and an attestation of compliance with the Standing Order. Next, it "should describe the dispute and the facts essential to understanding it. Then, in a format that allows ready comparison, it should give each party's position (with brief citation to important authority), and – finally – each party's final and 'most reasonable' proposal for how the court should decide." It further provides that "[u]njustified delay or refusal to participate meaningfully in the preparation of the Joint Report is grounds for imposition of sanctions or entry of an order sought by the other side."

Google's main contention is that by refusing to share his draft DDJR statements, Woods failed to participate meaningfully in the preparation of the Joint Reports in violation of the Standing Order. However, while the Court would encourage the practice, nothing in the Standing Order mandates that either party share drafts of their individual portions, nor is it a prerequisite for meaningful participation. If lead counsel meaningfully meet and confer as contemplated by the Standing Order, then each side should be fully apprised of the discovery dispute at issue. While failing to exchange statements may prevent the parties from responding to very specific points or countering citations to authority, it should not prevent them from providing a statement of their

position and most reasonable proposal for how the court should decide, as the Standing Order requires. Thus, while Google complains that Woods failed to "meaningfully" participate, Google in fact failed to participate at all. At a minimum, it could have prepared for inclusion in the DDJR a statement of its general position along with its objection that Woods "refused to meaningfully participate." Instead, it waited five days to object to the DDJRs and never provided a substantive response. Accordingly, the Court does not find that Woods' failed to comply with the Standing Order and will not strike the DDJRs on that ground.

B. Discovery Dispute Joint Report #1

The first issue of DDJR #1 is whether Google must produce descriptions of the data responsive to Woods' click data requests so as to allow the parties to meaningfully meet and confer as to the proper scope of Google's ultimate production. Additionally, Woods requests production of some data for six specific clicks his complaint alleges were by persons outside his geographic target but that Google reported were within it. Woods represents that on the eve of the filing of the DDJR, Google offered to make available for inspection the requested descriptions of data; however, he declined because Google did not provide a date for production, and the deal was conditioned on the information being tagged with the highly restrictive "Source Code" designation.

Woods' request for descriptions of the fields of data Google maintains and very limited production of specific click data, as opposed to a blanket request for an order compelling production of all responsive documents and information, seems entirely reasonable. Accordingly, within fourteen (14) days from the date of this order, Google shall produce: (1) descriptions of the log files and database tables Google maintains with respect to clicks and impressions,[3] including the fields of data contained in the log files and database tables; and (2) data from log files relating to the clicks (and related impressions) alleged in ¶ 120 of the complaint. As for the level of protection the data deserves, as the producing party, Google shall designate this information as is appropriate pursuant

---

[3] Woods requests data related to "impressions" without ever defining the term or discussing its relevance. However, it is the Court's understanding that an "impression" refers to an ad being displayed, although not necessarily "clicked." Here, Woods has only demonstrated the relevance of clicks, and thus, as far as the Court is now concerned, the only relevant impressions are those actually lead to clicks. Accordingly, to the extent that Google maintains log files and/or database tables differently for impressions that lead to clicks as opposed to impressions generally, Google only need produce descriptions of the former.

5

to the operative Stipulated Protective Order. Then, upon inspection, Woods may challenge the designation according to the procedures prescribed by the Stipulated Protective Order and the undersigned's Standing Order. However, a preemptive determination of the proper designation is inappropriate.

As for the second issue of DDJR #1, the Court agrees with Woods that there are certainly responsive documents in common between the instant case and *In re Google AdWords Litigation*, and that the different underlying bases for recovery are not grounds for a wholesale refusal to produce responsive documents. However, here Woods does request a blanket order compelling all documents responsive to three requests in its Second RFPs (Nos. 31-33), which does not seem entirely reasonable. It is not clear that the categories of documents requested are sufficiently narrow and that Google's objections in its responses are without merit. Thus, the Court is unwilling to grant Woods his requested relief, and unfortunately, no lesser relief in his favor is apparent on the record before the Court. Accordingly, the parties are ordered to meet and confer and, if necessary file a Joint Supplement to DDJR #1 per the instructions below.

