**MAYER BROWN LLP**
Edward D. Johnson (SBN189475)
wjohnson@mayerbrown.com
Donald M. Falk (SBN150256)
dfalk@mayerbrown.com
Eric B. Evans (SBN 232476)
eevans@mayerbrown.com
Jonathan A. Helfgott (SBN 278969)
jhelfgott@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

*Attorneys for Defendant Google Inc.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| RICK WOODS, Individually and On Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br>v.<br><br>GOOGLE INC.,<br><br>                 Defendant. | Case No. 5:11-cv-1263-EJD<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS** |

TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................3

    A. As Ordered, Google Made Descriptions of its Ads Database and Logs Available for Plaintiff's Inspection................................................................. 3

    B. As Ordered, Google Provided Plaintiff with the Information in its Logs about Plaintiff's Six Clicks Identified in ¶ 120 of the Complaint ........................ 5

    C. Plaintiff Refused to Meet and Confer Before Filing His Motion .......................... 5

    D. Plaintiff Withdrew the Very 30(b)(6) Notice That He Now Wants Imposed by Court Order ....................................................................................................... 6

    E. Plaintiff, After Serving This Motion, Served an Interrogatory Seeking Essentially the Same Information That He Demands in This Motion ................... 7

ARGUMENT ...............................................................................................................................9

I. GOOGLE COMPLIED WITH THE COURT'S ORDER BEFORE THE INSTANT MOTION WAS FILED ...................................................................................9

    A. Google Made Descriptions of the Relevant Log Files and Database Tables Available for Plaintiff's Inspection......................................................................... 9

    B. Google Provided Plaintiff the Relevant Information in its Log about His Six Complained-of Clicks ..................................................................................... 10

II. PLAINTIFF'S MOTION VIOLATES THIS COURT'S STANDING ORDER AND SEEKS RELIEF BEYOND THE SCOPE OF BOTH THE COURT'S ORDER AND THE FEDERAL RULES OF CIVIL PROCEDURE ...............................11

    A. Plaintiff's Motion is a Discovery Motion That Cannot Be Filed Without Leave and Does Not Comply With This Court's Requirements for Discovery Motions............................................................................................... 11

    B. Plaintiff's Motion is a Concealed Challenge to Google's Source Code Designations, Which are Explicitly Governed by This Court's Standing Order ..................................................................................................................... 12

    C. Plaintiff's Motion Seeks Relief That Is Beyond the Scope of This Court's Order and is Properly the Subject of Routine Discovery Requests ..................... 13

CONCLUSION..........................................................................................................................14

# TABLE OF AUTHORITIES

Page

**CASES**

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189 (1st Cir. 2001) ........................................................................................................................... 7

*Auto Inspection Services, Inc. v. Flint Auto Auction, Inc.*, 2006 WL 3500868 (E.D. Mich. Dec. 4, 2006) .................................................................................................. 4

*Blackwell v. City & County of San Francisco*, 2010 WL 2608330 (N.D. Cal. Jun. 25, 2010) ........................................................................................................................ 7

*Boeynaems v. LA Fitness Int'l, LLC*, Nos. 10-2326, 11-2644, 285 F.R.D. 331 (E.D.Pa. 2012) ................................................................................................................... 12

*Burdick v. Union Sec. Ins. Co.*, 2008 WL 5102851 (C.D. Cal. Dec. 3, 2008) ............................... 7

*Business Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366 (Fed. Cir. 2005) ............................ 4

*Computer Assocs. Int'l, v. Quest Software, Inc.*, 333 F. Supp. 2d 688 (N.D. Ill. 2004) ........................................................................................................................... 4

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................................ 10, 12

*Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699 (N.D. Cal., Feb. 2, 2012) ............................ 7

*In re Puerto Rico Electric Power Auth.*, 687 F.2d 510 (1st Cir. 1982) ....................................... 10

*In re Sulfuric Acid Antitrust Litigation*, 2005 WL 1994105 (N.D. Ill. 2005) ............................... 7

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F. Supp. 2d 531 (N.D. Tex. 2003) ............................................................................................. 4

*Robison v. Transamerica Ins. Co.*, 368 F.2d 37 (10th Cir. 1966) .............................................. 11

*S.E.C. v. Rehtorik*, 135 F.R.D. 204 (S.D. Fla. 1991) .................................................................. 9

