1 **KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
2 Stacey M. Kaplan (Bar No. 241989)
 One Sansome Street, Suite 1850
3 San Francisco, CA 94104
 Telephone: (415) 400-3000
4 Facsimile: (415) 400-3001

5 -and-

6 Sean M. Handler (*Pro Hac Vice*)   **NIX, PATTERSON & ROACH, LLP**
 Matthew L. Mustokoff (*Pro Hac Vice*)   Jeffrey J. Angelovich (*Pro Hac Vice*)
7 Ryan T. Degnan (*Pro Hac Vice*)   Brad E. Seidel (*Pro Hac Vice*)
 Margaret E. Onasch (*Pro Hac Vice*)   Andrew G. Pate (*Pro Hac Vice*)
8 280 King of Prussia Road   Chad E. Ihrig (*Pro Hac Vice*)
 Radnor, PA 19087   3600 N. Capital of Texas Highway
9 Telephone: (610) 667-7706   Building B, Suite 350
 Facsimile: (610) 667-7056   Austin, TX 78746
10    Telephone: (512) 328-5333
 *Interim Co-Class Counsel*   Facsimile: (512) 328-5335

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| RICK WOODS, Individually and On Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>  v.<br><br>GOOGLE INC.,<br><br>            Defendant. | Case No.   11-cv-1263-EJD<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>**Hearing Date: July 22, 2014**<br>**Time: 10:00 a.m.**<br>**Before: Honorable Howard R. Lloyd** |

Google's shameless disregard for this Court's Order is clear. Nothing in Google's opposition suggests Google fully complied with the Order. Rather than address its own noncompliance, Google attempts to sidestep the very issue before the Court, suggesting instead that Plaintiff should conduct more "routine" discovery for the exact material that Google has already been ordered to produce. Such a suggestion is futile here, given that this entire dispute arose because Google failed to provide meaningful responses to Plaintiff's "routine" discovery served more than a year and a half ago. Apparently, the Court's Order compelling answers was not enough to convince Google to play by the rules. As requested in Plaintiff's motion, sanctions against Google are appropriate under these circumstances to prevent further prejudice to Plaintiff and encourage Google to comply with its discovery obligations and this Court's orders.

## I. SUMMARY OF GOOGLE'S MISCONDUCT

Despite Google's attempts to divert the Court's attention to other actions Plaintiff could have taken, the only issue before the Court is whether Google complied with this Court's March 28, 2014 Order ("Order"). *See* Dkt. 147. More than eighteen months ago, Plaintiff submitted relevant discovery requests to Google seeking click data regarding Google's Smart Pricing and Location Targeting features. *See* Motion 2:13–17 (Dkt. 150). Google objected to Plaintiff's discovery requests, asserting superfluous and unfounded objections, and claimed it would meet and confer in good faith to resolve these issues. *See id.* 2:17–3:1. Even after an extensive meet and confer process, Google was steadfast in its refusal to produce the relevant discovery sought by Plaintiff. *See id.* 3:1–17. Google even refused to identify the relevant fields of data it maintains such that Plaintiff could narrow his discovery requests. *See id.* Instead, counsel for Google, Eric Evans, sent two letters declaring Plaintiff had access to all the data available to Google. *See* Pate Decl. to Motion, Exs. L–M (Dkt. 150-1). Mr. Evans knew at the time he sent his letters, or certainly should have known, that such a statement was patently false. Moreover, Mr. Evans' statements have now been demonstrated to be blatantly dishonest.[1]

---

[1] Documents produced by Google revealed Google had considerably more data in its possession than was available to Plaintiff and what was described in Mr. Evans' letters. *See* Motion 3:21–4:9. Mr. Evans has yet to explain why his letter to Plaintiff's counsel contained inaccurate information.

