| | |
|---|---|
| **KESSLER TOPAZ**<br>**MELTZER & CHECK, LLP**<br>Stacey M. Kaplan (Bar No. 241989)<br>One Sansome Street, Suite 1850<br>San Francisco, CA 94104<br>Telephone: (415) 400-3000<br>Facsimile: (415) 400-3001<br><br>-and-<br><br>Sean M. Handler (*Pro Hac Vice*)<br>Matthew L. Mustokoff (*Pro Hac Vice*)<br>Ryan T. Degnan (*Pro Hac Vice*)<br>Margaret E. Onasch (*Pro Hac Vice*)<br>Daniel C. Mulveny (*Pro Hac Vice*)<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Telephone: (610) 667-7706<br>Facsimile: (610) 667-7056<br><br>*Interim Co-Class Counsel* | **NIX, PATTERSON & ROACH, LLP**<br>Jeffrey J. Angelovich (*Pro Hac Vice*)<br>Brad E. Seidel (*Pro Hac Vice*)<br>Chad E. Ihrig (*Pro Hac Vice*)<br>3600 N. Capital of Texas Highway<br>Building B, Suite 350<br>Austin, TX 78746<br>Telephone: (512) 328-5333<br>Facsimile: (512) 328-5335<br><br>-and-<br><br>**NIX, PATTERSON & ROACH, LLP**<br>Andrew G. Pate (*Pro Hac Vice*)<br>205 Linda Drive<br>Daingerfield, Texas 75638<br>Telephone: (903) 645-7333<br>Facsimile: (903) 645-4415 |

**MAYER BROWN LLP**
Edward D. Johnson (SBN189475)
wjohnson@mayerbrown.com
Donald M. Falk (SBN150256)
dfalk@mayerbrown.com
Eric B. Evans (SBN 232476)
eevans@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

*Attorneys for Defendant Google Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| RICK WOODS, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> v.<br><br>GOOGLE INC.,<br><br>    Defendant. | Case No. 5:11-cv-1263-EJD<br><br>**DISCOVERY DISPUTE JOINT REPORT # 4** |

**PUBLIC VERSION**

1

The parties, by and through undersigned counsel, submit this Discovery Dispute Joint Report # 4 ("Joint Report") under this Court's Standing Order Re: Civil Discovery Disputes.

<u>Plaintiff's Statement of the Issue:</u> Whether Google must answer Interrogatory No. 1 of Plaintiff's Second Set of Interrogatories and Third Set of Requests for Production of Documents ("Interrogatory 1").

<u>Defendant's Statement of the Issue:</u> Whether Google must supplement its response in the manner requested by Plaintiff to Interrogatory No. 1 of Plaintiff's Second Set of Interrogatories and Third Set of Requests for Production of Documents ("Interrogatory 1").

<u>Joint Meeting Information</u>: The parties have each written to each other on this issue (Plaintiff on July 17, August 1, and August 25 and Google on August 1, 2014, August 27, 2014 and September 2, 2014). The parties also have had three discussions in an attempt to resolve their differences: telephone conferences on August 11 and 28 and an in-person meet and confer, including lead counsel, on August 5.

<u>Relevant Dates:</u> Plaintiff served his Second Set of Interrogatories and Third Set of Requests for Production on May 23, 2014. Defendant served its Objections and Responses to on June 26, 2014. The fact discovery cutoff date is December 31, 2014. Plaintiff's motion for class certification is due on January 20, 2015, along with expert reports.

<u>Attestations:</u> I, Brad E. Seidel, Lead Counsel for Plaintiff, attest that I have complied with Magistrate Judge Lloyd's Standing Order Re: Civil Discovery Disputes.

/s Brad Seidel

I, Edward D. Johnson, Lead Counsel for Defendant, attest that I have complied with Magistrate Judge Lloyd's Standing Order Re: Civil Discovery Disputes.

