UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICK WOODS,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE, INC.,<br><br>    Defendant. | Case No. 5:11-cv-01263-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 205 |

Plaintiff Rick Woods brings claims against Google, Inc. arising from Google's alleged misrepresentations regarding its advertising services. Google now moves for summary judgment. Google's motion will be granted in part and denied in part.

## I. BACKGROUND

Google's AdWords program lets advertisers create and display ads on webpages within Google's ad network.[1] Def.'s Mot. for Summ. J. ("MSJ") 3, Dkt. No. 205. Advertisers must agree to the terms of the AdWords Agreement. Id. Typically, the cost of advertising in the AdWords network is set on a cost-per-click basis, which is determined by a combination of several factors, including an auction system in which advertisers bid on the amount they are willing to pay per click. Id. at 3–4.

---

[1] For a more detailed discussion of this case's factual and procedural background, see this Court's order on Google's motion to dismiss, Dkt. No. 122 at 1–6.

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

As part of its system for determining click prices, Google employs a "Smart Pricing" scheme that provides a cost-per-click discount to advertisers based on a "conversion score" of the webpage where the ad appears. Id. at 4. Under the Smart Pricing system, the advertiser's cost will be reduced if Google determines that an ad impression on a webpage "is less likely to produce a conversion"—e.g., a purchase on the advertiser's website—than it would on [a] benchmark property." Id.

Google also provides a "Location Targeting" tool that "allows advertisers to serve ads that are relevant to particular geographic areas." Id. at 5. Google uses several factors to decide when to display a location-targeted ad, including a visitor's estimated physical location, geographic terms in search queries, the country code in a website's domain name, and language settings in the visitor's browser. Id.

Woods is an Arkansas attorney who bought AdWords ads. Id. at 2. He alleges that Google failed to provide a Smart Pricing discount for three ad clicks that Woods paid for. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Opp'n") 3, Dkt. No. 222. He also alleges that Google applied an incorrect Smart Pricing discount to 660 of clicks that Woods paid for, which resulted in smaller discounts than Woods believed he was entitled to receive. Id. Finally, Woods alleges that Google promised to show location-targeted ads to visitors who were physically located in the targeted area, when in fact it showed those ads to visitors who were located elsewhere. Id. at 4–5.

Regarding his Smart Pricing allegations, Woods brings claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) California's Unfair Competition Law ("UCL"), and (4) California's False Advertising Law ("FAL"). Second Am. Class Action Compl. ("SAC") ¶¶ 52–113, Dkt. No. 87. Regarding his Location Targeting allegations, Woods brings a single UCL claim. Id. ¶¶ 124–41. Google now moves for summary judgment on all claims.

**II.     LEGAL STANDARD**

"Summary judgment is proper where no genuine issue of material fact exists and the

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2

moving party is entitled to judgment as a matter of law." Samuels v. Holland American Line—USA Inc., 656 F.3d 948, 952 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). The Court "must draw all reasonable inferences in favor of the nonmoving party." Id. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)). Pro se pleadings and motions should be construed liberally. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

## III. DISCUSSION

### A. Smart Pricing

#### i. Breach of Contract

Woods contends that Google breached the AdWords Agreement by failing to apply a Smart Pricing discount to three ad clicks that Woods paid for. Opp'n 8–10. Google admits that it did not Smart Price those three clicks, but it argues that it was not required to do so. MSJ 9. According to Google, "all three of those clicks came from mobile ads—that is, ads displayed on smartphones and tablets." Id. Google argues that "mobile ads were specifically excluded from Smart Pricing when Woods signed up for Adwords." Id. In support of this position, Google cites a then–publicly available "Google AdWords Help Center website" that stated that Smart Pricing does not apply to mobile ads. Id. at 10 ("Does smart pricing apply to mobile ads? No . . . smart pricing does not apply.").

Woods responds that the webpage Google cites is inapplicable "because it discusses 'mobile ads,' and Woods never used mobile ads." Opp'n 8 (emphasis in original). Rather, Woods claims that he "exclusively created and used 'text ads.'" Since text ads are not excluded from Smart Pricing, Woods argues, Google breached the AdWords Agreement by failing to apply the Smart Pricing discount to the three clicks at issue. Woods presents several pieces of evidence to support his position, including an excerpt from Google's help webpages showing that "text ads" are distinct from "mobile ads," and a screenshot from Woods's AdWords account showing that he

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

3

purchased text ads rather than mobile ads. Id. 9–10 ("Mobile ads show only on mobile devices that use mobile (WAP) browsers . . . Only standard text and image ads are eligible to appear on iPhones and other mobile devices with full browsers.") A Google employee also testified that "the only ads in [Woods's] account were standard text ads." Id. at 10.

In response, Google contends that "ads displayed on mobile phone browsers" are different from "ads displayed on mobile applications." Defs.' Reply in Support of Mot. for Summ. J. ("Reply") 7, Dkt. No. 238. Google argues that the three clicks at issue "were from browsers on mobile devices," and because those clicks were on mobile ads, they were excluded from the Smart Pricing System. Id. But Woods notes that Google's position in its motion—that "mobile ads" encompasses "ads displayed on smartphones in tablets"—is arguably inconsistent with its position that text ads appearing mobile browsers are excluded mobile ads, while ads appearing in mobile applications were Smart Priced. Opp'n 10.

The Court agrees with Woods that a factual dispute exists regarding the meaning of "mobile ads." A factual dispute also exists as to whether the three clicks at issue involved mobile ads that were excluded from Smart Pricing. Accordingly, Google's motion for summary judgment on Woods's breach-of-contract claim must be denied.

