UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICK WOODS,<br><br>        Plaintiff,<br><br>  v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 11-cv-01263-EJD<br><br>**ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND ADMINISTRATIVE MOTION**<br><br>Re: Dkt. Nos. 274, 276, 286, 322, 325, 328, 329 |

Plaintiff Rick Woods ("Woods") is the sole class representative in this putative class action against Defendant Google LLC ("Google"). Woods contends that Google bilked him and his fellow advertisers into overpaying for advertising services. His lawsuit focuses on Google's alleged promises and misrepresentations as to two particular features of its AdWords program—the "Smart Pricing" feature and the "Location Targeting" feature.

The merits of Woods's lawsuit are not squarely before this Court. Rather, the Court presently addresses Woods's bid to certify two classes, one with respect to the Smart Pricing feature and the other with respect to the Location Targeting feature. Dkt. No. 274. Google opposes certification, particularly by questioning whether Woods can adequately represent the interests of the classes that he seeks to represent. Dkt. No. 276. Woods disagrees with Google's assessment but also requests permission to add another class representative to allow the case to

1  press forward.  Dkt. No. 286.  The parties' remaining motions present challenges to the other

2  side's experts or seek administrative relief.  Dkt. Nos. 322, 325, 328, 329.

3       The Court agrees with Google that class certification is inappropriate at this juncture

4  because a conflict of interests prevents Woods from adequately representing the interests of the

5  absent class members.  Nevertheless, Woods has demonstrated good cause to amend his complaint

6  and add a new class representative.  Accordingly, the Court DENIES Woods's motion for class

7  certification, GRANTS Google's motion to deny class certification, and GRANTS Woods's

8  motion for leave to file a third amended class action complaint.  The Court also DENIES the

9  parties' motions to strike each other's experts and Woods's administrative motion as moot.  To

10 ensure continued progression toward a resolution of the class certification issue, the Court orders

11 the parties to propose a case schedule by August 30, 2018.

12 **I.     BACKGROUND**

13      Google's AdWords program lets advertisers create and display ads on webpages within

14 Google's ad network.  Advertisers must agree to the Google Inc. Advertising Program Terms.

15 Dkt. No. 275-5.  The payment provision in that agreement provides that "[c]harges are solely

16 based on Google's measurements for the applicable Program, unless otherwise agreed to in

17 writing."  Id.  Typically, the cost of advertising in the AdWords network is set on a cost-per-click

18 basis, which is determined by a combination of several factors, including an auction system in

19 which advertisers bid on the amount they are willing to pay per click.  Dkt. No. 253 at 1.

20      As part of its system for determining click prices, Google employs a "Smart Pricing"

21 scheme that provides a cost-per-click discount to advertisers.  Id. at 2.  Under the Smart Pricing

22 system, an advertiser's cost will be reduced if Google determines that placing an advertisement on

23 a webpage is less likely to produce the result desired by the advertiser—such as a purchase on the

24 advertiser's website or a signup for the advertiser's mailing list—than it would on google.com or

25 another comparator webpage.  Id.  Specifically, Smart Pricing "adjust[s] the advertiser's bids to

26

27 Case No.: 11-cv-01263-EJD
ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE
28 THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND
ADMINISTRATIVE MOTION

the same levels that a 'rational advertiser' would bid if the rational advertiser had sufficient data about the performance of ads on each website." Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 982 (9th Cir. 2015).

Google also provides a "Location Targeting" tool that "allows advertisers to serve ads that are relevant to particular geographic areas." Dkt. No. 253 at 2 (citation omitted). When an advertiser enrolls in Location Targeting, the advertiser is presented with a screen that asks: "In what geographical locations do you want your ads to appear?" Dkt. No. 275-45. Google uses several factors to decide when to display a location-targeted ad, including a visitor's estimated physical location, geographic terms in search queries, the country code in a website's domain name, and language settings in the visitor's browser. Dkt. No. 253 at 2.

Woods is an Arkansas attorney who bought AdWords ads. Dkt. No. 87 ¶¶ 3, 7. He alleges that Google breached a promise by failing to provide a Smart Pricing discount for certain ad clicks that Woods paid for. Dkt. No. 278-3 at 5–6. He also alleges that Google applied an incorrect Smart Pricing discount to other clicks that Woods paid for, which resulted in smaller discounts than Woods believed he was entitled to receive. Id. Finally, Woods alleges that Google promised to show location-targeted ads to visitors who were physically located in the targeted area, when in fact it showed those ads to visitors who were located elsewhere. Id. at 11.

