1

**MAYER BROWN LLP**
Edward D. Johnson (SBN 189475)

2
wjohnson@mayerbrown.com
Donald M. Falk (SBN150256)

3
dfalk@mayerbrown.com
Eric B. Evans (SBN 232476)

4
eevans@mayerbrown.com
Sarah E. Reynolds (SBN 319780)

5
sreynolds@mayerbrown.com
Two Palo Alto Square, Suite 300

6
3000 El Camino Real
Palo Alto, CA 94306-2112

7
Telephone: (650) 331-2000

8
Daniel E. Jones (*pro hac vice*)
djones@mayerbrown.com

9
1999 K Street N.W.
Washington, D.C. 20006

10
Telephone: (202) 263-3000

11
*Attorneys for Defendant Google LLC*

12
**UNITED STATES DISTRICT COURT**

13
**NORTHERN DISTRICT OF CALIFORNIA**

14
**SAN JOSE DIVISION**

15
RICK WOODS and RENE CABRERA,
Individually and On Behalf of All Others

16
Similarly Situated,

17
Plaintiffs,

18
v.

19
GOOGLE LLC,

20
Defendant.

21

22

23

24

25

26

27

28

Case No. 5:11-cv-1263-EJD

**DEFENDANT GOOGLE LLC'S
MOTION TO DISMISS THIRD
AMENDED COMPLAINT AND TO
STRIKE CLASS ALLEGATIONS**

Date: December 13, 2018
Time: 9:00 a.m.
Place: Courtroom 4, 5th Floor
Judge: Hon. Edward J. Davila

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................................. 2

A.    PROCEDURAL HISTORY ................................................................................... 2

B.    THE THIRD AMENDED COMPLAINT ............................................................. 4

ARGUMENT ...................................................................................................................... 5

I.    CABRERA'S SMART PRICING CLAIM SHOULD BE DISMISSED
BECAUSE HE HAS NOT ALLEGED EXTRINSIC EVIDENCE THAT
WOULD SUPPORT HIS INTERPRETATION OF THE MEASUREMENTS
CLAUSE ................................................................................................................. 6

II.    CABRERA'S LOCATION TARGETING CLAIM FAILS ................................... 9

        A.    Cabrera has not adequately alleged harm from an out-of-area click ................... 9

        B.    Cabrera cannot bring a claim under California's UCL ....................................... 10

III.    WOODS'S CLAIMS TO BE A CLASS REPRESENTATIVE SHOULD BE
STRICKEN ........................................................................................................... 12

CONCLUSION ................................................................................................................. 13

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Arroyo v. TP-Link USA Corp.*,

5

    2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ........................................................................11

6

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) ......................................................................................................5, 7, 10

7

*Bell Atlantic v. Twombly*,

8

    550 U.S. 544 (2007) ............................................................................................................5, 10

9

*Collins v. Gamestop Corp.*,

10

    2010 WL 3077671 (N.D. Cal. Aug. 6, 2010) .....................................................................12

11

*Darisse v. Nest Labs, Inc.*,

    2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ...................................................................11

12

*Davis v. Powertel, Inc.*,

13

    776 So. 2d 971 (Fla. Dist. Ct. App. 2000) .........................................................................11

14

*dpiX LLC v. Yieldboost Tech., Inc.*,

15

    2015 WL 5158534 (N.D. Cal. Sept. 2, 2015) .......................................................................5

16

*E.M.M.I., Inc. v. Zurich Am. Ins. Co.*,

    32 Cal. 4th 465 (2004) ..........................................................................................................6

17

*Employers Reins. Co. v. Super. Ct.*,

18

    161 Cal. App. 4th 906 (2008) ...............................................................................................8

19

*In re Facebook Advertising Litig.*,

20

    709 F. Supp. 2d 762 (N.D. Cal. 2010) ..................................................................................9

21

*Fremont Indem. Co. v. Fremont Gen. Corp.*,

    148 Cal.App.4th 97 (2007) ...................................................................................................7

22

*Frenzel v. AliphCom*,

23

    76 F. Supp. 3d 999 (N.D. Cal. 2014) .................................................................................11

24

*In re Gilead Sciences Securities Litig.*,

    536 F.3d 1049 (9th Cir. 2008) ..............................................................................................6

25

*Gyene v. Steward Financial, Inc.*,

26

    2013 WL 146191 (C.D. Cal. Jan. 11, 2013) ......................................................................10

27

*Kamm v. Cal. City Dev. Co.*,

28

    509 F.2d 205 (9th Cir. 1975) ..............................................................................................12

ii

*KEMA, Inc. v. Koperwhats*,
2010 WL 11417911 (N.D. Cal. Sept. 1, 2010) ........................................................................10

