United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICK WOODS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 5:11-cv-01263-EJD<br><br>**ORDER DENYING MOTION TO DISMISS; GRANTING MOTION TO STRIKE**<br><br>Re: Dkt. No. 373 |

## I. INTRODUCTION

Pursuant to Federal Rules of Procedure 12(b)(6) and 12(f), Defendant Google LLC ("Google") moves for an order dismissing the claims of newly added Plaintiff Rene Cabrera ("Cabrera") with prejudice and striking the class allegations of Rick Woods ("Woods") with prejudice. The court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, Google's motion to dismiss Cabrera's claims is denied and Google's motion to strike Woods's class allegations is granted.

## II. BACKGROUND[1]

Woods filed his initial complaint in March 2011 alleging that Google bilked him and other advertisers into overpaying for advertising services through Google's AdWords program and pricing scheme. Dkt. No. 1. The court granted Google's motion to dismiss the complaint in its

---

[1] Because the parties are familiar with the case, the Background sets forth primarily the procedural history leading to the instant motion.

1  entirety. Dkt. No. 64. Woods filed a First Amended Complaint (Dkt. No. 68) and Google again
2  moved to dismiss (Dkt. No. 73). Google argued, among other things, that the AdWords
3  Advertising Program Terms ("Agreement") contained no obligation for Google to apply
4  discounted "Smart Pricing" for certain "clicks" on Woods's ads; and that the court should not
5  consider extrinsic evidence to interpret the Agreement. The court considered the extrinsic
6  evidence and found plausible that the contract language, "[c]harges are solely based on Google's
7  measurements for the applicable Program," in the Agreement meant that Google must base the
8  charges for Display Network clicks, at least in part, on the Smart Pricing formula. Dkt. No. 85, p.
9  8. The court dismissed the breach of contract claim concerning Smart Pricing, however, because
10 Woods had not pleaded that any of the clicks that Google failed to Smart Price were from the
11 Display Network. *Id*. at 10. The court denied Google's motion to dismiss the California Unfair
12 Competition Law ("UCL") claim to the extent it was based upon location targeting ("location
13 targeting claim"). The court found that Woods had identified misrepresentations that were likely to
14 deceive (the geographical location question and text of the adjacent help link on Google's
15 AdWords website), and that Woods had standing to bring the location targeting claim because he
16 had alleged "Google distributed over $20.00 of exemplary clicks that were in violation of Woods'
17 Campaign Settings." *Id*. at 16.

18 Woods filed a Second Amended Complaint in September of 2012 (Dkt. No. 87) and
19 Google again filed a motion to dismiss (Dkt. No. 95). This time, the court found that Woods had
20 stated a claim for breach of contract due to Google's alleged failure to Smart Price clicks on the
21 Display Network. Dkt. No. 122. Woods enumerated in detail the Display Network clicks he
22 alleged were not Smart Priced.

23 Google next moved for summary judgment. Dkt. No. 205. The court granted the motion
24 as to Woods's UCL and False Advertising Law claims regarding Smart Pricing; denied the motion
25 as to Woods's UCL claims regarding location targeting; and denied the motion as to Woods's
26 breach of contract claim because of a disputed factual issues as to the meaning of "mobile ads"
27 and whether three clicks at issue qualified as "mobile ads" that are excluded from Smart Pricing.

Dkt. No. 253.

Thereafter the parties filed cross motions on class certification. While the motions were pending, Woods's counsel sought leave to file a Third Amended Complaint ("TAC") for the purpose of adding Cabrera as a plaintiff and additional proposed class representative. Dkt. No. 286, p. 6. The court held that class certification was inappropriate because Woods's business connection with class counsel created a conflict of interests that prevented Woods from adequately representing putative class members. Dkt. No. 366, pp. 2, 8. The court granted Woods and counsel leave to file the TAC. *Id.*

The TAC treats both Woods and Cabrera as class representatives. Dkt. No. 368, p. 3. As for Cabrera, the TAC alleges that he began advertising on AdWords on or about August 14, 2008 and continued advertising with Google until August 2009. TAC ¶ 8. Woods began advertising with Google a year later on September 30, 2009. Notwithstanding the different time period, the TAC relies on the same extrinsic evidence as the Second Amended Complaint to support the Plaintiffs' interpretation of the Agreement governing the parties' AdWords advertising relationship. As to the location targeting claim, Cabrera alleges that he "received and was charged by Google for at least one click in his Adobe Training ad campaign (cost of $7.21) that was served to a user located outside of his designated geographical locations." TAC ¶ 81. Cabrera also alleges that he was likely charged for many more clicks originating from outside his designated geographical locations. *Id*.

