UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICK WOODS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | Case No. 5:11-cv-01263-EJD<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 432 |

## I.  INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Google LLC ("Google") moves for an order (1) dismissing with prejudice Rene Cabrera's ("Cabrera") claims in the Fourth Amended Complaint and (2) dismissing with prejudice both Plaintiffs' Smart Pricing claims to the extent the claims are based on allegations that Google Smart Priced incorrectly or improperly (as opposed to not Smart Pricing at all).  The motion was heard on January 10, 2019.  For the reasons set forth below, Google's motion to dismiss is granted as to Cabrera's claims in the Fourth Amended Complaint and denied in all other respects.

## II.  BACKGROUND

Co-plaintiff Rick Woods filed his initial complaint in March 2011 alleging that Google bilked him and other advertisers into overpaying for advertising services through Google's AdWords program and pricing scheme. Dkt. No. 1.  After several rounds of pleadings, Woods' allegations were pared down to the following.  First, Woods states a plausible claim for breach of contract based upon Google's alleged failure to Smart Price clicks on the Display Network ("Smart Pricing claim"). Dkt. No. 122.  The court found that the "measurements clause" of the

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
1

AdWords Agreement could be reasonably interpreted as requiring Google to base its charges for Display Network clicks at least in part on the Smart Pricing formula. Second, Woods states a plausible claim for violation of the California Unfair Competition Law ("UCL") to the extent his claim is based upon location targeting ("location targeting claim").

Thereafter, the court disqualified Woods as a class representative. To preserve the class action, Woods and counsel added Cabrera as a named plaintiff in a Third Amended Complaint ("TAC"). In the TAC, Plaintiffs alleged that during the summer of 2008, Cabrera researched AdWords to determine whether to advertise his software consulting business through Google. TAC ¶ 4. Cabrera allegedly began advertising on AdWords on or about August 14, 2008 and continued advertising with Google until August 2009. TAC ¶ 8. In ruling on Google's motion to dismiss the TAC, the court (1) denied Google's motion to dismiss Cabrera's Smart Pricing claim and location targeting claim, (2) granted Google's motion to strike Woods's class allegations, and (3) directed Plaintiffs to file an amended complaint. Dkt. No. 395.

In October of 2018, Plaintiffs filed a Fourth Amended Complaint (Dkt. No. 405) and Google filed the instant motion to dismiss raising two primary arguments (Dkt. No. 432). First, Google asserts that Cabrera lacks Article III standing. According to Google, Cabrera's claims are based solely on alleged injuries to Cabrera's software consulting business, Training Options, Inc. ("Training Options"), and that recent discovery reveals that Cabrera sold Training Options nine years before he was named as a plaintiff. Second, Google contends that the Smart Pricing claim must be dismissed to the extent the claim is based on a breach of contract theory the court purportedly rejected in the summary judgment order (Dkt. No. 253).

**III.    STANDARDS**

    **A.    Rule 12(b)(1)**

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
2

United States District Court
Northern District of California

sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *Id*. Stated differently, "[s]tanding addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

To establish Article III standing, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018). A plaintiff must establish standing as of the filing of the complaint. *Hernandez v. County of Monterey*, 70 F. Supp. 3d 963, 969-70 (N.D. Cal. 2014) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991)).

Lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "A Rule 12(b)(1) motion can be made as a speaking motion—or factual attack—when the defendant submits evidence challenging the jurisdiction along with its motion to dismiss." *Norkunas v. Wynn Las Vegas, LLC*, 343 Fed. Appx. 269, 270 (9th Cir. 2009) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "A proper speaking motion allows the court to consider evidence outside the complaint without converting the motion into a summary judgment motion." *Id*. (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

Once a defendant makes a speaking motion to dismiss pursuant to Rule 12(b)(1), "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id*. (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40, n. 2 (9th Cir. 2003). In resolving a factual attack on jurisdiction, the court may consider evidence beyond the complaint without converting the motion into a motion for

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
3

summary judgment. *Safe Air*, 373 F.3d at 1039. Further, the court need not presume the truthfulness of the plaintiff's allegations. *Id*.

