**MAYER BROWN LLP**
Edward D. Johnson (SBN 189475)
wjohnson@mayerbrown.com
Donald M. Falk (SBN 150256)
dfalk@mayerbrown.com
Eric B. Evans (SBN 232476)
eevans@mayerbrown.com
Sarah E. Reynolds (SBN 319780)
sreynolds@mayerbrown.com
Zaneta J. Kim (SBN 317844)
zkim@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000

Daniel E. Jones (*pro hac vice*)
djones@mayerbrown.com
1999 K Street N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000

*Attorneys for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| RICK WOODS and RENE CABRERA, Individually and On Behalf of All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>    vs.<br><br>Google LLC,<br><br>            Defendant. | Case No. 5:11-cv-1263-EJD<br><br>**GOOGLE'S RESPONSE TO WOODS'S APPLICATION FOR LEAVE TO MOVE TO REPRESENT THE INTERIM CLASS** |

**OVERVIEW**

Out of a proposed class that supposedly has millions of members, plaintiffs' counsel keep cycling back and forth between two ineligible candidates. As of now, neither set of lawyers has a client who can represent a putative class. After eight years of litigation, the only two plaintiffs that have emerged have direct and unbreakable ties to their counsel. That, in itself, is a powerful indication that the claims of Mr. Woods and Mr. Cabrera lack real substance and should be dismissed.

Mr. Woods attempts to wrestle back control of this case by arguing that his new engagement with the Lanier Firm somehow cures his inadequacy as class representative. His untimely Motion for Leave to File Motion for Reconsideration of Order Appointing Interim Class Counsel (the "Motion") (Dkt. 491) only highlights his lack of diligence and new material facts that are required for reconsideration.

**ARGUMENT**

**1. Woods's Motion for Leave to Seek Reconsideration of the 2011 Interim Class Counsel Order Is Untimely and Does Not Demonstrate Reasonable Diligence.**

The proposed substitution of counsel is a last minute attempt to save a failing enterprise with a hostile takeover. Although Local Rule 7-9 allows any parties in a case to "make a motion requesting that the Judge grant the party leave to file a motion for reconsideration" for interlocutory orders, a party must show "reasonable diligence" in bringing the motion. Civ. L.R. 7-9(b)(1). Woods cannot show reasonable diligence.

**a. Woods cannot demonstrate the "reasonable diligence" required under Civ. L.R. 7-9(b)(1).**

Woods argues that it is "hardly a lack of diligence" for him to bring this Motion only six days after the Court's dismissal of *Cabrera*'s claims. Motion at 7. But Woods is seeking reconsideration of the Court's 2011 order appointing interim class counsel (Dkt. 39). And he is attempting to address the inadequacies spelled out in Google's November 30, 2017 case management conference statement (Dkt. 265 at 7–11) and then clearly spelled out again in the Court's August 23, 2018 order disqualifying Woods (Dkt. 366). Much shorter delays preclude a

finding of "reasonable diligence." *See York v. Bank of America*, 2016 WL 7033956, at *1 (N.D. Cal. 2016) (35 days); *see also Largan Precision Co., Ltd v. Genius Elec. Optical Co.*, 2015 WL 2063988, at *2 (N.D. Cal. 2015) (four weeks).

Back in December 2012, Woods had ample opportunity to seek new counsel after he created the conflict by joining Taylor Law Partners LLP ("TLP") as an equity partner. His half-hearted attempts to cure the conflict by executing an undated retainer agreement with Nix Patterson LLP and Kessler Topaz Meltzer & Check LLP make clear that Woods has known about the conflict for several years. Dkt. 366 at 9 (noting that "the agreement itself does not appear to be dated and the signatories did not include dates of signature"). Yet rather than cure the conflict by retaining counsel that lacked any relation to his employer, TLP, Woods, his employer, and his counsel compounded the conflict with lucrative new engagements. *Id.* at 10. Woods's deposition in 2014 placed him on further notice regarding the significance of the relationship between his counsel and employer. *See* Dkt. 277-2 ("Woods Dep.") at 111:2–24. Yet he did nothing. Google laid out Woods's conflict of interest in detail in the parties' November 30, 2017 case management conference statement (Dkt. 265 at 711)—which Woods admits "formally raise[d] [Google's] inadequacy defense"—putting Woods on formal notice of the need to cure this conflict. Dkt. 284 at 19:14–19. But again he did nothing.

