1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6                                  SAN JOSE DIVISION

7

8     RENE CABRERA, et al.,                   Case No.   5:11-cv-01263-EJD

             Plaintiffs,                      **ORDER GRANTING PLAINTIFFS'**
9                                             **MOTION TO STRIKE EXPERT**
10         v.                                 **REPORT OF RONALD WILCOX**

11    GOOGLE LLC,                             Re: Dkt. No. 577

             Defendant.
12

13         Plaintiffs Rene Cabrera ("Cabrera") and RM Cabrera Company ("RMC") (collectively

14   referred to as "Plaintiffs") initiated this putative class action suit against Defendant Google LLC

15   ("Google"), asserting claims for breach of contract and violation of California Business and

16   Professions Code § 17200 *et seq.*  Plaintiffs move to strike the Expert Report of Professor Ronald

17   Wilcox ("Wilcox") dated November 19, 2021 ("Wilcox Report").  ECF 576-4.[1]  Google LLC

18   ("Google") filed an opposition (ECF 627), and Plaintiffs filed a reply (ECF 612-4).[2]  For the

19   reasons discussed below, Plaintiffs' motion is GRANTED.

20

21

22   ─────────────────────
     [1] Plaintiffs' proposed redactions in their administrative motion to seal, ECF 576, are excessive.
23   Google's Statement in Support of Administrative Motions to File Under Seal, ECF 590, does not
     specify what portions of Plaintiffs' motion to strike the Wilcox Report (ECF 576-4) it seeks to file
24   under seal.  Therefore, the parties are directed to meet and confer and submit a proposed public
     version of ECF 576-4 with substantially fewer redactions no later than five business days after
25   issuance of this Order.

26   [2] The Court denied Plaintiffs' administrative motion to seal the reply.  *See* ECF 641.  Plaintiffs
     shall file an unredacted version of their reply no later than five business days after issuance of this
27   Order.
     Case No.: 5:11-cv-01263-EJD
28   ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATION OF
     RONALD WILCOX
                                            1

United States District Court
Northern District of California

## I.     BACKGROUND[3]

The basic functionality of Google's AdWords program at issue is described in a previous order of the Court as follows:

> Google's AdWords program lets advertisers create and display ads on webpages within Google's ad network.  Advertisers must agree to the terms of the AdWords Agreement.  Typically, the cost of advertising in the AdWords network is set on a cost-per-click basis, which is determined by a combination of several factors, including an auction system in which advertisers bid on the amount they are willing to pay per click.
>
> As part of its system for determining click prices, Google employs a "Smart Pricing" scheme that provides a cost-per-click discount to advertisers based on a "conversion score" of the webpage where the ad appears.  Under the Smart Pricing system, the advertiser's cost will be reduced if Google determines that an ad impression on a webpage "is less likely to produce a conversion"—e.g., a purchase on the advertiser's website—than it would on [a] benchmark property."
>
> Google also provides a "Location Targeting" tool that "allows advertisers to serve ads that are relevant to particular geographic areas."  Google uses several factors to decide when to display a location-targeted ad, including a visitor's estimated physical location, geographic terms in search queries, the country code in a website's domain name, and language settings in the visitor's browser.

Order Granting In Part And Denying In Part Def.'s Mot. For Summary Judgment, ECF 253 (citations omitted).

### A.     Breach of Contract:  Smart Pricing

Cabrera signed up for AdWords on August 14, 2008, on behalf of Training Options, Inc. (n/k/a RMC) by clicking through the Google Inc. Advertising Program Terms (the "Agreement"). FAC. ¶ 7.  The Agreement provides that: "Charges are solely based on Google's measurements for the applicable Program, unless otherwise agreed to in writing" (hereinafter "Measurements Clause").  FAC, Ex. A.  The fully integrated Google AdWords Agreement does not mention the terms "Smart Price" or "Smart Pricing."  Despite the absence of these terms in the Agreement, Plaintiffs allege that they reasonably interpreted the Measurements Clause to mean that Google would apply Smart Pricing discounts to the clicks on Plaintiffs' ad on the Display Network.[4]

---

[3] The Background is a summary of Plaintiffs' allegations in the Fifth Amended Complaint ("FAC").

