1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8

RENE CABRERA, et al.,

Plaintiffs,

9

10

v.

11

GOOGLE LLC,

Defendant.

12

Case No.   5:11-cv-01263-EJD

**ORDER DENYING PLAINTIFFS'
MOTION TO STRIKE EXPERT
DECLARATIONS OF LAWRENCE
WU; DENYING PLAINTIFFS'
MOTION TO STRIKE
SUPPLEMENTAL EXPERT
DECLARATION OF LAWRENCE WU**

Re: Dkt. Nos. 453, 581

13

14

15

16

17

18

19

20

21

22

23

Plaintiffs Rene Cabrera ("Cabrera") and RM Cabrera Company ("RMC") (collectively referred to as "Plaintiffs") initiated this putative class action suit against Defendant Google LLC ("Google") asserting claims for breach of contract and violation of California Business and Professions Code § 17200 *et seq.*  Plaintiffs filed a Motion to Strike the Expert Declarations of Dr. Lawrence Wu ("First Motion"), ECF 453, and a Motion to Strike the Supplemental Expert Declaration of Dr. Lawrence Wu ("Second Motion"), ECF 581, asserting that the opinions in the declarations do not meet the relevance and reliability requirements stated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Defendant Google LLC ("Google") filed oppositions to both Motions (ECF 464-4, 604-3) and Plaintiffs filed a reply to the second Motion (ECF 610-4).[1]  For the reasons discussed below, Plaintiffs' Motions are DENIED.

24

25

26

27

[1] To the extent the parties have not done so already, they are directed to refile their submissions on the public docket in accordance with the Order Granting In Part And Denying In Part Defendant Google LLC's Administrative Motion To File Documents Under Seal, ECF 631, and the Order Granting Administrative Motions To File Documents Under Seal, ECF 632.

28

Case No.: 5:11-cv-01263-EJD
ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
LAWRENCE WU . . . .

United States District Court
Northern District of California

1

## I.      BACKGROUND[2]

2          The basic functionality of Google's AdWords program at issue is described in a previous

3    order of the Court as follows:

4                  Google's AdWords program lets advertisers create and display ads on webpages within
5          Google's ad network.  Advertisers must agree to the terms of the AdWords Agreement.
           Typically, the cost of advertising in the AdWords network is set on a cost-per-click basis,
6          which is determined by a combination of several factors, including an auction system in which
           advertisers bid on the amount they are willing to pay per click.

7                  As part of its system for determining click prices, Google employs a "Smart
           Pricing" scheme that provides a cost-per-click discount to advertisers based on a
8          "conversion score" of the webpage where the ad appears. Under the Smart Pricing system,
           the advertiser's cost will be reduced if Google determines that an ad impression on a
9          webpage "is less likely to produce a conversion"—e.g., a purchase on the advertiser's
           website—than it would on [a] benchmark property."

10
                   Google also provides a "Location Targeting" tool that "allows advertisers to serve
11         ads that are relevant to particular geographic areas."  Google uses several factors to decide
           when to display a location-targeted ad, including a visitor's estimated physical location,
12         geographic terms in search queries, the country code in a website's domain name, and
           language settings in the visitor's browser.
13

14   Order Granting In Part And Denying In Part Def.'s Mot. For Summary Judgment, ECF 253

15   (citations omitted).

16         **A.      Breach of Contract:  Smart Pricing**

17         Cabrera signed up for AdWords on August 14, 2008, on behalf of Training Options, Inc.

18   (n/k/a RMC) by clicking through the Google Inc. Advertising Program Terms (the "Agreement").

