Exhibit 2

to

Mandhania Declaration

1

08:50:59  1   12-12-2024, Thursday

09:04:03  2                VIDEOGRAPHER CASWELL:   Rene Cabrera

09:08:17  3   Google.

09:08:18  4                ATTORNEY MANDHANIA:

09:08:38  5                ATTORNEY MAZZEO:

09:12:37  6                JUDGE HAKUN:

09:12:39  7                VIDEOGRAPHER CASWELL:   We are now on the

09:12:40  8   recorded a contacts well retained by U.S. legal support

09:12:45  9   this is a live video deposition today's date is

09:12:49  10  December 12, 2024.  The time is 9:11.  This deposition

09:12:55  11  is being held at 2 80 King of Prussia Road in Radnor,

09:12:59  12  Pennsylvania in the matter of Rene Cabrera versus

09:13:06  13  Google LLC.  The deponent is Doctor James L Gibson.

09:13:11  14  Counsel if you want to introduce yourself and who you

09:13:13  15  represent.

09:13:14  16                ATTORNEY MAZZEO: Good morning Margaret

09:13:16  17  mass yo from Kessler Topaz on behalf of the witness

09:13:19  18  Plaintiff's in the class.

09:13:21  19                ATTORNEY MUSTOKOFF:  Matt Mustokoff

09:13:22  20  Kessler Topaz also on behalf of Plaintiff's.

09:13:25  21                ATTORNEY MANDHANIA:  I'm Ankur Mandhania

09:13:26  22  from Mayer Brown for Google.

09:13:29  23                    ATTORNEY HUNT:  Kaitlyn Hunt Mayer Brown

09:13:32  24    for Google.

09:13:33  25                    ATTORNEY MANDHANIA:  And I think we will



                                                                    2

09:13:34   1    take appearances from the folks appearing

09:13:36   2    telephonically.

09:13:39   3                    ATTORNEY SILVERMAN:  Kristin Silverman for

09:13:42   4    Mayer Brown.

09:13:42   5                    ATTORNEY RONALDSON:  Nicholas Ronaldson

09:13:43   6    for Mayer Brown also for Google.

09:13:47   7                    VIDEOGRAPHER CASWELL:   Is that everyone?

09:13:49   8                    ATTORNEY MANDHANIA:  It is.

09:13:51   9                    VIDEOGRAPHER CASWELL:   The witness will

09:13:52  10    now be sworn in.

09:14:06  11                             - - -

09:14:06  12    CALLED AS A WITNESS IN THE FOLLOWING PROCEEDINGS,

09:14:06  13    HAVING FIRST BEEN DULY SWORN, TESTIFIED AND SAID AS

09:14:06  14    FOLLOWS:

09:14:07  15                             - - -

09:14:07  16                    VIDEOGRAPHER CASWELL:   Proceed.

09:14:07  17    BY ATTORNEY MANDHANIA:

09:14:09  18    Q.   Dr. Gibson, good morning.

09:14:10  19    A.   Good morning.

```
10:44:52  16                        - - -

10:44:52  17              VIDEOGRAPHER CASWELL:   We are back on

10:44:54  18  10:43.

10:44:54  19  BY ATTORNEY MANDHANIA:

10:44:59  20  Q.   Dr. Gibson welcome back from the break.

10:45:02  21  A.   Thank you.

10:45:02  22  Q.   I think we got a little distracted earlier when I

10:45:06  23  was asking about the process that led you to

10:45:08  24  interviewing Mr. Taylor, so I want to just make sure we

10:45:12  25  have a clean record on this question.  Did Dr.
```

⬆

                                                                    46

```
10:45:18   1  Sutherland recommend Mr. Taylor to you for purposes of

10:45:20   2  this matter?

10:45:30   3  A.   I don't have a clear memory.  I believe he did,

10:45:33   4  but I don't have a clear memory of where Taylor's name

10:45:38   5  actually came from and whether it came from more than a

10:45:41   6  single person.

10:45:46   7  Q.   And did Mr. Sutherland --- pardon me, did Dr.

10:45:53   8  Sutherland recommend Mr. Reynolds to you?

10:45:57   9  A.   No.

10:45:57  10  Q.   You mentioned as part of your interview with Mr.

10:46:00  11  Taylor you mentioned about his employment history,

10:46:03  12  right?
```

10:46:03  13    A.   Yes.

10:46:11  14    Q.   Why?

