1

**KESSLER TOPAZ**
**MELTZER & CHECK. LLP**
2   Stacey M. Kaplan (Bar No. 241989)
One Sansome Street, Suite 1850
3   San Francisco, CA 94104
Telephone: (415) 400-3000
4   Facsimile: (415) 400-3001

5   -and-

6   Joseph H. Meltzer (*Pro Hac Vice*)
Matthew L. Mustokoff (*Pro Hac Vice*)
7   Margaret E. Mazzeo (*Pro Hac Vice*)
Dylan Isenberg (*Pro Hac Vice*)
8   280 King of Prussia Road
Radnor, PA 19087
9   Telephone: (610) 667-7706
Facsimile: (610) 667-7056

10

*Counsel for Plaintiffs and the Classes*

**NIX PATTERSON, LLP**
Jeffrey J. Angelovich (*Pro Hac Vice*)
Michael G. Angelovich (*Pro Hac Vice*)
Bradley E. Beckworth (*Pro Hac Vice*)
Andrew G. Pate (*Pro Hac Vice*)
Jessica Underwood (*Pro Hac Vice*)
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

11

## UNITED STATES DISTRICT COURT
12   ## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

13

14   RENE CABRERA and RM CABRERA
COMPANY, INC., Individually and On Behalf
15   of All Others Similarly Situated,

16                            Plaintiff,

17        v.

18   GOOGLE LLC,

19                            Defendant.

20

Case No. 11-cv-1263-EJD

**PLAINTIFFS' NOTICE OF MOTION AND**
**MOTION FOR PRELIMINARY**
**APPROVAL OF PROPOSED**
**SETTLEMENT AND MEMORANDUM OF**
**POINTS AND AUTHORITIES IN**
**SUPPORT THEREOF**

Date: April 17, 2025
Time: 9:00 a.m.
Place: Courtroom 4, 5th Floor
Judge: Hon. Edward J. Davila

21

22

23

24

25

26

27

28

1
2

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION..........................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................2

I.      INTRODUCTION ..............................................................................................................2

II.     BACKGROUND ................................................................................................................4

        A.      Summary of the Litigation..................................................................................4

        B.      Settlement Negotiations and Mediation ............................................................5

III.    TERMS OF THE PROPOSED SETTLEMENT ................................................................6

IV.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .....................7

        A.      Standards Governing Approval of a Class Action Settlement .........................7

        B.      The Court "Will Likely Be Able to" Approve the Proposed Settlement Under
                Rule 23(e)(2) ......................................................................................................8

                1.      The Settlement's Terms Are Adequate ..................................................8

                        a.      The Settlement Provides Substantial Relief, Especially in
                                Light of the Costs, Risks, and Delay of Further Litigation ................9

                        b.      The Settlement Does Not Unjustly Favor Any Class Member .........13

                        c.      The Anticipated Requests for Attorneys' Fees, Litigation
                                Expenses and a Service Award to Plaintiffs are Reasonable ...........13

                        d.      Plaintiffs Have Identified All Agreements Made in
                                Connection with the Settlement.........................................................15

                2.      Procedural Aspects of the Settlement Satisfy Rule 23(e)(2) .......................16

                        a.      Plaintiffs and Class Counsel Have Adequately Represented
                                the Classes ........................................................................................16

                        b.      The Settlement Was Reached Through Arm's-Length
                                Negotiations Between Experienced Counsel and with the
                                Assistance of Experienced Mediators, Including Judge
                                DeMarchi.........................................................................................17

V.      THE PROPOSED ALLOCATION METHODOLOGY IS FAIR AND REASONABLE
        AND SHOULD BE PRELIMINARILY APPROVED ......................................................18

i

VI.   THE COURT SHOULD APPROVE THE FORMS, CONTENT, AND METHODS FOR
      DISSEMINATING NOTICE OF THE SETTLEMENT TO THE CLASSES ..................... 20

      A.    Retention of Angeion Group, LLC as the Settlement Administrator ........................ 20

      B.    Proposed Forms of Settlement Notice ......................................................................... 21

      C.    Proposed Settlement Notice Dissemination Procedures............................................ 22

      D.    Processing of Payment Forms ...................................................................................... 23

      E.    Estimated Notice and Administrative Costs ............................................................... 23

VII.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ............................... 24

VIII. CONCLUSION ..................................................................................................................... 24

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ...................................................................................7

4

*Beaver et al. v. Tarsadia Hotels, et al.,*
    2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) .........................................................14

5

6

*Briseno v. Henderson,*
    998 F.3d 1014 (9th Cir. 2021) ...................................................................................7

7

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) .................................................................................18

8

9

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ...................................................................................16

10

*In re Facebook Internet Tracking Litig.,*
    2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) .......................................................14

11

12

*Garcia v. Schlumberger Lift Sols.,*
    2020 WL 6886383 (E.D. Cal. Nov. 24, 2020) .........................................................17

13

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) .......................................................................................14

14

15

*Hefler v. Wells Fargo & Co.,*
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ......................................................8, 15

16

*Hefler v. Wells Fargo & Co.,*
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .........................................................19

17

18

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ...................................................................................7

19

*Lusk v. Five Guys Enter. LLC,*
    2022 WL 4791923 (E.D. Cal. Sept. 30, 2022) .........................................................17

20

21

*In re MyFord Touch Consumer Litig.,*
    2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) .........................................................17

22

*In re Netflix Privacy Litig.,*
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .........................................................17

23

24

*Nguyen v. Radient Pharm. Corp.,*
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................................................18

25

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008).....................................................................17

26

27

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ...................................................................................14

28

*Perez v. Rash Curtis & Assocs.*,
    2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ...................................................................14, 15

*In re PFA Ins. Mktg. Litig.*,
    2024 WL 1145209 (N.D. Cal. Feb. 5, 2024) ...........................................................................18

*Rael v. Children's Place, Inc.*,
    2020 WL 434482 (S.D. Cal. Jan. 28, 2020) ...........................................................................7-8

*Reynolds v. Direct Flow Med., Inc.*,
    2019 WL 1084179 (N.D. Cal. Mar. 7, 2019) ...........................................................................9

*Rodriguez v. West Publg. Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................................................15

*Stewart v. Applied Mater., Inc.*,
    2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ........................................................................17

**Other Authorities**

Fed. R. Civ. P. 23(a)(3) ...................................................................................................................16

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................................23

Fed. R. Civ. P. 23(e) .............................................................................................................. *passim*

Fed. R. Civ. P. 23(h)(1) ..................................................................................................................23

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on April 17, 2025 at 9:00 a.m., before the Honorable Edward J. Davila, Plaintiffs Rene Cabrera ("Cabrera") and RM Cabrera Company, Inc. ("RMC," and together with Cabrera, "Plaintiffs") will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) preliminarily approving the proposed Settlement; (ii) approving the form and manner of providing notice of the Settlement to the Classes; (iii) approving the selection of the Settlement Administrator; and (iv) setting a date for the Final Fairness Hearing as well as the schedule for various deadlines in connection with the Settlement. This Motion is supported by the following Memorandum of Points and Authorities, the Settlement Agreement and the exhibits thereto, which embody the terms of the proposed Settlement between the Parties, the supporting declarations, the previous filings and orders in this case, and any further representations as may be made by counsel at any hearing on this matter.[1]

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court will likely be able to approve the proposed $100 million Settlement of the Action under Fed. R. Civ. P. 23(e)(2) so that notice of the Settlement's terms and conditions and the date and time of the Final Fairness Hearing may be provided to members of the Classes;

2.      Whether the proposed forms and content of the Settlement notices, including the proposed Payment Form required to be submitted in order to be eligible for a Settlement Payment, and the plan for disseminating the notices to Class Members, should be approved;

3.      Whether Class Counsel's selection of Angeion Group, LLC as Settlement Administrator should be approved;

4.      Whether the proposed Allocation Methodology for allocating the net Settlement proceeds to eligible Class Members should be preliminarily approved; and

---

[1]      Unless otherwise noted, capitalized terms shall have the meanings ascribed to them in the Class Action Settlement and Release Agreement dated March 27, 2025 ("Settlement Agreement" or "Agreement"), attached hereto as Exhibit 1. In addition, all emphasis is added unless otherwise noted.