C. Discovery Dispute Joint Report #2

Woods asks the Court to overrule Google's general objections that Woods' description of the Relevant Period is "overbroad as to time, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." Moreover, Woods asks the Court to hold that the duty to supplement per Rule 26(e) continues beyond the fact discovery cutoff date. And finally, due to ongoing duty to supplement, the Relevant Period necessarily includes up to the date of trial.

The Court can definitively state that the Rule 26(e) duty to supplement or correct incomplete or incorrect responses does, in fact, extend beyond the discovery cutoff date. This is evidenced by the Advisory Committee Notes to the 1993 Amendments, which provide that supplementations "should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches," as well as recent case law. *See F.T.C. v. AMG Services, Inc.*, No. 2:12-cv-00536-GMN-VCF, 2014 WL 317781, at *6 (D. Nev. Jan. 28, 2014) ("The duty to supplement extends to . . . the period after the close of discovery.") (citing *Star Direct Telecom, Inc. v. Global*

*Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011) ("[T]he duty to supplement continues even following the close of discovery."))).

However, the Court is not convinced that Google's objections are without merit and that Woods is entitled to discovery of new information leading all the way up to the date of trial, as several factors not discussed by Woods in the DDJR may affect the Relevant Period. For example, although Woods purports to represent a class that is suffering an ongoing harm, Woods himself stopped advertising with Google in 2011. The Relevant Period may change depending how that class, if certified, is ultimately defined. Even simple practical considerations, such as convenience to the parties and the court, might necessitate limiting the Relevant Period. Thus, the Court does not have enough information to fairly overrule Google's objections (although its attempts to further limit the Relevant Period beyond what it initially objected to is suspect), and it is too early to impose on Google an ongoing duty to produce newly developed information up to the date of an as of yet unscheduled trial. Accordingly, the parties are ordered to further meet and confer on this issue, and if necessary, file a Joint Supplement to DDJR #2.

## CONCLUSION

With respect to the first issue of DDJR #1, Google shall produce the requested information within fourteen (14) days as discussed above. As for Google's production of *In re Google AdWords Litigation* documents (second issue of DDJR #1) and the Relevant Period for Woods' Smart Pricing claims (DDJR #2), lead counsel for each party shall meet and confer in person within 14 days from the date of this order. If the meet and confer fails to resolve these remaining issues, then the parties shall file Joint Supplement to DDJR #1 and/or Joint Supplement to DDJR #2 within five (5) business days of the meet and confer. Additionally, although not generally required by the Standing Order, due to the parties' previous inability to cooperate and in order to facilitate the resolution of these long-standing disputes, the parties shall exchange drafts of their individual portions of the Joint Supplements, including their position statement and most reasonable proposal, within three (3) business days of the meet and confer. Thereafter, it is up to the parties to determine how revisions may be made and combined into a finished product to be timely filed.

**IT IS SO ORDERED.**

7

Dated: March 28, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C11-01263 Notice will be electronically mailed to:**

Andrew Gordon Pate     drewpate@nixlawfirm.com

Brad Edward Seidel     bseidel@npraustin.com, monatucker@nixlawfirm.com

Edward D. Johnson     wjohnson@mayerbrown.com, msamora@mayerbrown.com, pdocket@mayerbrown.com, rbarreras@mayerbrown.com

Eric Evans     eevans@mayerbrown.com, cpohorski@mayerbrown.com

Erik David Peterson     epeterson@ktmc.com, arobles@ktmc.com

Jeffrey John Angelovich     jangelovich@npraustin.com, bethgoodman@nixlawfirm.com

Jonathan Anderson Helfgott     jhelfgott@mayerbrown.com

Joseph H. Meltzer     jmeltzer@ktmc.com, eciolko@ktmc.com, jbelack@ktmc.com, kmarrone@ktmc.com, lloper@ktmc.com, pleadings@ktmc.com

Naumon A Amjed     namjed@ktmc.com

Peter H LeVan , Jr     plevan@ktmc.com

Ramzi Abadou     rabadou@ktmc.com, arobles@ktmc.com, knguyen@ktmc.com

Robin Winchester     rwinchester@ktmc.com, ckeller@ktmc.com, jwilliams@ktmc.com

Ryan Thomas Degnan     rdegnan@ktmc.com

Sean M. Handler , Esq     ecf_filings@ktmc.com, dcheck@ktmc.com, namjed@ktmc.com

Stacey Marie Kaplan     skaplan@ktmc.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**