**RULES**

Fed. R. Civ. P. 30(a)(2) ................................................................................................................. 7

709472858

## INTRODUCTION

Plaintiff seeks to pursue his highly technical and data-intensive lawsuit without expending the basic effort necessary to build his case. Rather than propound discovery, notice depositions, and hire and use technical experts needed to interpret technical data including source code, Plaintiff demands that the Court order Google to prepare his case for him. And he makes that request in a form that flouts the Court's Standing Order. This misbegotten sanctions motion demonstrates a preference for courtroom drama over routine case preparation work and compliance with court rules and orders. Plaintiff's motion is substantively baseless and procedurally improper, and should be denied.

***Substantively***, Plaintiff's Motion for Sanctions for Violating Court Order ("Motion" or "Mot.") seeks sanctions against Google Inc. despite Google's full compliance with the Court's Interim Order on DDJR #1 and DDJR #2. ("Order") (Dkt. 147).

Plaintiff claims that Google failed to provide descriptions of log files and database fields as ordered. But Plaintiff's Motion does not seek the descriptions themselves. Instead, he demands what amounts to a compelled response to an interrogatory that he had never before propounded. Plaintiff also demands what amounts to an extra 30(b)(6) deposition ***interpreting*** those log file descriptions as well as other ancillary relief designed to improperly shift Plaintiff's ordinary litigation costs. None of the relief requested is appropriate here.

First, the Order required Google to provide Plaintiff with "descriptions of the log files and database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the log files and database tables." *Id*. 5:20-22. Google did so. Google gave Plaintiff access to files, designated HIGHLY CONFIDENTIAL—SOURCE CODE, that embody Google's primary source for "descriptions of the log files and database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the log files and database tables." These files describe the structure and operation of a very large, complex and commercially sensitive database. But instead of sending a qualified expert to interpret these files, Plaintiff sent two lay attorneys to inspect them. Plaintiff now complains these descriptions are difficult for his lawyers to understand. But Plaintiff does not dispute that he got the very

material he insisted on receiving, *i.e.*, comprehensive descriptions of Google's highly sophisticated "log files and database tables Google maintains with respect to clicks and impressions."

Second, the Order required Google to provide Plaintiff with "data from log files relating to the clicks (and related impressions) alleged in ¶ 120 of the complaint." *Id.* 5:20-23. Again, Google did so. Google provided "data from log files relating to the clicks (and related impressions) alleged in ¶ 120 of the complaint." Google limited this information to fields that were directly pertinent to this action and that did not duplicate information already produced to Plaintiff or already included in Plaintiff's Complaint. Because Plaintiff objects to this production, however, Google has offered to produce to Plaintiff information in its log files related to the Location Targeting of these six clicks so Plaintiff can verify that Google provided the pertinent, non-duplicative information available about these clicks (as it would have done if Plaintiff had bothered to meet and confer on this issue).

***Procedurally***, Plaintiff's Motion is defective for three reasons, each of which independently justifies denial:

First, the Motion is a discovery motion explicitly barred by the Court's Standing Order. Plaintiff did not seek leave of Court and did not raise, let alone meet and confer on, the issues raised in the Motion. Plaintiff refused even to disclose the title of his motion (which he described only vaguely as "Google's non-compliance with Judge Lloyd's order") until the day before filing. The Motion should be denied based on those violations alone. *See* Standing Order § 2.A.

Second, the relief requested—production "at the offices of Plaintiff's counsel" of the information Google has already provided for Plaintiff's inspection—amounts to a *de facto* challenge to Google's designation of its highly sensitive "***comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software***" (Protective Order, Dkt. 103, § 2.9) as HIGHLY CONFIDENTIAL—SOURCE CODE. Yet the Order that Plaintiff claims to be enforcing establishes that any challenge to a designation must be made "according to the procedures

2

prescribed by the Stipulated Protective Order and the undersigned's Standing Order." Dkt. 147 6:1-4; *see also* Protective Order §§ 6.2-6.3. Plaintiff did not try to comply with either of these procedures before filing his Motion—and is pursuing a separate challenge, which it claims is unrelated to this Motion, using the procedure outlined in this Court's Standing Order. Declaration of Eric B. Evans in Support of Defendant's Opposition to Motion for Sanctions ("Evans Dec.") Ex. E.