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS
CASE NO. 11-CV-1263-EJD - 1 -

As a result, Plaintiff subsequently filed DDJR #1 (*see* Dkt. 148–49) to, *inter alia*, obtain descriptions of Google's data in an effort to narrow his discovery requests and obtain the information he originally requested. In response, Google continued its stonewalling tactics by claiming the DDJR was not procedurally proper without ever responding to its substance. *See* Order 2:2–3; 5:2–7. After confirming the DDJR was procedurally proper, on March 28, 2014, the Court entered its Order compelling Google to provide the following by April 11, 2014:

1. "descriptions of the log files and database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the log files and database tables;" and

2. "data from log files relating to the clicks (and related impressions) alleged in ¶ 120 of the complaint."

*Id*. 5:20–23. Google failed to comply with both prongs of this Order. Accordingly, on May 14, 2014, Plaintiff filed his Motion for Sanctions ("Motion"). *See* Dkt. 150.

Significantly, Google's Opposition to Plaintiff's Motion for Sanctions (Dkt. 156) ("Opposition") **concedes** Google has not complied with this Court's Order and merely attempts to explain away its failure to do so. Google's response is twofold. *First,* while Google alleges it "complied" with the Order, Google admits it only provided: (a) "limited" and "concise" information in a convoluted, obfuscated fashion that only an expert can distill, instead of providing descriptions of all data fields as it was ordered to do; and (b) three data points for the six clicks at issue in the Order, instead of all the click data from the log files as ordered by the Court. *Second*, Google attempts to persuade the Court the real remedy for its noncompliance is not sanctions, but rather, more "routine" discovery for the same material that is the subject of the Order—material Google has avoided producing for more than a year and a half.[2] Google's Opposition is particularly ironic given Google's propensity to not answer discovery (necessitating the DDJR and Motion).

---

[2] Google attempts to blame Plaintiff for its noncompliance, asserting Plaintiff should have taken a Rule 30(b)(6) deposition of Google to obtain the information he sought through a properly served request for production. The absurdity of Google's position is obvious where Google refuses to provide documents showing the structure and content of the data it maintains and steadfastly refuses to agree to more than one Rule 30(b)(6) deposition. Under these circumstances, a Rule 30(b)(6) deposition would, at best, be entirely inefficient and, at worst, be largely useless. Google should provide the requested (and relevant) information before Plaintiff commences the resource-intensive deposition process.

In short, Google has refused to answer properly served discovery and has now admittedly refused to comply with an Order from this Court. Under these circumstances, sanctions are required to break Google's cycle of noncompliance and ensure Plaintiff can efficiently litigate his case with the necessary information. As demonstrated in Plaintiff's Motion and herein, sanctions are warranted and necessary to end Google's dishonesty, wastefulness, and gamesmanship.

## II. GOOGLE'S NONCOMPLIANCE

Despite Google's attempts to convince the Court of its compliance, Google has failed to comply with the Order in three ways. Specifically, Google has not provided Plaintiff with:

1. "data from log files relating to the clicks (and related impressions) alleged in ¶ 120 of the complaint;"

2. "descriptions of the log files . . . Google maintains with respect to clicks and impressions, including the fields of data contained in the log files . . .;" and

3. "descriptions of the . . . database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the . . . database tables."

Order 5:20–23. Plaintiff addresses each of these failures below.

### A. Google's Failure to Produce the Click Data

The Court ordered Google to produce "data from log files relating to the clicks (and related impressions) alleged in ¶ 120 of the complaint." Order 5:22–23. In its Opposition, Google attempts to sidestep its noncompliance by arguing, "Simply put: Google has provided the information *it understands to be relevant* about these clicks." Opp. 11:1–2 (emphasis added); *see also* Opp. 2:7–9 (describing Google's compliance as "*limited*") (emphasis added). However, the Court did not order Google to produce "*limited*" information or "*simply*" the information Google "*understands to be relevant*." Rather, Google was ordered to produce *all* click data for the six clicks identified in Paragraph 120. Order 5:22–23. Google admittedly did not do so—choosing instead to provide only three data points (the date, time, and IP address) for each of these clicks.[3] In fact, Google's admitted noncompliance is most aptly evinced through Google's "after-the-fact"

---

[3] For example, Google produced no click data relating to Smart Pricing or the geo-location signal used by Google to display Plaintiff's ads, both of which are unquestionably "relevant."