/s Edward D. Johnson

## I. PLAINTIFF'S STATEMENT

This discovery dispute concerns information highly relevant to Plaintiff's claims. Plaintiff, an advertiser in Google's AdWords program, alleges Google overcharged him and the putative class for failing to "Smart Price" certain clicks on the "Display Network." Plaintiff also alleges Google improperly charged him for clicks it failed to "Location Target" because the clicks came from users outside the geographic area in which Plaintiff specified his ads should only appear. On May 23, 2014, Plaintiff served Interrogatory 1, which requests Defendant to state certain information related to each click Defendant charged Plaintiff. *See* Exhibit A at 11–12. The information requested for each click relates to, *inter alia*: (1) identification of actionable clicks; (2) the amount by which Plaintiff was harmed for each actionable click; (3) the damages Plaintiff may recover for each actionable click; and (4) the nature of the harm for each actionable click (*i.e.* failure to Smart Price or Location Target properly). Thus, Interrogatory 1 is extremely pertinent to Plaintiff's allegations and the advancement of deposition discovery so that Plaintiff may question witnesses about his actionable clicks.[1]

To date, Google has objected to and refused to answer Interrogatory 1, claiming it will only "produce business records from which the answer to an interrogatory may be determined." *See* Exhibit B at 6. Since serving its objections, Google has confirmed that these "business records" are the "log files" for Plaintiff's clicks and that the burden of deriving the answers from these files is "substantially the same" for both parties. Google's assertion is baseless. ***First***, the log files—practically indecipherable in the form produced—do not contain the numerous pieces of information requested for each of Plaintiff's clicks. ***Second***, the record demonstrates that Google has multiple tools, unavailable to Plaintiff, with which it can analyze its data (including the log files) and derive the answer to Interrogatory 1. ***Third***, Plaintiff is entitled to a complete and sworn answer to Interrogatory 1; he is *not*, as Google suggests, required to guess about the meaning, interpretation and completeness of the data in log files that are incomprehensible to Google's own employees in the form in which they were produced.[2]

---

[1] While Plaintiff intends to complete fact depositions by the end of November 2014, Google has not provided dates or, as described herein, the data necessary for the remaining depositions
[2] While the log files are responsive to other discovery requests propounded by Plaintiff, they

3

DISCOVERY DISPUTE JOINT REPORT # 4
CASE NO. 5:11-CV-1263-EJD

710934997
710934997

**A. Background of Joint Meeting**

During the parties' in-person meet and confer on August 5, Defendant's counsel requested two additional weeks to discuss its position with Defendant and determine whether Defendant would meaningfully supplement Interrogatory 1. Plaintiff agreed to hold the Joint Report process in abeyance for that period of time, which expired on August 19.

Plaintiff's counsel attempted to discuss this matter again on August 21 following a deposition, but Defendant's counsel was unable to have a meaningful discussion. On August 25, Plaintiff sent Defendant a letter confirming the parties' positions and that this Joint Report is due on September 2 based on the 14-day deadline in section 2(D) of the Court's Standing Order re: Civil Discovery Disputes (*i.e.* 14 days from August 19). On August 27, Defendant suddenly reversed its position, responded in writing and claimed it "will not stand on its burden objections and will supplement its responses" to Interrogatory 1 by September 17.[3] Plaintiff repeatedly requested, by letter, email, and telephone calls, a description of the "supplement" Defendant anticipated making, such as a sample report or descriptions of the fields of data Defendant would report, so that Plaintiff could evaluate whether the supplement would actually resolve the open issues with Interrogatory 1. Defendant did not provide any such detail and only vaguely and generically responded that it would provide "compilations of information from business records." Thus, the request for an additional three weeks appears to be another effort to delay discovery, and Plaintiff must proceed with the Joint Report to avoid further delay.

**B. The Business Records Production Defendant Provided Does Not Fully Answer Interrogatory 1**

Interrogatory 1 requests data points about each of Plaintiff's clicks that are relevant to the merits of Plaintiff's claims. "A party answering interrogatories has an affirmative duty to furnish any and all information available to the party." *Franklin v. Smalls*, 2012 U.S. Dist. LEXIS 150312, at *18–19 (S.D. Cal. Oct. 18, 2012) (citations omitted). Each interrogatory must be

---

require substantial interpretation and, even then, will not answer the Interrogatory.
[3] Defendant's only asserted basis for withdrawing its burden objections was the entry of the Court's recent scheduling order. Defendant's complete reversal on the supposed burden regarding Interrogatory 1 demonstrates Google had no true basis for asserting those objections in the first place and merely used them to delay and avoid discovery.