### ii. Breach of the Implied Covenant of Good Faith and Fair Dealing

Wood's claim for breach of the implied covenant of good faith and fair dealing rests on allegations of Google's "secret agreements with its Special Partners to generate invalid clicks and failure to apply Smart Pricing." Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss 10, Dkt. No. 122. Woods has not produced evidence to support these allegations. Instead, Woods argues that his implied covenant claim also rests on Google's use of incorrect Smart Pricing scores, which resulted in discounts that were smaller than the discounts Woods believed he should have received. Opp'n 14. These allegations, however, arise from the same acts and seek the same damages as Woods's breach-of-contract claim. As such, the Court finds that Woods's implied covenant claim is superfluous, and summary judgment in Google's favor is warranted. See

Malcolm v. JP Morgan Chase Bank, N.A., No. 09-4496-JF, 2010 U.S. Dist. LEXIS 23770, at *7 (N.D. Cal. Mar. 15, 2010) ("If the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.") (quoting Schulken v. Wash. Mut. Bank, No. C. 09-02708 JW, 2009 U.S. Dist. LEXIS 114030 (N.D. Cal. Nov. 19, 2009)).

### iii. UCL and FAL

To prevail on his UCL and FAL claims, Woods must establish that he saw and relied on Google's misrepresentations regarding Smart Pricing. See Perkins v. LinkedIn Corp., 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014) ("When the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, to state a claim for relief." (citing In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009)).

Woods alleges that he relied on three misrepresentations by Google: (1) the AdWords Agreement, (2) a Google help webpage (attached as Exhibit B to the SAC), and (3) a multimedia presentation (attached as Exhibit F to the SAC). None of these sources establishes a valid basis for Woods's Smart Pricing UCL claim. First, the AdWords Agreement cannot be a misrepresentation of Google's Smart Pricing system because it is undisputed that "[t]he words 'Smart Pricing' did not appear anywhere in the AdWords Agreement." Def.'s Reply to the Separate Statement of Undisputed Facts ¶ 18, Dkt. No. 238-1. Second, Woods admits that he has "no recollection of ever being in the AdWords Help Center" before signing up for AdWords, and so he could not have seen or relied on a misrepresentation on a Help Center webpage. Reply 8 (citing Woods's deposition testimony). Third, as with the help page, Woods testified that he had no recollection of any statements in the multimedia presentation that he saw or relied on regarding smart pricing. See Alepin Decl. Ex. 1, Dkt. No. 206-1 at 120–21.

Nonetheless, Woods argues that even if he had not seen or relied on specific misrepresentations, there is a "presumption of reliance" because Google engaged in an "extensive and long-term advertising campaign" regarding AdWords Smart Pricing. Opp'n 16. Woods argues that under the California Supreme Court's Tobacco II decision, Google's advertising activities excuse Woods from the need to plead reliance. Id. (citing Tobacco II, 46 Cal. 4th at 326). However, this argument fails because Woods must plead—but does not—that he actually saw or heard Google's advertising campaign. See Pfizer Inc. v. Sup. Ct., 182 Cal. App. 4th 622, 632 (2010) ("Tobacco II does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign is entitled to restitution."); Opperman v. Path, Inc., 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (holding that, to plead a Tobacco II claim, "a plaintiff must allege that she actually saw or heard the defendant's advertising campaign").

Because Woods has failed to establish that he relied on Google's misrepresentations, Google's motion for summary judgment will be granted as to Woods's UCL and FAL claims regarding Smart Pricing.

### B. Location Targeting

Woods also brings a UCL claim based on his allegation that Google represented that it would display Woods's ads to users who were physically located in a specific geographic area, when in fact it showed ads to users in other areas. Woods presents evidence that a question on his Google AdWords "Settings Screen" asked: "In what geographical locations do you want your ads to appear?" Opp'n 17. Woods testified that he believed this statement to mean that Google would only show ads to users who were physically located in the geographic area he selected. Id.

Google acknowledges that it served ads to users who were located in other areas. However, Google argues that Woods cannot state a UCL claim because "Google disclosed the exact practice he challenges." MSJ 18. Specifically, the Google AdWords help pages disclosed that "Location Targeting is not limited to the user's physical location and may be based on the area of interest

indicated by a user's search query"—for example, "if someone searches for 'New York plumbers,' we may show relevant ads targeted to New York, regardless of the user's physical location." Id. at 18–19.

The Court finds that Google did disclose this practice on a help webpage, but a triable issue of fact exists as to whether Woods nonetheless relied on Google's statement that ads would "appear" in specific "geographic area[s]." Opp'n 17. A reasonable jury could conclude that Woods saw and relied on Google's statement that ads would be targeted to users in a specific geographic area; that Google in fact charged for clicks on Woods's ads outside of the designated geographic areas; and that Woods was charged for these clicks. As such, Google's motion for summary judgment on Woods's UCL claim for location targeting will be denied.

## IV. CONCLUSION

Google's motion for summary judgment is GRANTED as to Woods's claims for (1) breach of the implied covenant of good faith and fair dealing regarding Smart Pricing and (2) UCL and FAL violations regarding Smart Pricing. Google's motion is DENIED as to Woods's claims for (1) breach-of-contract regarding Smart Pricing and (2) UCL claims regarding Location Targeting.

**IT IS SO ORDERED.**

Dated: September 28, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

7