After summary judgment, only two claims remain. First, with regard to the Smart Pricing feature, Woods retains a claim for breach of contract. Dkt. No. 253 at 7. Second, with regard to the Location Targeting feature, Woods retains a claim under California's Unfair Competition Law ("UCL"). Id. As the sole class representative, Woods proposes to represent two classes, one with respect to the Smart Pricing feature and the other with respect to the Location Targeting feature. Dkt. No. 278-3. The Smart Pricing Class is defined as:

> All persons and entities located within the United States who, between August 22, 2006 and February 20, 2013, advertised through Google's AdWords program and paid for clicks on their Google AdWords advertisement(s), where such clicks

were not Smart Priced because they (1) originated from a property on Google's Display Network and Google applied no Smart Pricing measurement, or (2) were AFMA Clicks, Search Bundled Clicks, or mGDN Clicks.

Id. at 15–16. The Location Targeting Class is defined as:

All persons and entities located within the United States who, between January 1, 2004 and March 22, 2011, advertised through Google's AdWords program and paid for clicks on their Google AdWords advertisement(s), where such clicks did not originate from the location selected by the advertiser.

Id. at 16. Woods moves to certify these two classes. Woods also seeks to file a third amended class action complaint adding an additional class representative. Dkt. No. 286.

## II.    LEGAL STANDARD

### A.    Class Certification

Rule 23 of the Federal Rules of Civil Procedure governs class certification. Parties seeking class certification bear the burden of affirmatively demonstrating that they have satisfied each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011); Parsons v. Ryan, 754 F.3d 657, 674 (9th Cir. 2014). Rule 23(a) provides that a class may only be certified if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In other words, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy to maintain a class action. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012).

In addition, a party seeking class certification must also "satisfy through evidentiary proof" at least one of the three requirements of Rule 23(b). Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013); Dukes, 564 U.S. at 350. Where, as here, a plaintiff seeks certification under Rule 23(b)(3), the plaintiff must establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

Case No.: 11-cv-01263-EJD
ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND ADMINISTRATIVE MOTION

4

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A trial court has broad discretion in making the decision to grant or deny a motion for class certification. Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010). In making this determination, the court's analysis "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 465–66 (2013) (quoting Dukes, 564 U.S. at 351–52); see also Mazza, 666 F.3d at 588. However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." Amgen, 568 U.S. at 466; Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 n.8 (9th Cir. 2011). Thus, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen, 568 U.S. at 466. Where a court concludes as a result of its analysis that the moving party has met its burden, then the court may certify the class. Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

### B. Leave to Amend

Motions to amend the pleadings filed after the date set in the court's scheduling order are governed by Federal Rule of Civil Procedure 16. Branch Banking & Tr. Co. v. D.M.S.I., LLC, 871 F.3d 751, 764 (9th Cir. 2017). Under Rule 16(b), a party seeking to amend a scheduling order must demonstrate sufficient "good cause" for the relief. Fed. R. Civ. Proc. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).

### III. DISCUSSION

The Court's class certification analysis begins and ends with one subsection of Rule 23(a)—namely, adequacy of representation under Rule 23(a)(4). Because the Court concludes that Woods has not demonstrated that he is an adequate class representative, the classes cannot be certified at this juncture. The Court, however, will permit Woods to file a third amended class action complaint adding an additional class representative.

Below, the Court first analyzes the adequacy-of-representation issue. The Court then examines Woods's basis for good cause to amend the complaint. Finally, the Court discusses the case schedule to ensure that this case steadily progresses to another round of class certification and ultimately to resolution.

### A. Adequacy of Representation Under Rule 23(a)(4)

Google devotes its entire motion to deny certification to an examination of the conflict between Woods, the sole class representative, and the classes based on Woods's relationship with the attorneys representing the classes. Dkt. No. 276. Although Woods attempts to downplay this conflict in his opposition, Dkt. No. 284, there is a serious mismatch between Woods's interests in this case and the classes' interests in this case. The Court finds that this disparity in interests is large enough that Woods does not provide adequate representation of the classes.

Federal Rule of Civil Procedure 23(a)(4) mandates that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As a general matter, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625 (1997). Scrutinizing for conflicts is essential to guard the due-process right of absent class members not to be bound to a judgment without adequate representation by the parties participating in the litigation. See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 n.13 (1982); Hansberry v. Lee, 311 U.S. 32, 42–43 (1940); see also 7A Charles Alan Wright et al., Fed. Prac. &

Case No.: 11-cv-01263-EJD
ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND ADMINISTRATIVE MOTION

Proc. Civ. § 1769.1 (3d ed. 2018) ("[B]ecause of the broad binding effect of class-action judgments, serious attention is given to the adequacy of representation of those absent class members who will be bound by the judgment."). Because of this constitutional dimension, the adequacy-of-representation requirement has been called "key to the integrity of class action litigation" and "perhaps the most significant of the prerequisites to a determination of class certification." Flores v. EP2, Inc., No. 09-CV-07872-DDP, 2011 WL 13213897, at *4 (C.D. Cal. Mar. 24, 2011) (quoting Folding Cartons, Inc. v. Am. Can Co., 79 F.R.D. 698, 701 (N.D. Ill. 1978)).