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ..........................................................................................................9

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) ..........................................................................................11, 12

*McCann v. Foster Wheeler, LLC*,
48 Cal. 4th 68 (2010) ............................................................................................................12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ................................................................................................6

*Miller v. Glenn Miller Prods., Inc.*,
454 F.3d 975 (9th Cir. 2006) (per curiam)..............................................................................7

*Perez v. Wells Fargo & Co.*,
75 F. Supp. 3d 1184 (N.D. Cal. 2014) ....................................................................................6

*Pfizer v. Superior Court*,
182 Cal. App. 4th 622 (2010) ...............................................................................................11

*PG&E v. G.W. Thomas Drayage Co.*,
69 Cal.2d 33 (1968) ............................................................................................................7, 8

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ..................................................................................................6

*Ramirez v. Baxter Credit Union*,
2017 WL 1064991 (N.D. Cal. Mar. 21, 2017).......................................................................12

*Rodriguez v. Recovery Performance & Marine, LLC*,
38 So. 3d 178 (Fla. Dist. Ct. App. 2010) ..............................................................................11

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ................................................................................11

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................................................12

*Seitzinger v. Select Portfolio Servicing, Inc.*,
2018 WL 2010993 (N.D. Cal. Apr. 30, 2018) .......................................................................10

*In re Sony Gaming Networks & Customer Data Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012).....................................................................................11

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ..................................................................................................5

*U.S. Cellular Inv. Co. of L.A. v. GTE Mobilnet, Inc.*,
    281 F.3d 929 (9th Cir. 2002) ...................................................................................7

*Van Mourik v. Big Heart Pet Brands, Inc.*,
    2018 WL 1116715 (N.D. Cal. Mar. 1, 2018).................................................11, 12

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .............................................................................12

**Statutes**

Cal. Bus. & Prof. Code § 17203 .....................................................................................9

Cal. Civ. Code § 1636.......................................................................................................7

Fla. Stat. §501.211(2).....................................................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 5

Federal Rule of Civil Procedure 12(f) .........................................................................1, 12

1

2

**NOTICE OF MOTION & MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**AND TO STRIKE CLASS ALLEGATIONS**

3          Please take notice that on December 13, 2018 at 9:00 a.m., before the Honorable Edward

4    J. Davila, Defendant Google LLC will and hereby does move under Federal Rule of Civil

5    Procedure 12(b)(6) and 12(f) for an order dismissing the claims of Rene Cabrera with prejudice

6    and striking the class allegations of Rick Woods with prejudice.  Google's motion is based on

7    this Notice, the accompanying Memorandum of Points and Authorities, any reply memorandum

8    that Google may file, any arguments of counsel, and any other matter that the Court deems

9    appropriate.

10                          **MEMORANDUM OF POINTS AND AUTHORITIES**

11          Plaintiffs' Third Amended Complaint (TAC) does not comply with the order granting

12   leave to file it.  In that order, the Court held that "Woods does not provide adequate

13   representation of the [proposed] classes" because his "business connection with class counsel

14   creates an intolerable conflict of interests."  Dkt. No. 377, at 8.  The TAC, filed the day after the

15   order disqualifying Woods, still seeks to install Woods as class representative.  The TAC's

16   allegations still focus on Woods himself.  But Woods can only pursue his individual claims; he is

17   not eligible to represent a class.

18          The TAC does add some allegations about back-up plaintiff Rene Cabrera, who has not

19   yet been disqualified as a class representative.  But Cabrera cannot proceed as a plaintiff at all

20   because the few individual allegations about him do not state a claim for relief.  Cabrera cannot

21   shore up his own deficient claims with allegations made by another (now disqualified)

22   prospective class representative.

23          Cabrera alleges that he began advertising with AdWords in August 2008, over a year

24   before Woods began advertising.  Yet Cabrera has not alleged that he saw *any* extrinsic

25   evidence—before or after he signed up for AdWords—that would support *his* interpretation of

26   the AdWords Agreement's Measurements Clause or the class's claim for breach of contract.  In

27   fact, Cabrera does not allege that he saw or relied on any of the relevant exhibits attached to the

28

TAC (Exs. B-F & L).  As a result, Cabrera cannot allege that he relied on any of the extrinsic evidence that was essential to Woods's individual contract claim.