**III. STANDARDS**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,

Case No.: 5:11-cv-01263-EJD
ORDER DENYING MOTION TO DISMISS; GRANTING MOTION TO STRIKE
3

1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

A court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "[W]hether to grant a motion to strike lies within the sound discretion of the district court." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993). Motions to strike are generally regarded with disfavor and should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

## IV.  DISCUSSION

Google raises three separate challenges to the TAC.  First, Google contends that Cabrera's Smart Pricing claim should be dismissed because unlike Woods, Cabrera has not identified extrinsic evidence that existed and upon which he relied at the time he began advertising with Google in August 2008 that would support his interpretation of the measurement clause.  Second, Google contends that the location targeting claim should be dismissed because (a) Cabrera has not alleged an injury and (b) the California UCL does not apply to Cabrera because he is alleged to be a resident of Florida and was operating a Florida business when he began advertising with Google in 2008. Third, Google moves to strike Wood's class allegations because the court has found that "a conflict of interests prevents Woods from adequately representing the interests of the absent class members." Dkt. No. 366, p. 2.

### A.  Smart Pricing Claim

Google argues that Cabrera never plausibly alleges that the extrinsic evidence attached to the TAC supports the parties' mutual contractual intent.  Google also contends that Cabrera never alleges how any of the extrinsic evidence could support his interpretation of the measurements

Case No.: 5:11-cv-01263-EJD
ORDER DENYING MOTION TO DISMISS; GRANTING MOTION TO STRIKE
4

clause at the time of contracting in August 2008 when almost all of the extrinsic evidence is dated years later. *See e.g.*, TAC Ex. B (2011); Ex. C (2011); Ex. D (2010); Ex. E (2011); Ex. F (2007); Ex. G (2008); Ex. L (2011).

A plaintiff claiming that a written agreement is ambiguous must point to specific words in the agreement and allege the existence of credible evidence of the parties' intended meaning of those words. *See In re Facebook PPC Advertising Litigation*, 709 F. Supp. 2d 762, 769 (N.D. Cal. 2010). Here, the TAC includes such allegations. Cabrera points to specific words in Section 7 of the Agreement: "[c]harges are solely based on Google's measurements for the applicable Program, *unless otherwise agreed to in writing.*" TAC ¶ 62 (emphasis in original). Cabrera alleges that Smart Pricing is one of the measurements used to calculate charges for click and that Google had a contractual obligation to apply the Smart Pricing discount to all Display Network clicks that were less likely to result in a conversion than clicks from google.com. *Id*. ¶¶ 64-65. Cabrera alleges that through research he conducted during the summer of 2008, he (and Woods) learned that Google promises to "Smart Price" all clicks on ads originating from the Display Network. *Id*. ¶ 6.

As for "credible evidence of the parties' intended meaning of" Section 7, Cabrera alleges: "To the extent Google disputes this meaning of 'measurement,' extrinsic evidence demonstrates the Agreement is reasonably susceptible to Plaintiffs' reading." For support, Cabera cites to the Exhibits B-F & L of the TAC and the Court's ruling on Google's motion to dismiss the First Amended Complaint. *See* Dkt. No. 85, p. 8 ("these "exhibits . . . support the interpretation that the contract language, '[c]harges are solely based on Google's measurements for the applicable Program,' means that Google must base the charges for Display Network clicks, at least in part, on the Smart Pricing formula."). Although most of the exhibits are dated well after Cabrera entered the Agreement, at least one, Exhibit F, is copyrighted in 2007, before Cabrera researched and signed up for AdWords.

When the alleged facts are construed in the light most favorable to Cabrera, they are sufficient to support Cabrera's breach contract claim. That Cabrera does not explicitly allege that

Case No.: 5:11-cv-01263-EJD
ORDER DENYING MOTION TO DISMISS; GRANTING MOTION TO STRIKE

5

he saw and relied on Exhibit F or any other extrinsic evidence is of no moment at the pleading stage. All that is required are sufficient facts to state a plausible claim. Cabrera has done so.