Once a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden of establishing the court's jurisdiction. *See Chandler*, 598 F.3d at 1122. The plaintiff meets that burden by putting forth "the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, general factual allegations of injury may suffice. *Id*. In response to a motion for summary judgment, however, plaintiff must present specific facts to establish injury. *Id*.

### B. Rules 8 and 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

### IV. DISCUSSION

#### A. Standing

In considering this "speaking motion" to dismiss, the court has reviewed the evidence submitted by both parties and finds that Cabrera is not the proper party to bring the claims in the Fourth Amended Complaint.

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
4

### 1. Training Options Suffered the Alleged Injury

Cabrera testified that the "software consulting business" referred to in the Fourth Amended complaint is his company, Training Options. Evans Decl. ¶ 4, Ex. 3 (Cabrera Tr. at 60:7-19). Cabrera also testified that Training Options bought the ads that are the subject of this lawsuit. *Id.* at 62:1-4, 63:5-7, 64:2-4. Further, Cabrera testified that he used AdWords solely for Training Options (*id.* at 58:1-59:1) and stopped advertising with AdWords before he sold his business (*id.* at 66:16-18). Thus, Training Options, and not Cabrera, sustained the alleged injury resulting from the alleged overpayment of advertising services through Google's AdWords program and pricing scheme.

That Cabrera used his personal email and his personal AdWords account to access Google's AdWord program is irrelevant to the issue of standing. As stated previously, Training Options bought the ads. Further, all of the AdWords advertising at issue was done by and for the benefit of Training Options. Therefore, Training Options is the entity who allegedly overpaid for the ads and allegedly sustained an injury, not Cabrera. Cabrera's AdWords account provided only the means or vehicle through which the ads were disseminated over the Internet.

### 2. Cabrera Sold Training Options

It is undisputed that Cabrera sold his Training Options business in August 2009. Evans Decl. ¶ 2, Ex. 7 (Dkt. No. 432-1). The Standard Asset Purchase Contract and Receipt ("APA") identifies Training Options as the "Seller" and "Martin Peen and assigns" as the "Buyer." *Id*. The APA states in relevant part that "Seller shall sell and Buyer shall purchase, the business known as: **Training Options** . . . including certain assets, which include all furniture, fixtures, equipment, inventory, accounts receivable (where applicable), goodwill, and general intangibles. . . pursuant to the terms and conditions of this Standard Asset Purchase Contract and Receipt and any addendums or amendments ('Contract')." *Id*. (emphasis in original). Cabrera confirmed during his deposition that he did not "keep any of the assets of Training Options" and instead "sold them all." Evans Decl., Ex. 3 at 130:5-9.

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
5

### 3. Ownership of the AdWords Account is Irrelevant

Notwithstanding the sale of Training Options, Cabrera contends he has standing to assert the claims in the Fourth Amended Complaint against Google because the sale did not include his AdWords account. Cabrera contends that he only sold "certain assets" of Training Options and that he never sold, transferred, or assigned his AdWords account. *See* Evans Decl., Ex. 3 at 161:9-14 ("Q. . . . Mr. Cabrera, did you transfer the AdWords account you used for Training Options to Mr. Peen when you sold the business? A. No. Q. Why not? A. Because it was my *personal account*."). Cabrera also cites to the non-assignability provision in Google's Advertising Program Terms and argues that he was prohibited from transferring his AdWords account. The non-assignability provision in Google's Advertising Program Terms (hereinafter "non-assignability provision") states that the "[c]ustomer may not assign any of its rights hereunder and any such attempt is void." Fourth Amended Complaint, Ex. A.

Cabrera's arguments are unpersuasive. As discussed previously, Cabrera's ownership of the AdWords account is irrelevant. The issue is whether Cabrera suffered an "injury in fact" traceable to Google's alleged conduct. Cabrera did not. It was Training Options and not Cabrera that purchased the ads. Therefore, Training Options is the entity that allegedly overpaid for the ads and allegedly sustained an injury, not Cabrera.