Instead, Woods tried to remain as a co-class representative without changing anything. The Court's rationale for disqualifying him could not have been more clear: "[B]ecause of Woods' close connection to Nix Patterson and Kessler Topaz through his partnership at TLP, his interest diverge[d] too sharply from the classes so that he [did] not 'fairly and adequately protect the interest of the classes.'" Dkt. 366 at 14. Even after that disqualification, Woods proceeded as if nothing was amiss. Shortly after the Court's ruling last August that Woods has "an intolerable conflict of interest" (Dkt. 366 at 8), Woods filed an amended complaint asserting that he could still act as class representative despite his conflict of interest. Dkt. 368. In October, this Court struck the allegations in which Woods offered himself as a class representative. Dkt. 395 at 7–8.

Woods is a lawyer himself and cannot claim that he was somehow lulled into years of inaction. Woods's long-standing and willful refusal to address an inherent conflict cannot be

passed off as "diligence." Instead, it demonstrates why it is so unwise to have an actively practicing lawyer take on the duties of a class representative.

### b. Google would be prejudiced by the need (i) to conduct substantial, eleventh-hour discovery into the Lanier-Woods-TLP-Nix Patterson relationship, and (ii) to rebrief class certification and adequacy issues with Woods as plaintiff.

Reconsideration would materially prejudice Google. Google would have to conduct extensive discovery to uncover the relationship between Woods, TLP, Lanier, Nix Patterson, and Kessler Topaz. Significant discovery would be needed to test the nature of Woods's direct and indirect benefit from proceeding as a class representative, which would include discovery into Lanier's compensation and referral arrangements (which Lanier itself has now put at issue, Dkt. 491-2), compensation for Woods, and compensation for his current employer and other, various former counsel. Evidence of such complex relationships and fee arrangements is generally oral and informal and thus difficult to track with conventional document discovery. Thus, Lanier's "review of its accounting records" is not a conclusive or even reliable basis to assert that "The Lanier Law Firm, P.C., has never worked with nor had any partnerships with Taylor Law Partners, LLP." Dkt. 491-2 (Bradford Decl.). Mr. Taylor made clear that TLP relied on handshake relationships with "honorable" lawyers who "would send … a check if" they "ever make[] a recovery." Dkt. 316-2 (Taylor Dep.) at 88:9–23. Rather than documented agreements, TLP and its co-counsel routinely would have "a general understanding at some point that the fees would get divided up on some sort of percentage basis." *Id.* at 121:5–11. Uncovering similar relationships would require sworn testimony under oath.

Woods and his lawyers resisted this discovery the last time around, e.g., refusing to produce relevant accounting documents that would have showed the flow of funds among Woods and his lawyers. Dkt. 364 at 13:4–7, 33:17–22, 47:18–23. Woods himself was unable to complete his deposition on two occasions, citing illness. Woods Dep. 194:11–195:23. Now, having being caught short once, Woods and his lawyers can be expected to be twice as shy about further inquiry into their relationships, making that discovery even more difficult. In addition to having to conduct new document and deposition discovery, Google would have to respond to Woods's renewed

- 3 -

motion for class certification based on the state of additional evidence, which will have changed considerably since his original motion filed more than a year ago. *See* Dkt. 274. Google would need to rebrief not only Woods's adequacy but also many other issues raised by the new evidence produced since Woods's original class certification motion. For example, Plaintiffs have served 2 new expert reports since Woods's motion for class certification was denied as well as 3 additional expert declarations. Dkts. 387-11, 424-16, 424-86, 456-7, 456-12. Further, new expert reports in support of Woods's new motion for class certification reflecting evolution in Plaintiffs' positions while Cabrera was the putative class representative can be expected, along with new responsive reports from Google's experts, leading to further briefing on these topics.