[4] The Court sustained this interpretation at the pleadings stage. *Woods v. Google, Inc.*, Case No.: 5:11-cv-01263-EJD

ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATION OF RONALD WILCOX

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Nearly ten years after Cabrera signed up for AdWords[5], Plaintiff allege that Google

2  breached the Agreement by not applying the Smart Pricing discounts to clicks on ads displayed on

3  Google's partners' websites on the Display Network between August 22, 2006 and February 20,

4  2013.  FAC ¶ 11.  Specifically, Plaintiffs allege Google did not apply the Smart Pricing

5  Measurement as calculated by Google's Smart Pricing formula to at least forty (40) clicks on the

6  Display Network in Cabrera's account between August 14, 2008 and August 12, 2009.  *Id.*

7  Likewise, Google allegedly failed to Smart Price clicks from mobile apps between August 22,

8  2006 and February 20, 2013. All mobile apps are part of the Display Network. Discovery has

9  revealed that Google failed to Smart Price at least nineteen (19) clicks in Cabrera's account that

10  originated from mobile apps between August 14, 2008 and August 12, 2009.  ¶ 12.

11        **B.       UCL Claim:  Location Targeting**

12        During the AdWords sign-up process, RMC was presented with the following statement on

13  the Settings Screen:

14            **Target customer by regions / cities**

15            Highlight the cities and regions on the left where you'd like your ad
            to appear, then click "Add." Select as many regions as you like. You
16            may also type city names directly into the box below.

17  FAC ¶ 63.  In response, Plaintiffs targeted Florida, Georgia, Louisiana, and North Carolina for its

18  ad campaign.  *Id.* ¶ 64.  Plaintiffs wanted to limit RMC's campaign to these four states because

19  RMC's training school catered to local clients.  *Id.*  By making this selection, Plaintiffs understood

20  and expected that RMC's ads would be shown only to users in those states.  *Id.* ¶¶ 64, 73.  Despite

21  Plaintiffs' targeted location settings, Google showed RMC's ad to users outside of its four

22

23

24    _____

    2013 WL 1435224, at *4 (N.D. Cal. Apr. 9, 2013) ( "the 'measurements clause' could be
25    reasonably interpreted as requiring Google to base its charges for Display Network clicks at least
    in part on the Smart Pricing formula." )

26
    [5] *See* Pl.'s Mot. for Leave to File Third Am. Class Action Compl. filed on March 20, 2018, ECF
27    286.
    Case No.: 5:11-cv-01263-EJD
28    ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATION OF
    RONALD WILCOX

1  designated states.  *Id.* ¶ 65.  Google charged RMC $88.73 for 34 clicks from outside its targeted

2  advertising locations.  *Id.*

3        Plaintiffs allege that Google's representations regarding location targeting were fraudulent

4  in violation of § 17200 because they were likely to deceive advertisers into believing that Google

5  would limit the distribution of ads to users located in the geographic locations designated by

6  advertisers.  *Id.* ¶ 78.  Moreover, Plaintiffs allege that Google failed to disclose that: (a) it would

7  distribute ads to users beyond the geographic locations designated by advertisers; (b) it would

8  charge advertisers for clicks on their ads originating outside the designated geographic locations;

9  and (c) it would falsely report the geographic location of users in its online reports to advertisers.

10  *Id.* ¶ 78.  As a result of Google's allegedly fraudulent conduct, RMC allegedly expended money

11  on advertising with Google that it otherwise would not have spent.  *Id.* ¶ 80.  Plaintiffs allege that

12  Google's conduct is unfair, unlawful, and fraudulent.  *Id.* ¶ 83.

13       **C.**    **Wilcox Report**

14        Wilcox designed and implemented a survey, the "Purchase Reasons and Information

15  Sources Survey," that explored the features and benefits of Google Ads that motivate the purchase

16  and use of that product, the information sources used by advertisers, and whether the Smart

17  Pricing and location targeting features are important to Google Ads advertisers.  Wilcox Report ¶

18  18.  According to Wilcox, "there exists considerable heterogeneity among Google Ads

19  advertisers," and "survey results confirm that Google Ads advertisers vary significantly with

20  respect to a wide array of characteristics, including campaign goals, advertising budget, firm size,

21  motivating factors, and information resources used, among others."  *Id.* ¶ 22.  Wilcox concluded

22  that this heterogeneity exists within a group of 57 respondents who began using Google Ads 8 or

23  more years ago.  *Id.* ¶ 23.  Based on this timeframe, the group of 57 respondents are potentially

24  members of the putative class.