19   FAC. ¶ 7.  The Agreement provides that: "Charges are solely based on Google's measurements for

20   the applicable Program, unless otherwise agreed to in writing." (hereinafter "Measurements

21   Clause").  FAC, Ex. A.  The fully integrated Google AdWords Agreement does not mention the

22   terms "Smart Price" or "Smart Pricing."  Despite the absence of these terms in the Agreement,

23   Plaintiffs allege that they reasonably interpreted the Measurements Clause to mean that Google

24   would apply Smart Pricing discounts to the clicks on Plaintiffs' ad on the Display Network.[3]

25   _____

26   [2] The Background is a brief summary of Plaintiffs' allegations in the Fifth Amended Complaint
     ("FAC"), ECF 567.
27   [3] The Court sustained this interpretation at the pleadings stage.  *Woods v. Google, Inc.*,
     Case No.: 5:11-cv-01263-EJD
28   ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
     LAWRENCE WU . . . .

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Cabrera alleges that Google breached the Agreement by not applying the Smart Pricing discounts

2  to clicks on ads displayed on Google's partners' websites on the Display Network between August

3  22, 2006 and February 20, 2013.  FAC ¶ 11.  Plaintiffs seek recovery of "all amounts Google

4  overcharged Plaintiffs and the Smart Pricing Class by failing to apply the promised, and

5  contracted-for, Smart Pricing discount."  *Id*. ¶ 59.

6  **B.   UCL Claim:  Location Targeting**

7       During the AdWords sign-up process, RMC was presented with the following statement on

8  the Settings Screen:

9       **Target customer by regions / cities**

10      Highlight the cities and regions on the left where you'd like your ad
        to appear, then click "Add." Select as many regions as you like. You
11      may also type city names directly into the box below.

12  FAC ¶ 63.  In response, Plaintiffs targeted Florida, Georgia, Louisiana, and North Carolina for

13  their ad campaign.  *Id*. ¶ 64.  Despite Plaintiffs' targeted location settings, Google showed RMC's

14  ad to users outside of the four designated states.  *Id*. ¶ 65.  Plaintiffs allege that Google's

15  representations regarding location targeting were fraudulent in violation of § 17200 because they

16  were likely to deceive advertisers into believing that Google would limit the distribution of ads to

17  users located in the geographic locations designated by advertisers.  *Id*. ¶ 78.  Moreover, Plaintiffs

18  allege that Google failed to disclose that: (a) it would distribute ads to users beyond the

19  geographic locations designated by advertisers; (b) it would charge advertisers for clicks on their

20  ads originating outside the designated geographic locations; and (c) it would falsely report the

21  geographic location of users in its online reports to advertisers.  *Id*. ¶ 78.  Plaintiffs allege that

22  Google's conduct is unfair, unlawful, and fraudulent.  *Id*. ¶ 83.  Based on Google's alleged

23

24

25  _____

26  2013 WL 1435224, at *4 (N.D. Cal. Apr. 9, 2013) ( "the 'measurements clause' could be
    reasonably interpreted as requiring Google to base its charges for Display Network clicks at least
    in part on the Smart Pricing formula." )

27  Case No.: 5:11-cv-01263-EJD

28  ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
    LAWRENCE WU . . . .

3

United States District Court
Northern District of California

1   violation of the UCL, RMC seeks an award of restitution, disgorgement, and all other relief

2   allowed under § 17200.

3   **C.   Proposed Classes**

4     Plaintiffs bring this action on behalf of the "Smart Pricing Class," which is defined as

5   follows:

6      All persons and entities located within the United States who, between August 22, 2006 and February 20, 2013, advertised through Google's AdWords program and paid for clicks on their Google

7      AdWords advertisement(s), where such clicks were not Smart Priced because they (1) originated from a property on Google's Display

8      Network and Google applied no Smart Pricing measurement, or (2) were AFMA Clicks, Search Bundled Clicks, or mGDN Clicks.

9

10  *Id*. ¶ 89.

11    Plaintiff RMC brings this action on behalf of the "Location Targeting Class," which is

12  defined as follows:

13     All persons and entities located within the United States who, between January 1, 2004 and March 22, 2011, advertised through

14     Google's AdWords program and paid for clicks on their Google AdWords advertisement(s), where such clicks did not originate from

15     the location selected by the advertiser.