10:46:12  15    A.   Because Mr. Sutherland was removed from this case

10:46:27  16    because of his employment history.

10:46:29  17    Q.   When did you stop working --- that was --- strike

10:46:37  18    that.  At some time did you learn that Dr. Sutherland

10:46:44  19    could no longer work on this matter?

10:46:46  20              ATTORNEY MAZZEO: Objection to form.

10:46:49  21              THE WITNESS:  Yes.

10:46:49  22    BY ATTORNEY MANDHANIA:

10:46:53  23    Q.   And on what date did you learn that Dr. Sutherland

10:46:55  24    could no longer work on this matter?

10:47:00  25              ATTORNEY MAZZEO: Objection to form.
⌃

47

10:47:01  1               THE WITNESS:  I can't remember the

10:47:02  2    specific day.

10:47:02  3    BY ATTORNEY MANDHANIA:

10:47:04  4    Q.   Can you give me the month?

10:47:05  5               ATTORNEY MAZZEO: Objection.

10:47:07  6               THE WITNESS: February 2024.

10:47:07  7    BY ATTORNEY MANDHANIA:

10:47:15  8    Q.   Before February 2024, did you know that a persons

10:47:22  9    employments history was relevant to whether they could

10:48:40  7   ask him those questions we talked about earlier

10:48:43  8   regarding availability, eligibility to serve, expertise

10:48:48  9   and costs?

10:48:49  10  A.   March of 2024.

10:48:51  11  Q.   And in what month did Mr. Taylor begin his work on

10:48:55  12  this matter?

10:49:00  13  A.   I actually don't know, but after Google approved

10:49:03  14  him, so the end of March, the beginning of April

10:49:08  15  somewhere around in there.  I don't actually know the

10:49:11  16  precise day.

10:49:13  17  Q.   You issued some code in April and May 2024 in this

10:49:20  18  matter, right?

10:49:23  19  A.   Yes.

10:49:23  20  Q.   Did Mr. Taylor work on that code?

10:49:27  21  A.   I don't believe he did.

10:49:29  22  Q.   Did anyone other than yourself work on that code?

10:49:35  23  A.   Maybe we ought to be clear about what that code

10:49:40  24  is?  Can you give me the content or the context of the

10:49:43  25  code?

⬆

49

10:49:44  1   Q.   Sure.

10:49:45  2   A.   I think I know but can you be clear.

10:49:47  3   Q.   And why don't we do this have this whole

10:49:52    4    conversation have it a little bit more systematically.

10:49:55    5    A.    Yeah.

10:49:56    6    Q.    So you issued code in March 202424 on March 1,

10:50:08    7    2024?

10:50:08    8                    ATTORNEY MAZZEO: Objection.

10:50:09    9                    THE WITNESS: Yes.

10:50:10    10                    ATTORNEY MAZZEO: Could you be more

10:50:11    11    specific by issued code.

10:50:11    12    BY ATTORNEY MANDHANIA:

10:50:15    13    Q.    Sure and I will direct Dr. Gibson of paragraph 7

10:50:18    14    of Gibson 1. ?

10:50:27    15    A.    I'm there.

10:50:27    16    Q.    And this mystery changed history code to Google on

10:50:35    17    March 7th, right?

10:50:38    18    A.    Yes.

10:50:38    19    Q.    Who wrote that code?

10:50:39    20    A.    I did.

10:50:39    21    Q.    Are there any lines of that code written by

10:50:42    22    someone other than you?

10:50:47    23    A.    Yes.

10:50:50    24    Q.    Who wrote the lines other than you that are

10:50:53    25    contained in that code?

10:50:56  1    A.    Dr. Sutherland.

10:51:00  2    Q.    Were there specific topics on which Dr. Sutherland

10:51:03  3    wrote lines of code?

10:51:04  4                   ATTORNEY MAZZEO: Objection of form.  I'm

10:51:06  5    going to advise you not to divulge the contents of any

10:51:11  6    specific communications you had with Dr. Sutherland

10:51:13  7    regarding the code.

10:51:14  8                   ATTORNEY MANDHANIA:  And I'm sorry what is

10:51:16  9    the basis of that objection.

10:51:18  10                  ATTORNEY MAZZEO: The work product

10:51:20  11   privilege.  If you want to ask him generally about how

10:51:23  12   he collaborated with Dr. Sutherland that is fine.  But

10:51:26  13   in terms of specific lines of code I think that is

10:51:28  14   crossing the line.