5.      Whether the Court should schedule the Final Fairness Hearing to consider final approval of the proposed Settlement, the proposed Allocation Methodology, and Class Counsel's application for attorneys' fees, Litigation Expenses and a Service Award to Plaintiffs.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs respectfully submit this Memorandum of Points and Authorities in support of their Motion for Preliminary Approval of Proposed Settlement, and entry of the [Proposed] Order Preliminarily Approving Settlement and Authorizing Notice of the Settlement ("Preliminary Approval Order"), attached as Exhibit A to the Settlement Agreement. The Preliminary Approval Order will: (i) schedule the Final Fairness Hearing to consider the proposed Settlement, the proposed Allocation Methodology, and Class Counsel's motion for attorneys' fees, Litigation Expenses and a Service Award to Plaintiffs; (ii) preliminarily approve the Settlement on the terms set forth in the Settlement Agreement as fair, reasonable, and adequate to the Classes, pending the Final Fairness Hearing; (iii) approve the forms and methods of disseminating notice of the Settlement and the Final Fairness Hearing to the Classes; (iv) authorize the retention of the proposed Settlement Administrator recommended by Class Counsel to disseminate notice to the Classes and administer the Settlement; and (v) establish procedures and deadlines for Class Members to, *inter alia*, request exclusion from the Class(es) or object to the terms of the Settlement, Allocation Methodology, and/or Class Counsel's request for attorneys' fees and expenses.[2]

## I.      INTRODUCTION

After 14 years of contentious, hard-fought litigation, the Parties have reached an agreement to resolve the Classes' claims against Defendant Google LLC ("Google") in exchange for a $100,000,000 cash payment. For the reasons below, Plaintiffs and Class Counsel respectfully submit that the proposed Settlement merits preliminary approval pursuant to Rule 23(e)(1).

The Settlement provides a significant benefit to the Classes, while avoiding the risks and costs of trial and the delay of continued litigation. Plaintiffs achieved this Settlement only after extensive litigation and well-informed arm's-length negotiations facilitated by the Honorable Virginia K. DeMarchi over the course of two separate mediation sessions in 2024. These settlement efforts were

---

[2]      Plaintiffs are informed that Google does not intend to oppose this motion.

preceded by mediations held years earlier and overseen by two former federal district judges (Hon. Layn Phillips (ret.) and Hon. David Folsom (ret.)), as well as private mediator Randall Wulff.

Plaintiffs and Class Counsel had a well-developed understanding of the strengths and weaknesses of the Classes' claims when the Settlement was reached—a mere seven weeks before trial was set to commence. Over the course of this decade-plus case, Plaintiffs filed five amended complaints and opposed five motions to dismiss; took or defended 41 fact and expert depositions; briefed two motions for summary judgment and two motions to exclude expert opinions under *Daubert*; successfully appealed the dismissal of this Action to the Ninth Circuit; and ultimately procured class certification for two classes of advertisers following two rounds of briefing and a full-day hearing.

Plaintiffs respectfully submit that the Settlement merits the Court's preliminary approval, particularly in light of the substantial risks and expense avoided by settling prior to trial. Indeed, had Plaintiffs proceeded to trial on both of their claims, they would have faced myriad arguments regarding liability and damages from Google. For example, Google contended that under the proper measure of damages for the Location Targeting claim, the actual class-wide damages were a small fraction of the damages figure calculated by Plaintiffs' expert. Google also contended that a sizeable portion of the clicks on Class Members' ads clicks were inactionable in light of disclosures Google posted on its website regarding its use of "query-parsing" (i.e., non-location-based targeting) to match ads with consumers. In addition, Google repeatedly stated its intent to move to decertify the Search Bundled Clicks Class based on Plaintiffs' purported inability to identify Class Members through Google's archived data. Had Google prevailed on these challenges, the Classes' recovery would have been significantly reduced or eliminated.

At the Final Fairness Hearing, the Court will have before it more extensive submissions in support of the Settlement and will be asked to determine whether the Settlement is fair, reasonable, and adequate and warrants final approval. Through the present Motion, Plaintiffs respectfully request that this Court begin the Settlement approval process by entering the proposed Preliminary Approval Order attached as Exhibit A to the Settlement Agreement.

## II.    BACKGROUND

### A.    Summary of the Litigation

This Action was filed on March 15, 2011. Dkt. 1. Over the next two years, Plaintiff Rick Woods opposed three motions to dismiss filed by Google and amended his complaint twice. *See* Dkts. 41, 47, 68, 73, 74, 89, 95, 101. In 2013, the Court granted in part and denied in part Google's motion to dismiss the Second Amended Complaint, sustaining (i) Plaintiff's breach of contract claims based on Google's alleged failure to apply its Smart Pricing discounts to AdWords advertisers' click costs in violation of its contractual obligations, and (ii) Plaintiff's claim under the UCL, CAL. BUS. & PROF. CODE §§ 17200 *et seq*., based on Google's charging of advertisers for clicks originating from outside of their designated geographic areas. *See* Dkt. 122.

Fact discovery, which began in earnest in 2013, was extensive. Plaintiffs served 66 requests for production, 25 interrogatories, and 13 requests for admission; reviewed more than 910,000 pages of documents and multiple terabytes of click data produced by Google; and deposed 24 Google fact witnesses and four expert witnesses. *See* Declaration of Matthew L. Mustokoff ("Mustokoff Decl.") submitted herewith, at ¶¶ 3-5. Over the course of the Action, the Parties litigated 14 discovery dispute letters—eight before Judge Lloyd and six before Judge DeMarchi. *See* Dkts. 129-30, 174, 185-86, 213-14, 279, 407, 412, 698, 738, 780, 828.

In August 2018, the Court granted Woods' motion to add Cabrera as a plaintiff after the Court found that Woods was inadequate to serve as a class representative. Dkt. 366. In February 2019, the Court dismissed Cabrera's claims for lack of standing. Dkt. 460. Cabrera successfully appealed the dismissal order, and the Ninth Circuit reinstated the Action in January 2021. Dkt. 533.

Google subsequently sought extensive discovery from Cabrera. Cabrera was deposed three times for a total of nearly 13 hours, and his wife, Cynthia Cabrera, was also deposed. Mustokoff Decl. ¶¶ 7-8. Cabrera also responded to 62 separate document requests, 5 interrogatories, and 27 requests for admission. *Id.* ¶ 9. In addition to defending three depositions of Cabrera, Class Counsel defended the deposition of Cabrera's wife Cynthia and six depositions of Plaintiffs' expert witnesses, and also participated in two depositions of fact witnesses subpoenaed by Google. *Id.* ¶ 6.

In August 2023, following the close of discovery, the Court denied Google's second motion for summary judgment and granted in part Plaintiffs' motion for class certification. Dkt. 675. Plaintiffs sought certification of four subclasses comprised of advertisers who were harmed by Google's alleged failure to properly apply its Smart Pricing measurements to four different types of clicks; however, the Court ultimately certified just one of these subclasses—the Search Bundled Clicks Class. *Id.* The certified Search Bundled Clicks Class is comprised of all persons and entities located within the United States who, between June 1, 2009 and December 13, 2012, advertised through Google's AdWords Program and paid for clicks on ads on Google's Display Network where the advertiser's settings allowed its ads to show on both the Search and Display Networks and the advertiser did not set a Display Network bid different from the Search Network bid. *Id.* By the same order, the Court also certified the Location Targeting Class, comprised of all persons and entities located within the United States who, between January 1, 2004 and March 22, 2011, advertised through Google's AdWords Program and paid for clicks on their Google AdWords advertisement(s), where such clicks did not originate from the location selected by the advertiser. *Id.*

Following the Court's class certification order, Plaintiffs engaged in extensive expert discovery regarding class-wide damages, including the review and analysis of Google's multiple click data productions. Mustokoff Decl. ¶¶ 11-17. Plaintiffs also expended significant time preparing for trial, including the preparation of a pretrial order, *in limine* motions, deposition designations, and witness examination outlines. *Id.* ¶ 18. Trial was slated to begin on February 11, 2025. Dkt. 707.