Third, the Motion seeks relief never mentioned in the Court's Order, including a buried request for a Court-ordered interrogatory and deposition regarding the information Google maintains about AdWords clicks and impressions. This only further confirms that all that is needed to "remedy" the supposed harm to Plaintiff is further routine discovery—such as the Rule 30(b)(6) deposition Plaintiff noticed and then withdrew, and the interrogatory Plaintiff served after filing this Motion that seeks virtually the same information as the "sanction" sought here—rather than discovery sanctions. Plaintiff's Motion seeks to place the entire burden of discovery on Google and free Plaintiff of the trouble of actually prosecuting his case. While that outcome is certainly desirable to a putative class action plaintiff, it is inconsistent with the Federal Rules of Civil Procedure, the Standing Order of this Court, and basic principles of fairness.

**BACKGROUND**

**A.   As Ordered, Google Made Descriptions of its Ads Database and Logs Available for Plaintiff's Inspection.**

As noted above, the Court's Order required Google to provide Plaintiff with "descriptions of the log files and database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the log files and database tables." *Id*. 5:20-22. On April 11, 2014, in compliance with this Order, Google informed Plaintiff that documents containing these descriptions were available for Plaintiff's inspection. Evans Dec. ¶ 2 and Ex.A. Because these documents "define[d] or otherwise describe[d] in detail the algorithms and structure of software" (Protective Order, § 2.9), Google designated them HIGHLY CONFIDENTIAL—SOURCE CODE and provided them for inspection under the source code provisions of Section 9 of the Protective Order. On April 28, 2014, Plaintiff's counsel, Mr. Seidel and Mr. Pate,

inspected more than 900 documents that describe the workings of Google's Ads Database and the transactions logs. Evans Dec. ¶ 4.

Those documents constituted the "descriptions of the log files and database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the log files and database tables" that the Court ordered Google to provide. Order 5:20-22; Evans Dec. ¶ 3. The Ads Database, the master database that Google uses to track clicks and impressions, is one of the largest, most complex, and most commercially sensitive databases in existence. Given its complexity and sophistication, any attempt to describe the "log files and database tables Google maintains" in the Ads Database as well as the "fields of data" contained in those files entails disclosing the proprietary algorithms, business logic, and Structured Query Language ("SQL") computer code that perform the calculations at the heart of the Ads Database.[1] This SQL code and its relationship to the calculations that populate the Ads Database define the key elements of what Plaintiff refers to as the "log files" and "fields of data" that Google maintains "with respect to clicks and impressions." Because of its technical nature, courts routinely treat SQL as source code.[2] In addition, there was no way to disclose other information Plaintiff sought without disclosing information entitled to protection as source code under the Protective Order. For example, many fields in the database are populated with the results of operations on the values of other fields. As a result, a description of these fields necessarily discloses the structure and operation of the Ads Database itself.

As Plaintiff knows, any response sufficient to describe the log files and data fields in the Ads Database requires substantial technical expertise to interpret. Evans Dec. ¶¶ 3-4 and Ex. A. Yet when Plaintiff's counsel inspected the technical documents that Google produced, they did so without an expert trained in relational database design and operation who might have been

---

[1] *Business Objects*, *S.A.* v. *Microstrategy, Inc.*, 393 F.3d 1366, 1368 (Fed. Cir. 2005) (discussing and providing background about SQL).
[2] *See Computer Assocs. Int'l*, v. *Quest Software*, *Inc.*, 333 F. Supp. 2d 688, 694 (N.D. Ill. 2004) (noting that information about SQL is included in expert report concerning "source codes"); *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F. Supp. 2d 531 (N.D. Tex. 2003), 532 and 533 n.1 (describing "SQL statements within the LoanForce source code" and providing further background on role of SQL code); *see also Auto Inspection Services, Inc. v. Flint Auto Auction, Inc.*, 2006 WL 3500868, *2 (E.D. Mich. Dec. 4, 2006) (stating that "source code" was written in SQL computer language).

able to parse the complex relationships among the thousands of fields in Ads Database. *Id.* ¶ 4. Google provided the information about Google's Ads Database and associated logs in the most straightforward manner available to Google. *See* Mot. 6-7 (acknowledging that the documents Google made available for inspection contained "descriptions … [of] various database tables" but complaining that they were provided in a "convoluted manner that obscured the relevant fields of data"). Plaintiff demanded, and received, access to highly sensitive specifications and descriptions of the very sophisticated and complex Ads Database.