offer to provide additional click data (although improperly limited to the subject of Location Targeting—which is just a subset of what the Court ordered be produced). Opp. 11:2–4.[4]

Had Google complied with the Order, it would have produced, for the six clicks at issue, ***all fields of data maintained in the log files***. This is what the Court ordered and is significant for Plaintiff's development of this case. As Plaintiff stated in his Motion, complying with this Order would "inform Plaintiff of the nature and content of those log files for purposes of narrowing any Smart Pricing data request." Motion 6:14–15. Given that Google continues its refusal to comply with the Order, even in the face of sanctions, it is clear Google has no interest in resolving this issue. Thus, sanctions are necessary and appropriate to secure compliance.

### B. Google's Failure to Provide Descriptions of the Log Files

The Court ordered Google to provide "descriptions of the log files . . . Google maintains with respect to clicks and impressions, including the fields of data contained in the log files . . ." so the parties could meet and confer on the data needed to resolve Google's objections to Plaintiff's discovery requests. Order 5:20–22. Again, Google has failed to comply with the Order. During his deposition, Google engineer Matthew Cary testified about the differences between Google's log files and its database tables. *See* Motion 6:21–26; *see also* Pate Decl. to Motion, Ex. N 208:25–209:22 ("It's not a database."). Google's Opposition makes clear it only attempted to provide some information about ***one*** of its databases (i.e., the "Ads Database")—and ***not*** its log files.

Moreover, Mr. Cary testified about a particular file that "describes the information stored in the protocol buffers," which describes the data fields maintained in log files. *See* Pate Decl. to Motion, Ex. N 208:25–209:22. Counsel for Google stated during Mr. Cary's deposition this file would be part of the "Source Code" inspection that Plaintiff's counsel conducted on April 28, 2014. *See* Pate Decl. to Reply, ¶3. However, contrary to counsel for Google's representation, Google

---

[4] Although Google's Opposition indicates it offered to produce all Location Targeting data from log files (*see* Opp. 2:10–12), it did so only ***after*** filing its Opposition. *See* Declaration of Andrew G. Pate in Support of Plaintiff's Reply ("Pate Decl. to Reply"), Ex. A. As of the date of this Reply, Google has still not advised Plaintiff of where or when such alleged offer was made prior to filing its Opposition. Regardless, this is not what the Court ordered Google to produce.

1    admits it did not produce this relevant file in compliance with the Court's Order.  *See* Opp. 9:23–
2    10:5.  Put simply, Google failed to provide descriptions of the log files and fields of data contained
3    therein.  This failure unquestionably violates the Court's Order, thus warranting sanctions.

### C. Google's Failure to Provide Descriptions of the Database Tables

The Court also ordered Google to provide "descriptions of . . . database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the . . . database tables" so the parties could meet and confer on the data needed to resolve Google's objections to Plaintiff's discovery requests.  *See* Order 5:20–22.  Instead of complying with the Order to resolve the ongoing and substantial discovery issues related to Google's data, Google flouted both the letter and spirit of the Order by producing "descriptions" in such a convoluted manner that it obscured the relevant fields of data.  Such gamesmanship must not be condoned.

As stated in the Motion, Google previously demonstrated its ability to provide a list of fields with descriptions in a reasonable manner.  *See* Pate Decl. to Motion, Exs. L–M.  Google ignores this argument in its Opposition and fails to explain why it cannot do the same here.  Instead, Google claims to have produced "the most concise descriptions of its log files and database tables available."  Opp. 10:3–5.  Yet, that "concise" description contained 900+ documents (improperly designated as "Source Code"), many of which have absolutely nothing to do with a description of a database field.  *See* Pate Decl. to Reply, ¶4.