4

answered "separately and fully in writing under oath." *Id.* A party may respond to an interrogatory by referencing business records only if the information is "fully contained in the documents." *See RSI Corp. v. IBM*, 2012 U.S. Dist. LEXIS 105986, at *3 (N.D. Cal. July 30, 2012) (citations omitted).[4] Business records that do not contain all information requested are insufficient to answer an interrogatory. *See Chudacoff v. Univ. Med. Ctr.*, 2013 U.S. Dist. LEXIS 57193, at *7–10 (D. Nev. Apr. 22, 2013) (holding business records "insufficient and evasive" to answer interrogatory because "there is no reasonable certainty that the [business records] contain all of the requested information"); *RSI Corp.*, 2012 U.S. Dist. LEXIS 105986, at *4–6 (granting motion to compel where business records ***"do not contain key data fields"***); *Forest Guardians v. Kempthorne*, 2008 U.S. Dist. LEXIS 76234, at *6–8 (S.D. Cal. Sept. 29, 2008) (holding business records "wholly insufficient" for failure to include all communications requested by interrogatory). Finally, an evasive or incomplete answer to an interrogatory is "to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37 (a)(4). Here, the answer to Interrogatory 1 is not fully contained in the business records produced by Google and, therefore, Google has failed to answer.

Google has not, and cannot, deny that the business records at issue (*i.e.* log files) do not include numerous pieces of information sought by Interrogatory 1 including, without limitation, the information relating to paragraphs (h-j), (l-y), (bb), (cc), or (dd). *See* Exhibit A at 11–12. Nor can Google deny that it possesses additional information related to Plaintiff's clicks beyond the log files it produced. For example, Google has repeatedly acknowledged that its database— not the log files—is the primary location of information about AdWords: "The ads database is an extremely large database … and it is the ***primary non-duplicative location of information*** about AdWords." *See* Transcript of August 5 Hearing at 7:17–19 (Dkt. 183); *see also* Dkt. 156 at 4 ("The Ads Database, [is] the ***master database*** that Google uses to track clicks and impressions[.]"). Nevertheless, Google has provided no reports or data from the Ads Database, or any other database in its possession. Furthermore, Google's answers to other interrogatories

---

[4] Plaintiff is happy to provide a declaration or a sample of the log files demonstrating the deficiencies, as discussed in *RSI Corp.*, should the Court find it helpful.

5

DISCOVERY DISPUTE JOINT REPORT # 4
CASE NO. 5:11-CV-1263-EJD

710934997
710934997

demonstrate the ease with which it is able to run reports with specific data fields, including the types of information requested in Interrogatory 1. For example, in response to another interrogatory, Google provided a spreadsheet listing three of Plaintiff's clicks that it admits were not Smart Priced. Several of the data fields in that spreadsheet do not appear in the log files ███████████████████████████████████████████████████████████████████████████████ Moreover, Google admits it did not rely on the log files to generate this report. *See* Transcript of August 5 Hearing at 15:6–8 (Dkt. 183) (stating Google pulled the information in the spreadsheet "based on looking at *information that's duplicated in the log files* that has gone to Plaintiff already"). In short, the log files do not fully answer Interrogatory 1, and are certainly not the sole or "primary" source of information Google would use to derive the answer.

**C. The Burden of Deriving the Answer from the Business Records Produced By Defendant Is <u>Not</u> the Same for Plaintiff as It Is for Defendant**

The nature of the log files also renders them inadequate to answer Interrogatory 1. A party may rely on business records to answer an interrogatory "only if the burden of deriving the answer to the interrogatory is substantially the same for the propounding party as the responding party." *RSI Corp.*, 2012 U.S. Dist. LEXIS 105986, at *3 (citations omitted). "A responding party cannot 'foist a mass of records on his interrogator when their deciphering is feasible only for one familiar with the records.'" *Id.* If Defendant already knows the answers to Plaintiff's questions, it is far more efficient for Defendant to provide those answers rather than requiring Plaintiff to derive them itself. *Id.* at *5–6. Defendant cannot avoid answering Interrogatory 1 by "imposing on [Plaintiff] a mass of business records from which answers cannot be ascertained by a person unfamiliar with them." *Chudacoff*, 2013 U.S. Dist. LEXIS 57193, at *7–8.