Importantly, class counsel alone cannot satisfy this fundamental responsibility to absent class members. To the contrary, "one of the class representative's functions is to monitor class counsel so as to ensure that counsel does not accept a relatively weak class recovery in return for the promise of a large fee." 1 William B. Rubenstein, Newberg on Class Actions § 3:77 (5th ed. 2018); id. § 3:70 (stating that the law presumes that class representatives will monitor class counsel). Without such a structure in place, "the class loses one check on counsel's capacity to sell out the class's claims." Id. § 3:77. Put another way, "[p]ermitting class counsel who are not effectively monitored to prosecute a class action is the functional equivalent of allowing that counsel to serve as both class representative and class attorney," a situation which "directly implicates the danger of collusion between plaintiff and defense counsel." In re Cal. Micro Devices Sec. Litig., 168 F.R.D. 257, 260 (N.D. Cal. 1996) (Walker, J.).

The central inquiry is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). Close relationships between the class representative and counsel, whether personal or professional, can create a conflict that renders the class representative inadequate to protect the interests of the class. See 1 Newberg, supra, § 3:70; see also Kesler v. Ikea U.S. Inc., No. 07-CV-00568-JVS, 2008 WL 413268, at *5 (C.D. Cal. Feb. 4, 2008) ("When class representative and

class counsel share a familial relationship or a business partnership, their individual interests are inherently closely aligned so that there is an undeniable potential for conflict of interest with the absent class members."). As one district court has observed, "the possibility that plaintiff may benefit when his attorneys benefit—either directly by receiving future business . . . or indirectly by helping a business associate at the expense of the class—casts doubt on whether plaintiff will fairly and adequately protect the interests of the entire class." Shields v. Wash. Bancorporation, No. 90-CV-01101-RCL, 1991 WL 221940, at *2 (D.D.C. Oct. 10, 1991); see also Redman v. RadioShack Corp., 768 F.3d 622, 638 (7th Cir. 2014) ("There ought therefore to be a genuine arm's-length relationship between class counsel and the named plaintiffs."). At least with respect to class counsel, even "the appearance of divided loyalties" or "potential conflicts" can be disqualifying. Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1465 (9th Cir. 1995) (quoting Sullivan v. Chase Inv. Servs. of Bos., Inc., 79 F.R.D. 246, 258 (N.D. Cal. 1978)).

In the instant case, Woods's business connection with class counsel creates an intolerable conflict of interests. The way that this case unfolded (and that Woods became entangled with the lawyers) is somewhat unusual. Before being recruited as the class representative in this case, Woods was a debt collection and personal injury lawyer in Arkansas. Dkt. No. 277, Ex. 2 ("Woods Depo.") at 34:2–35:6. In February 2011, just over a month before filing the complaint in this case, Woods signed a joint retainer agreement for Taylor Law Partners LLP ("TLP") and Nix, Patterson & Roach, LLP ("Nix Patterson") to represent him in "the prosecution of . . . an action against Google." Dkt. No. 315-4, Ex. 1 at 1. The engagement letter, written on TLP letterhead, provided that TLP's founding partner and Nix Patterson would "file a class action lawsuit against Google on behalf of [Woods] and others similarly situated to [Woods], with [Woods] serving as a representative of the class." Id.; see also Woods Depo. at 54:3–14. In accordance with that agreement, on March 15, 2011, Nix Patterson—along with Kessler Topaz Meltzer & Check, LLP

("Kessler Topaz")—filed the class action complaint in this case naming Woods as the class representative. Dkt. No. 1.

After Woods agreed to serve as the class representative here, TLP hired him as a partner at the firm. As Woods explained in his deposition, TLP called him "out of the blue" in December 2012 and asked him to join the firm as a partner. Woods Depo. at 43:13–44:9. Woods immediately accepted and became an equity partner the next month, in January 2013. Dkt. No. 284-3 at 8. Woods originally "owned a 1/10 partnership interest in TLP." Id. at 6. At present, Woods "owns a 1/9 partnership interest in TLP." Id. Woods's 1/9 partnership interest does not translate to a 1/9 equity interest, as the firm's unwritten compensation scheme is quite convoluted. Id. at 6–7. In Woods's opposition to Google's motion to deny class certification, he summarizes his interest as follows: "Woods has a 1/9 interest in 50% of the balance of TLP's overhead account after firm overhead is paid—and after the originating partner has collected the lion's share (55% to 75%) of the fees earned by the firm." Dkt. No. 284 at 8 (emphases omitted). For present purposes, it suffices to note that Woods has a partnership interest in TLP and receives compensation pursuant to a complex payment scheme.