Cabrera's Location Targeting claim is equally deficient.  Woods had standing to pursue his Location Targeting UCL claim because Woods had alleged that he *personally* lost money on "exemplary clicks that were in violation of Woods' Campaign Settings" and also alleged the specific date, location of the person clicking the ad, and the location reported by Google.  Dkt. No. 85 (citing Dkt. No. 68, ¶ 209).  In contrast, Cabrera vaguely alleges only a single click "that was served to a user located outside of his designated geographical locations," without saying when the click occurred, or where the user was supposedly located.  TAC ¶ 81; *compare id.* ¶ 79 (including specific date and location information for Woods's clicks).  In addition, Cabrera cannot assert a claim under California's UCL; under California's choice-of-law principles, Cabrera's noncontractual consumer-protection claim is governed by his state of residence: Florida.

In other words, the TAC rests almost entirely on allegations about Woods's individual claims.  But allegations about Woods cannot figure into class certification because he has been found to be an inadequate class representative who can pursue only his individual claims.  And because Woods cannot represent a class, the allegations proposing him as a class representative (TAC ¶¶ 102-112) should be stricken from the TAC.

Because Cabrera has not plausibly alleged facts that would support either his Smart Pricing or Location Targeting claim, his claims should be dismissed and the case should proceed on Woods's individual claims alone.

## BACKGROUND

Because the Court is familiar with this case, we limit the background recited here to that relevant to this motion.

### A.    Procedural History.

Woods filed his initial complaint in March 2011.  Dkt. No. 1.  The Court (Judge Fogel) granted Google's motion to dismiss (Dkt. No. 41) in its entirety.  Dkt. No. 64.  The Court dismissed Woods's contract claim for multiple independent reasons; for the Smart Pricing claim

2

in particular, the Court noted that there is no "express language in the [AdWords] Agreement articulating such a promise" and rejected Woods's attempt to incorporate dozens of Help Center pages into the agreement. *Id.* at 7-9.

Woods's First Amended Complaint (Dkt. No. 68) reasserted the Smart Pricing claims and attached exhibits to the complaint that allegedly supported his interpretation of the measurements clause. *Id.* Exs. B-G.  The FAC also introduced Woods's location targeting claim, which alleged that his advertisements were not targeted geographically as he understood they would be when he signed up for AdWords.  Google again moved to dismiss the complaint.  Dkt. No. 73.

The Court dismissed the Smart Pricing claims for a second time, but denied Google's motion to dismiss the location targeting claim. Dkt. No. 85.  The Court dismissed the Smart Pricing breach of contract claim for two reasons.  First, the exhibits Woods attached to the FAC did not render the contract "reasonably susceptible to Woods' interpretation that Smart Pricing applies to all clicks." Dkt. No. 85 at 8.  Instead, the Court found the Measurements Clause ambiguous and held that the FAC's exhibits could mean, at best for Woods, that "Google must base the charges for Display Network clicks, at least in part, on the Smart Pricing formula."  *Id.* at 7-8.  Second, the Court found that Woods had not sufficiently alleged that Google failed to apply the Smart Pricing formula to clicks on his advertisements that were on the Display Network. Specifically, the Court noted that "even if the contract were interpreted to require Google to apply Smart Pricing to all Display Network clicks, Woods had not stated a claim for a breach of contract because he has not pleaded that any of the clicks that Google failed to Smart Price were from the Display Network." *Id.* at 10.  As for the Location Targeting claim, the Court concluded that Woods had satisfied the UCL's requirement to "show he personally lost money or property" as a result of the alleged violation because Woods had alleged that "Google distributed over $20.00 of exemplary clicks that were in violation of Woods' Campaign Settings," pointing to the allegations in the complaint that alleged the date, location of the user, and the location reported by Google of each click. *Id.* at 16 (citing FAC ¶¶ 209, 212).

Woods's Second Amended Complaint (Dkt. No. 87), filed in September 2012, reasserted the Location Targeting Claim and sought to revive the dismissed Smart Pricing claims.  This

time, the Court permitted the Smart Pricing claims to go forward in large part.  Dkt. No. 122. The Court referred back to its prior order that had concluded that the measurements clause might be read, with supportive extrinsic evidence, to require that Google "base the charges" for "Display Network Clicks at least in part on the Smart Pricing formula."  Dkt. No. 122, at 8 (citing Dkt. No. 85, at 8).

Google also moved for summary judgment on the claims alleged in the Second Amended Complaint.  Dkt. No. 205.  The Court granted that motion in part, disposing of Woods' Smart Pricing UCL claim, and denied it in part.  Most relevant here, the Court permitted the Smart Pricing contract claim to proceed solely on Woods's "conten[tion] that Google breached the AdWords Agreement by failing to apply a Smart Pricing discount" to bids resulting from "three ad clicks that Woods paid for."  Dkt. No. 253, at 3; *see also id.* at 4 (describing those clicks as "*the three clicks at issue*") (emphasis added).  And the Court credited Google's showing that the Measurements Clause creates no obligation to Smart Price every Display Network click without exception.  Specifically, the Court recognized that Google had shown that certain "mobile ads . . . were excluded from Smart Pricing," but held that summary judgment was inappropriate because of "factual dispute[s]" over "the meaning of 'mobile ads'" and "whether the three clicks at issue"—which again were Woods's clicks resulting from bids that were not Smart Priced at all—qualified as "mobile ads that were excluded from Smart Pricing."  *Id.* at 3-4.