### B. Location Targeting Claim

Google raises two challenges to Cabrera's location targeting claim. First, Google contends that Cabrera's location targeting claim should be dismissed because Cabrera has not adequately alleged harm from an out-of-area click. Although Cabrera's allegations are meager, they are sufficient to satisfy the notice pleading requirement of Rule 8. Cabrera alleges that he "received and was charged by Google for at least one click in his Adobe Training ad campaign (cost of $7.21) that was served to a user located outside of his designated geographical locations." TAC ¶ 81. Cabrera also alleges that had he known Google distributed ads to users outside of his selected geographical locations, he would not have advertised with Google and would not have paid the charges for the out-of-area clicks. *Id*. ¶¶ 82, 90, 92. These allegations raise a plausible basis for damages for the location targeting claim. *See Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 838 (9th Cir. 2011) (finding that plaintiffs had standing to bring a UCL claim because they alleged that "[h]ad the product been labeled accurately, they would not have been willing to pay as much for it as they did, or would have refused to purchase the product altogether").

Second, Google contends that Cabrera cannot bring a claim under California's UCL because the TAC alleges that Cabrera is a Florida resident and was operating a Florida business when he began advertising with Google in 2008. Google contends that under California's choice of law principles, Florida law, not California law, should be applied to Cabrera's location targeting claim. In response, Cabrera asserts among other things, that Google has waived its right to assert that any law other than California applies to this case.

Cabrera's argument is well taken. In the seven years this case has been pending, Google never argued that the law of Woods's home state of Arkansas or any other state should control Woods's claims. The parties have engaged in three rounds of motions to dismiss, all rooted in California unfair competition law. *See* Dkt. Nos. 41, 73, 95. Furthermore, Google cited

California law throughout its motion for summary judgment. Given this history, Google cannot disavow the applicability of California law to Cabrera's claims, which are nearly identical to Woods's claims. *See Graebner v. James*, 963 F. Supp. 2d, 938, 943 (N.D. Cal. 2013) ("As both parties' briefs on the motion for summary judgment rely on California law and do not contend that Florida law should apply here, the parties are deemed to have waived any such argument."), *rev'd on other grounds*, *Graebner v. WM. Page & Associates, Inc.*, 624 Fed. App'x. 512 (9th Cir. 2015); *see also In re Heritage Bond Litig.*, No. 01-5752 DT, 2004 WL 1638201, at * 5 (C.D. Cal. July 12, 2004) (choice of law argument untimely and prejudicial because "parties have litigated the common law claims under California law since the commencement of this action several years ago" and the court had also made findings and issued rulings under California law).[2]

### C. Woods's Class Allegations

Lastly, Google moves to strike Wood's class allegations because the court has found that "a conflict of interests prevents Woods from adequately representing the interests of the absent class members." Dkt. No. 366, p. 2. In light of the court's ruling, Google contends that Woods is at most an individual plaintiff, not a class representative.

In ruling on the class certification motions, the Court found that because of Woods's close connection to Nix Patterson and Kessler Topaz through his partnership at TLP, his interests diverge too sharply from the classes so that he does not "fairly and adequately protect the interests of the class[es]." Fed. R. Civ. P. 23(a)(4). The Court also observed, that "[a]lthough this conclusion also means that Nix Patterson and Kessler Topaz cannot adequately represent the classes so long as Woods remains at the helm, the Court does not find that the conflict would 'continue to taint this case' if a new class representative is added." Dkt. No. 366, p. 14.

Seizing upon the last sentence, Plaintiffs argue that the Court's Order allows for Woods to potentially serve as a co-representative of the class. In doing so, Plaintiffs miss the clear import of the Court's order. It is the combination of Woods with class counsel Nix Patterson and Kessler

---

[2] Because Google has waived its argument regarding choice of law, it is not necessary for the court to consider Cabrera's alternative bases for applying California law.

Case No.: 5:11-cv-01263-EJD
ORDER DENYING MOTION TO DISMISS; GRANTING MOTION TO STRIKE

7

Topaz that creates the conflict. Because Nix Patterson and Kessler Topaz remain as class counsel, Woods is precluded from representing the class.

## V. CONCLUSION

For the reasons set forth above, Google's motion to dismiss Cabrera's claims is denied and Google's motion to strike Woods's class allegations is granted. Plaintiffs shall file and serve an amended complaint in conformity with this Order no later than October 30, 2018.

**IT IS SO ORDERED.**

Dated: October 23, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:11-cv-01263-EJD
ORDER DENYING MOTION TO DISMISS; GRANTING MOTION TO STRIKE
8