Furthermore, even if Google's non-assignability provision prohibits assignment of the AdWords Account, that provision does not prohibit assignment of a cause of action for money damages arising out of the AdWords Account. *See Gottlieb v. Alphabet Inc.*, No. 17-6860 EJD, 2018 WL 20010976, at *4 (N.D. Cal. April 30, 2018) ("[A] provision in a contract or rule of law against assignment does not preclude assignment of . . . money damages for breach of the contract."). Whether Cabrera transferred Training Options' causes of actions is discussed separately below.

### 4. Cabrera Sold Training Options' Causes of Action Against Google

Cabrera next contends that the sale of Training Options did not include the sale of Training Options' claims against Google, and therefore he has standing to assert such claims in this lawsuit.

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
6

As Google points out, however, the sales documents provide otherwise.

The APA, which is the master agreement for the sale of Training Options, states that Cabrera sold "the business known as [] **Training Options** . . . including certain assets, which include all furniture, . . ., goodwill, and general intangibles. . . pursuant to the terms and conditions of this [APA] and any addendums or amendments ('Contract')." Evans Decl., Ex. 7 (emphasis in original). Paragraph 26 of the APA provides that Cabrera and his wife agree to assist "in the orderly transfer of the Business." *Id*. In Paragraph 27 of the APA, Cabrera grants Peen "any and all rights" in the trade name "Training Options." *Id*. Thus, Cabrera sold the whole company, the entire business, known as Training Options, including all general intangibles. Under Florida law, which governs the APA, claims or causes of action are a type of intangible asset. *See e.g. Smith v. Effective Teleservices, Inc.*, 133 So. 3d 1048, 1051 (2014) (under Florida Statute section 727.103, "asset" means a legal or equitable interest of the assignor in property, which includes anything that may be the subject of ownership, whether real or personal, tangible or intangible, including claims and causes of action, whether arising by contract or in tort); *see also* Fla. Stat. § 679.1021(pp) (statute governing secured transactions defines "general intangibles" to mean any personal property, including "things in action").

Cabrera seizes upon the prefatory phrase "including certain assets" in the APA, and cites to several other sales documents to argue that the sale of assets was limited and did not include Training Options' claims against Google. First, Cabrera relies on the "Agreement Protecting Business Interests," which recites that "Buyer has purchased substantially all of the assets of the Business, including the good will." Evans Decl., Ex. 6. This sales document does not identify any "assets" other than good will, much less specify that the sale of Training Options excluded Training Options' claims against Google. Second, Cabrera cites to the "Affidavit of Ownership," which recites that the Affidavit is made for the purpose of inducing Mr. Peen's company, AMP Global Investments, LLC ("AMP Global"), to purchase "certain property and assets of the Corporation including all right, title and interest in and to the goodwill and business name of the business known as TRAINING OPTIONS" pursuant to the APA. Evans Decl., Ex. 9. Like the

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

7

first sales agreement, the Affidavit of Ownership does not identify any assets whatsoever and does not contain any limitation on Training Options' sale of any particular asset. Therefore, neither the Agreement Protecting Business Interests" nor the "Affidavit of Ownership" support Cabrera's position.

Third, Cabrera contends that Training Options' causes of action are not listed in either the "Bill of Sale" (Evans Decl., Ex. 7) or "Assignment of Intangible Personal Property" (Mustokoff Decl., Ex. 6) and therefore Training Options' causes of action were not included in the sale. Cabrera contends that the "Assignment of Intangible Personal Property," which identifies AMP Global as the buyer, is a specific contractual provision governing intangible assets that controls over the general reference to intangibles in the APA. *See American University of the Caribbean, N.V. v. Caritas healthcare, Inc.*, 441 Fed. App'x. 644, 646 (11th Cir. 2011) (contract provision specifically dealing with a particular subject controls over a general provision dealing with that same subject). Cabrera also points out that the "Assignment of Intangible Personal Property" lists "Yellow Page advertising," but says nothing about AdWords advertising. Cabrera invokes the *expressio unius est exclusion alterius* canon (the expression of one thing is the exclusion of the other), and argues that because neither sales document lists Training Options' causes of action as an asset, Cabrera did not sell Training Options' claims against Google.