### 2. Adding Lanier as Interim Class Counsel Could Not Resolve Woods's Inadequacy and Appears to Deepen Woods's Conflict of Interest.

Woods maintains that his prospective motion for reconsideration would be based on the "emergence of new material facts." Dkt. 491 at 6; *see also* Civ. L.R. 7-9(b)(2). To start, Woods argues that his termination of his existing counsel (Nix Patterson and Kessler Topaz) is a "new" fact that warrants a motion for reconsideration. But that fact is only "new" in the sense that Woods finally acknowledged the fundamental, incurable conflict of interest with his former counsel.

More important, "if a party moves for reconsideration on the basis of new facts that emerged after the original decision, those facts must be *material*." *Coachella Festival, LLC v. Simms*, 2017 WL 6888499, at *4 (C.D. Cal. 2017) (emphasis added). The limited facts that Woods identifies are not sufficiently material to warrant briefing a stale reconsideration motion. In disqualifying Woods, the Court noted that "the possibility that plaintiff may benefit when his attorneys benefit—either directly by receiving future business … or indirectly by helping a business associate at the expense of the class—casts doubt on whether plaintiff will fairly and adequately protect the interest of the entire class." Dkt. 366 at 8 (citations omitted). Replacing interim class counsel with the Lanier firm does nothing whatsoever to dispel that doubt.

### a. New counsel does not change the fact that Woods and his Firm will benefit directly or indirectly from his service as class representative.

Rule 23(a)(4) mandates that the class representative "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) seeks to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); Dkt. 364 (Aug. 16, 2018 Hearing Tr.) at 30:20–23 ("And when we look at adequacy, we're looking to ensure that there are no conflicts such that the named plaintiff protects the interest of the absent parties."). The inquiry is whether "named plaintiffs and their counsel have any conflicts of interest with other class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Class certification should be denied when the named plaintiff has financial and professional relationships with would-be class counsel that preclude the plaintiff from acting with the strict independence that Rule 23 demands. *See, e.g., Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 330 (N.D. Ill. 1993); *Apple Comput., Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1276 (2005).

Woods would not be an adequate class representative for this reason: He has financial and professional relationships with his lawyers. For one, if Woods were allowed to proceed as class representative, Nix Patterson, Kessler Topaz, and even Woods's law firm TLP would be entitled to recovery under the common law and attorney lien statute of Arkansas. For example, under Arkansas law, contingent-fee attorneys who are discharged with cause (i.e., conflict of interest) are still entitled to recovery on the basis of quantum meruit. *Henry, Walden & Davis v. Goodman*, 741 S.W.2d 233, 238 (Ark. 1987), superseded in part by statute, Act of March 2, 1989, No. 293, § 1, 1989 Ark. Acts 606, 607, *as recognized in Lancaster v. Fitzhugh*, 839 S.W.2d 192, 193 (Ark. 1992); *Emery Hughes Corp. v. Audrianna Grisham*, P.A., 2011 WL 2062325, at *2 (Ark. 2011).

Although Woods claims to have terminated his engagement with Nix Patterson and Kessler Topaz, they have been litigating this case alongside him for 8 years. If Woods obtains a favorable outcome, quantum meruit would entitle his previous lawyers to a chunk of that recovery. The prospect that his former lawyers may share in the recovery strips Woods of the ability to impartially "protect the interests of the classes." Dkt. 366 at 15. Thus, the root of the conflict is Woods, not

Nix Patterson, Kessler Topaz, or TLP.  With Woods as class representative, chopping off one branch will not cure the conflict.