25        Wilcox opines that core marketing principles and objectives of marketers and advertisers

26  have remained consistent for decades, and therefore, he "has no reason to think . . . that the

27

28  Case No.: 5:11-cv-01263-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATION OF
RONALD WILCOX

heterogeneity of responses [in the survey] would be different between the putative class periods and today." *Id.* ¶ 23.  Wilcox also opines that:

> a.      Respondents indicated varying preferences for which Google Ads features were important, and varied substantially in the value that they received from a given important feature.
>
> b.      Results demonstrate a high degree of variation regarding respondents' familiarity with and use of Smart Pricing, with many failing to correctly identify its key benefits and deriving a wide range of value.
>
> c.      Most respondents selected Google Ads options that override the application of Smart Pricing.
>
> d.      Most Google Ads advertisers prefer hybrid strategies that include Area of Interest targeting, while few advertisers use only Location of Presence based targeting.
>
> e.      Advertisers highly value many Google Ads features and are highly satisfied with those features, with very few (if any) instances of advertiser dissatisfaction.

*Id.* ¶ 24.  Wilcox also reviewed the March 20, 2018 Kivetz Report, which was prepared by another Google expert, and concluded that the Wilcox survey results are consistent with the findings and conclusions in the Kivetz Report.  *Id.* ¶ 25.

## II.      DISCUSSION

Plaintiffs move to strike the Wilcox Report for three reasons:  (1) the Report is untimely; (2) Wilcox's opinions are irrelevant; and (3) Wilcox's opinions are unreliable.  Dkt. No. 577.  In response, Google asserts that the Report complies with the Scheduling Order (ECF 571) deadline for supplemental expert reports; that Wilcox's opinions, including his survey of Google Ads advertisers, are relevant to the predominance and typicality inquiries for class certification; that Wilcox conducted his survey in accordance with widely accepted practices in his field; and that any criticisms about Wilcox's methodology go to the weight, not the admissibility, of his opinions.

A party must disclose expert reports "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  If a party fails to timely provide an export report, "the report must be stricken . . .  unless the failure was substantially justified or is harmless.'"  *Abdo v.*

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATION OF RONALD WILCOX

United States District Court
Northern District of California

*Fitzsimmons*, 2020 WL 4051299, at *4 (N.D. Cal. July 20, 2020) (quoting Fed. R. Civ. P.

37(c)(1)).  Rule 37 (c)(1) is a "'self-executing,' 'automatic' sanction to 'provide[ ] a strong

inducement for disclosure of material' that must be disclosed pursuant to Rule 26." *Tamburri v.*

*Suntrust Mortg., Inc.*, 2013 WL 3152921, at *1 (N.D. Cal. June 19, 2013) (quoting Fed. R. Civ. P.

37 advisory committee's notes).

Here, the parties' dispute regarding the timeliness of the Wilcox Report is based in part on

their conflicting interpretations of the July 19, 2021 Scheduling Order.  After the Ninth Circuit

remanded this case, the parties filed a joint statement on June 30, 2021, to propose a case

schedule.  Joint Statement re:  Case Schedule, ECF 569.  Google asserted, among other things, that

its experts needed a "fair chance to evaluate RMC's evidence" because RMC was a newly added

party.  *Id.* at 5.  Google further stated that "expert discovery is necessary to allow (1) the parties'

experts to prepare supplemental reports to incorporate new evidence, and (2) supplemental

depositions."  *Id.* at 6.  Google explained:  "[t]he parties' expert reports address only Cabrera, a

natural person who apparently uses idiosyncratic measures to value advertising, and who is no

longer a plaintiff for the Location Targeting/Unfair Competition Law claim. [] Google's experts

must be able to address this fundamental change to the case and the other evidence that comes to

light in discovery."  *Id.*  Based on the parties' joint statement, the Court issued a Scheduling Order

on July 19, 2021, setting a November 19, 2021 deadline for supplemental expert reports, if any,

and a December 17, 2021 deadline for completing expert discovery.  ECF 571.  Thereafter,

Google served the Wilcox Report on the November 19, 2021 deadline.

Plaintiffs contend that the Wilcox Report is untimely even though it was served on

November 19, 2021, reasoning that this deadline for "supplemental reports" applies only to

supplemental reports evaluating new evidence related to RMC.  The Scheduling Order, however,

includes no such subject matter limitation for "supplemental reports."  If Plaintiffs had any doubt

about the scope of the Scheduling Order, they should have sought clarification soon after the

Order issued, and certainly before the parties expended time and expense taking Wilcox's

1  deposition.

2      Nevertheless, the Court agrees with Plaintiffs that the Wilcox Report is not truly a

3  supplemental report.  Federal Rule of Civil Procedure 26(e)(1) provides in pertinent part that a

4  party that has made its expert disclosures "must supplement or correct its disclosure or response in

5  a timely manner if the party learns that in some material respect the disclosure or response is

6  incomplete or incorrect, and if the additional or corrective information has not otherwise been

7  made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P.