16  *Id*. ¶ 90.

17  **D.   Dr. Wu's Declarations**

18    Dr. Lawrence Wu ("Wu") prepared four declarations totaling hundreds of pages:  (1) the

19  March 20, 2018 Declaration of Dr. Lawrence Wu ("First Wu Decl."), Ex. 4 to the Declaration of

20  Stacey M. Kaplan ("Kaplan Decl."), ECF 452; the June 5, 2018 Declaration of Lawrence Wu

21  ("Second Wu Decl."), Kaplan Decl., Ex. 9; the November 29, 2018 Supplemental Declaration of

22  Lawrence Wu ("Third Wu Decl."), Kaplan Decl., Ex 31; and the November 19, 2021

23  Supplemental Declaration of Lawrence Wu ("Fourth Wu Decl."), Ex. 1 to the Declaration of

24  Stacey M. Kaplan In Support of Plaintiffs' Motion to Strike the Supplemental Expert Declaration

25  of Lawrence Wu, ECF 580-5.

26    In the First Wu Declaration, Wu sets forth conversion analyses to support his opinion that

27

28  Case No.: 5:11-cv-01263-EJD
ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
LAWRENCE WU . . . .

United States District Court
Northern District of California

1  some class members "benefited" from clicks.  More specifically, Wu opines that (1) Smart Pricing

2  Class members received higher "conversions-per-dollar" for non-Smart Priced clicks than for

3  Smart Priced clicks; and (ii) Location Targeting Class members received higher "conversions-per-

4  dollar" for out-of-area clicks than for in-area clicks.  First Wu Decl., Exs. 3-4, 8-11.[4]  Wu

5  concludes, based on his analysis of the Data Sample Google compiled, that: some Smart Pricing

6  Class members were not harmed and therefore individualized inquiries are necessary to determine

7  which of them were harmed (*see, e.g.*, *id.* ¶¶ 9, 53, 60, 8-31); some Location Targeting Class

8  members were likewise not harmed and therefore individualized inquiries are necessary to

9  determine which of them were harmed (*see, e.g.*, *id.* ¶¶ 9, 90-96, 98); and Plaintiffs' Location

10  Targeting damages methodologies should be rejected because they do not account for the benefits

11  Location Targeting Class Members received (*see, e.g.*, *id*. ¶¶ 9, 90-96, 98).

12  In the Second Wu Declaration, Wu responds to former Plaintiff Rick Woods'[5] and expert

13  Dr. Gibson's critiques of the Data Sample and concludes that none of the criticisms change his

14  opinions.  Second Wu Decl. ¶ 6.  Wu reasons that the Data Sample is taken from Google's

15  everyday business data; that in any dataset, particularly the extremely large dataset he used (of

16  nearly 28 million clicks in the case of the Click Sample and over 374 million clicks in the case of

17  the Advertiser Sample), there is likely to be some degree of measurement error; that he conducted

18  a rigorous empirical analysis of the data to determine the extent to which any systematic

19  measurement error would impact his conclusions drawn from the empirical analysis; the anomalies

20  in data Plaintiffs identify are entirely expected in the everyday business data of a company the size

21  and complexity of Google; and if Woods and Dr. Gibson had examined the "sensitivity" of Wu's

22  conclusions to the purported anomalies in the data, they would have realized that none of his

23  conclusions are sensitive to the purported "flaws" in the data.  *Id.* ¶¶ 7-10.

24  In the Third Wu Declaration, Wu critiques Dr. Gibson's report and the report of another

25  

26  [4] Wu also critiques the opinions of Plaintiffs' designated experts, Dr. Gibson and Mr. Solomon.

27  [5] Rick Woods is no longer a plaintiff.
28  ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
LAWRENCE WU . . . .