10:51:30  15                  ATTORNEY MANDHANIA:  Counsel, you have

10:51:32  16   made --- or there have been representations to us that

10:51:34  17   Dr. Sutherland didn't write any code.  I just heard

10:51:39  18   that he did.  I think I'm entitled to probe the

10:51:43  19   discrepancy between the representation and I would say

10:51:46  20   your previous representation that Dr. Sutherland didn't

10:51:49  21   write code has waived work privilege over this matter.

10:51:52  22                  ATTORNEY MAZZEO: I think you should ask

10:51:53  23   him more questions to clarify and make sure you guys

10:51:56  24   have the same understanding of what that means.  Again,

10:51:58  25   if you want to ask him generally about his

51

10:52:03  1  collaboration with Dr. Sutherland in writing the code

10:52:05  2  that is fine, but in terms of actual specifics of lines

10:52:11  3  of code that is protected.

10:52:11  4  BY ATTORNEY MANDHANIA:

10:52:14  5  Q.   And I think what I've asked --- well, the question

10:52:17  6  pending, Dr. Gibson, is whether there are specific

10:52:21  7  topics on which Mr. Sutherland wrote lines of code?

10:52:34  8  A.   Yes.

10:52:36  9  Q.   And what are those topics?

10:52:40  10            ATTORNEY MAZZEO: Objection.  Dr. Gibson,

10:52:43  11  I'm going to advise you not to answer that question?

10:52:47  12            THE WITNESS:  On advice of counsel I can't

10:52:56  13  answer that question.

10:52:56  14  BY ATTORNEY MANDHANIA:

10:52:58  15  Q.   Are there specific topics --- are there specific

10:53:01  16  topics that Dr. Sutherland wrote code on that wrote

10:53:06  17  lines of code on for the March 1 and March 7th code?

10:53:11  18  A.   I think I already said yes.

10:53:13  19  Q.   So there are certain topics where you wrote the

10:53:16  20  code and there are certain topics where Mr. Sutherland

10:53:19  21  wrote the code; is that right?

10:53:21  22  A.   Almost all topics I wrote the code.

89

12:43:01  1  in computer science, right?

12:43:06  2              ATTORNEY MAZZEO: Object to form.

12:43:06  3              THE WITNESS:  Yes.

12:43:06  4  BY ATTORNEY MANDHANIA:

12:43:07  5  Q.   And using Ed cases to verify code in cases, right?

12:43:20  6              ATTORNEY MAZZEO: Object to form.

12:43:21  7              THE WITNESS:  Yes.

12:43:21  8  BY ATTORNEY MANDHANIA:

12:43:22  9   Q.   We spoke a little bit earlier about Mr. Taylor who

12:43:28  10  is working with you on this case, right?

12:43:30  11  A.   Yes.

12:43:30  12  Q.   And I think you mentioned that at one point Mr.

12:43:33  13  Sutherland may have been involved in referring him to

12:43:35  14  you, you just weren't a 100 percent sure; is that

12:43:38  15  right?

12:43:38  16  A.   I think that is a fair characterization, yes.

12:43:40  17  Q.   Okay do you know whether Mr. Taylor and Doctor

12:43:47  18  Sutherland know each other?

12:43:50  19              ATTORNEY MAZZEO: Object to form.

12:43:51  20              THE WITNESS:  I don't know actually.

12:43:51  21  BY ATTORNEY MANDHANIA:

12:43:53  22  Q.   Are you instructed Mr. Taylor not to talk to Dr.

12:43:55  23  Sutherland about this case?

12:43:56  24              ATTORNEY MAZZEO: Object to form.

12:44:02  25              THE WITNESS:  I have no recollection of

^

                                                              90

12:44:03  1   having done so.

12:44:03  2   BY ATTORNEY MANDHANIA:

12:44:05  3   Q.   Do you know whether anyone else has given Mr.

12:44:08  4   Taylor that instruction?

12:44:09  5               ATTORNEY MAZZEO: Object to form.

16:39:03   5   4:37.

16:39:03   6   BY ATTORNEY MANDHANIA:

16:39:08   7   Q.   Dr. Gibson, one of the documents that you reviewed

16:39:11   8   in preparation for today was Google's subpoena from

16:39:16   9   2024, right?

16:39:18   10  A.   Yes.

16:39:18   11  Q.   When did you learn of that subpoena?