**B.    Settlement Negotiations and Mediation**

Prior to reaching a settlement, the Parties participated in six mediation sessions facilitated by four different mediators at various stages of the proceedings. Mustokoff Decl. ¶¶ 19-22. The Parties first mediated before Randall Wulff in April 2014. *Id.* ¶ 19. The Parties then had two mediation sessions with Judge Layn Phillips (ret.) in January 2015 and February 2018. *Id.* ¶ 20. In the spring of 2021, the Parties participated in a fourth mediation session, facilitated by Judge David Folsom (ret.). *Id.* ¶ 21.

On February 23, 2024, the Court referred the case to Judge DeMarchi for mediation (Dkt. 735), and the Parties attended a settlement conference before Judge DeMarchi on May 16, 2024. Dkt.

771. The Parties subsequently participated in a second settlement conference before Judge DeMarchi on December 19, 2024. Dkt. 861. At the end of this second conference, Judge DeMarchi issued a double-blind mediator's proposal that the Parties agree to resolve the Action for $100,000,000. Mustokoff Decl. ¶ 24. On December 24, 2024, with trial looming, both sides accepted Judge DeMarchi's proposal.

## III.     TERMS OF THE PROPOSED SETTLEMENT

The Settlement provides that Google will pay or cause to be paid $100,000,000 in cash into the interest-bearing Settlement Account. Agreement ¶ 2.1.1. The Settlement Amount, plus accrued interest—after the deduction of the Notice and Administrative Costs, any Taxes, any Service Award, any Fee and Expense Award, and any other costs or fees approved by the Court (i.e., the Net Settlement Fund)—will be distributed among members of the Search Bundled Clicks Class and the Location Targeting Class in accordance with the proposed Allocation Methodology set forth in the Settlement Notice, or other allocation method approved by the Court. *Id.* ¶¶ 1.43, 2.2.

As set forth in the Settlement Agreement, the Search Bundled Clicks Class and the Location Targeting Class are defined the same as they are defined in this Court's August 15, 2023 Order (Dkt. 675). *See* Agreement ¶¶ 1.21, 1.38; *see also* N.D. Cal. *Procedural Guidance for Class Action Settlements* ("N.D. Cal. Guid.") ¶ 1(a); Appendix A hereto (chart setting forth the N.D. Cal. procedural guidance requirements, along with where the information addressing the requirements can be found in Plaintiffs' preliminary approval papers). The Parties have used their best efforts to identify potential Class Members based on Google's archived click data and customer information data.

The Settlement is non-reversionary, i.e., if approved, Google will have no right to the return of any portion of the Settlement Fund based on the amounts to be paid to Participating Class Members. *See* Agreement ¶ 2.1.11; N.D. Cal. Guid. ¶ 1(g) (requiring disclosure of any reversions).

In exchange for the Settlement Amount, Class Members will release the "Released Claims" against Defendants and the other Releasees. *See* Agreement ¶¶ 1.34, 5.2. The "Released Claims" include "any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or liabilities whether legal, equitable, or otherwise, asserted in this Action or arising out of or in any

6

way related to the subject matter giving rise to the claims in this Action during the class period as defined for each Class." *Id.* ¶ 1.34. The scope of this release is reasonably limited to claims that relate to the same factual allegations set forth in the operative Complaint and are anchored to the same alleged conduct by Google during the Location Targeting Class Period and the Search Bundled Clicks Class Period, respectively. *See* Dkt. 567; Agreement ¶ 1.34; *see also* N.D. Cal. Guid. ¶ 1(b) (requiring explanation of differences between claims to be released and claims of the operative complaint)..[3]

None of the Ninth Circuit's indicia of collusion are present here. *See Briseno v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021). Signs of collusion include: "(1) 'when counsel receive a disproportionate distribution of the settlement;' (2) 'when parties negotiate a clear sailing arrangement,' under which defendant agrees not to challenge a request for an agreed-upon attorneys' fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant rather than the class." *Id.* at 1023 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). Class Counsel submit that their request for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Amount is well-merited. Class Counsel devoted close to 14 years prosecuting the Classes' claims, expended approximately $4 million on expert fees and other litigation costs with no guarantee of recovering any of these costs, and obtained a $100 million recovery just weeks before trial. Moreover, there is no clear sailing agreement, and under the terms of the Settlement Agreement, Defendant has no right to the return of any part of the Settlement Fund upon the occurrence of the Effective Date. Agreement ¶ 2.1.11.

## IV.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    Standards Governing Approval of a Class Action Settlement

In the Ninth Circuit, there is a strong judicial policy in favor of voluntary settlement of litigation. *See, e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). This "strong judicial policy" is particularly applicable "where complex class action litigation is concerned." *Allen*, 787 F.3d at 1223; *see also Rael v. Children's Place, Inc.*, 2020 WL 434482, at *10 (S.D. Cal. Jan. 28, 2020) (noting the "overriding

---

[3]    Plaintiffs do not believe that any other cases will be affected by the Settlement, including by the release of the Released Claims. *See* N.D. Cal. Guid. ¶ 1(d).

1   public interest in settling and quieting litigation, particularly where resource-intensive class actions

2   are concerned").

3        A district court's review of a proposed class action settlement is a two-step process. First, the

4   court performs a preliminary review of the terms of the proposed settlement to determine whether to

5   send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice

6   to the class and a hearing, the Court determines whether to grant final approval of the settlement. *See*

7   Fed. R. Civ. P. 23(e)(2); *see also, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *8 (N.D.

8   Cal. Sept. 4, 2018).

9        At the first stage of the approval process, a court should grant preliminary approval and

10  authorize notice of a settlement to the class upon a finding that it "*will likely be able to*" (i) finally

11  approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2), and (ii) certify the class

12  for purposes of settlement. Fed. R. Civ. P. 23(e)(1)(B).[4] In considering whether final approval of a

13  proposed settlement is likely, Rule 23(e)(2) provides that courts consider whether:

14          (A) the class representatives and class counsel have adequately represented the class;
            (B) the proposal was negotiated at arm's length; (C) the relief provided for the class
15          is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii)
            the effectiveness of any proposed method of distributing relief to the class, including
16          the method of processing class-member claims; (iii) the terms of any proposed award
            of attorney's fees, including timing of payment; and (iv) any agreement required to be
17          identified under Rule 23(e)(3); and (D) the proposal treats class members equitably
            relative to each other.
18

19  Fed. R. Civ. P. 23(e)(2).

20          Each of these factors supports approval of the Settlement. Accordingly, preliminary approval

21  is appropriate here.

22      **B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement Under
                Rule 23(e)(2)**
23

24          **1.    The Settlement's Terms Are Adequate**

25          Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided

26  _____

27  [4]      Here, the Court already certified the Classes in the course of litigation. Dkt. 675. As noted

28  above, there is no difference between the Classes previously certified and the Classes that the
    proposed Settlement will bind. *See* Agreement ¶¶ 1.21, 1.38; N.D. Cal. Guid. ¶ 1(a).

1     for the class is adequate" and "the proposal treats class members equitably relative to each other."

2     Here, the Settlement represents a favorable result for the Classes. Furthermore, Class Counsel, with

3     the assistance of Plaintiffs' damages expert, have proposed a method for allocating the net Settlement

4     proceeds that ensures all Class Members will be treated equitably relative to their respective damages.

5                      **a.    The Settlement Provides Substantial Relief, Especially in Light
6                             of the Costs, Risks, and Delay of Further Litigation**

7           At the preliminary approval stage, the Court need only determine whether it "will likely be

8     able to" approve the Settlement, *see* Fed. R. Civ. P. 23(e)(1)(B), or, in other words, whether the

9     Settlement "falls within the range of possible approval." *Reynolds v. Direct Flow Med., Inc.*, 2019

10    WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019). Because the $100 million Settlement represents a

11    favorable recovery for the Classes in light of the significant risks of continued litigation, the

12    Settlement is well within the range of possible approval.

13          Although Plaintiffs and Class Counsel believe that the Classes' claims are meritorious and

14    Plaintiffs would likely have prevailed at trial on both claims, Google vigorously denied the claims.

15    Consequently, there were multiple obstacles and risks that Plaintiffs would have encountered at trial

16    had the Parties not agreed to the Settlement.

17          With respect to the Location Targeting claims, Plaintiffs faced challenges to both of the

18    proffered damages models for these claims and Google's defenses to liability.