### B. As Ordered, Google Provided Plaintiff with the Information in its Logs about Plaintiff's Six Clicks Identified in ¶ 120 of the Complaint.

As also noted above, the Order required Google to provide Plaintiff with "data from log files relating to the clicks (and related impressions) alleged in ¶ 120 of the complaint." Order 5:20-23. On April 11, 2014, Google provided Plaintiff with the IP addresses associated with the six clicks he complains of in ¶ 120 of his Complaint. This information constitutes the "data from log files relating to the clicks (and related impressions) alleged in ¶ 120 of the complaint." Google limited this information to fields that were relevant to this action and that did not duplicate information already produced to Plaintiff or included in Plaintiff's Complaint, such as Google's identification of the locations associated with these clicks in Google's Location Targeting systems. Evans Dec. ¶ 6 and Ex. A.

### C. Plaintiff Refused to Meet and Confer Before Filing His Motion.

On May 13, only a day before he filed this Motion, Plaintiff contacted Google to discuss scheduling and filing Google confidential documents under seal. Evans Dec. Ex. B (email from Mr. Pate to Mr. Evans, dated May 13, 2014 at 8:19 A.M.). Plaintiff did not disclose the specific subject matter of this Motion—merely that it would concern "Google's non-compliance with Judge Lloyd's order." *Id*. (email from Mr. Pate to Mr. Johnson, dated May 13, 2014 at 12:04 P.M.). Since Plaintiff did not explain the nature of the dispute nor the relief that he wanted, counsel for Defendant responded:

> Of course, another requirement of the Standing Order is that the parties work diligently to resolve their disputes without Court involvement. Here, we first learned of a possible filing this

> morning and still have not been told what the dispute is, let alone the relief/discovery your motion would seek. Nor have we had a chance to talk the issues through with you. There is no need to apologize, as you do below, for your unavailability to speak today. But for Plaintiff to file your motion before we can speak would be premature, and regrettable.

*Id.* (email from Mr. Johnson to Mr. Seidel, dated May 13, 2014 at 5:18 P.M.).

Nevertheless, Plaintiff declined to speak or otherwise meet and confer before filing his Motion the following day.

### D. Plaintiff Withdrew the Very 30(b)(6) Notice That He Now Wants Imposed by Court Order.

On May 9, 2013, Plaintiff served a 30(b)(6) deposition notice seeking to depose Google designees who could provide testimony on the following topics summarizing the information fields and reporting capabilities of the Ads Database and its associated databases and logs:

> 3. Description of all Smart Pricing Data, whether stored electronically or otherwise, collected by Google, including, without limitation:
>    a. the Identification of all data fields maintained by Google, for any period of time, regarding Smart Pricing Data;
>    b. the period of time such data is or was maintained;
>    c. the manner in which such data is stored;
>    d. the manner in which such data is or can be reported;
>    e. the Identity(ies) of all Persons to whom such data is reported;
>    f. Description of how such data is utilized by Google; and
>    g. Identification of Documents describing such data.
>
> 4. Description of all Location Targeting Data, whether stored electronically or otherwise, collected by Google, including, without limitation:
>    a. the Identification of all data fields maintained by Google, for any period of time, regarding Location Targeting Data;
>    b. the period of time such data is or was maintained;
>    c. the manner in which such data is stored;
>    d. the manner in which such data is or can be reported;
>    e. the Identity(ies) of all Persons to whom such data is reported;
>    f. Description of how such data is utilized by Google; and
>    g. Identification of Documents describing such data.

Evans Dec. Ex. C at 8.

These topics are essentially identical to the topics of the deposition Plaintiff seeks by his current Motion. *Compare* Evans Dec. Ex. C at 8 *with* Motion 10 (seeking a deposition of a witness to explain the descriptions of log files and database tables provided by Google). Yet on

July 11, 2013, Plaintiff withdrew his deposition notice (Evans Dec. Ex. D) after confronted with case law demonstrating that he was improperly trying to take multiple 30(b)(6) depositions of Google. *Id.* Ex. H at 1 n.1. Evans Dec. Ex. H. Plaintiff has not served another 30(b)(6) notice. Evans Dec. ¶ 9 and Ex. D.[3] Instead, he filed this Motion as a way to skirt the limitations on the number of 30(b)(6) depositions.[4]

### E. Plaintiff, After Serving This Motion, Served an Interrogatory Seeking Essentially the Same Information That He Demands in This Motion.