Moreover, Google's Opposition concedes this "concise" description is incomplete.  *First*, the description relates to only ***one*** of Google's databases (the "Ads Database").  Discovery thus far has revealed Google maintains numerous other relevant databases, and Google makes no effort to explain why it did not provide any information pertaining to these other relevant databases.  *Second*, and noticeably absent from Google's Opposition, neither an employee nor attorney for Google provided an affidavit or declaration attesting that Google produced ***complete*** descriptions of ***all*** database fields.  This would have been simple and expected under these circumstances.  Instead, the declaration submitted by Google's outside lawyer, Eric Evans, merely states Google made available for inspection "information about the log files and database tables Google maintains with

respect to clicks and impressions." Opp., Evans Decl. 2:9–10.  This is a far cry from attesting that Google complied with the Order by describing all data fields.  Indeed, its careful wording suggests descriptions of less than all data fields were produced.

Through its concentrated effort to delay this litigation and avoid disclosing data demonstrating the scope of the harm done to Plaintiff and thousands of advertisers who have been overcharged, it is apparent Google's only interest is in creating discovery disputes, rather than resolving them.  Further, the lengths to which Google is willing to go to conceal its obviously relevant click data shed light on what this data will show about the nature and scope of the harm at issue.  To secure compliance with the Court's Order, Google should be sanctioned for its conduct.

### III. PLAINTIFF'S MOTION WAS PROCEDURALLY PROPER

Google erroneously asserts Plaintiff was required to seek leave of court prior to filing his Motion.  As support for this misplaced contention, Google points to Section 2.A of the Court's Standing Order re: Civil Discovery Disputes (the "Standing Order").  In actuality, however, prior to filing the instant motion, Plaintiff undertook each of the steps set forth in Section 2.A.

As discussed *supra*, the discovery requests giving rise to the Motion were originally served ***more than a year ago***.  These requests were the subject of several disputes between the parties and eventually required court intervention in the form of DDJR #1.  *See* DDJR #1 (Dkt. 148–49), generally.  It was only after Google failed to comply with the Order that Plaintiff sought sanctions.  Thus, in attempting to resolve the parties' disputes, the parties: (1) "use[d] the customary convenient means of communication" to try to reach agreement; (2) met in person in an attempt to reach "full agreement"; (3) filed DDJR #1; and (4) awaited the Court's Order.  When Google failed to comply with the Order, Plaintiff then diligently followed the procedure set out in Section 2.F which provides: "Any party seeking an award of attorney fees or other expenses in connection with a discovery dispute shall file a noticed motion pursuant to the Northern District Local Rules.  It would ordinarily be presumptuous to file such a motion before the court has ruled on the dispute."  Standing Order, §2.F.  Section 2.F contemplates only a "noticed motion pursuant to the Northern

District Local Rules" and therefore, notwithstanding Google's misreading of the Standing Order, Plaintiff was not required to seek leave of Court.

Google's assertion that an additional meet and confer was required prior to Plaintiff's filing of the Motion is also wrong. Google mistakenly relies on Section 2.C of the Standing Order, a provision which applies to the underlying discovery dispute. Here, the parties engaged in several meet and confer sessions prior to filing DDJR #1, and, since that time, met in person on April 29, 2014, at which time Plaintiff's attempt to elicit compliance was rebuffed by Google. *See* Pate Decl. to Reply, ¶5.

Further, Federal Rule of Civil Procedure 37 only requires "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37. Plaintiff complied with this requirement by certifying in DDJR #1 that Plaintiff's counsel "complied with Magistrate Judge Lloyd's Standing Order Re: Civil Discovery Disputes." (Dkt. 148–49). Similarly, Civil Local Rules 37-1 and 37-4 do not require a meet and confer regarding the motion for sanctions prior to filing. Rather Civil Local Rule 37-1 mandates that "counsel have previously conferred for the purpose of attempting to resolve all disputed issues," and Civil Local Rule 37-4 requires that the motion "comply with Civil L.R. 7-8 and Civil L.R. 7-2." Plaintiff complied with these Rules. *See* Pate Decl. to Reply, Ex. B. In addition, Plaintiff offered to attempt to resolve the issues set forth in the Motion after filing. *See id.* Google, however, never responded.