Google produced the log files as *raw text files*. Google cannot dispute that it has multiple internal tools available to it with which it may analyze and report from these log files (and other data sources) to derive the answer to Interrogatory 1. Plaintiff has no access to such tools. Plaintiff questioned two Google employees about these log files, and neither could explain what they were, much less meaningfully interpret them. One such witness described the log files in the form Google produced them as a "pretty inefficient" way to look at this data. This testimony

6

is entirely consistent with Google's document production, which establishes that internal tools are used by Defendant to analyze these types of log files.[5] Claiming that Plaintiff may derive the answer to Interrogatory 1 from the log files as easily as Google is plainly incorrect when only Google: (a) knows the meaning of the fields of data in the log files, (b) possesses the necessary tools to analyze and report from the log files, and (c) has access to the Ads Database and other data sources Google would *actually* rely on to answer to Interrogatory 1.[6]

### D. Defendant's Business Records Production Provides No Explanation for How the Answer to Interrogatory 1 Can Be Derived From Its Contents

Defendant has complied with none of the requirements in Rule 33 to indicate its production of log files is sufficient to answer Interrogatory 1. For business records to be sufficient, Defendant "must not only certify that the answer may be found in the records referenced by it, but also *'must specify where in the records the answers can be found.'" Chudacoff*, 2013 U.S. Dist. LEXIS 57193, at *8 (emphasis added). The log files are strings of text filled with variables and fields about which Plaintiff has little to no information. Defendant has not provided *any* information connecting any such fields or variables to the information requested by Interrogatory 1, or even connecting such fields or variables to Plaintiff's own clicks. Instead, Google has simply dumped these log files onto Plaintiff and essentially said, "figure it out yourself." This, however, is not Plaintiff's burden under Rule 33. Google cannot leave Plaintiff to guess about the meaning, completeness, and interpretation of log files that are incomprehensible to Google's own employees (and not their "primary" source of information). Such discovery tactics reflect poorly on the entire judicial process and the search for truth.

Plaintiff's Proposal: Defendant must provide a complete and verified answer to Interrogatory 1 and cannot rely on a production of its raw log files that fail to provide an answer.

---

[5] *See, e.g.*, GOOG00547085 ███████████████
  GOOG00547089 ████████████████████
  ████████████ (emphasis in original); GOOG00547107
████████████████████████████████████████████████

[6] Google's position regarding the burden of deriving an answer to Interrogatory 1 is the height of hypocrisy given Google's recent argument that this very interrogatory was the "***proper way***" to obtain information regarding Plaintiff's click data. Dkt. 156 at 14:10–13.

7

## II. DEFENDANT'S STATEMENT

Plaintiff's DDJR 4 is both premature and unnecessary. Google already has answered Plaintiff's Interrogatory 1 and had agreed to further supplement its answer in two weeks time in a way that should resolve any ongoing dispute. Google's initial answer provided Plaintiff with the most comprehensive set of business records available to Google, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Plaintiff is fully capable of extracting whatever information he now claims he needs from this data.[7] Perhaps Plaintiff already has done so. Nor can Plaintiff claim that the burden of extracting the information is less for Google than for himself. However, during meet and confer negotiations with the Plaintiff, Google agreed to supplement its response by September 17, 2014 with further analysis and correlations of these business records, including details of portions of the Interrogatory for which Google does not have information sufficient to allow a response.

Nevertheless, Plaintiff has insisted on rushing to Court with a non-existent discovery dispute (deliberately timed to fall over the Labor Day weekend). Plaintiff did not provide an initial draft of his proposed DDJR until Friday afternoon at 4pm PST, delivered with the ultimatum that Google must provide its response by 3pm PST the day after the holiday weekend or face another unilateral filing by Plaintiff. Plaintiff did not deliver his updated draft of his proposed DDJR until this morning but once again insisted that he would file the DDJR unilaterally this afternoon (September 2). Of course, this approach is not consistent with a genuine attempt to resolve the parties' dispute without resorting to the Court. Plaintiff's only explanation for his premature filing is that he wants additional details about the supplementation and Google was unable to compile all the "samples" of the information it would provide under the supplementation over the holiday weekend when many key Google personnel had limited availability.[8] Plaintiff's arbitrary setting of deadlines is especially gratuitous in light of the fact

---

[7] Plaintiff now has retained an expert with "20 years of experience" in the information systems field, who identifies himself as a "leading expert in the areas of search engine optimization and e-commerce."