Once Woods became a partner at TLP, he signed a new retainer agreement with Nix Patterson and Kessler Topaz that "confirm[ed] that [Woods's] retention of [the founding partner at TLP] as counsel in any matters pertaining to Google ha[d] been mutually terminated at [Woods's] request." Dkt. No. 284-4 at 3. But crucial details are hazy. For example, although some places in the record suggest that the new retainer agreement was executed in early 2013, see, e.g., Woods Depo. at 116:7–17; Dkt. No. 316-5 at 15, the agreement itself does not appear to be dated and the signatories did not include dates of signature, Dkt. No. 284-4 at 3. At a minimum, this missing fact clouds Woods's contention that TLP "immediately ceased representing him" and "withdrew as counsel" when Woods joined the firm. Dkt. No. 284 at 4.

More troubling, however, is that the new retainer agreement does not mention TLP's fees and that Woods does not identify any documentation or other concrete evidence conclusively establishing that TLP relinquished any fee interest in this action. In a request for admission, Woods admitted that "no Document exists in which TLP [or its founding partner] relinquished any interest, right, fees or proceeds [of this] litigation." Dkt. No. 316-5 at 20–21; see also Dkt. No 316-4 at 5. Instead, Woods attempts to rely on an informal renunciation of fees, but the evidence on this point varies. For example, while TLP's founding partner has submitted an affidavit stating that TLP "gave up [the] right to any fee in the case when [Woods] became a partner," Dkt. No. 284-5 ¶ 7, his deposition testimony tells a murkier story. Indeed, the founding partner conceded that he does not recall telling Woods or other counsel that TLP was renouncing any fee recovery but that "it was just a given." Dkt. No. 316-2 at 44:8–46:20. In other cases with the same lawyers, he understood that there was an informal agreement that TLP would receive a referral fee if the case was successful. Id. at 88:9–23. Woods was not in a position to rehabilitate these statements, and he testified accordingly. Woods Depo. at 90:1–24 (stating his understanding that TLP had given up its interest, but admitting that he did not know if there was a separate agreement between TLP and class counsel). If TLP stands to earn a fee if this case is successful, Woods's status as equity partner at TLP presents a plain conflict of interests with the class because Woods could receive a portion of that possibly sizeable fee. 1 Newberg, supra, § 3:70.

In any event, courts have found that a conflict may exist "[e]ven though plaintiff does not expect to share in any attorney's fees recovered in this cause." Susman v. Lincoln Am. Corp., 561 F.2d 86, 95 (7th Cir. 1977).[1] The underlying issue here is that Wood's firm has had and continues to have a lucrative business relationship with the other two firms on this matter, Nix Patterson and

---

[1] As one district court has observed, "[t]he rationale of Susman . . . [is] entirely consistent with the principles operative within the Ninth Circuit." Sipper v. Capital One Bank, No. 01-CV-09547-LGB, 2002 WL 398769, at *3 (C.D. Cal. Feb. 28, 2002); see also Lyon v. Arizona, 80 F.R.D. 665, 668 (D. Ariz. 1978) (citing and discussing Susman).

Case No.: 11-cv-01263-EJD
ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND ADMINISTRATIVE MOTION

Kessler Topaz. As Woods stated in an interrogatory response, TLP has served as co-counsel with either Nix Patterson or Kessler Topaz on at least sixteen cases during the pendency of this action. Dkt. No. 316-5 at 8–13. Some of those cases terminated as recently as February 2018, and at least two of the cases remain pending. See id. at 9–10, 12 (referencing Larey v. Allstate Property and Casualty Co., Braden v. Foremost Insurance Co., and Dennington v. State Farm Fire and Casualty Co. filed in the Western District of Arkansas). Seven of the sixteen cases are class actions. See id. at 7 (listing cases). And TLP recovered substantial attorney's fees and expenses on multiple of these class actions. For example, in Adams v. United Services Automobile Association, a class action litigated with Kessler Topaz, TLP received $310,937.46 in fees and expenses. Dkt. No. 284-3 at 12. Similarly, in Doss v. American Family Home Insurance Co. and Green v. American Family Home Insurance Co., a pair of class action cases consolidated for settlement purposes in which Kessler Topaz was co-counsel, TLP received $51,719.07 in fees and expenses. Id.

Woods seeks to minimize his financial interest by concentrating on his take-home pay. Plugging the numbers into TLP's intricate compensation scheme, Woods calculates that his entire personal share from TLP's joint representation on the seven class action cases amounts to only $481.67. Id.[2] In Woods's view, because his individual damages in this case could be as high as $543.56, Dkt. No. 274-66 at 11, he has no incentive to advance his own personal interests at the expense of the classes' interests. But there are other considerations at play here that suggest that Woods may not have the classes' best interests at heart. For one, Woods underestimates the benefit that redounds to him from TLP's recovery in the seven class actions. As Woods recognizes, much of that money is used to pay the firm's overhead costs. Dkt. No. 284. Thus,

---

[2] The Court notes, however, that this figure has been a moving target. Although Woods at one point indicated that he had not personally received any distributions from these cases, he later updated that number to $711.43, then reduced the number to $460.27, and finally revised the number to the current figure of $481.67. Id. at 9–14. Although Woods offers little explanation for these disparities, the Court need not address them because they do not affect the analysis.

even when the funds are not paid directly to Woods, the use of these funds to reduce TLP's overhead still constitutes a benefit to him by increasing his bottom line takeaway.