**B.    The Third Amended Complaint.**

While the parties' cross-motions on class certification were pending—including Google's challenge to Woods's adequacy as a putative class representative—Woods's counsel sought leave to file a proposed Third Amended Complaint, adding a new plaintiff and putative class representative, Rene Cabrera.  Dkt. No. 285.  The proposed TAC put forth both Woods and Cabrera as potential class representatives.  Dkt. No. 285-3.

This Court granted Google's motion to deny class certification on the grounds that Woods was disqualified by "an intolerable conflict of interest" with his counsel.  Dkt. No. 366, at 8.  The Court permitted Woods and his counsel to file a third amended complaint adding Cabrera, however, noting that any challenges to the merits of Cabrera's claims could come after

4

1   amendment.  *Id.* at 20 (citing *dpiX LLC v. Yieldboost Tech., Inc.*, 2015 WL 5158534, at *3 (N.D.

2   Cal. Sept. 2, 2015)).

3            Yet Woods's counsel filed the same complaint that they drafted before the Court's ruling,

4   still treating Woods as if he were an adequate class representative.  *Compare* Dkt. No. 285-3

5   ([Proposed] Third Amended Complaint) *with* TAC; *see also, e.g.*, TAC ¶¶ 102-112 (alleging that

6   both Woods and Cabrera may be class representatives).  As for Cabrera, the TAC alleges that he

7   began advertising in AdWords in August 2008, over a year before Woods.  TAC ¶ 8.  And the

8   TAC alleges that Cabrera stopped advertising with Google in August 2009 (*id.*), again before

9   Woods starting using AdWords.  Notwithstanding the different time period, the TAC relies on

10  the same extrinsic evidence as the SAC—virtually all of which post-dates the period of time that

11  Cabrera alleges he used AdWords.  *Id.* ¶¶ 65-66 & Exs. B-F, L.  The TAC does not connect

12  Cabrera to any of that supposed extrinsic evidence.

13           In connection with the Location Targeting claim, Woods repeats his allegations from the

14  FAC and SAC about the exemplar clicks that were outside of his selected geographic areas.

15  TAC ¶ 79; *cf.* FAC ¶ 209 (same chart).  Cabrera, by contrast, alleges only that he "received and

16  was charged by Google for at least one click in his Adobe Training ad campaign (cost of $7.21)

17  that was served to a user located outside of his designated geographical locations" (TAC ¶ 81).

18  The TAC does not allege when the click allegedly took place, or where it came from.  Cabrera

19  also speculates that he "was likely charged for many more clicks."  *Id.*

20                                        **ARGUMENT**

21           In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the

22  Court must "accept" the complaint's allegations "as true," and afford the plaintiff benefit of

23  "reasonable inference[s]," but "[a] pleading that offers 'labels and conclusions' or 'a formulaic

24  recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662

25  (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court need not

26  "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

27  unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001),

28  or those "that contradict matters that are either subject to judicial notice or attached as exhibits to

5

the complaint," Dkt. 85 at 8 n.4 (citing *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A complaint should be dismissed if it "lacks a cognizable legal theory *or sufficient facts to support a cognizable legal theory*." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (emphasis added). And each plaintiff must assert his or her own allegations supporting an entitlement to relief. *See*, *e.g.*, *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1192-93 (N.D. Cal. 2014) ("[I]n accordance with *Twombly/Iqbal*, . . . plaintiffs must plead facts as to *each* of the FLSA plaintiffs showing a specific week in which he/she worked more than 40 hours a week and was not compensated for overtime.") (emphasis added).

Each of Cabrera's claims falls short under this standard and should be dismissed.

## I.   CABRERA'S SMART PRICING CLAIM SHOULD BE DISMISSED BECAUSE HE HAS NOT ALLEGED EXTRINSIC EVIDENCE THAT WOULD SUPPORT HIS INTERPRETATION OF THE MEASUREMENTS CLAUSE.

The Smart Pricing claim in the TAC is predicated on the repeated allegation "that Google promises to 'Smart Price' *all* clicks on ads originating from the Display Network." TAC ¶ 6; *see also id.* ¶¶ 35, 55, 56, 64, 66, 67, 69.[1] But the AdWords Agreement, on which Cabrera's breach of contract claim depends, TAC ¶¶ 62-67 & Ex. A, never mentions Smart Pricing. And Cabrera has alleged nothing that would support a promise to Smart Price in the Measurements Clause or anywhere else in Google's AdWords Agreement.