Cabrera's arguments are unpersuasive because the APA unambiguously provides for the sale of Training Options and all general intangibles without limitation. As stated previously, under Florida law, claims or causes of action are a type of intangible asset. Cabrera has not cited to, and this court is not aware of, any Florida law that requires sales documents for a company to use the terms claims, causes of action, or things in action in order to transfer such assets.[1] Moreover, the "Assignment of Intangible Personal Property" does not purport to be an exhaustive

---

[1] Under California law, a cause of action may be transferred through an asset sale whether or not the cause of action is explicitly mentioned in the sale documents. *See, e.g., Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1138-39 (9th Cir. 2001) (an agreement transferring "all other intangible assets and goodwill" related to tire distribution business transferred all of the business' causes of action related to tire distribution business).

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
8

list of every intangible asset transferred, and therefore does not contradict the APA. Cabrera's reliance on *expressio unius est exclusion alterius* canon is also misplaced. Yellow Page advertising is not a type of claim, cause of action, or thing in action. Therefore, listing Yellow Page advertising in the "Assignment of Intangible Personal Property" does not imply or suggest in any way that Cabrera retained Training Options' claims, causes of action, or things in action against Google.

Cabrera next cites to extrinsic evidence in an attempt to show that the sale of Training Options did not include Training Options' claims against Google. Specifically, Cabrera relies on an affidavit from Mr. Peen which states: "neither I nor AMP [Peen's company] acquired a Google AdWords advertising account or any legal claims related to such account" and "it was not my intent or the intent of AMP to acquire any Google AdWords advertising account or any claims related thereto." Mustokoff Decl., Ex. 2, ¶¶ 3, 4.

Mr. Peen's declaration is untimely. The deadline for completing discovery regarding Cabrera was November 5, 2018. Mr. Peen's declaration is dated November 21, 2018, after the discovery deadline. Cabrera's failure to provide Mr. Peen's declaration to Google before the discovery deadline prejudiced Google's ability to obtain Mr. Peen's deposition testimony. Because Cabrera's conduct was not substantially justified or harmless, the court need not consider Mr. Peen's declaration herein. Fed. R. Civ. P. 37(c)(1).[2]

Even if the court were to consider Mr. Peen's declaration, the declaration fails to establish Cabrera's standing. "It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." *Apple Glen Inv'rs, L.P. v. Express Scripts, Inc.*, 700 F. App'x 935, 939 (11th Cir. 2017) (quoting *Rose v. M/V "Gulf Stream Falcon,* 186 F.3d 1345, 1350 (11th Cir. 1999)). As already discussed, the APA

---

[2] It also appears that Cabrera's failure to provide Mr. Peen's declaration before the discovery deadline involved a degree of willfulness and fault because Cabrera objected to Google taking Mr. Peen's deposition. When a failure to provide discovery involves willfulness, fault or bad faith, the court may disregard the withheld evidence even if the sanction amounts to dismissal of a claim. *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
9

unambiguously provides for the sale of Training Options and all general intangibles without limitation. The APA also includes an integration clause that states that the APA "constitutes the entire agreement and understanding of the parties and cannot be modified except in writing executed by all parties." Evan Decl., Ex. 7, at CABRERA00000214. Mr. Peen's affidavit contradicts not only the APA, but also Cabrera's deposition testimony that he sold all the assets of Training Options. Extrinsic evidence of a party's understanding is not admissible to vary the terms of an expressed and integrated writing. *See Duval Motors Co. v. Rogers*, 73 So. 3d 261, 265 (Fla. Dist. Ct. App. 2011). Additionally, Florida's "objective" theory of contractual intent provides that "the meaning of a contract is deduced by the unambiguous language employed by the parties," not "the subjective understanding of one of the parties." *State Farm & Cas. Ins. Co. v. Deni Associates of Florida, Inc.*, 678 So. 2d 397, 400 (Fla. Dist. Ct. App. 1996). Mr. Peen does not state that he ever communicated his understanding regarding legal claims to Cabrera at the time of the sale. Therefore, Mr. Peen's affidavit, executed almost nine years after the APA was executed, cannot vary or contradict the APA and cannot establish Cabrera's standing. *Id*.