### b. Entry by Lanier as interim class counsel may add to the conflict that led to Woods's disqualification.

Lanier maintains a nationwide litigation practice with complex and ever-shifting legal and business relationships with its clients and adversaries.  As the Lanier Firm's website notes:  "Not only do our business clients benefit from our courtroom expertise, but many of our opponents have later hired us to represent them in their own disputes.  Clearly, they know that it's better to have The Lanier Law Firm with them than against them."  THE LANIER LAW FIRM, https://lanierlawfirm.com/legal-practice-areas/commercial-litigation/ (last visited March 8, 2019).

Significantly, Lanier asserts only that it has no current business relationship with Woods's law firm TLP.  Dkt. 491-2.  As explained above, however, Lanier merely asserts what its "accounting records" show (*id.*).  But Lanier's accounting records would not necessarily show every relationship TLP has with Lanier.  As the head of TLP testified, his firm deals are recorded only in handshake "general understanding[s]" among "honorable" lawyers that "fees would get divided up on some sort of a percentage basis" and checks would go out if there was a "recovery." Dkt. 361-2, at 88:9–23, 121:5–11.

Woods's lawyers are silent as to their relationship with Woods's former counsel.  As recently as November 2018, however, Lanier had business relationships with Nix Patterson.  The two firms were co-counsel for the class in *Cecil v. PB America*, Case No. 16-cv-0410 (E.D. Okla. 2016), and shared in a $58,800,000 fee award.  *See* Ex. 1.  Sharing such a large fee award—and the prospect of more in the future—creates at least the appearance that Lanier has leverage over Woods, his law firm, and current interim class counsel simply because Lanier has the ability to offer, or to withhold, substantial future payouts.  Dkt. 366 at 8 (Order Denying Class Certification) ("At least with respect to class counsel, even the appearance of divided loyalties or potential conflicts can be disqualifying" (quotations omitted)); Dkt. 364 (Aug. 16, 2018 Hearing Tr.) at 32:14–18 ("The Court: … [N]onetheless, shouldn't we look at this through the lens of an appearance of a conflict, the appearance of impropriety?  Is that the level that we should be scrutinizing this?")).

      **c.**    **Woods's new counsel is silent as to its business relationship with Woods himself.**

Woods's new lawyers also say nothing about their relationship with Woods himself. Certainly, Lanier has the ability to offer Woods future business. Lanier regularly litigates large cases, with multiple co-counsel, in Arkansas, Missouri, and Oklahoma, the very states in which Woods himself practices. Woods Dep. 9:6–9 ("Rick Woods has over 19 years of experience offering litigation and other services to clients throughout Northwest Arkansas, Southwest Missouri and Eastern Oklahoma."); *id*. at 9:22–25 ("If you live in the three state area of Northwest Arkansas, Southwest Missouri or Eastern Oklahoma or anywhere else and you need a lawyer, contact me."); *id*.; Ex. 2 (homepage for rickwoodslaw.com), Ex. 3 (table summarizing venue of Lanier's cases in Arkansas, Missouri and Oklahoma). The possibilities that the mere presence of Lanier holds out as counsel to Woods enhance the potential for conflict and the appearance of impropriety even if his new counsel lack any current business relationship with Woods.

    **3.**    **Woods's Motion Is Premature.**

As Cabrera's Opposition to the Motion for Leave explains (Dkt. 499), Woods's Motion for Leave is premature. Google's opposition to Cabrera's Motion for Reconsideration (for which leave was granted, Dkt. 498) will show why Cabrera cannot proceed notwithstanding his maneuvers after the close of discovery—and after this Court dismissed his claims. Regardless of the outcome of Cabrera's Motion for Reconsideration, there is no basis for Woods's new lawyers to take over as interim class counsel.

### CONCLUSION

Since Mr. Woods has not shown that he can represent a prospective class, his new counsel cannot do so either, and the additional rounds of briefing that Mr. Woods proposes in his Motion are unnecessary.

Dated: March 8, 2019                          MAYER BROWN LLP

                                                            By: */s/ Edward D. Johnson*
                                                                    Edward D. Johnson

                                                            *Attorneys for Defendant*
                                                            Google LLC