8  26(e)(1).  "The purpose of the rule is to prevent surprise or ambush at trial."  *Medtronic Vascular,*

9  *Inc. v. Abbott Cardiovascular Systems, Inc.*, 2008 WL 4601038, at *1 (N.D. Cal. Oct. 15, 2008).

10  "Case law interpreting the rule reflects that a supplemental disclosure must be exactly that—i.e., a

11  supplement," and "[a] party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert

12  report or as a means of getting in, in effect, a brand new report."  *Id.*; *see also Chinitz v. Intero*

13  *Real Estate Servs.*, 2020 WL 7391299, at *3 (N.D. Cal. July 22, 2020) ("supplementation under

14  the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on

15  information that was not available at the time of the initial disclosure.") (quoting *Luke v. Family*

16  *Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009)).

17      Here, Google does not contend that the Wilcox Report corrects information in the Kivetz

18  Report.  Nor does Google suggest that the Kivetz Report was incomplete.  Instead, Google argues

19  that Wilcox's Report is intended to address legal and factual developments that occurred after the

20  close of discovery in 2018.  The purported new legal development is *IntegrityMessageBoards.com*

21  *v. Facebook*, Inc., 2021 WL 3771785 (Aug. 24, 2021 N.D. Cal.) ("*IMB*"), where the court cited

22  the results of an advertiser survey in denying certification to a putative class of advertisers.  *IMB*,

23  however, did not change the state of the law on UCL or class certification.  Therefore, *IMB* does

24  not justify the timing of the Wilcox Report.

25      Google asserts that the purported new factual developments consist of the depositions of

26  Cabrera (individually and as representative of RMC), Martin Peen (who bought Training Options

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATION OF
RONALD WILCOX

7

1    (TO) from Cabrera), and Cabrera's current business partner David Denning.  The Wilcox Report,

2    however, does not discuss any of these depositions.  Indeed, Wilcox testified that he did not even

3    review Cabrera's deposition testimony, and there is no indication in the record that he ever read

4    Peen's or Denning's deposition testimony either.

5            The inescapable conclusion is that the Wilcox Report and the survey are clearly intended to

6    strengthen the Kivetz Report, which is not a proper basis for supplementing expert reports under

7    Rule 26(e).  *See Rovid v. Graco Children's Product Inc.*, 2018 WL 5906075, at *11 (N.D. Cal.

8    Nov. 9, 2018) (a report that attempts to strengthen or deepen opinions should be excluded or

9    stricken under Rule 37(c)); *see also Green v. City and Cty. of San Francisco*, 2015 WL 1738025,

10   at *4 (N.D. Cal. Apr. 8, 2015) (same); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2018 WL

11   1938555, at *3 (N.D. Cal. Apr. 25, 2018) ("The Court cannot accept a definition of

12   supplementation which would essentially allow for unlimited bolstering of expert opinions.")

13   (citing *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)).  Unlike in *Finjan,*

14   *Inc. v. Cisco Sys., Inc.*, 2019 WL 6174936, at *7 (N.D. Cal. Nov. 12, 2019), the Wilcox Report

15   cannot be seen as a supplementation that merely "clarifies or amplifies matters expressly

16   referenced in [an] original report" because the Wilcox Report does not address evidence relied on

17   in the Kivetz Report.

18           The timing of the Wilcox Report is not substantially justified.  There is no reason that

19   Wilcox could not have conducted the survey and prepared a report in 2018.  Finally, the timing of

20   the Wilcox Report is not harmless.  Although Plaintiffs deposed Wilcox and had time to designate

21   a rebuttal expert, allowing Google to rely on the Wilcox Report at this very late stage in the

22   proceedings would be disruptive to Plaintiffs' preparation of their case as well as to the Court.

23   *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("[d]isruption to the

24   schedule of the court and other parties ... is not harmless.").  The parties have been litigating this

25   case for over a decade.  Both sides have had a full and fair opportunity to develop the record, and

26   have ample expert opinions upon which to rely.  There is no reasonable justification to expand the

27

28   Case No.: 5:11-cv-01263-EJD
     ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATION OF
     RONALD WILCOX
                                              8

United States District Court
Northern District of California

1   record with a survey and an expert report that could have and should have been prepared years

2   ago.

3   **III.    CONCLUSION**

4        For the reasons stated above, Plaintiffs' motion is GRANTED.

5

6        **IT IS SO ORDERED.**

7   Dated:  September 19, 2022

8

9                                                        _____

10                                                       EDWARD J. DAVILA
                                                         United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATION OF
RONALD WILCOX

United States District Court
Northern District of California