1    one of Plaintiffs' experts, Saul Solomon.  Third Wu Decl.  In the Fourth Wu Declaration, pertinent

2    to the Location Targeting claim, Wu again offers an opinion about the value of out-of-area clicks

3    to advertisers.  Wu explains that "some advertisers receive greater value from out-of-area clicks

4    than from in-area clicks" because "it is possible that out-of-area ads will perform better," and the

5    return on investment ("ROI") for out-of-area ads "may be high."  Fourth Wu Decl. ¶ 23; *see also*

6    *id*. ¶¶ 25 ("out-of-area clicks may be valued by advertisers as much, if not more, than in-area

7    clicks"); 26 ("ROI on ads shown to Florida users who searched for winter coats may be high

8    because a Florida user that specifically searches for a winter coat may be particularly likely to

9    actually purchase a winter coat"); 30 ("[O]ut-of-area clicks are valuable and, moreover, it is

10   possible for the value of out-of-area clicks to be higher than the value of in-area clicks.").

11        As to the Smart Pricing claim, Wu opines in the Fourth Wu Declaration that "the extent to

12   which an advertiser would have been harmed—if at all—by an alleged misapplication of Smart

13   Pricing will vary based on the extent to which the advertiser would have mitigated the alleged

14   drop in ROI."  *Id*. ¶ 22; *see also id*. ¶ 12 ("[T]he advertising agencies were able to confirm . . . that

15   (a) advertisers can mitigate any impact on ROI due to the alleged misapplication of Smart Pricing

16   and (b) advertisers vary widely in the ways in which they adapt and change their ad strategies and

17   campaigns to improve their advertising ROI."); ¶ 4 (stating that Plaintiffs' expert "ignores

18   advertisers' individual ability to mitigate the effect of any mispricing of Google's AdWords ads").

19   ## II.    STANDARDS

20        Federal Rule of Evidence 702 permits opinion testimony by an expert if the proponent

21   demonstrates that the expert is qualified and (a) the expert's scientific, technical, or other

22   specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

23   in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

24   reliable principles and methods; and (d) the expert has reliably applied the principles and methods

25   to the facts of the case.  Fed. R. Evid. 702.  An expert witness may be qualified by "knowledge,

26   skill, experience, training, or education."  *Id*.  The proponent of expert testimony has the burden of

27

1   proving admissibility in accordance with Rule 702.  Fed. R. Evid. 702 advisory committee's note

2   to 2000 amendment.

3       Rule 702 "clearly contemplates some degree of regulation of the subjects and theories

4   about which an expert may testify."  *Daubert*, 509 U.S. at 589–90.  Under *Daubert*, the Court

5   exercises a gatekeeping function to ensure an expert's proffered testimony is relevant and reliable.

6   *United States v. Valencia-Lopez*, 971 F.3d 891, 897–98 (9th Cir. 2020).  Rule 702 and *Daubert*,

7   however, are not "guarantees of correctness."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831,

8   855 (Fed. Cir. 2010).  "[T]he case law—particularly Ninth Circuit case law—emphasizes that a

9   trial judge should not exclude an expert opinion merely because he thinks it's shaky, or because he

10  thinks the jury will have cause to question the expert's credibility.  So long as an opinion is

11  premised on reliable scientific principles, it should not be excluded by the trial judge."  *In re*

12  *Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1109 (N.D. Cal. 2018).

## III.   DISCUSSION

14      Plaintiffs move to strike all of the Wu Declarations, arguing that Wu's opinions are

15  irrelevant and unreliable.  Specifically, Plaintiffs challenge the relevance of Wu's opinions

16  regarding the "benefits" of out-of-area clicks to advertisers; and (2) advertisers' ability to

17  "mitigate" the impact on ROI due to the alleged misapplication of Smart Pricing.  Plaintiffs'

18  challenge to the reliability of Wu's opinions is based on perceived flaws with the Data Sample.