16:39:23   12  A.   I'm sorry?

16:39:24   13  Q.   When did you learn of that subpoena?

16:39:26   14  A.   In the summer of 2024.

16:39:28   15  Q.   And can you describe for me what you did once you

16:39:32   16  received it?

16:39:34   17  A.   Yes.

16:39:38   18              ATTORNEY MUSTOKOFF:  I'm just going to

16:39:40   19  caution the witness in answering this question not to

16:39:43   20  divulge the discussions that you had with counsel.

16:39:48   21              ATTORNEY MANDHANIA:  Matt I've been kind

16:39:53   22  of letting it slide but the tag teaming has been a

16:39:56   23  little bit excessive.

16:39:58   24              ATTORNEY MAZZEO: I will lodge the same

16:39:59   25  objection.

⬆

208

16:40:01   1               ATTORNEY MANDHANIA:  Thank you.

```
16:40:01   2              ATTORNEY MAZZEO: I'm going to instruct the

16:40:02   3    witness not to divulge any communications that he had

16:40:07   4    with counsel in answering his question.

16:40:10   5              THE WITNESS:  So I was asked to review my

16:40:14   6    e-mail and I did.

16:40:14   7    BY ATTORNEY MANDHANIA:

16:40:22   8    Q.   Who asked you to review your e-mail?

16:40:26   9              ATTORNEY MUSTOKOFF:  Objection.

16:40:26  10              ATTORNEY MAZZEO: Objection.  I'm going to

16:40:29  11    instruct you not to answer.

16:40:29  12    BY ATTORNEY MANDHANIA:

16:40:31  13    Q.   Counsel is a fine answer but if someone instructed

16:40:33  14    you I want to know who?

16:40:37  15    A.   So I thought the subpoena.  I don't have the

16:40:40  16    subpoena in my mind but I thought clearly in my mind,

16:40:44  17    but I thought the subpoena instructed me to.

16:40:50  18    Q.   I see.

16:40:50  19    A.   I maybe wrong about that.

16:40:52  20              ATTORNEY MANDHANIA:  Why don't we put the

16:40:53  21    subpoena in front of you that might help?

16:40:56  22              THE WITNESS:  Thank you.

16:40:56  23              ATTORNEY MANDHANIA:  That is tab 19.

16:41:09  24              (Exhibit marked for identification.)

16:41:09  25    BY ATTORNEY MANDHANIA:
```

16:49:12    9    BY ATTORNEY MANDHANIA:

16:49:15   10    Q.   This matter?

16:49:15   11    A.   I have.

16:49:16   12    Q.   Have you preserved all of those e-mails?

16:49:19   13    A.   I have.

16:49:20   14    Q.   Are you aware, Dr. Gibson, that lawyers from

16:49:29   15    Kessler Topaz have respond --- have served on Google a

16:49:34   16    response on your behalf to the subpoena?

16:49:42   17    A.   Is this the interrogatories that we talked about

16:49:44   18    earlier today?

16:49:45   19    Q.   I'm talking about this document here, the Gibson

16:49:49   20    11 maybe it was, the subpoena that we are talking

16:49:53   21    about?

16:49:53   22    A.   But you are talking about a response to this?

16:49:56   23    Q.   Yes.

16:49:57   24    A.   And is that the Interrogatory document that we

16:49:59   25    were talking about today?

⌃

                                                                    215

16:50:01    1    Q.   I don't think it is to be honest.  We have talked

16:50:05    2    about interrogatories a few times so I'm trying to

16:50:06    3    avoid getting confused about that.

16:50:11    4    A.   I'm unsure.  I don't know is the answer.

16:50:14    5    Q.   Have you given counsel all information in your

16:50:20    6    possession that is responsive to the subpoena?

16:50:22    7                    ATTORNEY MAZZEO: Objection to form.  Dr.

16:50:26    8    Gibson I'm going to counsel you not to answer the

16:50:27    9    question to the extent that you need to reveal the

16:50:30   10    contents of the conversations that you had with

16:50:32   11    counsel.

16:50:35   12                    THE WITNESS:  Yes.

16:50:35   13    BY ATTORNEY MANDHANIA:

16:50:37   14    Q.    Have you ever texted Dr. Sutherland?

16:50:44   15    A.    Maybe.

16:50:45   16    Q.    Have you ever texted him about this case?

16:50:48   17    A.    No.