19          *First*, Plaintiffs' damages expert Saul Solomon intended to present two damages models at

20    trial: (i) the "partial refund" model, which would provide a refund for every click charged by Google

21    on an ad placed outside an advertiser's designated geographic location(s); and (ii) the "net profits"

22    model, which would award the amount Google profited on each out-of-area click. Mustokoff Decl.

23    ¶¶ 14-15. Mr. Solomon calculated total damages for the Locating Targeting Class to be $626 million

24    under the partial refund model and $439 million under the net profits model. *Id.* ¶ 15. However,

25    Google contended that damages (if any) should instead be calculated based on a third model—the

26    "smart pricing restitution" model—which utilizes the scores generated by Google's smart pricing

27    algorithm to compute damages. *Id.* ¶ 16. Google asserted that this model is the correct measure of

28    damages because out-of-area clicks provided some value to advertisers, even if advertisers had not

1    elected to pay for clicks originating from beyond their selected areas, and this model (unlike

2    Plaintiffs' models) accounted for that value. *See, e.g.*, Dkt. 598. While Plaintiffs intended to argue

3    that the partial refund and net profits models provided the most accurate determination of damages,

4    it is possible that the Court would have accepted Google's arguments instead, finding that the smart

5    pricing restitution model was the more appropriate measure of damages—which would have

6    decreased the Location Targeting Class's damages by a considerable amount. Mustokoff Decl. ¶ 16.

7        *Second*, Google claimed throughout the Action that it disclosed its use of "query parsing"—

8    i.e., the placement of ads outside of advertisers' targeted locations based on geographic search terms

9    (not the actual location of the internet user)—and, therefore, Class Members were not actually misled

10   with respect to query-parsed clicks. *See, e.g.*, Dkt. 615. If Google had prevailed on its query-parsing

11   defense, the Location Targeting Class's damages could have been reduced substantially. Mustokoff

12   Decl. ¶ 17.

13       Plaintiffs also would have faced significant hurdles at trial with respect to the Search Bundled

14   claims, including overcoming Google's contention that Plaintiffs were unable to accurately identify

15   damaged search-bundled advertisers using Google's archived data. *See* Mustokoff Decl. ¶ 18. Google

16   asserted throughout this Action that because the ad auctions underlying the AdWords advertising

17   platform at issue were conducted years ago and Google is thus unable to recreate the dynamics of a

18   given ad auction, it is impossible for Plaintiffs to prove whether a given search-bundled advertiser

19   was actually damaged by the alleged 6% overcharge. *Id.* ¶ 19. More specifically, Google argued at

20   both summary judgment and class certification that because the auctions cannot be recreated, it is

21   possible that the second-place bid in a given auction was smart-priced properly and, thus, the

22   advertiser who won the auction and paid $0.01 more than the second-place bid was not actually

23   damaged by the alleged 6% overcharge. *Id.* ¶ 20; Dkts. 598, 615. Plaintiffs, on the other hand,

24   consistently maintained that as a matter of contract interpretation, Google was obligated to apply its

25   smart-pricing scores to the actual click cost so as to not overcharge search-bundled advertisers beyond

26   what the smart-pricing score dictated, regardless of the advertiser's bid vis-à-vis the second-place

27   bidder. *See* Mustokoff Decl. ¶ 21; Dkts. 607, 623. However, it was far from certain whether a

28

1  factfinder would side with Plaintiffs regarding their interpretation of the AdWords agreement with

2  respect to this longstanding dispute.

3       Moreover, the presentation of evidence at trial for the Search Bundled case would have been

4  difficult given that all of the principal fact witnesses Plaintiffs intended to put on at trial reside outside

5  of the jurisdiction and thus beyond the Court's subpoena power. Mustokoff Decl. ¶ 23. Consequently,

6  Plaintiffs would have had to rely primarily on video deposition testimony. Plaintiffs' inability to cross

7  examine live witnesses at trial could have been a significant impediment to their ultimate success. *Id*.

8       Against the backdrop of these substantial litigation risks, the Settlement provides a significant

9  recovery for Class Members. Based on Plaintiffs' expert's calculations, alleged damages for the

10  Location Targeting Class are $626,233,039 under the partial refund model and $439,167,146 under

11  the net profits model, and alleged damages for the Search Bundled Clicks Class are $93,825,861.

12  Mustokoff Decl. ¶ 15. Thus, total alleged damages across both Classes range from $532,993,007 to

13  $720,058,900. *See* N.D. Cal. Guid. ¶ 1(c). Accordingly, the $100,000,000 Settlement Amount

14  represents a recovery of approximately 13.9% to 18.8% of total claimed damages. Plaintiffs and Class

15  Counsel submit that this recovery is particularly favorable in light of the significant challenges

16  Plaintiffs would face at trial, including Google's arguments regarding damages. Indeed, had Google

17  succeeded on its arguments regarding the appropriate damages model for the Location Targeting

18  claim (*see* p. 9-10 *supra*), the class-wide damages calculated by Plaintiffs' damages expert would

19  have been reduced significantly. Mustokoff Decl. ¶¶ 15-16.

20       The recovery afforded by the Settlement is also in line with recoveries obtained in cases

21  involving similar claims against Google or its competitors, as shown in the chart below. *See* N.D.

22  Cal. Guid. ¶ 11 (requiring identification of comparable settlements).

|  | *In re Google AdWords Litig.*, No. 5:08-cv-03369-EJD | *Barrett et al. v. Apple Inc. et al.*, No. 5:20-cv-04812-EJD | *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD | *In re Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809-EJD |
|---|---|---|---|---|
| **Class Claims** | UCL, California False Advertising Law ("FAL") | UCL, Consumers Legal Remedy Act ("CLRA"), FAL, California Penal Code § 496, | UCL, CLRA, Fraudulent Concealment, Song-Beverly Consumer Warranty Act, claims under | Electronic Communications Privacy Act, Stored Communications Privacy Act, Breach of Contract, Unjust Enrichment, |

| | | Declaratory Judgment | various states' consumer protection statutes | Declaratory and Injunctive Relief |
|---|---|---|---|---|
| **Settlement Fund and Percentage of Claimed Damages** | $22,500,000 (29% to 50% of claimed damages) | $35,000,000 (21.2% of claimed damages) | $50,000,000 (9% to 28.6% of claimed damages) | $23,000,000 (less than 1% of claimed damages) |
| **Approximate Number of Class Members** | 1,147,000 | 500,000 | 15,000,000 | 193,000,000 |
| **Class Members Sent Notice** | 89% of class members estimated to have received some form of direct notice | notice plan reached approx. 85% of settlement class | direct notice provided to 97% of all purchasers; through supplemental notice, direct notice sent to approx. 99% of settlement class | notice plan reached approx. 83% of potential settlement class members |
| **Notice Methods** | email notice, postcard notices mailed to class members whose emails were returned, press release, website, toll-free number | email notice, mailed notice, publication notice, website | email notice, mailed notice, website, toll-free number | website, internet ads, keyword search advertising, publication on social media platforms, publication notice, toll-free number and website |
| **Claim Forms Submitted (number and percentage)** | 81,550 (7%) | 49,130 - 1,994 submitted by known class members (2.1%) and 47,136 submitted by unknown class members (10.75%) | 86,117 of 718,651 eligible class members in Groups 2 and 3 (11%), Group 1 receives payment without submission of claim | 2,564,682 (1.3%) |
| **Average Recovery Per Class Member/Claimant** | Unknown | expected 100% recovery | Group 1 will automatically receive a minimum payment of $300; Groups 2 and 3 with valid claims will receive $50 to $125 | $7.16 |
| **Cy Pres Amount** | not available | not available | not available | not available |
| **Administrative Costs** | $484,000 | not to exceed $1,033,582— not addressed in | $1,400,000 maximum – not | as of August 2023, administrator billed $922,996 for admin. |

12

| | | final approval order | addressed in final approval order | costs; estimated additional costs of $788,016 |
|---|---|---|---|---|
| **Attorneys' Fees and Costs** | $6,075,000<br><br>$700,000 in expenses | $11,650,000 requested (no final order yet)<br><br>$546,657 in expenses (requested – no final order yet) | $15,000,000<br><br>$1.6 million in expenses | $5,750,000 to Class Counsel and $793,500 to objectors' counsel<br><br>$43,63 in expenses |
| **Claimed Damages** | $45,000,000 to $77,000,000 | $165,000,000 | $175,000,00 to $555,000,000 | not specified— damages "might reach into the trillions of dollars" |
| **Injunctive Relief** | N/A | N/A | N/A | Google agrees to maintain certain disclosures concerning search inquiries on FAQ webpage |

### b.    The Settlement Does Not Unjustly Favor Any Class Member

The Court must also ultimately assess the Settlement's effectiveness in equitably distributing the Net Settlement Fund to Class Members. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find that the Settlement will likely earn approval. The Settlement does not improperly grant preferential treatment to Plaintiffs, either of the Classes, or any segment of the Classes, and all Settlement Payments will be calculated in the same manner. As set forth in the proposed Allocation Methodology in the Settlement Notice, each Participating Class Member will receive their *pro rata* share of the Net Settlement Fund based on an assessment by Plaintiffs' damages expert of data produced by Google in this Action. *See* Agreement ¶ 2.2.3. At the Final Fairness Hearing, Plaintiffs will ask the Court to approve the proposed Allocation Methodology. *See infra* § V.