On May 23, 2014, the week after filing this Motion, Plaintiff served a second set of interrogatories, seeking information that substantially overlaps with the information about Google's databases and log files he demands in this Motion:

> INTERROGATORY NO. 1: For each click Google charged Plaintiff, state the information Google recorded and maintains about the impression and click including, without limitation, the following:
>
> a. Date and time of the click;
>
> b. All unique identifiers Google uses to identify the click;
>
> c. All names and unique identifiers Google uses to identify the Property and Partner from which the click occurred (including, without limitation, data contained in PropertyCode);
>
> d. Whether the Ad that was clicked appeared on the Search Network or the Display Network;
>
> e. Whether the device on which the click occurred was a mobile device and, if so, the type of device;
>
> f. If the click occurred on a mobile device, state whether the Ad

---

[3] Letter from C. Ihrig (Plaintiff) to E. Evans (Defendant), dated July 11, 2013. *Id.* While Plaintiff has proposed serving a single omnibus 30(b)(6) notice covering a wide range of topics, he has not yet done so. *Id.* ¶ 10.

[4] *See Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, *5-6 (N.D. Cal., Feb. 2, 2012) ("As a preliminary matter, the Court agrees with Groupon that, under Rule 30(a)(2), Groupion should have requested leave of the presiding judge to take a second 30(b)(6) deposition, having already noticed and taken one 30(b)(6) deposition."); *see also Blackwell v. City & County of San Francisco*, 2010 WL 2608330, *1-2 (N.D. Cal. Jun. 25, 2010) ("As a preliminary matter, the Court notes its agreement with the City that, under Federal Rule of Civil Procedure 30(a)(2), Plaintiff should have asked for leave to take a second 30(b)(6) deposition, having already noticed and taken one 30(b)(6) deposition."); *accord, e.g., Burdick v. Union Sec. Ins. Co.*, 2008 WL 5102851, * 3 (C.D. Cal. Dec. 3, 2008) ("Plaintiff issued a second Rule 30(b)(6) deposition notice without leave of the court, despite the requirement of rule 30(b) (2)(B). The notice is thus invalid.") (citing *In re Sulfuric Acid Antitrust Litigation*, 2005 WL 1994105 *2 (N.D. Ill. 2005) and *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001)).

that was clicked appeared in a mobile app, on a mobile property other than a mobile app, or on a desktop site viewed from a mobile device;

g. Cost of the click;

h. Amount of the click cost retained by Google (i.e., not paid to the Partner displaying the Ad);

i. Google's profit from the click;

j. Amount of the refund or credit, if any, issued to Plaintiff with respect to the click;

k. Whether the click resulted in a conversion;

l. If on the Display Network, whether Smart Pricing was applied to Plaintiff's bid;

m. If on the Display Network, the dollar and percentage amount of the Smart Pricing Discount applied to Plaintiff's bid;

n. Conversion scores for the property from which the click occurred, at the time of the click including, without limitation, Conversion Score, PubScore, rCVR, PropertyHealth, etc.;

o. All Smart Pricing bid multipliers for the Property from which the click occurred at the time of the click including, without limitation, ClickCostMultiplier RawBidMultiplier, ProductionBidMultiplier, and ManualBidMultiplier;

p. Value(s) of any factor(s) applied to the RawBidMultiplier;

q. Value of the "SmartPricingScoreTypeID";

r. Value of the "CanApplyClickCostMultiplier" variable for the Property from which the click occurred, at the time of the click;

s. Whether any Ads that won placement in the auction that resulted in the display of Plaintiff's ad were not subject to Smart Pricing (e.g., whether "IsSmartPricingApplicable" had a value of False, no or 0);

t. Value of the "IsSmartPricingApplicable" variable for the click or Ad;

u. Targeted Location for the Ad that was clicked;

v. Physical location of the Internet user clicking the Ad at the time of the click, as determined and recorded by Google (specify by Country/Territory, Region, Metro area, City, most specific location, and any other similar data points maintained by Google);