## IV. PLAINTIFF'S REQUESTED SANCTIONS ARE APPROPRIATE

A court has broad discretion in imposing sanctions for discovery abuse pursuant to Federal Rule of Civil Procedure 37(b)(2)(A). *See Apple Inc. v. Samsung Electronics Co., Ltd.*, 11-cv-1846, 2012 WL 1595784, at *3 (N.D. Cal. May 4, 2012) ("The selection of the particular sanction is left to the discretion of the trial court."). The court's discretion is limited only by the requirements that the sanctions be "just" and "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

Plaintiff is not seeking to unduly penalize Google, but simply to compel Google to comply with the Court's Order so that Plaintiff can prosecute his claims swiftly without further stonewalling and gamesmanship from Google. The requested sanctions are both "just" and narrowly tailored. For example, Plaintiff requests the Court order Google to provide "descriptions of the log files and database tables Google maintains with respect to clicks and impressions, including the fields of data contained in the log files and database tables, (as previously ordered by the Court), in a reasonably interpretable format." Motion 10:4–6. This request seeks nothing more than to compel Google to comply with the Court's Order. *See* Order 5:20–23. Such relief is undeniably "just" and "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 707.

Similarly, Plaintiff's request that Google be required to produce a "witness competent to explain the information provided thereby and to further answer questions about the Smart Pricing and Location Targeting data Google possesses in both log files and database tables," (Motion 10:9–13), is appropriate given Google's hide-the-ball approach to discovery. Such a deposition would allow Plaintiff to confirm Google had in fact complied with the Order and produced the requested discovery, which is necessary to enable Plaintiff to propound reasonable discovery requests.[5]

---

[5] Google's arguments regarding Plaintiff's withdrawn 30(b)(6) deposition notice and Plaintiff's recent interrogatories are red herrings intended to distract the Court from Google's pattern of noncompliance. Notably, Plaintiff withdrew his 30(b)(6) notice after Google indicated it would not respond to more than one such notice. Plaintiff determined this single 30(b)(6) notice would be best served following the receipt of certain discovery. Contrary to Google's argument, Plaintiff's litigation strategy does not preclude a court-ordered deposition regarding Google's log files and database tables.

Similarly, the fact that Plaintiff was able to identify, and include in a recent interrogatory, certain data fields for which Google collects and maintains information, does not excuse Google from its obligation to comply with this Court's Order. The interrogatory Plaintiff served on May 23, 2014 is based on the very limited data and information that Plaintiff has received to date. Plaintiff's proactive discovery efforts to obtain information to further develop his case do not relieve Google of its burden to comply with the Order. Rather than participate in good faith in the discovery process, Google wants Plaintiff to continue to try and guess the right question to ask without telling Plaintiff anything about its databases or log files, despite the fact that proper discovery requests on this very issue have been pending for more than a year.

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS
CASE NO. 11-cv-1263-EJD - 8 -

Further, Plaintiff's request that Google bear the burden of traveling to Austin, Texas for future in-person discovery conferences and the 30(b)(6) deposition discussed above is likewise an appropriate sanction given Google's pattern of noncompliance. Plaintiff is not seeking to avoid further investment in the case, *see* Opp. 12:10–14, but rather is seeking to avoid expenses necessitated only by Google's gamesmanship.[6] Moreover, Section 2.C of the Court's Standing Order requires "**Lead Counsel**" to meet "in person for as long as and as often as is needed to reach full agreement" regarding a discovery dispute. Standing Order, §2.C. Here, Lead Counsel is located in Austin, Texas. Thus, Google's contention that "Plaintiff[] [has] three attorneys of record with offices in San Francisco," Opp. 12:5–8, is irrelevant.[7] Requiring Google to travel to Plaintiff's counsel's office in Austin, Texas for further discovery conferences and the requested deposition would serve to discourage Google from engaging in further discovery abuse. *See, e.g.*, *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1370 (9th Cir. 1980) ("[S]anctions were also necessary to further the third objective of Rule 37(b): generally deterring flagrant disobedience and callous disregard of court discovery orders.").[8]

---

[6] For example, Google criticizes Plaintiff for failing to bring an expert to California to review the 900+ documents it improperly designated as containing "Source Code." Opp. 1:3–4, 1:26–27; 4:22–5:1; and 10:15–17. However, because the documents made available for review by Google were not complete or responsive, it would have been inefficient and wasteful for Plaintiff to have his expert conduct such a review.