[8] Google was able to provide one of the samples requested by Plaintiff on Saturday, August 30 as to its proposed supplementation to Interrogatory 2 in Set 2. Google was simply not able to

8

1  that Google has already committed to provide a supplemental response by September 17.
2  Plaintiff's DDJR should be denied.

### A. Google Has Already Agreed to Supplement Its Response To Rog 1

Despite the fact that Google's production of log files meets its obligations to respond to Interrogatory 1 under 33(d), *see* II.B below, Google has agreed to supplement its response *in two weeks time* in the manner demanded by Plaintiff. As explained below (*infra* at 12), Google will be performing the same work Plaintiff could have done had he chosen to do so himself. The unnecessary nature of Plaintiff's DDJR filing is illustrated by the chronology of discussions between counsel:

- **On August 5**, during the in-person meet and confer, counsel for Google said they would consider whether to supplement its response to Interrogatory 1 and would respond with a decision in about two weeks time (the same time frame Plaintiff had promised to respond to Google on other issues). During the meet and confer, Plaintiff never stated that he regarded the parties to be at an impasse or that he understood any deadline under the Court's Standing Order to have been triggered.

- **On August 21**, during the deposition of Derek Coatney, Plaintiff's counsel inquired about Google's response on whether it would supplement its response to Interrogatory 1 and was informed that Google would respond soon, probably with an agreement to supplement.

- **On August 25**, instead of inquiring into the status of Google's likely offer to supplement, Plaintiff wrote Google, unilaterally declaring an "impasse". Plaintiff then arbitrarily declared that a DDJR must be filed on September 2 – the day after a holiday weekend.[9]

- **On August 27**, Google wrote to Plaintiff stating that in "light of the Court's recent scheduling order ... and the parties' efforts to schedule Google's 30(b)(6) deposition and depositions of individual witnesses, Google will not stand on its burden objections and will supplement its responses." Plaintiff claims Google "withdrew" its burden objection to Interrogatory 1. Not so. Google's proposed September 17 supplementation, while in itself entailing considerable burden, does not waive Google's well founded burden objection. Given that the 14 day deadline for filing the DDJR had expired, counsel for

---

provide all the samples requested in the lead up to the holiday weekend.
[9] Under this Court's Standing Order, a DDJR was due by August 19 – 14 days after the last in-person meet and confer between lead counsel. Standing Order 2.D ("If the meeting(s) between lead counsel do not resolve the dispute, then within 14 calendar days after the last LEAD COUNSEL IN PERSON session, the parties shall file . . . a [DDJR]"). As a technical matter, his time to file DDJRs on those matters expired two weeks ago. But since Plaintiff chose not to file at that time, it makes sense for him simply to defer those issues until he can review the supplemental responses two weeks hence.

9

DISCOVERY DISPUTE JOINT REPORT # 4
CASE NO. 5:11-CV-1263-EJD

710934997
710934997

Google offered that the parties meet and confer in person after the deposition of Chrix Finne on August 10, 2014.

- **On August 28**, Plaintiff wrote Google stating that he was still unsatisfied by this response and that he would be filing his DDJR on the Tuesday after Labor Day weekend unless he received further detail as to the nature of Google's supplementation.

- **On August 28**, in an effort to meet Plaintiff's demands and reach agreement, counsel for Google called Plaintiff's counsel and provided further detail as to what the supplementation as to Interrogatory 1 would include. Counsel for Google reiterated that this supplementation would take place by September 17.[10]

Google told Plaintiff that its supplementation will contain:

- *a file or files that include all of the information available about the clicks on Plaintiff's ads from Google's Ads Database; and*

- *an explanation of where each of the data points Plaintiff claims is missing (h-j), (l-y), (bb), (cc), or (dd) can be found in that file or, if Google doesn't track that data point, and statement that it doesn't.*

The file will be created by querying both log and database information.