More broadly, Woods has an interest in securing large attorney's fees for Nix Patterson and Kessler Topaz on a case referred by the firm in which he holds an equity share in order to maintain their positive working relationship. If Nix Patterson and Kessler Topaz obtain a considerable payout, they may hold Woods's firm in higher prestige or choose to send more work to TLP in the future. In this way, Woods "benefit[s] when his attorneys benefit—either directly by receiving future business from [class counsel] or indirectly by helping a business associate at the expense of the class." Shields, 1991 WL 221940, at *2; see also In re IMAX Sec. Litig., 272 F.R.D. 138, 155 (S.D.N.Y. 2010) (quoting the proposition in Moore's Federal Practice that "a conflict . . . may exist if the class representative stands to benefit directly or indirectly from the goodwill of class counsel created through the class action"). In light of this situation, the Court harbors major concerns that Woods's main motivation is to ensure attorney's fees rather than to protect the classes' interests. See 1 Newberg, supra, § 3:70 ("[T]hese close associates may be more interested in ensuring counsel's fee than in protecting the class's interests."). Specifically, Woods's close association with class counsel suggests that he is "more interested in maximizing the 'return' to his counsel than in aggressively presenting the proposed class' action." Susman, 561 F.2d at 95. Ultimately, these circumstances present the real danger that Woods will "allow settlement on terms less favorable to the interests of absent class members." Id. at 91.

Contrary to Woods's contention, this case does not fit in the line of cases recognizing that the Ninth Circuit "does not favor denial of class certification on the basis of speculative conflicts." Dkt. No. 284 at 8 (quoting Cummings v. Connell, 316 F.3d 886, 896 (9th Cir. 2003)). First, the considerations at issue are different because those cases involved conflicting interests between different segments of the class, not a conflict between the class representative and the class based on the class representative's relationship with class counsel. See Cummings, 316 F.3d at 896;

Soc. Servs. Union, Local 535, Serv. Emps. Int'l Union, AFL-CIO v. Santa Clara Cty., 609 F.2d 944, 948 (9th Cir. 1979); Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975). Second, the conflict at issue in the instant case is not "speculative" in the manner described in that string of cases. Those cases focus on "conflicts that *may* develop at the remedy stage." Soc. Servs. Union, 609 F.2d at 948 (emphasis added). In such a case, the district court can decertify the class or create subclasses if those "latent conflicts . . . surface as the suit progresses." Blackie, 524 F.2d at 909. Here, in contrast, the conflict is "apparent" and "imminent," and it goes to the heart of Woods's ability to represent the classes' interests. See id.

Woods's attempt to draw support from this Court's decision in In re Google AdWords Litigation also fails. In that case, this Court rejected an adequacy challenge based on the class representative's professional relationship with class counsel. In re Google AdWords Litigation, No. 08-CV-3369 EJD, 2012 WL 28068, at *13 (N.D. Cal. Jan. 5, 2012), rev'd and remanded on other grounds sub nom. Pulaski, 802 F.3d 979. This Court explained that "the nature of the relationship was purely professional, involving shared work on two cases, as well as a few referrals which did not involve referral fees." Id. Woods's financial entanglement with class counsel is far more extensive than in In re Google AdWords. Although Woods has not personally worked as co-counsel with either Nix Patterson or Kessler Topaz, TLP has a long-standing business relationship with those firms and has received substantial fees for its work on several cases with those firms during the pendency of this case. As the Court has detailed above, Woods has a direct interest in the success of the law firm in which he owns a stake. Thus, In re Google AdWords is materially distinguishable.

Woods's citations to other district court cases within and outside this district fare no better. Dkt. No. 284 at 11–14 (pointing to six cases from this district and five cases from other districts). Most of those cases involved professional or financial relationships that took place in the past. For example, in Sobel v. Hertz Corp., the Ninth Circuit concluded that "the district court did not abuse

its discretion in concluding that [the class representatives'] *previous* professional connections with class counsel were not so extensive as to make them inadequate representatives."  674 F. App'x 663, 666 (9th Cir. 2017) (emphasis added).  Similarly, in In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litigation, the court noted that the class representative "had only a limited business relationship with [class counsel] in the past" and was "no longer in the same line of work."  300 F.R.D. 347, 372 (C.D. Cal. 2013).  Under those conditions, unlike here, the class representative had no present interest in favoring class counsel over absent class members.  Moreover, Woods does not identify any case where, as here, a profit-sharing partner was represented by close business associates of his firm.  These crucial distinctions underscore why Woods is an inadequate representative of the classes.