As this Court has noted, "it is undisputed that the words 'Smart Pricing' did not appear anywhere in the AdWords Agreement." Dkt. No. 253, at 5 (quotation marks and alterations omitted). Cabrera rests his contract claim on the Agreement's Measurements Clause, which simply states that "Charges are solely based on Google's measurements for the applicable Program, unless otherwise agreed to in writing." TAC Ex. A § 7; *see*, *e.g.*, *id.* ¶¶ 62-67. Nothing in the "clear and explicit meaning" of the Measurements Clause, "interpreted in [its] ordinary and popular sense," *E.M.M.I., Inc. v. Zurich Am. Ins. Co.*, 32 Cal.4th 465, 470 (2004)

---

[1]     Smart Pricing applies to *bids*, not clicks, *see Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 983 (9th Cir. 2015), but for present purposes what is relevant is that Cabrera's Smart Pricing claim fails even on the erroneous interpretation of Smart Pricing advanced in the TAC.

1   (quotation marks omitted), obligates Google to Smart Price every Display Network click, let

2   alone Smart Price any click any particular way.  The context of the Measurements Clause further

3   precludes any connection to Smart Pricing or any other aspect of the AdWords Program. The

4   Measurements Clause in Cabrera's Agreement appears in the "Payment" section, which sets

5   forth the customer's obligation to pay Google, not any obligations by Google to administer the

6   AdWords Program in any particular way.

7         Plaintiffs recognize that this Court "found certain terms in the Agreement [i.e., the

8   Measurements Clause] ambiguous" and concluded that "extrinsic evidence" would be required to

9   "support[] Woods' interpretation" of the contract.  TAC ¶ 16.  But the TAC does not allege any

10  extrinsic evidence that would support this meaning of the Measurements Clause at the time

11  Cabrera signed up for AdWords in August 2008—or that he relied on any specific piece of

12  extrinsic evidence at all.  He merely alleges that he "researched AdWords" during the "summer

13  of 2008" (TAC ¶¶ 4, 6) without saying what he saw that would support his interpretation of the

14  Measurements Clause to impose specific obligations to Smart Price in a particular way.  This is

15  the sort of "naked assertion[] devoid of further factual enhancement" that does not satisfy

16  pleading standards.  *Iqbal*, 556 U.S. at 678.

17        Under California law, "'[t]he fundamental goal of contract interpretation is to give effect

18  to the *mutual intent* of the parties as it existed *at the time of contracting*.'"  *Miller v. Glenn*

19  *Miller Prods., Inc.*, 454 F.3d 975, 989 (9th Cir. 2006) (per curiam) (emphasis added) (quoting

20  *U.S. Cellular Inv. Co. of L.A. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002)); *accord*

21  Dkt. No. 85, at 6.  The use of extrinsic evidence is subject to the same principles: it must "prove

22  the parties' mutual intention."  *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal.App.4th 97,

23  114 (2007) (citing *PG&E v. G.W. Thomas Drayage Co.*, 69 Cal.2d 33, 37-39 (1968)); *see* Cal.

24  Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the *mutual intention of*

25  *the parties* as it existed *at the time of contracting* . . . .") (emphasis added).  That is because

26  extrinsic evidence is relevant only to show "the *parties'* understanding of the words used."

27  *Thomas Drayage*, 69 Cal. 2d at 39 (emphasis added).

28

Cabrera's allegations thus fall short on two fronts. *First*, he never plausibly alleges that the extrinsic evidence attached to the complaint supports the parties' mutual intention. Cabrera does not claim that he ever saw any statement that he now claims to constitute extrinsic evidence of the meaning of the term "Google's measurements." For example, the TAC asserts in conclusory fashion that "extrinsic evidence demonstrates the Agreement is reasonably susceptible to Plaintiffs' reading" (TAC ¶ 65 & n.33), but does not connect any extrinsic evidence to Cabrera himself.[2] *Second*, Cabrera never alleges how any of the extrinsic evidence could support his interpretation of the Measurements Clause *at the time of contracting* in August 2008. Indeed, almost all of the extrinsic evidence on which plaintiffs rely is dated years later. *E.g.*, TAC Ex. B (2011); Ex. C (2011); Ex. D (2010); Ex. E (2011); Ex. L (2011).[3] Exhibit F, which has a 2007 date, is a multimedia presentation where the key "extrinsic evidence" plaintiffs point to appears in speakers' notes that identify it as audio deleted from the presentation—and Cabrera never alleges that he saw Exhibit F. TAC Ex. F. Neither Exhibit F nor any other item of extrinsic evidence purports to define the contractual term "Google's measurements" or to bear any relationship to any contractual obligation to use those measurements. Rather, most of the extrinsic evidence is presented as if it created separate, free-standing obligations that the AdWords Agreement explicitly precludes, TAC Ex. A § 9, that is, an obligation to Smart Price every Display Network click, and an obligation to use particular algorithms or formulas for Smart Pricing. Indeed, the latter claim was not recognized in the order partially denying summary judgment: the contract claim was upheld solely on the ground that there was a triable