Cabrera also relies on his continued access and control over the AdWords account and his and his wife's alleged continuing "ownership of and control over the corporate entity, Training Options, Inc." as extrinsic evidence that he retained Training Options' causes of action against Google. Plaintiffs' Opposition at 9. Cabrera contends that Florida's parol evidence rule allows the court to consider this type of extrinsic evidence to interpret the sales documents. *See Apple Glen Inv'rs, L.P. v. Express Scripts, Inc.*, 700 F. App'x at 939 ("Florida law allows courts to consider extrinsic evidence of course of performance . . . to explain or supplement a contract's terms, even when those terms are not ambiguous, as long as the evidence is not used to contradict the contract's terms."). Cabrera's alleged course of performance evidence, however, contradicts the plain language of the APA and Cabrera's deposition testimony that he sold all the assets of Training Options. Cabrera's alleged course of performance also violates the terms of the APA and his contractual promise to make no further use of the Training Options business or its tradename. As such, Cabrera's course of performance evidence fails to establish his standing to assert the

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
10

claims in this case.

### 5. Cabrera Cannot Remedy Standing

In the event the court finds Cabrera lacks standing, Cabrera seeks leave to name Training Options as a plaintiff pursuant to Rule 17 of the Federal Rules of Civil Procedure. Rule 17 provides in pertinent part that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a). Cabrera reasons that he and Training Options are "essentially alter egos" because "Training Options is a closely held business owned solely by Cabrera and his wife." Plaintiffs' Opposition at 15. If granted leave to amend, Cabrera intends to allege that he reinstated Training Options on November 12, 2018, and that Training Options ratifies Cabrera's commencement and continuation of this Action. Alternatively, Cabrera intends to join Training Options pursuant to Rule 19 of the Federal Rules of Civil Procedure or substitute Training Options in as plaintiff pursuant to Rule 21 of the Federal Rules of Civil Procedure.

None of Cabrera's proposed last-minute legal maneuvers would establish Cabrera's standing to pursue the claims in the Fourth Amended Complaint.

#### a. Revival of Corporate Shell Does Not Confer Standing

Cabrera represents that following the 2009 sale, he and his wife maintained ownership of and control over the corporate entity, Training Options, Inc. Plaintiffs' Opposition at 9. In 2010, they determined to let the annual reporting lapse for the corporation and the state of Florida administratively dissolved the corporation. Evans. Decl., Ex. 10. On November 12, 2018—the day before Google filed the instant motion to dismiss—Cabrera reinstated Training Options. Mustokoff Decl., Ex. 1. Thereafter, on November 28, 2019, Cabrera and his wife executed a document captioned "Ratification by Training Options, Inc." in which they represent that there are the President, Vice President and sole shareholders of "Training Options, Inc., a Florida corporation," and purport to "authorize, ratify, and approve on behalf of Training Options, Inc." the continuation of this lawsuit. Mustokoff Decl., Ex. 8 (Dkt. No. 446-9).

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
11

This purported ratification was not disclosed in discovery and the failure to disclose was neither substantially justified no harmless. Therefore, the ratification need not be considered by the court. Fed. R. Civ. P. 37 (c)(1). Even if the court were to consider the ratification, the ratification is ineffective to create standing because, as discussed previously, Cabrera sold Training Options, including its intangible assets, to Mr. Peen and his company in August 2009. Evans. Decl., Ex. 7. Cabrera testified at his November 2018 deposition that he did not "keep any of the assets of Training Options" and instead "sold them all." Evans Decl., Ex. 3 at 130:5-9. Indeed, Cabrera testified that Mr. Peen "still runs" Training Options. *Id*. at 126. Moreover, the APA provides that the sale included the right to use the Training Options name. *Id*. ¶ 27 ("Seller hereby waives any rights thereto, and shall not directly or indirectly, after Closing make use of such name."). Pursuant to the APA, the surviving Training Options corporate shell was also contractually obligated to "change its corporate name to a name unrelated to the Business name within 90 days from the date of Closing." *Id*. Cabrera's insistence that he owns a corporate shell called "Training Options" that is legally entitled to pursue claims against Google is irreconcilable with the APA and Cabrera's own deposition testimony. The corporate reinstatement cannot undo the transfer of Training Options' intangible assets to Mr. Peen.