19  Plaintiffs contend that (1) Google withheld location information from the Data Sample; (2) Wu

20  relied on unfiltered and unreliable conversion data; (3) data in certain fields is conflicting and

21  inaccurate; (4) Google misrepresented how the Data Sample was constructed; and (5) the Data

22  Sample is not representative of the Classes.

### A.   Relevance of Wu's Opinions re "Benefits" of Out-of-Area Clicks

24      Plaintiffs first contend that Wu's opinions regarding the "benefits" of out-of-area clicks to

25  advertisers are fundamentally at odds with *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d

26  979 (9th Cir. 2015), cert. denied, 136 S. Ct. 2410 (2016) ("*Pulaski*").  Specifically, Plaintiffs

27

28  ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
LAWRENCE WU . . . .

United States District Court
Northern District of California

1    contend that any benefit class members may have received *after* being charged for out-of-area

2    clicks is irrelevant because a restitution calculation under the UCL "need not account for benefits

3    received after purchase because the focus is on the value of the service at the time of purchase."

4    *Pulaski*, 802 F.3d at 989; *see also Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 820 (9th Cir.

5    2019) ("[A] restitution calculation under California law need not account for benefits received

6    after purchase." (citing *Pulaski*, 802 F.3d at 989)).  Plaintiffs also argue that Wu's opinions

7    regarding the "benefits" of out-of-area clicks should be excluded because they will mislead the

8    factfinder into erroneously thinking that events post-purchase are relevant when they are not.

9         Google, however, is not relying on Wu's opinions regarding the "benefits" of out-of-area

10   clicks to advertisers for purposes of calculating restitution for the putative class.  Rather, Google

11   contends that Wu's opinions are relevant to other issues including, but not limited to, whether the

12   alleged misrepresentation regarding location targeting is material.  Materiality was not at issue in

13   *Pulaski*.  Rather, *Pulaski* discussed the availability and calculation of restitution on a classwide

14   basis "once the class representative makes the threshold showing of liability under the UCL and

15   FAL."  *Pulaski*, 802 F.3d at 986.

16        Plaintiffs argue that materiality is not at issue in this case because all Location Targeting

17   class members indicated that location targeting was important to them by affirmatively choosing

18   to target their ads only to specific geographic locations.  Plaintiffs may certainly make this

19   argument to the trier of fact, but Google is entitled to develop and present evidence to rebut that

20   argument.  *Pulaski* does not foreclose Wu's opinions on the issue of materiality.[6]

21        **B.    Relevance of Wu's Opinions re Advertisers Ability to "Mitigate" Impact on
             ROI Due to The Alleged Misapplication of Smart Pricing**

22

23        Plaintiffs' second challenge to Wu's opinions is based on a misunderstanding of Wu's use

24   of the term "mitigate."  According to Plaintiffs, Wu's opinions assume there is a duty to mitigate

25

26   [6] Because Wu's opinions regarding the benefits of out-of-area clicks to advertisers are relevant to
     materiality, the Court finds it unnecessary to address at this time whether they are relevant to other

27   issues in the case such as class certification.

Case No.: 5:11-cv-01263-EJD

28   ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
     LAWRENCE WU . . . .

1    when there is no evidence to support such a duty.  This is inaccurate.  Wu does not use the term

2    "mitigate" in the sense of a duty to mitigate as a matter of contract law.  Rather, he uses "mitigate"

3    in the vernacular to explain how advertisers can lessen poor ROI, which is relevant to show

4    whether Plaintiffs suffered any actual injury or damages.