16:50:55   18    Q.    How did you figure out what information was

16:50:57   19    responsive to the subpoena?

16:50:59   20                    ATTORNEY MAZZEO: Dr. Gibson I'm going to

16:51:01   21    counsel you not to answer that question.  That clearly

16:51:03   22    calls for privileged communications, Ankur, you can't

16:51:09   23    answer the question?

16:51:10   24                    THE WITNESS:  On the advice of counsel I

16:51:12   25    refuse to answer that question.

⌃

                                                                    216

16:51:12    1    BY ATTORNEY MANDHANIA:

16:51:20    2    Q.    Outside of conversations you had with counsel do

17:03:30  7                ATTORNEY MAZZEO: Objection to form.

17:03:35  8                THE WITNESS:  No.

17:03:35  9    BY ATTORNEY MANDHANIA:

17:03:36  10   Q.   Then did you need assistance to conduct the

17:03:40  11   analysis?

17:03:40  12               ATTORNEY MAZZEO: Objection to form.

17:03:41  13               THE WITNESS:  Much cheaper.

17:03:41  14   BY ATTORNEY MANDHANIA:

17:03:45  15   Q.   Do you know what Dr. Sutherland's hourly rate was

17:03:52  16   on this matter?

17:03:53  17   A.   In 2017/2018, I do not.  I'm sure it was less than

17:03:58  18   mine.

17:04:01  19   Q.   Do you know whether Dr. Sutherland has ever used

17:04:03  20   you as a reference for any job applications?

17:04:05  21               ATTORNEY MAZZEO: Objection to form.

17:04:07  22               THE WITNESS:  I do not know.

17:04:07  23   BY ATTORNEY MANDHANIA:

17:04:11  24   Q.   You are aware now, Dr. Gibson, that Dr. Sutherland

17:04:16  25   has worked at Amazon for a period of time, right?

^

224

17:04:20  1                ATTORNEY MAZZEO: Objection to form.

17:04:21  2                THE WITNESS:  Yes.

17:04:21  3    BY ATTORNEY MANDHANIA:

17:04:22    4    Q.    When did you learn that?

17:04:25    5    A.    In February of 2024.

17:04:30    6    Q.    And what did you do once you learned that?

17:04:35    7                    ATTORNEY MAZZEO: Objection to form.

17:04:39    8                    THE WITNESS:  Nothing.  I couldn't ---

17:04:45    9    nothing.

17:04:45   10    BY ATTORNEY MANDHANIA:

17:04:48   11    Q.    We discussed earlier Dr. Sutherland's

17:04:55   12    participation in your March code, right?

17:05:00   13    A.    Yes.

17:05:00   14    Q.    Did any of Dr. Sutherland's participation occur

17:05:05   15    after you knew he was a former Amazon employee?

17:05:11   16                    ATTORNEY MAZZEO: Objection.

17:05:12   17                    THE WITNESS: Yes.

17:05:12   18    BY ATTORNEY MANDHANIA:

17:05:19   19    Q.    Have you been instructed not to communicate with

17:05:21   20    Dr. Sutherland about this case?

17:05:22   21                    ATTORNEY MAZZEO: Objection to form.  Dr.

17:05:23   22    Gibson, I'm going to instruct you not to answer that

17:05:25   23    question to the extent it is going to reveal any

17:05:27   24    communications that you had with counsel.

17:05:29   25                    THE WITNESS:  On advice of counsel I

225

17:10:19  20   BY ATTORNEY MANDHANIA:

17:10:28  21   Q.   And you also handed information on a flash drive

17:10:33  22   to another person who assisted you on this matter

17:10:37  23   Christian Baehr, right?

17:10:41  24             ATTORNEY MAZZEO: Objection to form.

17:10:42  25             THE WITNESS:  Yes.

⌃

                                                                    228

17:10:42  1   BY ATTORNEY MANDHANIA:

17:10:43  2   Q.   Is it a usual practice for you Dr. Gibson to

17:10:46  3   transfer information to a physical median like a

17:10:49  4   physical flash drive or a hard drive?

17:10:56  5   A.   To transmit information through a hard drive or a

17:11:00  6   flash drive yes.

17:11:11  7   Q.   Is it likely that you would have given Dr.

17:11:14  8   Sutherland ---

17:11:14  9             ATTORNEY MAZZEO: Objection to form.

17:11:14  10  BY ATTORNEY MANDHANIA:

17:11:17  11  Q.   Other physical information in physical form?