### c.    The Anticipated Requests for Attorneys' Fees, Litigation Expenses and a Service Award to Plaintiffs are Reasonable

The Email Notices and Settlement Notice inform Class Members that Class Counsel will apply for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Fund, subject to approval of the Court. For the reasons to be fully set out in Class Counsel's fee application in

13

advance of the Final Fairness Hearing, an upward adjustment to the Ninth Circuit's 25% benchmark fee award is warranted here in light of Class Counsel's efforts and successes in this Action over the past 14 years—without any payment or reimbursement of expenses—and the outstanding result obtained for the Classes just weeks before trial. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (in awarding more than 25% fee, courts consider "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis").

Moreover, Plaintiffs' counsel have devoted 34,000 hours to this Action, with a total lodestar of approximately $22.5 million, and anticipate that the lodestar multiplier for the fee requested will be less than 1.5. Such a multiplier is well below the range of multipliers commonly awarded in class actions, including by this Court. *See, e.g., Brown et al. v. Wal-Mart Store, Inc.*, No. 5:09-cv-03339-EJD, Dkt. 302 at 4-5 (N.D. Cal. Mar. 28, 2019) (Davila, J.) (awarding 33% fee representing 2.2 multiplier for $65 million settlement); *In re Facebook Internet Tracking Litig.*, 2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) (Davila, J.), *aff'd sub nom. In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985 (9th Cir. Feb. 21, 2024) (awarding 29% fee representing 3.28 multiplier for $90 million settlement); *Perez v. Rash Curtis & Assocs.*, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021) (awarding 37% fee representing 4.8 multiplier for $75.6 million settlement); *Beaver et al. v. Tarsadia Hotels, et al.*, 2017 WL 4310707, at *13, 17 (S.D. Cal. Sept. 28, 2017) (awarding 33% fee representing 2.89 multiplier for $51.2 million settlement); *see also* N.D. Cal. Guid. ¶ 6. Class Counsel will present more detailed information in connection with their fee application at final approval, including the number of hours spent on various litigation activities, as well as the case law addressing fee awards in this jurisdiction.

Class Counsel also intend to seek payment of Litigation Expenses in an amount not to exceed $4.2 million. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that would normally be charged to a fee paying client"). A large portion of

1   Class Counsel's expenses (approximately $2.7 million) was incurred in connection with the retention

2   of Plaintiffs' experts and consultants. Class Counsel's expenses also include the costs for four private

3   mediation sessions, online legal and factual research, data hosting, and travel expenses.

4       Class Counsel's application for attorneys' fees and Litigation Expenses will also include a

5   request for a Service Award in an amount not to exceed $20,000 as compensation for Plaintiffs'

6   involvement in this Action and their service on behalf of the Classes. *See* N.D. Cal. Guid. ¶ 7. In this

7   Circuit, service awards for class representatives are "fairly typical in class action cases." *Rodriguez*

8   *v. West Publg. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).[5] As noted above, Plaintiff Cabrera provided

9   substantial assistance in the prosecution of this Action—i.e., reviewing drafts of pleadings,

10  responding to Google's discovery requests (i.e., 62 separate document requests, 5 interrogatories, and

11  27 requests for admission), preparing for and sitting for three depositions, attending court hearings,

12  and participating in the Parties' settlement negotiations, including three mediations. Mustokoff Decl.

13  ¶¶ 7-10. Importantly, if approved, the maximum requested Service Award represents a mere 0.0002%

14  of the Settlement Amount and will have a minimal impact on the amount of Settlement funds

15  available to Class Members.

16          **d.      Plaintiffs Have Identified All Agreements Made in Connection**
17                  **with the Settlement**

18      As part of the Settlement Agreement, the Parties have agreed to a standard, confidential

19  provision that gives Google the option to terminate the Settlement in the event that Opt Outs exceed

20  certain agreed-upon conditions. *See* Fed. R. Civ. P. 23(a)(3), Agreement ¶ 4.2.7.[6] This type of

21  agreement has no negative impact on the fairness of the Settlement. *See Hefler v. Wells Fargo & Co.*,

22  2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered

23  by the number of class members who opt out of the Settlement does not by itself render the Settlement

24  unfair.").

25  _____

26  [5]     *See also, e.g., Brown*, No. 5:09-cv-03339-EJD, Dkt. 302 at *4 (approving $25,000 service

27  award to named plaintiff); *Perez*, 2021 WL 4503314, at *3 (same).

28  [6]     Plaintiffs will provide the Court with an unredacted version of the Settlement Agreement for
    *in camera* review.

1

### 2.    Procedural Aspects of the Settlement Satisfy Rule 23(e)(2)

2

3      Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations

4      leading up to the proposed settlement." Fed. R. Civ. P.  23(e)(2) Advisory Committee Notes to 2018

5      amendment. The Settlement embodies a procedurally fair resolution under Rule 23(e)(2).

6

### a.    Plaintiffs and Class Counsel Have Adequately Represented the Classes

7      In  determining  whether  to  approve  a  settlement,  courts  first  consider  whether  class

8      representatives and class counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

9      To determine adequacy, courts consider (1) whether the named plaintiffs and their counsel have any

10     conflicts of interest with other class members, and (2) if the named plaintiffs and their counsel will

11     prosecute the action vigorously on behalf of the class. *See Ellis v. Costco Wholesale Corp*., 657 F.3d

12     970, 985 (9th Cir. 2011). In granting Plaintiffs' motion for class certification, the Court already found

13     that "Plaintiffs and their counsel are adequate representatives" of the Classes. Dkt. 675 at 39, 51.

14     Plaintiff Cabrera devoted significant time to serving as a class representative, reviewing drafts

15     of pleadings, responding to Google's extensive discovery requests, preparing for and appearing at

16     three depositions, traveling from Florida to San Jose to attend the hearing on the motion to amend the

17     complaint in August 2018 and the class certification and summary judgment hearing in July 2023,

18     and participating in the Parties' settlement negotiations, including three mediations. *See* Mustokoff

19     Decl. ¶¶ 7-10.

20     Further, Class Counsel vigorously litigated this Action for 14 years against Google and its

21     highly proficient counsel at Mayer Brown. At the time of settlement, Class Counsel had completed

22     comprehensive fact and expert discovery and were seven weeks away from trial. Further, through the

23     summary judgment process and the Parties' six mediations, Class Counsel (at different stages of the

24     Action) vetted the factual record, analyzed Defendant's arguments, and thoroughly considered

25     damages (as well as the costs and risks of continued litigation). Class Counsel—firms with extensive

26     experience litigating complex class actions—were well informed of the strengths and weaknesses of

27     the claims and defenses in this Action and conducted the settlement negotiations seeking to achieve

28     the best possible result for the Classes.

1

2        **b.    The Settlement Was Reached Through Arm's-Length
           Negotiations Between Experienced Counsel and with the
           Assistance of Experienced Mediators, Including Judge
3          DeMarchi**

4        Courts next consider whether the proposed settlement was "negotiated at arm's length." Fed.

5   R. Civ. P. 23(e)(2)(B). A presumption of fairness attaches where a settlement was reached after arm's-

6   length negotiations between experienced counsel and with the assistance of an experienced mediator.