w. Whether the Internet user clicking the Ad was physically located within the Targeted Location at the time of the click, as determined and recorded by Google;

x. Source of information Google used to determine the physical location of the Internet user who clicked on the Ad (e.g., IP address, GPS, mobile communications tower, etc.);

y. If the Internet user who clicked on the Ad was not physically located within the Targeted Location at the time of the click,

    the source of information Google used to determine the location that resulted in the display of the Ad (e.g., explicit location (overrides), domain country, AOI, location parsed from query, location field in user cookie, location from search history, country based on location, other, etc.);

z.  Query which triggered the display of the Ad, if Google used the query to determine location;

aa.  IP address of the Internet user who clicked the Ad;

bb.  "Location type" reported by Google in Plaintiff's account (e.g., "Physical Location");

cc.  Location of the Internet user who clicked on the ad, as reported by Google in Plaintiff's account; and

dd.  Any other information Google possesses relating to the physical location of the Internet user who clicked on the Ad and the reasons why the ad was displayed to an Internet user in that location.[5]

Evans Dec. Ex. G.

## ARGUMENT

### I. GOOGLE COMPLIED WITH THE COURT'S ORDER BEFORE THE INSTANT MOTION WAS FILED.

#### A. Google Made Descriptions of the Relevant Log Files and Database Tables Available for Plaintiff's Inspection.

Sanctions for failure to comply with court orders are "permitted only after a party has ignored a court order compelling discovery[.]" *S.E.C. v. Rehtorik*, 135 F.R.D. 204, 206 (S.D. Fla. 1991) (citation and quotation omitted). Google did not ignore any order, and in fact complied completely. The Court ordered Google to provide "descriptions of the log files and database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the log files and database tables." Order 5:20-22. The materials that Google provided to Plaintiff constituted exactly those "descriptions" and constitute the most concise descriptions of its log files and database tables available. Evans Dec. ¶ 3.[6]

In addition, Google is determining whether it is practicable to provide for Plaintiff's

---

[5] Google's objections and responses to this interrogatory are not yet due and Google reserves all objections that may be applicable.
[6] Should the Court find it helpful, Google will make available representative samples of these HIGHLY CONFIDENTIAL—SOURCE CODE documents for *in camera* review. Plaintiff requested paper copies of only three documents, apparently in order to challenge their designation as HIGHLY CONFIDENTIAL—SOURCE CODE and not for actual analysis. Evans Dec. Ex. E.

inspection the particular source code "file that describes the information" stored in its code base—the file that Plaintiff's Motion complains was lacking from his inspection (Motion 6)—even though this file itself will also likely require a qualified expert to interpret. Google had not made this file available earlier because the files it provided for inspection constitute the most concise descriptions of its log files and database tables available. Evans Dec. ¶ 6. The Ads Database is one of the most complex SQL databases in the world, and any comprehensive description of it will necessarily be complex. Plaintiff would be well-advised to retain a qualified expert for analyses that require one, but it is an unreasonable burden—and goes far beyond the principles of discovery under the Federal Rules—for him to seek to compel Google to do this expert analysis for him. *See e.g. In re Puerto Rico Electric Power Auth.*, 687 F.2d 510, 510 (1st Cir. 1982) (rejecting a request to have the producing party translate produced documents because "such orders violate the well-accepted principle that each party bears the ordinary burden of financing his own suit.") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 179 (1974)).

Plaintiff's Motion should be denied. Plaintiff's proper course is to conduct the follow-up discovery, including the discovery issued only after this motion was filed as well as the expert analysis necessary to pursue his claims.

**B.  Google Provided Plaintiff the Relevant Information in its Log about His Six Complained-of Clicks.**

Plaintiff's issue with the data on the six clicks complained of in ¶ 120 of the Complaint is the polar opposite of his issue with Google's production of the descriptions of its log files. On the one hand, Plaintiff complains that Google produced detailed and voluminous information from its log files—which his attorneys found to be incomprehensible. In this instance, Plaintiff protests that Google limited its production only to relevant data not already in Plaintiff's possession. Google provided "data from log files relating to the clicks (and related impressions) alleged in ¶ 120 of the complaint." Order 5:20-23. Google limited this information to fields that were directly pertinent to this action and that did not duplicate information it had already produced to Plaintiff or that were already included in Plaintiff's Complaint. Evans Dec. ¶ 6 and

1  Ex. A. Simply put: Google has provided the information it understands to be relevant about
2  these clicks. In order to placate Plaintiff, however, Google is willing to produce all of the
3  information in its log files related to the Location Targeting of these six clicks so that Plaintiff
4  can verify that no further relevant information exists in Google's logs about those clicks.