[7] Google's argument regarding counsel for Plaintiff's access to aircraft is also irrelevant, as Google undeniably has access to private aircraft. *See* http://www.fastcompany.com/3023502/check-out-googles-new-82-million-corporate-jet-facility.

[8] Despite Plaintiff's explicit indication in his Motion for Sanctions that he "does not request a ruling regarding the propriety of the 'Source Code' designation," Motion 5, n.2, Google accuses Plaintiff of seeking to circumvent the Court's Standing Order and challenge Google's "Source Code" designations. This argument misconstrues the relief Plaintiff seeks. Through the Motion, Plaintiff is not requesting Google de-designate any Source Code documents. Rather, Plaintiff is seeking the descriptions and data the Court originally ordered Google to provide. To the extent any such descriptions are properly designated Source Code, then Google may produce them for inspection at Plaintiff's Counsel's offices in Austin or Google's offices in Austin, where all agreed upon precautions to protect Source Code can be employed.

The sanctions Plaintiff seeks are not only "just" and narrowly tailored to Google's failure to comply with the Court's Order, but are also well within the Court's discretion.

## V. CONCLUSION

Plaintiff served proper discovery requests. Google objected to these requests asserting it would meet and confer in good faith to further respond. Plaintiff exhausted the meet and confer process with little progress. Specifically, Google failed to provide the most basic information necessary for any meaningful meet and confer, which led to DDJR # 1. The Court then issued its Order compelling production of certain information, which Google admits it has still failed to provide. Under these circumstances, sanctions are not only appropriate, but also necessary.

Despite Google's protestations to the contrary, the sanctions requested by Plaintiff are tailored to address Google's improper conduct. However, should the Court choose to exercise its discretion to award other sanctions, the Court could certainly and properly consider striking Google's objections to Plaintiff's First Requests (Nos. 3 & 9) and Second Requests (Nos. 7, 12, 22, 23, 24 & 37) and ordering Google to immediately produce the requested information. Additionally, given the ongoing discovery disputes and Google's description of this case as "complex and technical" and involving the "most complex SQL databases in the world," the Court would certainly be justified in appointing a Special Master (as previously requested by Plaintiff), at Google's expense, to facilitate the exchange of relevant information in this case. *See* DDJR #2 7:20–24 (Dkt. 130); *see also* Standing Order, §2.G ("When the parties have become, or expect to become, engaged in a succession of discovery disputes…the court recommends they consider appointment of a Special Master.").

Regardless of the sanctions that may be issued, one thing is clear: Google's incessant stonewalling of Plaintiff's efforts to obtain relevant discovery in this matter must end. Plaintiff expected the Court's Order would have convinced Google to participate in the discovery process in good faith. However, Google continues the same pattern and practice of discovery abuse that brought the parties to file the initial DDJR nearly a year ago. Plaintiff respectfully requests the Court sanction Google to end this cycle of misconduct and secure compliance with the Order.

| | | |
|---|---|---|
| Dated: June 4, 2014 | | Respectfully submitted, |

/s/ Andrew G. Pate
**NIX, PATTERSON & ROACH, LLP**
Jeffrey J. Angelovich (*Admitted Pro Hac Vice*)
Brad E. Seidel (*Admitted Pro Hac Vice*)
Andrew G. Pate (*Admitted Pro Hac Vice*)
Chad E. Ihrig (*Admitted Pro Hac Vice*)
3600 N. Capital of Texas Highway
Building B, Suite 350
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Stacey M. Kaplan
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

Sean M. Handler (*Pro Hac Vice*)
Matthew L. Mustokoff (*Pro Hac Vice*)
Ryan T. Degnan (*Pro Hac Vice*)
Margaret E. Onasch (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Interim Co-Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 4, 2014.

*/s/ Andrew G. Pate*