Plaintiff has rejected this description as "insufficient" without any further explanation, demanding that he be provided a "sample" of the supplementation over a holiday weekend. Google was unable to put together this sample in such a short time frame, especially given that Plaintiff had requested other samples as well on the same day.[11] Notwithstanding Google's ongoing efforts to resolve the dispute, Plaintiff insisted on proceeding with this DDJR[12]

As noted above, Plaintiff shortly will receive information from the Ads Database. This will include tens of thousands of data points Plaintiff has requested, where Google tracks those data points. Google will produce this information even when this database information duplicates log files it has already produced. Plaintiff's request for any further relief should therefore be denied.

---

[10] In providing this information and continuing to meet and confer with Plaintiff, counsel for Google fulfilled its "obligation to diligently strive to resolve [the dispute] without court involvement" in light of "the limitations on available judicial resources." Standing Order 2. The same cannot be said for counsel for Plaintiff who have insisted on bringing this DDJR even in the face of Google's promise to provide the information Plaintiff is demanding.
[11] *See supra* footnote 8.
[12] If Plaintiff still has questions regarding Google's supplemented responses, it will have ample opportunity to question a designee from Google on this topic. Several of the 30(b)(6) topics noticed by Plaintiff overlap with the information sought in Interrogatory 1.

10

DISCOVERY DISPUTE JOINT REPORT # 4
CASE NO. 5:11-CV-1263-EJD

710934997
710934997

### B. Google Already Provided A Response to Interrogatory 1 That Was Fully Compliant With Rule 33(d)

Pursuant to Fed. R. Civ. P. 33(d), a producing party may answer an interrogatory by specifying business records "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). The "primary purpose" of Fed. R. Civ. P. 33(d) is to "shift the time and cost burden, of perusing documents in order to supply answers to discovery requests, from the producing party to the party seeking the information." *U.S. S.E.C. v. Elfindepan,* 206 F.R.D. 574, 576 (M.D.N.C.2002). Rule 33(d) applies "especially to interrogatories which require a party to engage in burdensome or expensive research into his own business records in order to give an answer." *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 29 (D.D.C. 2012).

When a party files a motion to compel challenging a 33(d) election, the moving party "must make a prima facie showing that the use of Rule 33(d) is somehow inadequate to the task of answering the discovery, whether because the information is not fully contained in the documents, is too difficult to extract." *Cefalu v. Holder*, 2013 WL 4102160, at *3 (N.D. Cal. Aug. 12, 2013) (Corley, J.). "The burden then shifts to the producing party to justify use of Rule 33(d) instead of answering the interrogatories." *Id.* Because Plaintiff has not made his *prima facie* showing, his demand for supplementation should be denied.

On May 23, Plaintiff served Interrogatory 1. Exhibit A. Interrogatory 1 requested the identification of over 30 categories of information for the 894 clicks on Plaintiff's ads during the class period – totaling a *demand for 26,000 individual items of detail*. On June 26, Google objected and responded that it would produce "business records" in lieu of providing individual answers as to each piece of information, many of which are not available in any Google information source because Google does not track them in the manner Plaintiff assumes. On July 24, Google produced log files reflecting the data Google maintained on the clicks on each one of Plaintiff's ads.

But *even before Plaintiff received these business records*, Plaintiff's counsel claimed that the response would be inadequate under Rule 33(d). The parties met and conferred in person on

11

DISCOVERY DISPUTE JOINT REPORT # 4
CASE NO. 5:11-CV-1263-EJD

710934997
710934997

August 5. At that time, Plaintiff again complained that the log files were insufficient, again without explaining what he found wanting. On August 25, Plaintiff identified the "specifics" of his claimed deficiencies. None of the Plaintiff's proffered reasons identifies any actual deficiency under Rule 33(d):[13]

- *First*, Plaintiff claims Google is obligated to "interpret" the log files. But Plaintiff himself clearly has been able to do this already. For example, Plaintiff claims that the log files do not contain information as to subparts (h-j), (l-y), (bb), (cc), or (dd). To make this assessment, Plaintiff must have been able to ascertain information as to the other subparts in the log files. Plaintiff claims that Google employee deponents have not been able to interpret these log files—but Plaintiff has not used the log files with 30(b)(6) or other qualified witnesses, who use such information in their daily work.