In the end, the class representative must play a "principal" role in "ensuring protection of absent class members' interests."  Susman, 561 F.2d at 95.  It is not true that "reliance on the court's control of settlement and attorney's fees renders strict enforcement of the requirements of Rule 23(a)(4) unnecessary."  Id.  For the reasons described above, the Court finds that because of Woods's close connection to Nix Patterson and Kessler Topaz through his partnership at TLP, his interests diverge too sharply from the classes so that he does not "fairly and adequately protect the interests of the class[es]."  Fed. R. Civ. P. 23(a)(4).  Although this conclusion also means that Nix Patterson and Kessler Topaz cannot adequately represent the classes so long as Woods remains at the helm, the Court does not find that the conflict would "continue to taint this case" if a new class representative is added.  English v. Apple Inc., No. 14-CV-01619-WHO, 2016 WL 1188200, at *13 (N.D. Cal. Jan. 5, 2016).  Accordingly, the Court DENIES Woods's motion for class certification and GRANTS Google's motion to deny class certification.[3]

---

[3] The Court's disposition on the class certification motions also renders moot the parties' motions to strike experts and Woods's administrative motion.  Dkt. Nos. 322, 325, 328, 329.  Thus, the Court DENIES these motions.

Case No.: 11-cv-01263-EJD
ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND ADMINISTRATIVE MOTION

### B.    "Good Cause" Under Rule 16(b)(4)

Having found that Woods does not adequately protect the interests of the classes, the Court now turns to Woods's motion for leave to file a third amended class action complaint adding an additional proposed class representative, Rene Cabrera ("Cabrera").  Dkt. No. 286.  Google opposes this request, arguing that Woods was not diligent in seeking leave to amend and that allowing the addition of a new class representative would be highly prejudicial.  Dkt. No. 301.  The central inquiry is whether Woods has shown "good cause" under Federal Rule of Civil Procedure 16(b) to modify the case schedule.  Branch Banking, 871 F.3d at 764.  The Court concludes that he has.

The logical starting point for a "good cause" analysis is the diligence of the moving party because "[i]f that party was not diligent, the inquiry should end."  Id. (quoting Johnson, 975 F.2d at 609).  Woods has satisfied that requirement here.  It was not until a November 30, 2017 case management statement that Google first clearly raised its argument that Woods is an inadequate class representative.  Dkt. No. 265 at 7–11.  In an April 2015 case management statement, Google detailed its reasons for seeking to file a motion to deny class certification; notably absent was any real discussion of Woods's inadequacy to represent the classes.  Dkt. No. 202 at 12.  And Google never mentioned the adequacy issue in the briefing regarding the scheduling of class certification and summary judgment in July and August 2015 or in the joint case management statement filed on February 4, 2016.  See Dkt. Nos. 220, 224, 225, 236, 237, 244.  In fact, Google advocated that the Court defer briefing on class certification until the Court resolved Google's dispositive summary judgment motion.  Dkt. No. 220 at 2.  The Court agreed and set a schedule for class certification briefing after the issuance of a summary judgment ruling.  Dkt. No. 241 at 1–2.  When the Court partially granted and partially denied Google's motion for summary judgment in September 2017, Dkt. No. 253, the Court set a case management conference for December 7, 2017 to clarify the case schedule moving forward, Dkt. No. 260.  Google provided an overview of its

Case No.: 11-cv-01263-EJD
ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND ADMINISTRATIVE MOTION

1   adequacy argument for the first time in the November 30, 2017 case management statement

2   submitted in advance of that conference.  Dkt. No. 265 at 7–11.

3        When Woods learned on November 30, 2017 that Google intended to challenge his

4   adequacy, he moved quickly to find another class representative.  Dkt. No. 286-3 ¶ 1.  Woods and

5   his counsel identified Cabrera as a potential class representative in January 2018 and "immediately

6   began to investigate his potential claims against Google."  Id.  Woods and his counsel conducted

7   telephone calls with Cabrera beginning in January 2018, then followed up with two in-person

8   meetings on February 1, 2018 and March 7, 2018.  Id. ¶ 2.  Cabrera executed a retainer agreement

9   on March 7, 2018, and class counsel subsequently prepared the third amended class action

10   complaint.  Id. ¶ 4.  On March 20, 2018, less than four months after receiving notice of Google's

11   intent to raise the adequacy issue, Woods filed his motion for leave to file the third amended class

12   action complaint, along with his opposition to Google's motion to deny certification.  Dkt. Nos.

13   284, 286.  On the facts of this case, four months is a reasonable span of time to find a new class

14   representative, research his claims, and draft a motion to amend as well as an updated complaint.