---

[2]      The allegation in the TAC that AdWords Help Center pages and a multimedia presentation fall within the Measurements Clause's "otherwise agreed in writing" language (TAC ¶ 66) borders on the absurd. Those documents are not agreements or contracts, nor do they purport to modify the Measurements Clause or any other aspect of the AdWords Agreement. Moreover, the AdWords Agreement itself contains an integration clause that makes clear that the written AdWords Agreement "constitutes the entire and exclusive agreement between the parties with respect to the subject matter hereof." TAC Ex. A § 9.

[3]      The TAC also does not (and cannot) attempt to point to any custom or usage of the trade that, as applied to all advertisers, might give the contractual term "measurements" the extraordinary meanings plaintiffs argue for. *See Thomas Drayage*, 69 Cal. 2d at 39 & n.6; *see also Employers Reins. Co. v. Super. Ct.*, 161 Cal. App. 4th 906, 920 (2008).

issue of fact as to whether three non-Smart Priced clicks should have been Smart Priced.  Dkt. No. 253, at 4 ("A factual dispute also exists as to whether *the three clicks at issue* involved mobile ads that were excluded from Smart Pricing.") (emphasis added).  The claim on its face recognizes that Google "base[d] the charges" for "Display Network Clicks at least in part on the Smart Pricing formula," Dkt. No. 122, at 8 (citing Dkt. No. 85, at 8)—the greatest obligation that the Court found that the Measurements Clause might conceivably bear.  And no extrinsic evidence purports to dictate the factors or formulas that go into the Smart Price for any site.

Cabrera cannot use extrinsic evidence from 2010 or 2011 that he never says he saw to support his interpretation of an August 2008 contract.  As Judge Fogel put it in dismissing a breach of contract claim under similar circumstances, without an allegation that the extrinsic evidence "existed at the time the parties entered into the Written Agreement or that Plaintiffs were aware of the existence of the [e]xtrinsic [e]vidence at that time," "the [e]xtrinsic [e]vidence is immaterial with respect to the intentions of the parties at the time they entered into the contract." *In re Facebook Advertising Litig.*, 709 F. Supp. 2d 762, 769 (N.D. Cal. 2010).  The same reasons warrant dismissal of Cabrera's Smart Pricing contract claim here.  And dismissal is still more appropriate because the supposed extrinsic evidence does not support Cabrera's interpretation of the contract.

## II.        CABRERA'S LOCATION TARGETING CLAIM FAILS.

### A.        Cabrera has not adequately alleged harm from an out-of-area click.

Cabrera cannot recover under the UCL unless he personally lost money or property as a result of the alleged misconduct and can establish his entitlement to restitution. *See* Cal. Bus. & Prof. Code § 17203; *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003) (restitution is only pecuniary remedy under UCL).  To sustain his Location Targeting claim, Cabrera must identify a specific out-of-area click that harmed him.

He has failed to do so.  *Woods* alleges six specific "exemplar clicks" that he claims he should not have paid for, including the specific date of the click and the location of the person clicking the ad.  TAC ¶ 79.  And it was on the basis of those identical specific allegations of

1  "exemplary clicks" in the FAC that this Court concluded that Woods had alleged a "legally

2  cognizable injury under the UCL."  Dkt. No. 85, at 16 (citing FAC ¶ 209).

3          *Cabrera*, by contrast, has not adequately alleged a single out-of-area click that harmed

4  him.  He asserts that he "received and was charged by Google for at least one click in his Adobe

5  Training ad campaign (cost of $7.21) that was served to a user located outside of his designated

6  geographical locations."  TAC ¶ 81.  But, unlike Woods, he does not provide even the most basic

7  details about the alleged click, such as when or where it occurred.