Nor can Cabrera establish standing based on an alter ego theory. The corporate veil may be pierced or removed when necessary in order to prevent the corporation from being used for the perpetration of fraud or wrongdoing. *See Brevard County v. Ramsey*, 658 So. 2d 1190, 1197 (Fla. Dist. Ct. App. 1995). This case does not present such circumstances. To the contrary, Cabrera proposes piercing Training Options' corporate veil for his own benefit, which is impermissible. *Id*. As the *Brevard* court explained, "[t]here are both advantages and disadvantages to the choice of the form made with which to conduct business, and, once chosen, the disadvantages cannot be ignored in order to eliminate unintended results." *Id*. (corporate veil would not be pierced to enable owners to recover business damages); *see also Perkins v. Scott*, 554 So. 2d 1220, 1222 (Fla. Dist. Ct. App. 1990) (corporate owner cannot pierce the veil of his own corporation to receive benefit). The APA provides for the sale of Training Options' intangible assets to Mr.

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

Peen. Cabrera cannot avoid the consequence of the sale by piercing the corporate veil.

### b. Cabrera Cannot Retroactively Manufacture Standing

Even if Florida law permitted Cabrera to restore the capacity of Training Options' corporate shell to sue and the corporate shell retained the right to assert claims against Google (which it did not), Cabrera cannot cure lack of standing retroactively. "[S]tanding in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013); *see also Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003). A named plaintiff in a class action must have Article III standing at the time the complaint is filed. *See Sousa v. Iowa*, 419 U.S. 393, 402 (1975); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1171 (9th Cir. 2013); *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing. *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) (quotation marks and alterations omitted), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). Specifically, *nunc pro tunc* assignments are not sufficient to confer retroactive standing. *See Alps South LLC v. Ohio Willow Woods Co.*, 787 F.3d 1379, 1384-85 (Fed. Cir. 2015); *see also Paradise Creations*, 315 F.3d at 1308 (Florida's corporate revival statute cannot retroactively confer Article III standing where it did not exist at the time the complaint was filed).

Cabrera cites to *Chakra 5, Inc. v. City of Miami Beach*, 254 So. 3d 1056, 1062-63 (2004) for the proposition that Florida Business Corporation Code § 607.1422 permits a reinstated corporation to maintain litigation as though it had never been dissolved. Cabrera's reliance on *Chakra 5* is misplaced. As discussed above, standing is a matter of federal, not state law. *Hollingsworth v. Perry*, 570 U.S. at 715. Furthermore, Article III standing was not at issue in the *Chakra 5* case.

In sum, the APA left neither Cabrera nor the Training Options corporate shell with any right to assert the claims in this case. Therefore, neither Cabrera nor the Training Options corporate shell has standing to assert the claims against Google. It follows that the attempted

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

13

ratification by Cabrera and his wife on behalf of the revived Training Options is meaningless. Cabrera's proposed substitution and joinder would be futile for the same reason. Naming both Cabrera and the Training Options corporate shell or substituting in the Training Options corporate shell for Cabrera would not create standing.

### B. Woods' Location Targeting Claim

Google contends that the Fourth Amended Complaint "seeks improperly to revive a breach-of-contract theory" that the court already considered and rejected in ruling on Google's earlier filed motion to dismiss the Second Amended Complaint and motion for summary judgment. Google's Motion at 12 (Dkt. No. 432 at 17). Google's interpretation of the court's prior rulings is incorrect. It was not the court's intention to foreclose Woods from asserting a breach-of-contract theory based upon an alleged obligation to Smart Price in a particular way. The court implicitly recognized the viability of this theory in the summary judgment order. *See* Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment (Dkt. No. 253) at 4 (breach of implied covenant claim was based on allegation that Google used incorrect Smart Pricing scores; these allegations also formed basis of breach of contract claim, and therefore breach of implied covenant claim was dismissed as superfluous).

## V. CONCLUSION

Because Cabrera lacks Article III standing, Google's motion to dismiss Cabrera's claims is GRANTED without leave to amend. Google's motion to dismiss is DENIED in all other respects.

**IT IS SO ORDERED.**

Dated: February 26, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS
14