5         Plaintiffs argue that Wu's opinions have no bearing on whether any breach occurred

6    because in a breach of contract case, "the injury… is the breach itself."  Pls.' Reply at 1.  This is

7    an accurate statement of the law for purposes of standing.  *In re Google Referrer Header Priv.*

8    *Litig.*, 465 F. Supp. 3d 999, 1010–12 (N.D. Cal. 2020) ("Thus, 'a breach of contract claim accrues

9    at the moment of breach' and 'the injury, for standing purposes, is the breach itself.'") (quoting

10   *Alston v. Flagstar Bank, FSB*, 609 Fed. App'x 2, 3 (D.C. Cir. 2015)).  Plaintiffs, however, must

11   still prove damages.  *See e.g.*, *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.

12   App. 4th 1375, 1391 n.6 (2004) (Under California law, breach of contract is comprised of the

13   following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

14   defendant's breach, and (4) the resulting damages to plaintiff.).  Therefore, the Court rejects

15   Plaintiffs' argument.

16   **C.      Plaintiffs' Challenges to Reliability of The Data Sample**

17        Many, but not all, of Wu's opinions are based on his analysis of the Data Sample Google

18   provided him.  The Data Sample consists of two subsamples of Google's data.  Google

19   represented that the first subsample, referred to as the "Click Sample," or "Table 1," is a

20   randomly-selected sample of 28 million revenue-bearing clicks, consisting of 7 million clicks from

21   the Search Network, the Display Network, AdSense for Mobile Applications ("AFMA"), and

22   Mobile AdSense for Content ("mAFC").  Google represented that the second subsample, referred

23   to as the "Advertiser Sample," or "Table 2," was collected by identifying approximately 13,000

24   randomly selected advertisers and then identifying advertisers from within that sample with

25   revenue-bearing clicks from the Search Network, Display Network, AFMA, and mAFC properties

26   during the alleged class period.  Google also provided data "fields" for each click in the Data

United States District Court
Northern District of California

1    Sample that contained more granular information pertinent to Plaintiffs' claims.

2          Plaintiffs contend that Wu's opinions are unreliable because the Data Sample is unreliable

3    for various reasons.  First, Plaintiffs contend that Google withheld location information.  Plaintiffs

4    point to source code that Google produced and accuse Google of "hard-coding" query-parsed

5    clicks in the Class Period in order skew the data.  Predictably, Google denies withholding location

6    information from the data.

7          It is not apparent from the record whether or not Google intentionally withheld location

8    information, and such a serious accusation should not be made without a stronger evidentiary basis

9    than has been presented.  For purposes of resolving this *Daubert* motion, the issue is whether the

10   missing information renders Wu's opinions so unreliable that they must be excluded.  It does not.

11   The Data Sample was created from the logs and databases Google uses to operate and track the

12   AdWords program as part of the ordinary course of its business.  The Data Sample is also

13   extremely large.  Furthermore, Wu explains that his conclusions on location targeting would not

14   have changed even if the "missing" location information were available.  Plaintiffs may disagree,

15   but Wu's opinions are not subject to exclusion merely because they may be shaky.  *In re Roundup*

16   *Prods. Liab. Litig.*, 390 F. Supp. 3d at 1109.  "The relative weakness or strength of the factual

17   underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility."

18   *See*, *e.g.*, *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987), *opinion modified on*

19   *reh'g*, 866 F.2d 318 (9th Cir. 1989);  *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales*

20   *Practices and Prods. Liab. Litig.*, No. MDL 10–02172, 2012 WL 4904412, at *3 (C.D. Cal. Sept.

21   20, 2012) (finding whether an expert's reasonable assumptions are true and whether his opinions

22   should be accepted are issues going to the weight of his testimony and report and not to their

23   admissibility).