17:11:20  12            ATTORNEY MAZZEO: Objection vague,

17:11:21  13  relevance, speculation.

17:11:25  14            THE WITNESS:  I'm trying to imagine what

17:11:27  15  other information I should be thinking about.  I don't

17:11:34  16  think I did, but I also think you are asking me about

17:11:41  17    2018 which is 6 or more years ago.

17:11:47  18                  ATTORNEY MAZZEO:  Ankur, if you could

17:11:51  19    clarify the time period that you are referring to in

17:11:55  20    your questions I think that would help.

17:11:55  21    BY ATTORNEY MANDHANIA:

17:11:57  22    Q.    These questions are at anytime since Dr.

17:12:00  23    Sutherland began working for you in this matter, Dr.

17:12:03  24    Gibson, so 2017 onwards?

17:12:07  25    A.    Would you repeat the question please.

↑

229

17:12:08  1    Q.    Sure.  Is it --- so we talked about the fact that

17:12:13  2    you gave Dr. Sutherland a physical hard drive

17:12:16  3    containing tables 1 and 2, right?

17:12:19  4    A.    Yes.

17:12:19  5    Q.    Do you know of other information you would have

17:12:25  6    handed Dr. Sutherland physically?

17:12:28  7                  ATTORNEY MAZZEO: Objection calls for

17:12:29  8    speculation?

17:12:30  9                  THE WITNESS:  No.

17:12:30  10    BY ATTORNEY MANDHANIA:

17:12:35  11    Q.    Do you know where that hard drive that you handed

17:12:37  12    Dr. Sutherland is?

17:12:38  13                  ATTORNEY MAZZEO: Objection calls for

17:12:39  14    speculation.

17:12:41  15              THE WITNESS:  I'm afraid I don't.

17:12:41  16    BY ATTORNEY MANDHANIA:

17:12:44  17    Q.   Do you know whether Dr. Sutherland still has that

17:12:47  18    hard drive?

17:12:47  19              ATTORNEY MAZZEO: Objection, calls for

17:12:48  20    speculation.

17:12:57  21              THE WITNESS:  I have a vague recollection

17:12:58  22    that it was returned to Google.

17:12:58  23    BY ATTORNEY MANDHANIA:

17:13:04  24    Q.   When do you recall that data having been returned

17:13:08  25    to Google?

➤

                                                              230

17:13:12  1    A.   Sometime in 2018, but I maybe wrong about that.

17:13:19  2    Q.   Did you participate in the return of that to

17:13:29  3    Google?

17:13:29  4              ATTORNEY MAZZEO: Objection to form.

17:13:30  5              THE WITNESS:  I don't recall.

17:13:30  6    BY ATTORNEY MANDHANIA:

17:13:32  7    Q.   When did you first meet Christian Baehr?

17:13:37  8    A.   I don't know.

17:13:38  9    Q.   Can you estimate the year for me that you first

17:13:41  10   met Christian Baehr?

17:22:36  15    BY ATTORNEY MANDHANIA:

17:22:37  16    Q.   The Court protected order contains a number of

17:22:42  17    conditions and requirements that your ad hoc agreement

17:22:45  18    does not include, right?

17:22:48  19              ATTORNEY MAZZEO: Objection to form.

17:22:50  20              THE WITNESS:  I have not reviewed the

17:22:55  21    Protective Order from that process but it must.

17:22:55  22    BY ATTORNEY MANDHANIA:

17:22:58  23    Q.   Did you look at the Protective Order when you were

17:23:00  24    drafting your ad hoc agreement with Mr. Baehr?

17:23:06  25              ATTORNEY MAZZEO: Objection to form.

⌃

                                                                    238

17:23:12  1               THE WITNESS: I don't believe I did.

17:23:12  2     BY ATTORNEY MANDHANIA:

17:23:13  3     Q.   When was the last time you looked at the

17:23:15  4     Protective Order in this case?

17:23:22  5     A.   Roughly August or September of this year.

17:23:32  6     Q.   You gave before Baehr some click data that Google

17:23:36  7     has produced in this case, right?

17:23:38  8               ATTORNEY MAZZEO: Objection to form.

17:23:39  9               THE WITNESS:  No.

17:23:39  10    BY ATTORNEY MANDHANIA:

17:23:43  11    Q.   What data or information from Google have you

17:23:46  12    given to Mr. Baehr in connection with this matter?