7   *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have

8   afforded a presumption of fairness and reasonableness of a settlement agreement where that

9   agreement was the product of non-collusive, arms' length negotiations conducted by capable and

10  experienced counsel.").

11       Here, the Parties engaged in a total of six mediation sessions beginning in 2014, all facilitated

12  by experienced mediators. Mustokoff Decl. ¶¶ 19-22. These mediations ultimately culminated in the

13  Parties' acceptance of Judge DeMarchi's mediator's proposal in December 2024. *Id.* ¶ 24. These facts

14  support a finding that the Settlement is non-collusive. *See, e.g.*, *Lusk v. Five Guys Enter. LLC*, 2022

15  WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) ("The fact that the parties engaged in mediation and

16  that the Settlement is based on a mediator's proposal further supports a finding that the settlement

17  agreement is not the product of collusion."); *Garcia v. Schlumberger Lift Sols.*, 2020 WL 6886383,

18  at *13 (E.D. Cal. Nov. 24, 2020), *report and recommendation adopted*, 2020 WL 7364769 (E.D. Cal.

19  Dec. 15, 2020) (the fact that "the parties chose to accept the mediator's proposal, meaning this

20  settlement was one that the third-party mediator proposed, rather than an amount determined through

21  the negotiations of the parties," suggested a lack of collusion); *In re MyFord Touch Consumer Litig.*,

22  2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) (considering the fact that settlement was based

23  on mediator's proposal as factor in favor of finding arm's length negotiations).

24       Courts also give considerable weight to the opinion of experienced and informed counsel when

25  deciding to approve a proposed class action settlement. *See Stewart v. Applied Mater., Inc.*, 2017 WL

26  3670711, at *6 (N.D. Cal. Aug. 25, 2017) ("The recommendations of plaintiffs' counsel should be

27  given a presumption of reasonableness."); *accord  In re Omnivision Techs., Inc.*, 559 F. Supp. 2d

28  1036, 1043 (N.D. Cal. 2008). Here, in recommending Plaintiffs' acceptance of Judge DeMarchi's

mediator's proposal, Class Counsel were informed by a thorough understanding of the merits and risks of the Action—which was just shy of 14 years old at the time of settlement—to support their conclusion that the $100 million recovery is a fair and reasonable result for the Classes.

## V.    THE PROPOSED ALLOCATION METHODOLOGY IS FAIR AND REASONABLE AND SHOULD BE PRELIMINARILY APPROVED

In considering the proposed Settlement, the Court must also determine whether the Allocation Methodology is fair and reasonable to the Classes. A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re PFA Ins. Mktg. Litig.*, 2024 WL 1145209, at *12 (N.D. Cal. Feb. 5, 2024). Moreover, "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

Here, the Allocation Methodology is fair, reasonable, and adequate. The proposed Allocation Methodology set forth in the Settlement Notice was developed in consultation with Plaintiffs' damages expert. As set forth in the Allocation Methodology, alleged damages for the Location Targeting clicks (identified in the data produced by Google) are equal to the cost of those clicks. Alleged damages for the Search Bundled clicks (also identified in the data produced by Google) are calculated using the formula: Click Cost – (Click Cost / 1.06 * 1) = Damages, which quantifies the portion of the click cost that is attributable to the 6% overcharge Google allegedly applied to the cost for the Search Bundled clicks. *See* Settlement Notice ¶ 36. To the extent that a Search Bundled click is also a Location Targeting click, alleged damages will only be calculated for the Location Targeting click so as to avoid a double recovery for the same allegedly damaged click. *See id.*

The notices instruct Class Members to submit a completed Payment Form to be eligible to receive a Settlement Payment. *See* Agreement Ex. A-4. The Payment Form requests Class Members to affirm whether they were a U.S.-based advertiser during the relevant time period and to choose a method of payment. *See* Payment Form §§ 1 & 3. The percentage of total damages (calculated as set

forth above) associated with each Class Member (with a Customer ID/Account Number) will then be applied to the amount of the Net Settlement Fund and Settlement Payments will be calculated based on these percentages.[7] *See* Settlement Notice ¶ 36. To the extent that a Class Member is entitled to recover less than $1.00, such Class Member will be excluded from recovering a payment and amounts initially allocated to Class Members recovering less than $1.00 will be redistributed across the remaining eligible Class Members (i.e., Participating Class Members recovering $1.00 or more) on a *pro rata* basis. *Pro rata* distributions based on each class member's damages relative to that of the class as a whole have "frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018). Preliminary Settlement Payment amounts can be viewed on the website www.AdWordsClicksClassAction.com when available.

Settlement Payments will be issued to Participating Class Members following the Effective Date. Agreement ¶ 2.2.5. If any funds remain after an initial distribution, as a result of uncashed or returned checks or other reasons, subsequent distributions to eligible Participating Class Members will be conducted as long as they are cost effective. *See* Settlement Notice ¶ 36. Any amounts that are not cost effective to redistribute to Participating Class Members will be contributed in substantially equal amounts to Consumer Federation of America, National Consumer Law Center, and The Public Justice Foundation, or another organization(s) mutually agreed to by the Parties and approved by the Court. Agreement ¶ 2.3. These organizations were chosen as *cy pres* recipients because they support the protection of consumers through the enforcement of consumer fraud laws, an endeavor that relates directly to the subject matter of this Action.[8] The Parties do not have a relationship with these organizations. *See* N.D. Cal. Guid. ¶ 8.

---

[7]    To the extent there is more than one email address associated with a single Customer ID/Account Number and multiple Payment Forms are submitted for the same Customer ID/Account Number, the Settlement Administrator will take steps to determine the primary Payment Form and ensure that only one payment is issued. *See* Settlement Notice ¶ 36; Payment Form § 3.

[8]    The Consumer Federation of America ("CFA") advances consumers' interest through research, advocacy, and education. As part of its work, CFA investigates consumer issues, works to

19

## VI.    THE COURT SHOULD APPROVE THE FORMS, CONTENT, AND METHODS FOR DISSEMINATING NOTICE OF THE SETTLEMENT TO THE CLASSES

### A.    Retention of Angeion Group, LLC as the Settlement Administrator

Plaintiffs propose that Angeion Group, LLC ("Angeion")—an independent notice and settlement administrator with extensive experience handling the administration of class actions such as this Action—be retained as the administrator for the Settlement. *See* Declaration of Steven Weisbrot of Angeion Group, LLC ("Weisbrot Decl."), submitted herewith. Information regarding Angeion and its class action administration experience is included on pages 2-4 of the Weisbrot Declaration and a discussion of Angeion's data security procedures is provided on pages 4-6. *See* N.D. Cal. Guid. ¶ 2(b).

Angeion was previously retained as the administrator in connection with Class Notice (Dkt. 810) and conducted the extensive Class Notice campaign that commenced in September 2024. *See* Declaration of H Jacob Hack Regarding: (I) Dissemination of Class Notice; and (II) Requests for Exclusion Received dated November 6, 2024 (Dkt. 821). Plaintiffs believe that Angeion's work in locating and communicating with Class Members during the Class Notice campaign makes it uniquely suited to administer the Settlement.

Class Counsel selected Angeion to conduct the Class Notice campaign following a competitive bidding process among four administrators. *See* Mustokoff Decl. ¶ 25. Class Counsel Kessler Topaz Meltzer & Check, LLP has engaged Angeion to serve as the administrator in one case other than this Action in the past two years (as compared to a total of 16 such new engagements during the same period). *Id.* ¶ 26. And, other than this Action, Class Counsel Nix Patterson, LLP has

---

advance pro-consumer policies before Congress, and educates the public and news media regarding important consumer issues. *See* www.consumerfed.org. Similarly, the National Consumer Law Center ("NCLC") uses advocacy, education, and litigation to fight for consumers and the needs of the most vulnerable communities and, for over 50 years, has played a leading role in crafting the laws and regulations that protect consumers from abusive and deceptive transactions. *See* www.nclc.org. The Public Justice Foundation uses advocacy and high-impact litigation to protect the consumer by taking on abusive corporate power and predatory practices. *See* www.publicjustice.net.