**II. PLAINTIFF'S MOTION VIOLATES THIS COURT'S STANDING ORDER AND SEEKS RELIEF BEYOND THE SCOPE OF BOTH THE COURT'S ORDER AND THE FEDERAL RULES OF CIVIL PROCEDURE.**

**A. Plaintiff's Motion is a Discovery Motion That Cannot Be Filed Without Leave And Does Not Comply With This Court's Requirements for Discovery Motions.**

This Court's Standing Order states that "[a]bsent leave of court, formal noticed discovery motions may no longer be filed, and, if filed contrary to this order, will not be heard." Standing Order § 2.A. Plaintiff did not seek leave to file this Motion, which seeks discovery relief.[7] Nor did Plaintiff comply with any of the Court's procedures for resolving discovery disputes. *See* Standing Order § 2.D and Evans Dec. Ex. B. Plaintiff did not meet and confer on any of the issues raised in his motion—much less in person, as required by § 2.C of the Standing Order. *Id*. Indeed, Plaintiff refused to identify the nature of Google's supposed non-compliance with the Court's Order, let alone meet and confer about it, before filing the instant motion. *Id.*

Plaintiff compounds this disregard for the Court's Standing Order (and the Federal Rules of Civil Procedure) by asking the Court to order Google's counsel and deposition witnesses to travel to Austin, Texas for all future conferences and depositions. *Compare* Mot. 10 *with* Standing Order § 2.C(ii). Plaintiff's request for special treatment should be denied. Plaintiff gives no reason why a one-sided travel obligation would be an appropriate sanction or would effectuate the purposes of Rule 37, which is "to secure compliance with the discovery rules, not to punish[.]" *Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966). Plaintiff clearly desires to prosecute this action at Google's expense, but that is not how civil discovery

---

[7] The Court's Standing Order also states that "Any party seeking an award of attorney fees or other expenses in connection with a discovery dispute shall file a noticed motion pursuant to the Northern District Local Rules. It would ordinarily be presumptuous to file such a motion before the court has ruled on the dispute." *Id*. § 2.F. The Court does not appear to have ruled on the specific disputes raised in Plaintiff's Motion.

works. *Eisen*, 417 U.S. at 179 (noting the presumption in civil litigation that each party bears the "ordinary burden of financing his own suit").

Requiring all in-person conferences to occur in Austin would fly in the face of the policy behind the Court's Standing Order, which has given both parties powerful incentives to work together to resolve disputes informally. Finally, Plaintiff's implied complaint about the burden or inconvenience of periodic travel to the forum in which Plaintiff sued rings hollow in light of Plaintiff's three attorneys of record with offices in San Francisco,[8] and the fact that Plaintiff's counsel, Nix Patterson, "**maintain[s] a fleet of three aircraft and a staff of full-time pilots prepared to take [them] anywhere on a moment's notice**." http://www.nixlawfirm.com/Firm-Facilities (emphasis added). Plaintiff's counsel are sophisticated investors in lawsuits, who, if they truly believed in their case, could easily make a further investment. *See Boeynaems v. LA Fitness Int'l, LLC*, Nos. 10-2326, 11-2644, 285 F.R.D. 331, 335 (E.D.Pa. 2012) ("If Plaintiffs' counsel has confidence in the merits of the case, they should not object to making an investment in the cost of securing documents from Defendant and sharing costs with Defendant.").

Plaintiff should not be permitted to choose which of this Court's rules are worthy of his compliance. Plaintiff's motion should be denied for this reason alone.

### B. Plaintiff's Motion Is a Concealed Challenge to Google's Source Code Designations, which Are Explicitly Governed by This Court's Standing Order.