- *Second*, Plaintiff claims that Google must use its multiple "tools" to "analyze and report from these log files" in response to Interrogatory 1. But Google *did use those tools* to extract the produced log files. Google's specialized analysis tools are optimized for search and analysis of the vast number of log entries that it generates on a given day, not obtaining categories of information regarding specific clicks on ads. The analysis demanded by Plaintiff requires a spreadsheet program and a text editor with support for regular expressions, both of which are publicly available tools.

- *Third,* Plaintiff claims that Google must produce data from Google's Ads Database in response to Interrogatory 1. But the information in Google's Ads Database *originated from the logs which Google produced*. In any event, so that the parties can finally put this issue behind them, Google's September 17 supplementation will contain information from the Ads Database, including the 26,000 + data points Plaintiff has requested, where Google tracks those data points, even when this information duplicates the log files already provided to Plaintiff.

- *Finally*, Plaintiff has failed to demonstrate that deriving the 26,000 + pieces of information from the log files would be more burdensome for Plaintiff than for Google. As noted above, once the log files are extracted from Google's databases, Plaintiff can use a text editor to transpose the data into a table. Google will have to go through this same process. In any case, this issue is now moot in light of Google's agreement to supplement with the further compilation Plaintiff should have, but refused to, perform.

The September 17 supplementation in the particular format demanded by Plaintiff will go well beyond Google's obligation under the Federal Rules. Indeed, courts have held that, where the business records contain the requested information, parties cannot demand that the

---

[13] As for the information Plaintiff claims is "missing" from the log files, Google has offered to work with Plaintiff to either identify where the information is, or verify that Google does not track the information requested.

12

710934997
710934997

1  data be provided in a particular format such as Plaintiff has demanded. In *E.E.O.C. v. CRST Van*
2  *Expedited, Inc.*, 256 F.R.D. 633, 638 (N.D. Iowa, 2009), the EEOC demanded that the defendant
3  produce a "summary spreadsheet" that extracted information from the business records the
4  defendant produced pursuant to 33(d). *Id*. at 638. The district court denied the EEOC's motion
5  to compel, finding that because the records contained the requested information, the defendant
6  was under no obligation to create the specified spreadsheet. *Id*. at 638; *see also Baxter*
7  *Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, 2008 WL 5272186, at *2 (N.D. Cal.
8  Dec. 15, 2008) (holding that defendant was not obligated to prepare "massive charts correlating
9  the thousands of documents that are responsive to the request with each of the numerous product
10 builds" where the plaintiff could easily "categorize the documents in the manner it desires.")
11 (Larson, J.).

12 Like the defendants in *CRST* and *Baxter*, Google has met its obligations by providing the
13 data Google has regarding the clicks on Plaintiff's ads in the manner which it maintains these
14 records. Moreover, Google has agreed to go beyond its obligations under the Federal Rules and
15 provide a compilation of its business records in the format Plaintiff demands. There is no reason
16 to grant Plaintiff further relief.

17 Google's Proposal: In light of the fact that Google already has sufficiently responded to
18 Interrogatory 1 by providing log files under 33(d) and that Google will supplement its response
19 in the manner requested by Plaintiff on September 17, no additional relief should be granted at
20 this time.

21
22 DATED: September 2, 2014                 Respectfully submitted,

                                            **NIX, PATTERSON & ROACH, LLP**
23
                                            By:   /s Drew Pate
24                                                Drew Pate

25                                          *Counsel for Plaintiff Rick Woods*

26
27
28
                                              13

710934997
710934997

| | | |
|---|---|---|
| DATED: September 2, 2014 | **MAYER BROWN LLP** | |
| | By: /s Dominique-Chantale Alepin | |
| | Dominique-Chantale Alepin | |
| | *Counsel for Defendant, Google Inc.* | |

The filer attests that concurrence in the filing of this document has been obtained from Drew Pate for Plaintiff.

14