15   See, e.g., Rieve v. Coventry Health Care, Inc., No. 11-CV-01032-DOC, 2012 WL 929737, at *3

16   (C.D. Cal. Mar. 19, 2012) ("Two months is a reasonable time frame in which to both investigate

17   potential new class representatives and draft a motion to amend."); Gould v. Motel 6, Inc., No. 09-

18   CV-08157-CAS, 2011 WL 759472, at *4 (C.D. Cal. Feb. 22, 2011) (permitting amendment even

19   though plaintiffs took "over sixteen months to find the new plaintiff").

20        Google does not dispute that Woods diligently pursued amendment of the complaint to add

21   a new class representative from November 30, 2017 to March 20, 2018.  Rather, Google contends

22   that Woods is "looking at the wrong time frame."  Dkt. No. 301 at 4.  Specifically, Google says

23   that the relevant period for measuring diligence should be tied back to the creation of the conflict

24   in January 2013 or, at a minimum, to Woods's deposition in November 2014.  Id. at 5–6.  The

25   Court disagrees.

26

27   Case No.: 11-cv-01263-EJD

     ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE

28   THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND
     ADMINISTRATIVE MOTION

The problem for Google is that Woods was not aware of the adequacy issue in January 2013 or November 2014. As a formal matter, Woods has the burden to demonstrate that Rule 23(a)(4) has been satisfied. Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir. 2011). But as a practical matter, Woods could not know of this particular adequacy problem until Google made clear that it planned to raise the issue. And the circumstances did not sufficiently put Woods on notice that the issue would arise. Even though Woods's joining TLP in January 2013 created the conflict, his firm appears to have promptly taken affirmative steps to eliminate the conflict—namely, TLP withdrew from representation and apparently relinquished any fee interest. Dkt. No. 284-5 ¶ 7. Woods's vigorous opposition to Google's motion to deny class certification suggests that both Woods and TLP reasonably believed that TLP's actions cured any potential concern. Dkt. No. 284. Although the Court concludes above that Woods is not an adequate class representative, the case law does not provide a definitive answer in this context.

Woods's November 2014 deposition is no more illuminating. At that deposition, Google asked questions about Woods's employment and equity share in TLP, TLP's representation of Woods, and TLP's co-representations with Nix Patterson and Kessler Topaz. Woods Depo. at 12:4–14:6, 48:7–52:10, 54:3–56:11, 90:1–100:21. However, these limited lines of questioning were sprinkled throughout the deposition without any mention of adequacy or other clear focus on the issue. Woods should not have to read the tea leaves based on a scattered series of questions at his deposition, and Google does not identify any relevant authority holding otherwise. Cf. Reyes v. Kenosian & Miele, LLP, 619 F. Supp. 2d 796, 806 (N.D. Cal. 2008) ("The limited questions that Plaintiff's counsel asked of Defendant . . . at his deposition . . . did not give Defendants sufficient notice.").

Moreover, Google attempts to hold Woods accountable for long periods of time that came about as a result of the schedule that Google proposed. As noted above, in summer of 2015, Google advocated that class certification briefing be put on hold until the Court could rule on

Case No.: 11-cv-01263-EJD
ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND ADMINISTRATIVE MOTION

Google's dispositive summary judgment motion. Dkt. No. 220 at 2. Woods disagreed, arguing that class certification motions are often heard before summary judgment motions and that delaying class certification would be prejudicial. Dkt. No. 236 at 2–5. The Court decided to follow Google's recommendation and set a schedule for class certification briefing after the issuance of a summary judgment ruling. Dkt. No. 241 at 1–2. Through no fault of his own, Woods could not brief the class certification issues until summary judgment proceedings resolved in September 2017. Dkt. No. 253. Had Google wished that the adequacy issue be addressed earlier, it could have consented to Woods's request to file his class certification motion in 2015, rather than insisting that summary judgment be handled first. Indeed, Google did not serve any discovery on the adequacy issue until December 2017. In light of these circumstances, the Court finds that Woods was diligent in bringing his motion for leave to amend. See Johnson, 975 F.2d at 609 ("The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" (citation omitted)).

Google's claim that it will suffer prejudice from the addition of Cabrera into this litigation is overblown. Dkt. No. 301 at 10–11. Woods's proposed amendment is limited to adding a party, Cabrera, who would assert the same two claims as Woods under the same legal theories against the same defendant. See Dkt. No. 285-3 ¶¶ 58–71, 84–101. Because Woods will not seek any new discovery from Google, his amendment implicates only discovery related to Cabrera's AdWords advertising account. Woods represents that, to speed along the process, Cabrera has already produced the relevant documentation concerning his account (to the extent that Google did not have access to that information already) and has offered to sit for a deposition within thirty days. Dkt. No. 308 at 1–2. Courts have rejected cries of prejudice in nearly identical circumstances. See, e.g., In re Facebook Privacy Litig., No. 10-CV-02389-RMW, 2015 WL 2453734, at *5 (N.D. Cal. May 22, 2015) (explaining that the addition of a class representative would not be overly burdensome where "plaintiff [was] not seeking new categories or avenues of

discovery," "[defendant] ha[d] not identified any new issues or defenses that may arise," and "any additional discovery by the parties . . . [would] be limited to [the new class representative]");

Ellsworth v. U.S. Bank, N.A., No. 12-CV-02506-LB, 2013 WL 6730725, at *11 (N.D. Cal. Dec. 19, 2013) (finding no prejudice because plaintiff "add[ed] new parties who assert[ed] the same claims and theories," defendants' additional discovery would "be about the attributes of the two new representative plaintiffs," and defendants already had their documents).