8          The conclusory assertion that Cabrera paid for an out-of-area click, without *any*

9  additional factual support, does not satisfy the plausibility standard of *Twombly* and *Iqbal*.  *Cf.*,

10  *e.g.*, *Seitzinger v. Select Portfolio Servicing, Inc.*, 2018 WL 2010993, at *4 (N.D. Cal. Apr. 30,

11  2018) ("conclusory" statements that plaintiffs incurred "foreclosure fees and costs" did not

12  suffice); *Gyene v. Steward Financial, Inc.*, 2013 WL 146191, at *4 (C.D. Cal. Jan. 11, 2013)

13  ("single conclusory statement" that plaintiffs have suffered economic injury as a result of

14  defendants' conduct "fail[s] to plead facts sufficient to satisfy *Iqbal* and *Twombly*"); *KEMA, Inc.*

15  *v. Koperwhats*, 2010 WL 11417911, at *6 (N.D. Cal. Sept. 1, 2010) (dismissing claim where

16  complaint "contains no factual allegation stating, or from which it reasonably can be inferred,

17  that plaintiffs have 'lost money or property' as a result of defendants' conduct").  And Cabrera's

18  additional assertion that he "was likely charged for many more clicks originating from outside

19  his designated geographical locations" (TAC ¶ 81) is bare speculation that falls on the wrong

20  side of the plausibility line.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough

21  to raise a right to relief above the speculative level.").

22          **B.      Cabrera cannot bring a claim under California's UCL.**

23          Cabrera's UCL claim fails for the additional reason that Florida's consumer-protection

24  laws govern his Location Targeting allegations.  The TAC alleges that Cabrera resides in Florida

25  and operated a business in Florida when he began advertising with Google in 2008.  TAC ¶ 30.

26   The Ninth Circuit has made clear that under the "three-step governmental interest test" under

27  California's choice of law principles, generally "each class member's consumer protection claim

28  should be governed by the consumer protection laws of the jurisdiction in which the transaction

10

took place." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).[4]  That test "requires consideration of (1) the conflict of laws, (2) the interest of foreign jurisdiction, and (3) which state's interest is most impaired." *Arroyo v. TP-Link USA Corp.*, 2015 WL 5698752, at *3 (N.D. Cal. Sept. 29, 2015); *see also id.* (noting appropriateness of addressing "the governmental interest test at the motion to dismiss stage" so long as the defendant addresses the factors).  As in *Mazza*, all three factors point in favor of applying Florida law to Cabrera's Location Targeting claim.

*First*, there are material differences between Florida's consumer-protection statute and the UCL.  Differences are material when they "spell the difference between the success and failure of a claim" or determine availability of remedies.  *Mazza*, 666 F.3d at 591; *accord, e.g.*, *Van Mourik v. Big Heart Pet Brands, Inc.*, 2018 WL 1116715, at *3 (N.D. Cal. Mar. 1, 2018).  For instance, while a named plaintiff in a UCL action is required to show reliance on a misrepresentation or omission, *see, e.g.*, *Pfizer v. Superior Court*, 182 Cal. App. 4th 622, 631-32 (2010), actual reliance is not required under Florida's statute.  *See Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (Fla. Dist. Ct. App. 2000); *see also Darisse*, 2016 WL 4385849, at *10 (noting same material difference).  In addition, while recovery under the UCL is limited to restitution, the Florida statute authorizes a remedy of "actual damages."  Fla. Stat. §501.211(2); *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010).

*Second*, it is plain that Florida has a strong interest in applying its laws to its residents and to transactions within its borders.  "Each of our states has an interest in balancing the range of

---

[4]     The choice of California law in the applicable AdWords agreement is narrower than in more recent versions and in other Google agreements, and says only that the "*agreement* must be construed as if both parties jointly wrote it and governed by California law."  TAC Ex. A § 9; *cf, e.g.*, *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1107-09 (N.D. Cal. 2016) (applying California law where terms of service select California law to apply to "any disputes arising out of or relating to these terms or the Services").  Courts routinely conclude that a choice-of-law provision limited to contract claims does not govern noncontractual consumer-protection claims. *See, e.g.*, *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *8 (N.D. Cal. Aug. 15, 2016); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009-10 (N.D. Cal. 2014); *In re Sony Gaming Networks & Customer Data Breach Litig.*, 903 F. Supp. 2d 942, 964-65 (S.D. Cal. 2012).

1    products and prices offered to consumers with the legal protections afforded to them." *Mazza*,

2    666 F.3d at 592-93 (citing *McCann v. Foster Wheeler, LLC*, 48 Cal. 4th 68, 97-98 (2010)).  And

3    as the Ninth Circuit has put it on multiple occasions, "[e]very state has an interest in having its

4    law applied to its resident claimants."  *Id.* at 591-92 (quoting *Zinser v. Accufix Research

5    Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001)).