24         Second, Plaintiffs fault Wu for relying on unfiltered and unreliable conversion data that

25   Google does not use in its everyday business.  Again, this purported deficiency with the Sample

26   Data does not render Wu's opinions so unreliable that they must be excluded.  While Google does

27

28   Case No.: 5:11-cv-01263-EJD
     ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
     LAWRENCE WU . . . .

United States District Court
Northern District of California

1   use certain filters internally to determine what it characterizes as ███████████ that does

2   not mean that unfiltered data is unreliable.  In any event, Wu re-analyzed the data using Google's

3   internal filters and found that his conclusions would remain unchanged.  Evans Decl. Ex. 10 ("Wu

4   Decl. Jan. 3, 2019") ¶ 21.

5       Plaintiffs also fault Wu for including conversions that originated from non-Google sources

6   (e.g., clicks on Facebook or Yahoo! ads).  Plaintiffs assert that the inclusion of these clicks is

7   inconsistent with Google's and Wu's definition of a conversion.  Plaintiffs, however, do not

8   identify any actual instances where a conversion attributed to a non-Google source was included in

9   the data.  Even if conversions from non-Google sources were included in the Sample Database,

10  they do not render Wu's opinions so unreliable that they must be excluded.  Again, "[t]he relative

11  weakness or strength of the factual underpinnings of the expert's opinion goes to weight and

12  credibility, rather than admissibility."  *Bergen*, 816 F.2d at 1352 n.5.

13      Furthermore, Plaintiffs' argument overlooks the fact that advertisers are free to define

14  conversions in any way they want.  Evan Decl., Ex. 6.  Advertiser-defined conversions are

15  arguably more relevant than Google-defined conversions for purposes of determining whether

16  Smart Pricing Class members benefited from clicks.

17      Third, Plaintiffs assert that data in the "converted" and "conversion-tracked" fields for

18  clicks is conflicting and inaccurate.  Google acknowledges the perceived inconsistency, but Wu

19  explains that the number of clicks that are "converted" but not "conversion-tracked" is less than

20  0.05% of the click samples.  Wu Decl. Jan. 3, 2019 ¶ 26.  Wu explains that these "recording

21  errors" are normal and to be expected in a set of ordinary course business data the size of the Data

22  Sample, and are immaterial to his analysis.  *Id*.  Therefore, the inconsistencies in the "converted"

23  and "conversion-tracked" fields do not warrant excluding Wu's opinions.

24      Fourth, Plaintiffs accuse Google of misrepresenting how the Data Sample was constructed

25  because there are clicks in the "Click Sample" that should be, but are not included in the

26  "Advertiser Sample."  Plaintiffs' accusation is unfounded and unprofessional.  Wu explains that

27
28

United States District Court
Northern District of California

Case No.: 5:11-cv-01263-EJD
ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
LAWRENCE WU . . . .

1   there are only 134 clicks in the "Click Sample" that possibly should have been included in the

2   "Advertiser Sample," and that they account for less than $20 in ad spend. *Id.* ¶ 27.  Further, Wu

3   concludes that these clicks and associated ad spend, when compared to the total Advertiser

4   Sample, which includes over 374 million clicks and nearly $87 million of ad spend, "would have a

5   small effect" on his opinions.  *Id*.

6       Finally, Plaintiffs contend that the Data Sample is not representative of the Classes because

7   Google failed to limit the Data Sample to U.S. advertisers and to "cost-per-click" ads.[7]  These

8   alleged flaws go to the weight, not the admissibility of Wu's opinions.

9   **IV.    CONCLUSION**

10      For the reasons stated above, Plaintiffs' Motions are DENIED.

11

12      **IT IS SO ORDERED.**

13   Dated:  September 21, 2022

14

15                                                   _____

16                                                   EDWARD J. DAVILA
                                                     United States District Judge

17

18

19

20

21

22

23

24

25

26   [7] Plaintiffs also fault Google for constructing the Data Sample without seeking their input and
     assert that the Data Sample does not satisfy Google's discovery obligations, but do not explicitly
27   request exclusion based upon any purported discovery violation.
     Case No.: 5:11-cv-01263-EJD
28   ORDER DENYING PLAINTIFFS' MOTION TO STRIKE EXPERT DECLARATIONS OF
     LAWRENCE WU . . . .

                                                    12

United States District Court
Northern District of California