17:23:51  13    A.   I gave him photographs that I took.

17:23:54  14    Q.   And these are the photographs that you took during

17:23:58  15    one of the source code inspections; is that right?

17:24:01  16    A.   That's correct.

17:24:01  17    Q.   And you put those photos on a flash drive that you

17:24:08  18    gave to Mr. Baehr, right?

17:24:10  19    A.   Yes.

17:24:11  20    Q.   Do you know whether Mr. Baehr made any copies of

17:24:17  21    those photos?

17:24:18  22              ATTORNEY MAZZEO: Objection to form.  Calls

17:24:19  23    for speculation.

17:24:20  24              THE WITNESS:  I don't know.

17:24:20  25    BY ATTORNEY MANDHANIA:

⌃

                                                            239

17:24:27  1    Q.   Does Mr. Baehr have any background in coding?

17:24:29  2              ATTORNEY MAZZEO: Objection to form.

17:24:33  3              THE WITNESS:  I don't actually know.  Did

17:24:36  4    he at the time is the question.  I don't actually know.

17:24:36  5    BY ATTORNEY MANDHANIA:

17:24:42  6    Q.   So when you handed him the flash drive with those

17:24:45  7    pictures you took, did you know whether Mr. Baehr would

17:24:48  8    understand the contents of those photographs?

17:32:45  22                    ATTORNEY MUSTOKOFF:  Can we go off the

17:32:46  23   record for a second sorry.

17:32:48  24                    VIDEOGRAPHER CASWELL:   Going off the

17:32:50  25   record the time is 5:31.

❦

                                                                    244

17:44:28   1                         - - -

17:44:28   2                    (WHEREUPON, A BREAK WAS TAKEN.)

17:44:30   3                         - - -

17:44:30   4                    VIDEOGRAPHER CASWELL:   Back on 5:43.

17:44:30   5   BY ATTORNEY MANDHANIA:

17:44:39   6   Q.   Dr. Gibson, did you tell anyone that you were

17:44:51   7   going to take pictures during the source code

17:44:53   8   inspection?

17:44:53   9                    ATTORNEY MAZZEO: Objection to form.

17:44:55  10                    THE WITNESS:  No.

17:44:55  11   BY ATTORNEY MANDHANIA:

17:45:02  12   Q.   Did you know that Plaintiff's Counsel had

17:45:03  13   requested permission for you to take notes on your

17:45:05  14   computer during that inspection?

17:45:09  15   A.   I do not.  This is 6 and a half years ago.  I

17:45:13  16   don't know, I don't remember.

17:45:17  17                    ATTORNEY MANDHANIA:  Let's take a look at

17:45:18  18   tab 24.

17:48:57 10    A.    Yes.

17:48:58 11    Q.    And then the next day you did in fact in expect

17:49:06 12    Google source code, right?

17:49:07 13    A.    Yes.

17:49:08 14    Q.    And that is the inspection at which you took the

17:49:13 15    pictures, right?

17:49:14 16    A.    Yes.

17:49:15 17    Q.    Was Mr. Saidel in the room when you took those

17:49:20 18    pictures?

17:49:22 19    A.    No.

17:49:24 20    Q.    Who was in the room with you when you took those

17:49:26 21    pictures, if anyone?

17:49:30 22    A.    I don't have a clear recollection, but surely no

17:49:42 23    one.

17:49:42 24    Q.    Why surely?

17:49:43 25    A.    Because I was working alone all day long.

248

17:49:45 1    Q.    Was Mr. Saidel in the room while you used your

17:49:49 2    voice recorder to dictate notes?

17:49:52 3    A.    No, I was working alone all day long.

17:49:59 4    Q.    Dr. Gibson, have you violated the Protective Order

17:50:02 5    in this case?

17:50:03 6              ATTORNEY MAZZEO: Objection to form, calls

17:50:05   7   for a legal conclusion.

17:50:09   8              THE WITNESS:  I believe that there are

17:50:12   9   allegations that I did and as I sit here today I

17:50:18  10   believe that I did.

17:50:18  11   BY ATTORNEY MANDHANIA:

17:50:21  12   Q.   When did you first form the belief that you had

17:50:25  13   violated the Protective Order?

17:50:27  14              ATTORNEY MAZZEO: Objection form.

17:50:35  15              THE WITNESS:  This summer, I think.

17:50:35  16   BY ATTORNEY MANDHANIA:

17:50:39  17   Q.   How many times have you violated the Protective

17:50:42  18   Order?