1    not engaged Angeion to serve as the administrator in the past two years (as compared to a total of

2    five such new engagements during the same period). *Id.* Class Counsel have found Angeion to be a

3    reliable administrator for these types of cases, with competitive pricing compared to similar

4    administration firms. *Id.* ¶ 27. *See also* N.D. Cal. Guid. ¶ 2(a).

5    **B.    Proposed Forms of Settlement Notice**

6    Plaintiffs respectfully submit that the Court should approve the proposed Email Notices (for

7    both the Location Targeting and Search Bundled Clicks Classes), Settlement Notice, and Settlement

8    Notice Ads. *See* Agreement Exs. A-1, A-2 and A-3. The notices are written in plain language and

9    provide the relevant information and answers to most questions that Class Members will have.

10   Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Email Notices and Settlement Notice collectively

11   apprise Class Members of (among many other disclosures): the nature of the Action; the definitions

12   for the Court-certified Classes; the claims and issues asserted; that the Court will exclude from the

13   Class(es) any Class Member who requests exclusion; and the binding effect of a class judgment on

14   Class Members under Rule 23(c)(3)(B). The Email Notices alert Class Members about how they can

15   obtain more information regarding the Settlement as well as what they need to do to be potentially

16   eligible to receive a Settlement Payment—i.e., complete and submit a Payment Form.

17   The proposed notices also collectively meet this District's Procedural Guidance for Class

18   Action Settlements. *See* N.D. Cal. Guid. ¶ 3. The notices set out the procedures and deadlines for the

19   submission of Payment Forms, objections to the Settlement, the Allocation Methodology, and/or

20   attorney's fees and expenses, requests for exclusion from the Classes, and in the event that a Class

21   Member previously requested exclusion pursuant to Class Notice, requests to opt back into the

22   Class(es) to be potentially eligible to receive a Settlement Payment.

23   Further, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served

24   on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

25   Fed. R. Civ. P. 23(h)(1). The proposed notices satisfy these requirements: the Email Notices and

26   Settlement Notice specifically advise Class Members that Class Counsel will apply to the Court for

27   attorneys' fees not to exceed 33% of the Settlement Fund and for Litigation Expenses in an amount

28   not to exceed $4.2 million to be paid from the Settlement Fund. *See* Agreement Exs. A-1 and A-2. A

1  copy of Class Counsel's application for attorneys' fees and expenses will be posted on the Settlement

2  Website once filed.

3  **C.    Proposed Settlement Notice Dissemination Procedures**

4      The proposed method for disseminating notice, as set forth in the Settlement Agreement and

5  detailed in the accompanying Weisbrot Declaration, is the same as the notice methods approved and

6  utilized for the Class Notice campaign and readily meet the standards under the Federal Rules of Civil

7  Procedure and due process. Rule 23(c)(2)(B) requires the court to direct to a class certified under

8  Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice

9  to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In

10  addition, Rule 23(e)(1) requires the court to direct notice of a class action settlement "in a reasonable

11  manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1).

12      If the Court preliminarily approves the Settlement, Angeion will email the Email Notices (Ex.

13  1 to the Preliminary Approval Order) to all potential Class Members whose data is contained in

14  Google's February 2025 data production. *See* Weisbrot Decl. ¶¶ 26-27.[9] Angeion will also post the

15  Settlement Notice (in English and Spanish) on the Settlement Website. In addition, Angeion will

16  cause the Settlement Notice Ads to be transmitted over various media platforms for a duration of

17  thirty (30) days. Any Class Member who receives an Email Notice or who learns about the Settlement

18  through other means will be able to obtain the Settlement Notice and Payment Form on the Settlement

19  Website or may request copies by phone, email, or letter. The Email Notices will include the address

20  for, and link to, the Settlement Website, and the Settlement Notice Ads will include a "Click Here"

21  button that, when clicked, will bring recipients directly to the Settlement Website.

22      In addition, the Parties have agreed that, no later than ten days following the filing of the

23  Settlement Agreement, Angeion, on Google's behalf, shall serve the notice required under the Class

24  _____

25  [9]    If Google's data contains both an email address and a physical mailing address for a potential

26  Class Member, Angeion will provide notice to the potential Class Member by both email and First-

27  Class U.S. Mail. Weisbrot Decl. ¶ 35. The notice sent by First-Class U.S. Mail will contain the same

28  language as the Email Notice.

1    Action Fairness Act, 28 U.S.C. § 1715 (2005) et seq. Agreement ¶ 3.2. The Parties are not aware of

2    any other such required notices to government entities or others. *See* N.D. Cal. Guid. ¶ 10.

3          **D.    Processing of Payment Forms**

4          The Net Settlement Fund will be distributed to Class Members who submit completed

5    Payment Forms and who are entitled to at least $1.00 pursuant to the proposed Allocation

6    Methodology described above. Angeion will process all forms received under the supervision of Class

7    Counsel and will issue Participating Class Members their *pro rata* shares of the Net Settlement Fund

8    (as calculated under the Allocation Methodology). As explained in the Weisbrot Declaration,

9    Angeion estimates, based on prior experience, that a total of 3-5% of Class Members will submit

10   Payment Forms (with a slightly lower rate for valid forms). *See* Weisbrot Decl. ¶ 66; *see also* N.D.

11   Cal. Guid. ¶ 1(f). Based on its experience, Angeion finds this proposed "claims rate" reasonable and

12   typical in these types of cases. Summary information for two recent cases in which Angeion served

13   as administrator is included in the Weisbrot Declaration. Angeion selected these cases because they

14   are comparable class actions administered by Angeion and provide support for the notice and

15   administrative procedures to be utilized for this Settlement.

16         **E.    Estimated Notice and Administrative Costs**

17         Angeion's costs for administering the Settlement will largely depend on the number of

18   Payment Forms received and processed and the number of Settlement Payments issued. Accordingly,

19   only an estimate of the total Notice and Administrative Costs can be provided at this time. Based on

20   the estimate of Payment Forms to be received and processed as noted above, Angeion estimates that

21   the total Notice and Administrative Costs for the Action will be approximately $897,972.00. *See*

22   Weisbrot Decl. ¶ 67. This cost amount will change if the number of Payment Forms

23   received/Settlement Payments issued, are significantly more or less than Angeion's estimates. The

24   Notice and Administrative Costs are necessary to effectuate the Settlement and are reasonable in

25   relation to the value of the Settlement (the estimated Notice and Administrative Costs represent less

26   than 1% of the Settlement Amount). All Notice and Administrative Costs will be paid from the

27   Settlement Fund. *See* Agreement ¶ 2.1.10.

28

## VII.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (i.e., the Final Fairness Hearing, dissemination of Email Notices, deadlines for submitting Payment Forms, requesting exclusion from the Class(es), opting back into the Class(es), and objecting to the Settlement). Plaintiffs respectfully propose the schedule set forth in the chart below, as agreed to by the Parties and reflected in the proposed Preliminary Approval Order:

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for Settlement Administrator to complete dissemination of Email Notices and posting of Settlement Notice on website ("Notice Date") | Within 20 days after Court's entry of the Preliminary Approval Order (Preliminary Approval Order, ¶ 5(a)) |
| Deadline for Settlement Administrator to commence transmittal of the Settlement Notice Ads | Within 10 days after Notice Date (Preliminary Approval Order, ¶ 5(c)) |
| Deadline for Plaintiffs to submit motion for final approval of Settlement and Allocation Methodology and Class Counsel to submit motion for attorneys' fees and expenses | No later than sixty (60) days after Court's entry of the Preliminary Approval Order (Preliminary Approval Order, ¶ 25) |
| Deadline for submitting Payment Forms | No later than seventy-five (75) days after the Notice Date (Preliminary Approval Order, ¶ 8) |
| Deadline for requesting exclusion from the Class(es), opting back into the Class(es), or filing an objection to the Settlement, Allocation Methodology, and/or Class Counsel's request for attorneys' fees and expenses | No later than seventy-five (75) after the Notice Date (Preliminary Approval Order, ¶¶ 10, 13, 16) |
| Deadline for filing reply papers/responses to objections | No later than fifteen (15) days prior to the Final Fairness Hearing (Preliminary Approval Order, ¶ 25) |
| Final Fairness Hearing | At least twenty-five (25) days after the Objection and Exclusion Deadline, subject to the Court's availability (Preliminary Approval Order, ¶ 2) |

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and enter the proposed Preliminary Approval Order submitted herewith.