The relief requested—production of the information Google has already provided for Plaintiff's inspection "at the offices of *Plaintiff's* counsel"—amounts to a *de facto* challenge to Google's designation of its highly sensitive "*comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software*" (Protective Order, Dkt. 103, § 2.9) as HIGHLY CONFIDENTIAL—SOURCE CODE. Under Section 9.3(c) of the Protective Order, information designated HIGHLY CONFIDENTIAL—SOURCE CODE is to be "made available for inspection in a format through which it could be reasonably reviewed and searched during

---

[8] Erik David Peterson, Ramzi Abadou, and Stacey Marie Kaplan, all of Kessler Topaz Meltzer & Check, LLP, are based in an office at One Sansome Street, Suite 1850 San Francisco, CA 94104.

normal business hours or other mutually agreeable times at a location that is reasonably convenient for the Receiving Party and any experts to whom the source code may be disclosed." Dkt. 103 § 9.3(c). These protections are required to preserve the confidentiality of source code and similar technical design documents and are universally accepted by the courts.

Although Plaintiff says that his Motion does not challenge Google's designation (Mot. 5 n.2), the practical effect of the relief he requested—formal production of the material at Plaintiff's offices rather than limited and closely-monitored inspection—amounts to a re-designation of that material to HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY. This is relief that, according to the same Protective Order, can only be sought "according to the procedures prescribed by the Stipulated Protective Order and the undersigned's Standing Order." *Id.* §§ 6.2-6.3. Further, it is relief barred by the Court's Order, which requires Plaintiff to pursue any "challenge [to] the designation according to the procedures prescribed by the Stipulated Protective Order and the undersigned's Standing Order" because "a preemptive determination of the proper designation is inappropriate." *Id*. 6:1-4.

### C. Plaintiff's Motion Seeks Relief That Is Beyond the Scope of This Court's Order and is Properly the Subject of Routine Discovery Requests.

Plaintiff's Motion also includes a buried request for an additional interrogatory and a 30(b)(6) deposition. Plaintiff's buried interrogatory seeks "descriptions of the log files and database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the log files and database tables, (as previously ordered by the Court), *in a reasonably interpretable format*." Mot.10:4-6 (emphasis added). Plaintiff's buried 30(b)(6) deposition notice seeks a "witness competent to explain the information provided thereby and to further answer questions about the Smart Pricing and Location Targeting data Google possesses in both log files and database tables." Mot. 10:10-12. But Plaintiff may serve both interrogatories and a 30(b)(6) notice. The relief requested only confirms that the "remedy" when information produced in discovery is not readily comprehensible to counsel is further routine discovery, not sanctions. Plaintiff seeks an end run around that follow-up discovery.

13
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS
CASE NO. 5:11-CV-1263-EJD

709472858

Plaintiff's tactics are particularly inappropriate because Plaintiff understands exactly how to get the information he seeks: by discovery and not by a motion for sanctions. Plaintiff noticed—and then withdrew—a 30(b)(6) deposition in May 2013 that would have given him exactly the witness he seeks here, and more. Evans Dec. Exs. C and D. Plaintiff never served another 30(b)(6) notice, though he took a single individual deposition. Similarly, until May 23, 2014, several days after he filed his Motion, Plaintiff had served only three interrogatories, none of which asked for the information he now seeks by the Motion. *See* Evans Dec. Ex. F.

On May 23, 2014, however, Plaintiff served a second set of interrogatories, one of which seeks information that substantially overlaps with the information about Google's databases and log files that this Motion seeks. Evans Dec. Ex. G. The detail in the ***thirty*** subparts of Plaintiff's newly served interrogatory shows he has the information he needs to conduct discovery. It also shows that he understands perfectly well that the proper way to seek this information is by interrogatory and deposition notice—***not*** a motion for sanctions.

That information produced in a complex, technical case is complex and technical cannot be grounds for sanctions. If that were the case, discovery sanctions would be virtually guaranteed in ***any*** litigation that requires any specialized knowledge. In choosing to bring a lawsuit addressing complex and highly technical services, Plaintiff assumed the burden of understanding the information pertinent to his case. It is Plaintiff's duty to shoulder the burden he undertook, not Google's duty to predigest technical evidence for his experts.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion should be denied.

Date: May 28, 2014

Respectfully Submitted,

MAYER BROWN LLP

By: /s/ Edward D. Johnson
Edward D. Johnson
Donald M. Falk
Eric B. Evans