Nor does the Court find that there is undue prejudice resulting from holding additional summary judgment or class certification proceedings. The Court has no reason to believe that summary judgment proceedings, if any, would be protracted because Cabrera presents the same claims and theories that Woods has already litigated through summary judgment. Any hardship in litigating another round of summary judgment stems from Google's own scheduling proposal. Moreover, any summary judgment motion against Cabrera can wait until after class certification is complete, as courts routinely hear class certification motions first. See, e.g., Wade v. Kirkland, 118 F.3d 667, 670 (9th Cir. 1997); Wright v. Schock, 742 F.2d 541, 543–44 (9th Cir. 1984). An additional round of class certification also will not be overly burdensome. Although Google wants to conduct some discovery of Cabrera and the parties may need to tweak their expert reports, these actions are minimal and can be conducted quickly. Similarly, the parties should be able to subsequently revise and resubmit their class certification briefs on a condensed timeline, given that many of the class certification requirements in Rule 23 focus on aspects of the classes as a whole, not on individual class representatives. See generally Fed. R. Civ. P. 23. The Court rejects Google's assertions of harm on these grounds.

Finally, Google seeks to remove this case from the ambit of other cases granting leave to amend by suggesting that the addition of Cabrera will entail exploration of new issues and defenses. Dkt. No. 301 at 12. In particular, Google argues that Cabrera is an atypical and inadequate class representative because his level of sophistication in online advertising

United States District Court
Northern District of California

distinguishes him from other class members. Id. at 9–10. However, Google rests its argument on largely irrelevant information about Cabrera's current work in online digital marketing and current use of Google AdWords. During the relevant class periods, Cabrera owned one AdWords account, which he opened on August 14, 2008 and stopped using on August 13, 2009. See Dkt. No. 300-5. Google cannot assert a facial deficiency in typicality or adequacy based on Cabrera's actions in 2016, well after the March 22, 2011 end date of the Location Targeting Class and the February 20, 2013 end date of the Smart Pricing Class. Dkt. No. 278-3 at 15–16. At this stage, Google's speculative concerns about typicality and adequacy do not provide a sufficient basis to deny Woods's motion for leave to amend. Cf. dpiX LLC v. Yieldboost Tech, Inc., No. 14-CV-05382-JST, 2015 WL 5158534, at *3 (N.D. Cal. Sept. 2, 2015) (explaining that "courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed"). Accordingly, the Court GRANTS Woods's motion for leave to file a third amended class action complaint.

### C. Case Schedule

In light of the Court's denial of class certification but grant of permission to add a new class representative, the Court makes the following observations about the case schedule. Under Rule 23(c), the Court has an obligation to make a class certification determination "[a]t an early practicable time after a person sues . . . as a class representative." Fed. R. Civ. P. 23(c)(1)(A). This case has been pending for a number of years with no class certification ruling. See Dieffenbach v. Barnes & Noble, Inc., 887 F.3d 826, 830 (7th Cir. 2018) ("That the case has been pending for 5½ years without a decision by the district court whether the proposed class can be certified is problematic under Fed. R. Civ. P. 23(c)(1)(A) . . . .").

Given the preference for expedient resolution of class certification issues, the Court requests that the parties propose a case schedule that takes these concerns into consideration. To that end, Woods represents that he has already produced Cabrera's documents to Google and has

Case No.: 11-cv-01263-EJD
ORDER DENYING CLASS CERTIFICATION, GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, DENYING AS MOOT MOTIONS TO STRIKE AND ADMINISTRATIVE MOTION

offered to make Cabrera available for a deposition within thirty days. Dkt. No. 308 at 1–2. The parties' proposal shall include any necessary discovery deadlines as well as class certification briefing and hearing dates. The parties shall submit the proposed case schedule no later than August 30, 2018.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Woods's motion for class certification, GRANTS Google's motion to deny class certification, DENIES as moot the parties' motions to strike and Woods's administrative motion, and GRANTS Woods's motion for leave to file a third amended class action complaint.

The parties shall submit a proposed case schedule no later than August 30, 2018.

**IT IS SO ORDERED.**

Dated: August 23, 2018

EDWARD J. DAVILA
United States District Judge