6         *Third*, Florida's interest outweighs that of California.  California specifically "recognizes

7    that with respect to regulating or affecting conduct within its borders, the place of the wrong has

8    the predominant interest.  California considers the 'place of the wrong' to be the state where the

9    last event necessary to make the actor liable occurred."  *Mazza*, 666 F.3d at 593 (citations and

10   quotations omitted). As in *Mazza*, "the last events necessary for liability" as to Cabrera's

11   claims—Cabrera's exposure to the challenged representations and his AdWords purchases—

12   "took place in [Florida], not in California." *Id.* at 594.  And, by contrast, California's interest in

13   applying its laws on behalf of nonresidents like Cabrera is "attenuated." *Id.*; *accord Van Mourik*,

14   2018 WL 1116715, at *3.

15        In sum, Cabrera cannot sue under the UCL, and his Location Targeting claim should be

16   dismissed for that independent reason.

17   **III.   WOODS'S CLAIMS TO BE A CLASS REPRESENTATIVE SHOULD BE
            STRICKEN.**

18

19        Rule 12(f) authorizes a court to "strike from a pleading an insufficient defense or any

20   redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  And courts in

21   this Circuit repeatedly have confirmed that courts may strike or dismiss class allegations on the

22   pleadings.  *See, e.g.*, *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975); *Ramirez v.

23   Baxter Credit Union*, 2017 WL 1064991, at *7 (N.D. Cal. Mar. 21, 2017); *Collins v. Gamestop

24   Corp.*, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6, 2010); *Sanders v. Apple Inc.*, 672 F. Supp. 2d

25   978, 990-91 (N.D. Cal. 2009).

26        Woods's class allegations should be stricken now, for the reasons this Court has already

27   explained.  As this Court made clear, "a conflict of interests prevents Woods from adequately

28   representing the interests of the absent class members."  Dkt. No. 366, at 2; *see also id.* at 6-14

12

1    (detailing the "intolerable conflict of interests" created by "Woods's business connection with

2    class counsel").   Accordingly, Woods is at most an individual plaintiff—not a class

3    representative.   Remarkably, however, Woods's counsel filed the same proposed TAC that they

4    submitted *prior* to this Court's ruling, putting forth Woods as a potential class representative.

5    *Compare* Dkt. No. 285-3 ([Proposed] Third Amended Complaint) *with* TAC.  And they did so

6    on the premise that "We [Woods's counsel] pay no credence to their [Google's] motion against

7    Mr. Woods."  8/16/18 Hearing Tr. 38:10-11; *see also, e.g.*, TAC ¶ 110 (alleging that "Plaintiffs

8    and their counsel will fairly and adequately protect the interests of the members of the Classes"

9    and that "Plaintiffs' interests do not conflict with the interests of the Classes they seek to

10   represent").

11          Woods's renewed attempt to represent a class (*e.g.*, TAC ¶¶ 102-112) should be rejected

12   now, to bring the TAC in line with this Court's order.  Nor can Woods's conflicted counsel

13   contend that they preserved Woods's class allegations for appellate purposes; the TAC is replete

14   with other examples where Woods's counsel made amendments in line with this Court's prior

15   orders while preserving the right to challenge those orders. *See, e.g.*, TAC ¶ 23 ("Plaintiffs . . .

16   omit from this Complaint the claims dismissed by the Court's summary judgment order (ECF

17   No. 253), and reserve their right to challenge the summary judgment decision relating to those

18   claims on appeal if warranted"); *id.* ¶ 15 (omitting previously dismissed claims based on non-

19   compliant sites but reserving the right to reassert such claims); *id.* ¶ 16 n.6 (same for claims

20   about Smart Pricing on the Search Network).  Plaintiffs have no excuse for not taking the same

21   approach with Woods's class allegations.

22                                          **CONCLUSION**

23          The claims of Cabrera should be dismissed with prejudice, and the class claims of Woods

24   should be stricken and dismissed with prejudice.  The litigation should proceed, if at all, on

25   Woods's individual claims alone.

26   Dated:  September 7, 2018                    Respectfully submitted,

27                                               **MAYER BROWN LLP**

28

---

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Edward D. Johnson*
Edward D. Johnson (SBN 189475)
wjohnson@mayerbrown.com
Donald M. Falk (SBN150256)
dfalk@mayerbrown.com
Eric B. Evans (SBN 232476)
eevans@mayerbrown.com
Sarah E. Reynolds (SBN 319780)
sreynolds@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

Daniel E. Jones (*pro hac vice*)
djones@mayerbrown.com
1999 K Street N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000

*Attorneys for Defendant Google LLC*

GOOGLE LLC'S MOTION TO DISMISS THIRD AMENDED COMPLAINT AND TO STRIKE;
CASE NO. 5:11-CV-1263-EJD