17:50:42  19              ATTORNEY MAZZEO: Objection to form.  Calls

17:50:43  20   for a legal conclusion.

17:50:47  21              THE WITNESS:  Once.

17:50:47  22   BY ATTORNEY MANDHANIA:

17:50:48  23   Q.   And what is that time?

17:50:52  24   A.   The incident that we have been talking about in

17:50:55  25   2018.

↟

                                                              249

17:50:57   1   Q.   And which incident is that, Dr. Gibson?

17:51:04   2   A.   The recruitment of Mr. Baehr to help on processing

17:51:08   3   the information.

17:54:18  23   A.   Besides Amazon so Google.

17:54:22  24   Q.   You have backed up photos on Google photos?

17:54:25  25   A.   Yes.

  ^

                                                                  252

17:54:25  1   Q.   When did you start using Google photos to back up

17:54:28  2   photos?

17:54:28  3   A.   I don't have any idea.  I think it is automatic

17:54:32  4   --- it automatically comes on your computer.

17:54:34  5   Q.   And do you know whether you were using Google

17:54:37  6   photos to back up photos from your phone in 2018?

17:54:43  7   A.   I do not.

17:54:44  8   Q.   Have you checked your Google photos archive to see

17:54:48  9   whether these photos appear there?

17:54:50  10   A.   Yes.

17:54:50  11   Q.   And do these photos appear there?

17:54:54  12   A.   They do not.

17:54:54  13   Q.   Other than the photos we have been discussing,

17:55:00  14   have you ever had in your possession any other photos

17:55:02  15   of Google source code?

17:55:05  16   A.   No.

17:55:06  17   Q.   Now, you received an electronic copy of Google's

17:55:15  18   source code in 2018, right?

17:55:20  19   A.   Yes.

17:55:22  20    Q.   Did you request that copy?

17:55:25  21              ATTORNEY MAZZEO: Objection to form.

17:55:27  22              THE WITNESS:  This is 6 and a half years

17:55:30  23    ago.  I don't have any idea if I did or did not.

17:55:30  24    BY ATTORNEY MANDHANIA:

17:55:36  25    Q.   Who sent you the copy?

⌂

253

17:55:38   1    A.   Matt Mustokoff.

17:55:39   2    Q.   Who made the copy?

17:55:43   3    A.   I don't know.

17:55:44   4    Q.   Did you know at the time you received there source

17:55:53   5    code copy that you were not allowed to have it?

17:55:56   6              ATTORNEY MAZZEO: Objection to the form.

17:55:57   7              THE WITNESS:  That I wasn't allowed to

17:55:58   8    have it?  No, I did not know that.

17:55:58   9    BY ATTORNEY MANDHANIA:

17:56:02  10    Q.   Did the copy of the source code that you received

17:56:04  11    have a do not scan legend on every page?

17:56:08  12              ATTORNEY MAZZEO: Objection to form.

17:56:09  13              THE WITNESS:  I have no idea.

17:56:09  14    BY ATTORNEY MANDHANIA:

17:56:10  15    Q.   Did it include a cover page for paid making

17:56:17  16    electronic copies?

17:56:19  17                    ATTORNEY MAZZEO: Objection to form.

17:56:21  18                    THE WITNESS:  I have no idea.

17:56:21  19    BY ATTORNEY MANDHANIA:

17:56:22  20    Q.   Do you still have a copy of Google electronic

17:56:30  21    source code?

17:56:30  22                    ATTORNEY MAZZEO: Objection to form.

17:56:33  23                    THE WITNESS:  Yes I believe so.

17:56:33  24    BY ATTORNEY MANDHANIA:

17:56:34  25    Q.   Where is it?

↑

                                                        254

17:56:35  1    A.   On a hard drive.

17:56:36  2    Q.   Is that the same hard drive on which those photos

17:56:38  3    are stored?

17:56:38  4    A.   Yes.

17:56:41  5    Q.   And where is that hard drive located?

17:56:42  6    A.   In Miami.

17:56:44  7    Q.   Who has access to that hard drive, other than

17:56:46  8    yourself?

17:56:47  9    A.   No one.

17:56:48  10   Q.   Is that hard drive encrypted in any way?

17:56:51  11   A.   No.

17:56:51  12   Q.   Is it password protected?

17:56:53  13   A.   No.  It is an external hard drive.