Dated: March 27, 2025

Respectfully submitted,

*/s/ Matthew L. Mustokoff*

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
Joseph H. Meltzer (*Pro Hac Vice*)
Matthew L. Mustokoff (*Pro Hac Vice*)
Margaret E. Mazzeo (*Pro Hac Vice*)
Dylan Isenberg (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Stacey M. Kaplan (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

**NIX PATTERSON, LLP**
Jeffrey J. Angelovich (*Pro Hac Vice*)
Michael G. Angelovich (*Pro Hac Vice*)
Bradley E. Beckworth (*Pro Hac Vice*)
Andrew G. Pate (*Pro Hac Vice*)
Jessica Underwood (*Pro Hac Vice*)
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

*Counsel for Plaintiffs and the Classes*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT
CASE NO. 11-CV-1263-EJD

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 27, 2025.

*/s/ Matthew L. Mustokoff*
Matthew L. Mustokoff

**Appendix A**

| N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval | Where Procedural Guidance is<br>Addressed in Papers |
|---|---|
| **1.  INFORMATION ABOUT THE SETTLEMENT** | |
| (a)  Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate. | **Motion at p. 6** |
| (b)  Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate. | **Motion at pp. 6-7** |
| (c)  The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims. | **Motion at p. 11;**<br>**Mustokoff Decl. (Ex. 2 to Motion),**<br>**¶ 15** |
| (d)  Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval.  If there are no such cases, counsel should so state. | **Motion at p. 7, fn 3** |
| (e)  The proposed allocation plan for the settlement fund. | **Motion at pp. 18-19**<br>**Proposed Notice at ¶ 36** |
| (f)  If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples. | **Motion at pp. 11-13;**<br>**Weisbrot Decl. (Ex. 3 to Motion),**<br>**¶¶ 62-66** |
| (g)  In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate. | **Motion at p. 6;**<br>**Stipulation ¶ 2.1.11** |
| **2.  SETTLEMENT ADMINISTRATION** | |
| (a)  Identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administration over the last two years. | **Motion at pp. 20-21;**<br>**Weisbrot Decl. ¶ 15**<br>**Mustokoff Decl. ¶¶ 30-32** |
| (b)  Address the settlement administrator's procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; crisis response; etc.), the settlement administrator's acceptance of responsibility and maintenance of insurance in case of errors, the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs. | **Motion at p. 20;**<br>**Weisbrot Decl. ¶¶ 16-21, 67-68** |

**Appendix A**

| N.D. Cal. Procedural Guidance for Class Action Settlements Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| (c)  Settlement Administration Data Protection Checklist | **Weisbrot Decl. ¶¶ 16-21** |
| **3.  NOTICE** | |
| • The parties should ensure that the class notice is easily understandable, in light of the class members' communication patterns, education levels, and language needs. The notice should include the following information: | ***See generally* Proposed notices** |
| • a. Contact information for class counsel to answer questions. | **Proposed Notice p. 2 & ¶ 56; Proposed Email Notices** |
| • b. The address for a website, maintained by the claims administrator or class counsel, that lists key deadlines and has links to the notice, claim form (if any), preliminary approval order, motions for preliminary and final approval and for attorneys' fees, and any other important documents in the case. | ***See generally* Proposed notices** |
| • c. Instructions on how to access the case docket via PACER or in person at any of the court's locations. | **Proposed Notice ¶ 55** |
| • d. The date and time of the final approval hearing, clearly stating that the date may change without further notice to the class. | **Proposed Notice p. 4 & ¶¶ 47-48; Proposed Postcard Notice;** |
| • e. A note to advise class members to check the settlement website or the Court's PACER site to confirm that the date has not been changed. | **Proposed Notice p. 4 Proposed Email Notices** |
| • The parties should explain how the notice distribution plan is effective. Class counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of text messages and social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit. | **Motion at pp. 21-23; Weisbrot Decl. ¶¶ 22-54** |
| • The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). If U.S. mail is part of the notice distribution plan, the notice envelope should be designed to enhance the chance that it will be opened. | **Motion at pp. 21-23; Weisbrot Decl. ¶¶ 22-54** |
| • Inclusion of suggested language in class notices:<br><br>This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at _____, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. | **Proposed Notice ¶ 55** |

**Appendix A**

| N.D. Cal. Procedural Guidance for Class Action Settlements Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS. | |
| **4. OPT-OUTS** | |
| • The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information or hurdles. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out. | **Proposed Notice ¶¶ 39-43** |
| **5. OBJECTIONS** | |
| • Objections must comply with Federal Rule of Civil Procedure 23(e)(5). | **Proposed Notice ¶¶ 49-53** |
| • The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket, and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections. | ***See generally*** **Proposed notices; Proposed Notice ¶¶ 49-53** |
| • Below is suggested language for inclusion in class notices:<br><br>"You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.<br><br>Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (_____ v. _____, Case No. _____), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, [insert appropriate Court location here], and (c) be filed or postmarked on or before _____." | **Proposed Notice ¶¶ 49-50** |
| **6. ATTORNEYS' FEES AND COSTS** | |
| • Class Counsel should include information about the fees and costs (including expert fees) they intend to request, their lodestar calculation (including total hours), and resulting multiplier in the motion for preliminary approval. | **Motion at pp. 13-15; Proposed Email Notices; Proposed Notice p. 2 & ¶ 37** |

**Appendix A**

| N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval | Where Procedural Guidance is<br>Addressed in Papers |
|---|---|
| • In a common fund case, the parties should include information about the relationship between the amount of the common fund, the requested fee, and the lodestar. | **Motion at p. 14** |
| • To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class. | **N/A** |
| **7. SERVICE AWARDS** | |
| • The parties should include information about the service awards they intend to request as well as a summary of the evidence supporting the awards in the motion for preliminary approval. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives. | **Motion at p. 15;<br>Proposed Email Notices** |
| **8. CY PRES AWARDEES** | |
| • If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members' claims. | **Motion at pp. 19-20;<br>Proposed Notice ¶ 36** |
| • The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. | **Motion at p. 20** |
| **9. TIMELINE** | |
| • The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs. | **Motion at p. 24** |
| **10. CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS** | |
| • The parties should address whether CAFA notice is required and, if so, when it will be given. In addition, the parties should address substantive compliance with CAFA. | **Motion at pp. 22-23;<br>Stipulation ¶ 3.2** |
| • In addition, the parties should address whether any other required notices to government entities or others have been provided, such as notice to the Labor & Workforce Development Agency (LWDA) pursuant to the Private Attorneys General Act (PAGA). | **Motion at p. 23** |
| **11. COMPARABLE OUTCOMES** | |
| • Lead class counsel should provide information about comparable cases, including settlements and litigation outcomes. Lead class counsel should provide the following information for as many as feasible (and at least one) comparable class settlement (i.e. settlements involving the same or similar claims, parties, issues):<br><br>a. The claims being released, the total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, | **Motion at pp. 11-13;<br>Weisbrot Decl. ¶¶ 62-66** |

**Appendix A**

| N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval | Where Procedural Guidance is<br>Addressed in Papers |
|---|---|
| the amounts distributed to cy pres recipients, the administrative costs, the attorneys' fees and costs, the total exposure if the plaintiffs had prevailed on every claim.<br><br>   b.  Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests.<br><br>   c.  Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.<br><br>•  Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases, supported by analysis in the text of the motion. |  |
| **12.  ELECTRONIC VERSIONS** |  |
| •  Electronic versions (Microsoft Word or WordPerfect) of all proposed orders and notices should be submitted to the presiding judge's Proposed Order (PO) email address when filed. Most judges in this district use Microsoft Word, but counsel should check with the individual judge's Courtroom Deputy. | **To be done upon filing** |
| **13.  OVERLAPPING CASES** |  |
| •  Within one day of filing of the preliminary approval motion, the defendants should serve a copy on counsel for any plaintiffs with pending litigation, whether at the trial court or appellate court level, whether active or stayed, asserting claims on a representative (e.g., class, collective, PAGA, etc.) basis that defendants believe may be released by virtue of the settlement. | **N/A** |