**KESSLER TOPAZ
MELTZER & CHECK. LLP**
Stacey M. Kaplan (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

Joseph H. Meltzer (*Pro Hac Vice*)
Matthew L. Mustokoff (*Pro Hac Vice*)
Margaret E. Mazzeo (*Pro Hac Vice*)
Dylan Isenberg (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Plaintiffs and the Classes*

**NIX PATTERSON, LLP**
Jeffrey J. Angelovich (*Pro Hac Vice*)
Michael G. Angelovich (*Pro Hac Vice*)
Bradley E. Beckworth (*Pro Hac Vice*)
Andrew G. Pate (*Pro Hac Vice*)
Jessica Underwood (*Pro Hac Vice*)
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

RENE CABRERA and RM CABRERA
COMPANY, INC., Individually and On Behalf of
All Others Similarly Situated,

        Plaintiff,

    v.

GOOGLE LLC,

        Defendant.

Case No. 11-cv-1263-EJD

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND ALLOCATION METHODOLOGY, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: August 21, 2025
Time: 9:00 a.m.
Place: Courtroom 4, 5th Floor
Judge: Hon. Edward J. Davila

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 2

I.      PRELIMINARY STATEMENT ................................................................. 2

II.     THE SETTLEMENT WARRANTS FINAL APPROVAL ......................... 5

     A.      Plaintiffs and Class Counsel Have Adequately Represented the Classes in the Action .............................................................................. 6

     B.      The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel with the Assistance of Experienced Neutrals ..................... 8

     C.      The Settlement Provides Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors ..................... 9

          1.      The Amount Offered in Settlement .......................................... 10

          2.      The Strengths and Weaknesses of Plaintiffs' Case ................... 11

          3.      The Complexity, Expense, and Duration of Continued Litigation .................................................................................. 13

          4.      Risk of Maintaining Class Action Status ................................. 14

          5.      The Extent of Discovery Completed and the Stage of Proceedings .............................................................................. 14

          6.      The Experience and Views of Counsel ..................................... 15

          7.      Existence of a Governmental Investigation .............................. 16

          8.      The Reaction of Class Members to Date .................................. 16

     D.      The Remaining Rule 23(e)(2) Factors Also Support Final Approval .................. 16

III.    THE ALLOCATION METHODOLOGY IS FAIR AND REASONABLE AND WARRANTS FINAL APPROVAL .................................................... 18

IV.     NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS .......................................................... 20

V.      CONCLUSION ........................................................................................ 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3D Sys. Sec. Litig.*,
  2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ................................................................. 10

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ......................................................... 15

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) .............................................................................. 9

*In re Apollo Grp., Inc. Sec. Litig.*,
  2010 WL 5927988 (9th Cir. June 23, 2010) ............................................................ 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .............................................................................. 8, 9

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ........................................................................... 5, 6

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019) ............................................................ 6

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ........................................................................ *passim*

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................ 18

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................................... 10

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................................ 20

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .................................................................................... 7

*Fleming v. Impax Labs. Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) ......................................................... 13

*Free Range Content, Inc. v. Google, LLC*,
  2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ........................................................ 21

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ........................................................ 16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 6, 8

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012).................... 14

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................................ 18

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..............................................6, 19-20

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ..................................................................... 5

*Joh v. Am. Income Life Ins. Co.*,
    2020 WL 109067 (N.D. Cal. Jan. 9, 2020) .................................................. 8

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ........................................................ 11

*Kuraica v. Dropbox, Inc.*,
    2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ............................................... 16

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...................................................................... 6

*In re LendingClub Sec. Litig.*,
    282 F. Supp. 3d 1171 (N.D. Cal. 2017) ...................................................... 7

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ............................................................... 13

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................... 11, 14

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) .............................................. 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)................................................................................. 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 15

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)...........................................8-9

*Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................... 18

*Nobles v. MBNA Corp.*,
  2009 WL 1854965 (N.D. Cal. June 29, 2009) ................................................................ 11

*Officers of Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................................ 10

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................ 14

*In re PFA Ins. Mktg. Litig.*,
  2024 WL 1145209 (N.D. Cal. Feb. 5, 2024) .................................................................. 18

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ...................................................................................... 7

*Quiruz v. Specialty Commodities, Inc.*,
  2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ................................................................ 15

*In re Rambus Inc. Deriv. Litig.*,
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .................................................................. 14

*Roberti v. OSI Sys., Inc.*,
  2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ................................................................. 10

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ...................................................................................20-21

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) .................................................................................. 22

*Taafua v. Quantum Glob. Techs., LLC*,
  2021 WL 579862 (N.D. Cal. Feb. 16, 2021) ................................................................... 5

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
  2018 WL 828199 (S.D. Cal. Feb. 9, 2018)..................................................................... 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) ................................................................. 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  229 F. Supp. 3d 1052 (N.D. Cal. 2017) ........................................................................ 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) .......................................................................................... 5

*Young v. LG Chem Ltd.*,
  783 F. App'x 727 (9th Cir. 2019) ..............................................................................21-22

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................... 21

**Other Authorities**

Fed. R. Civ. P. 23(a)(3) ................................................................... 18

Fed. R. Civ. P. 23(c)(1)(C) ............................................................. 14

Fed. R. Civ. P. 23(e) .............................................................. *passim*

1

## NOTICE OF MOTION AND MOTION

2          PLEASE TAKE NOTICE that on August 21, 2025 at 9:00 a.m., the Honorable Edward J.

3    Davila presiding, Plaintiffs Rene Cabrera ("Cabrera") and RM Cabrera Company, Inc. ("RMC," and

4    together with Cabrera, "Plaintiffs") will and hereby do move pursuant to Federal Rule of Civil

5    Procedure ("Rule") 23(e)(1) for orders: (i) granting final approval of the proposed settlement of the

6    above-captioned action ("Action") as set forth in the Class Action Settlement and Release

7    Agreement dated March 27, 2025 (Dkt. No. 877-1) ("Settlement Agreement"); and (ii) approving

8    the proposed method for allocating the net Settlement proceeds to Participating Class Members

9    ("Allocation Methodology").

10          This motion is based on this Notice of Motion and Motion, the supporting Memorandum of

11   Points and Authorities that follows, the accompanying declarations, including the Joint Declaration

12   of Matthew L. Mustokoff and Andrew G. Pate in Support of (i) Plaintiffs' Motion for Final Approval

13   of Settlement and Allocation Methodology; and (ii) Class Counsel's Motion for Attorneys' Fees,

14   Litigation Expenses and Service Award ("Joint Declaration" or "Joint Decl."), the Settlement

15   Agreement, the papers and pleadings filed in this Action, the arguments of counsel, and any other

16   matters properly before the Court. The Joint Declaration is an integral part of this submission and,

17   for the sake of brevity in the Memorandum of Points and Authorities, Plaintiffs refer the Court to

18   the Joint Declaration for a detailed description of, *inter alia*: the procedural history of the Action,

19   the Settlement negotiations, the risks of continued litigation, compliance with the Court-approved

20   notice plan, the reaction of the Classes to date, and the proposed Allocation Methodology.[1]

21          Class Counsel are not aware of any opposition to the motion. Pursuant to the Court's Order

22   Preliminarily Approving Settlement and Authorizing Notice of Settlement dated April 16, 2025

23   (Dkt. No. 882) ("Preliminary Approval Order"), any objections to the Settlement and/or Allocation

24   _____

25   [1]      All capitalized terms not otherwise defined herein have the meanings ascribed to them in the

26   Settlement Agreement or in the Joint Declaration. Citations to "¶ _" and "Ex. _" refer respectively

27   to paragraphs in and exhibits to the Joint Declaration. Unless otherwise noted, all internal quotation

28   marks, citations, or other punctuation are omitted, and all emphasis is added.

Methodology must be filed by July 20, 2025 and will be addressed in Plaintiffs' reply papers to be filed on August 6, 2025. A proposed judgment and order granting the relief requested herein will be submitted with Plaintiffs' reply papers, after the objection deadline has passed.

<u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.     Whether the Court should approve the proposed Settlement of the Action as fair, reasonable, and adequate under Rule 23(e)(2).

2.     Whether the Court should approve the Allocation Methodology as fair and reasonable.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     PRELIMINARY STATEMENT

After 14 years of hard-fought litigation—including full fact and expert discovery, two summary judgment motions, a fiercely contested class certification process, an appeal to the Ninth Circuit after the complete dismissal of the Action, and extensive trial preparation after the Action was reinstated—Plaintiffs and Class Counsel have secured a significant common-fund recovery of $100,000,000 for the Classes.[2] The Settlement was reached on December 24, 2024—just weeks away from a February 11 trial date—with the Parties' acceptance of a mediator's proposal issued by the Court-appointed mediator, the Honorable Virginia K. DeMarchi. If approved by the Court, the Settlement will resolve all claims asserted in the Action against Defendant Google LLC ("Google"). The Settlement delivers a clear benefit and excellent result for the Classes and warrants final approval under Rule 23(e)(2).

As described herein, the Settlement provides a substantial recovery for the Classes in a case that presented very serious risks of no recovery at all. The recovery for the Classes represents a

---

[2]     Pursuant to the Settlement Agreement, the Initial Deposit of $1,000,000 has been deposited into an interest-bearing escrow account at The Huntington National Bank, the Escrow Agent selected exclusively by Class Counsel. As of the last account statement, $2,849.32 in interest at a per annum rate of 4% has been earned on the account. The Final Deposit will be made following the Final Fairness Hearing.

significant percentage—between approximately 13.9% and 18.8%—of the Classes' total claimed damages. This Settlement is further distinguished from typical class action settlements by how far the Action had advanced towards trial at the time of resolution. Indeed, when the Settlement was reached, the Parties were preparing in earnest for trial—scheduled to begin in a matter of weeks.

Over the course of the Action, Plaintiffs and Class Counsel ardently pursued the Classes' claims. These efforts included: (i) an extensive investigation into the alleged misconduct and legal research into potential causes of action under various laws and statutes; (ii) preparing an initial complaint and five amended complaints based on additional investigation and claims; (iii) opposing five motions to dismiss; (iv) successfully appealing the Court's dismissal of Plaintiffs' Fourth Amended Complaint to the Ninth Circuit; (v) opposing two motions for summary judgment; (vi) opposing two motions to exclude Plaintiffs' experts' testimony under *Daubert*; (vii) completing full fact and expert discovery, including taking or defending 41 depositions; (viii) conducting full class certification discovery and motion practice, resulting in the Court's certification of two advertiser classes; (ix) overseeing an extensive Class Notice campaign; (x) preparing for trial; and (xi) engaging in four mediations and two settlement conferences with the assistance of four different experienced mediators, three of whom had served as federal judges. ¶¶ 8, 17-83. Through these efforts, at the time of settlement, Plaintiffs were steeped in the record and had a thorough understanding of the strengths and weaknesses of the Classes' claims, enabling them to fully evaluate the risks of continued litigation against the recovery obtained for the Classes.

While Plaintiffs determinedly believe in the strength of their claims, a settlement of the Action is in the best interests of the Classes when weighed against the very serious risk that a trial or post-trial appeals could have resulted in a much smaller recovery, or no recovery at all.

The risks of continued litigation were many. For example, Google challenged the proper measure of damages for the Location Targeting claim, asserting that the actual class-wide damages were a small fraction of the amount calculated by Plaintiffs' damages expert. Google also argued that a sizeable portion of the clicks on Class Members' ads were inactionable in light of disclosures Google posted on its website regarding its use of "query-parsing" (i.e., non-location-based targeting) to match ads with internet users. ¶¶ 91-92.

Google also contested Plaintiffs' Smart Pricing claim. Specifically, Google asserted that Plaintiffs would be unable to prove whether a given search-bundled advertiser was actually damaged by the alleged 6% overcharge because the ad auctions underlying the AdWords platform were conducted years ago and Google was unable to recreate the historical dynamics of a given auction. ¶ 94. Establishing damages at trial would have hinged on complex expert testimony, resulting in a "battle of the experts." Thus, even if Plaintiffs succeeded in proving liability, these arguments, if accepted, had the potential to significantly diminish, or even eradicate, Class Members' recovery.

The Settlement was no easy feat and was reached only after negotiations between the Parties spanning *over 10 years*, including six mediations with four mediators, including three federal judges. ¶¶ 77-83. The final settlement conference before Judge DeMarchi on December 19, 2024 culminated in the Court's issuance of a double-blind mediator's proposal that the Action be resolved for $100,000,000. On December 24, 2024, with trial looming, both sides accepted Judge DeMarchi's proposal. ¶ 82. Importantly, there is no possibility of any part of the $100,000,000 reverting back to Google: all Settlement proceeds, after the deduction of Court-approved fees and costs, will be distributed to Class Members who submit valid Payment Forms.

Following a hearing on April 16, 2025, the Court preliminarily approved the Settlement as fair, reasonable, and adequate. Dkt. No. 882, ¶ 1. The Settlement has the full support of Plaintiffs, and the reaction of the Classes to date has been positive. While the objection deadline has not yet passed, following the dissemination of nearly eight million Email Notices, an extensive media campaign, and the availability of a dedicated case website,[3] there have been no objections to date. ¶¶ 104-106.

Given the foregoing considerations and the factors addressed below, Plaintiffs and Class Counsel respectfully submit that: (i) the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Classes; and (ii) the Allocation Methodology is a fair and reasonable method for equitably distributing the Net Settlement Fund to the Classes.

---

[3]     *See* Declaration of Steven Weisbrot Re: Implementation of Notice Plan ("Weisbrot Decl.") (Ex. 2 to Joint Declaration), ¶¶ 10, 15, 16, 18.

1

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

2          Rule 23(e) requires judicial approval of any class action settlement. Fed. R. Civ. P. 23(e).

3    Whether to grant such approval lies within the district court's sound discretion. *See In re*

4    *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th

5    Cir. 2018). In exercising this discretion, a court should be guided by the Ninth Circuit's "strong

6    judicial policy that favors settlements, particularly where complex class action litigation is

7    concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also*

8    *Taafua v. Quantum Glob. Techs., LLC*, 2021 WL 579862, at *3 (N.D. Cal. Feb. 16, 2021) ("The

9    Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions.").

10          Under Rule 23(e)(2), a district court may approve a class action settlement if it finds it to be

11    "fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir.

12    2020). In making that determination, Rule 23(e)(2) provides that a court should consider whether:

13          (A)     the class representatives and class counsel have adequately represented the
             class;
14
          (B)     the proposal was negotiated at arm's length;
15
          (C)     the relief provided for the class is adequate, taking into account:
16
                    (i)     the costs, risks, and delay of trial and appeal;
17
                    (ii)    the effectiveness of any proposed method of distributing relief to
18                          the class, including the method of processing class-member
                          claims;
19
                    (iii)   the terms of any proposed award of attorney's fees, including
                          timing of payment; and
20
                    (iv)    any agreement required to be identified under Rule 23(e)(3); and
21
          (D)     the proposal treats class members equitably relative to each other.
22
          Consistent with Rule 23(e)(2)'s guidance, the Ninth Circuit has identified similar factors for
23
    courts to consider in deciding whether to approve a class action settlement:
24
          (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
25          duration of further litigation; (3) the risk of maintaining class action status
          throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
26          completed and the stage of the proceedings; (6) the experience and views of counsel;
          (7) the presence of a governmental participant; and (8) the reaction of the class
27          members to the proposed settlement.

28

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors . . . and the factors identified in" Ninth Circuit case law).[4] Further, the Ninth Circuit has explained that a court's review of a settlement should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

At the preliminary approval stage, the Court considered the Rule 23(e)(2) factors in assessing the Settlement, and found the Settlement to be fair, reasonable, and adequate, subject to further evaluation at the Final Fairness Hearing. Dkt. No. 882, ¶ 2. Nothing has changed to alter this previous analysis, and the factors supporting the Court's determination to preliminarily approve the Settlement apply equally now. *See, e.g., In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"). Accordingly, the Settlement is fair, reasonable, and adequate and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

### A.    Plaintiffs and Class Counsel Have Adequately Represented the Classes in the Action

In determining whether to approve a class action settlement, the Court should first consider

---

[4]    The "goal" of the 2018 amendments to Rule 23(e)(2) was "not to displace" any of the factors historically articulated by the various Circuits, "but rather to focus the court . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Campbell*, 951 F.3d at 1121 n.10. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

whether Plaintiffs and Class Counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To determine adequacy, "courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017). In certifying the Classes in August 2023, the Court appointed Plaintiffs as representatives for the Classes, and Kessler Topaz Meltzer & Check, LLP and Nix Patterson, LLP as Class Counsel. ¶ 68. Plaintiffs and their counsel have amply demonstrated their adequacy as representatives of the Classes by prosecuting this Action to the brink of trial. This factor clearly weighs in favor of the Settlement.

Plaintiffs' claims, all of which are based on a common course of alleged wrongdoing by Google, are typical of other Class Members and Plaintiffs have no interests antagonistic to the Classes. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a sharing of interest" between representatives and absent class members). In addition, Plaintiffs—like all other Class Members— have an interest in obtaining the largest possible recovery from Google. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Plaintiff Cabrera has adequately represented the interests of the Classes in his active prosecution of the Action. Among other things, Mr. Cabrera communicated regularly with Class Counsel regarding the status of the Action, reviewed significant Court submissions and other case documents, and participated in discovery by responding to 62 separate document requests, 5 interrogatories, and 27 requests for admission served by Google and preparing for and testifying at three depositions. Mr. Cabrera also participated in the negotiation and achievement of the Settlement. *See* Cabrera Decl. ¶¶ 7-15.

Likewise, Plaintiffs retained counsel who are highly experienced in complex litigation and have successfully prosecuted many significant actions throughout the United States. Ex. 3A-5 (KTMC resume) & Ex. 3B-4 (NP resume). *See Churchill*, 361 F.3d at 576-77 (instructing courts to consider "*experience and views of counsel*") (emphasis in original). Here, Class Counsel actively

pursued the Classes' claims for **14 years**, undertaking a comprehensive investigation, full fact and expert discovery, summary judgment and *Daubert* motion practice, class certification, trial preparation, and the expenditure of resources necessary to finance every aspect of the Action's prosecution. ¶¶ 8-17-76. These efforts all contributed to the $100 million recovery achieved for the Classes.

**B.    The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel with the Assistance of Experienced Neutrals**

In weighing approval of a class action settlement, courts consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This includes consideration of related circumstances bearing on the procedural fairness of the settlement, including: (i) counsel's understanding of the strengths and weakness of the case based on "the extent of discovery completed and the stage of the proceedings," *Hanlon*, 150 F.3d at 1026; (ii) the presence or absence of any indicia of collusion, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); and (iii) the involvement of a mediator, *see Joh v. Am. Income Life Ins. Co.*, 2020 WL 109067, at *7 (N.D. Cal. Jan. 9, 2020) ("The involvement of a neutral mediator is evidence that settlement negotiations were conducted at arm's length."). This factor supports final approval of the Settlement.

The Settlement is the product of a protracted arm's-length negotiation process which spanned the course of 10 years and included four mediations and two settlement conferences with the assistance of four highly-experienced mediators, including three federal judges—Hon. Layn Phillips (ret.), Hon. David Folsom (ret.), and ultimately, Hon. Virginia K. DeMarchi. ¶¶ 77-82. These mediations involved the preparation and exchange of position statements on liability and damages, and extensive discussions. *Id.* In the nine months preceding the February 2025 trial date, the Parties participated in two settlement conferences before Judge DeMarchi, on May 16, 2024 and December 19, 2024. Dkt. No. 771. The second conference concluded with Judge DeMarchi's issuance of a mediator's proposal recommending the resolution of all claims for $100,000,000. The Parties accepted Judge DeMarchi's proposal on December 24, 2024. ¶ 82.

As courts in this District have found, the fact that the Parties reached a settlement through arm's-length negotiations between experienced counsel creates a presumption of fairness. *See In re*

*Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018); (involvement of an experienced mediator "confirms that the settlement is non collusive").

Because the Parties were on the cusp of trial, Plaintiffs were fully informed about the value of the claims and the propriety of the settlement. As discussed above, Plaintiffs possessed a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement. Prior to reaching a deal, Plaintiffs completed full fact and expert discovery and survived two summary judgment motions. ¶¶ 34-42, 62, 67, 72-75. The Parties' settlement negotiations further informed the Parties of the strength of each side's arguments. ¶¶ 77-82.

Finally, the Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a "clear sailing" fee agreement or a provision allowing settlement proceeds to revert to Google. *See Bluetooth*, 654 F.3d at 947. Indeed, the Settlement is non-reversionary, i.e., if approved, Google will have no right to the return of any portion of the Settlement Fund based on the amounts to be paid to Participating Class Members. *See* Settlement Agreement ¶ 2.1.11. Moreover, Google "expressly reserves the right to oppose the motion seeking a Fee and Expense Award." *Id.* ¶ 7.1.

In short, the Settlement was reached after arm's-length negotiations assisted by experienced mediators and judges and conducted by well-informed counsel, and was not a product of fraud, overreaching, or collusion among the Parties.

### C.    The Settlement Provides Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors

The remaining Rule 23(e)(2) factors overlap considerably with those articulated by the Ninth Circuit, and entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide" to the Classes. Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment; *see also Churchill*, 361 F.3d at 575-77. As discussed below, these factors weigh in favor of the Settlement.

1

### 1.    The Amount Offered in Settlement

2    "The critical component of any settlement is the amount of relief obtained by the class."

3  *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). By definition, a

4  settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the

5  parties each give up something they might have won had they proceeded with litigation." *Officers*

6  *of Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982);

7  *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on

8  the significant risks of continued litigation and the Settlement amount, the Court finds that the

9  amount offered for settlement is fair.").

10    The $100 million Settlement is significant by any measure. The recovery provides a near-

11  term, tangible cash benefit to the Classes and eliminates the substantial risk that the Classes could

12  recover less, or nothing at all, if the Action continued. Indeed, the Settlement Amount represents a

13  substantial percentage of the Classes' total claimed damages (as estimated by Plaintiffs' damages

14  expert) had this Action proceeded to trial. ¶ 100. Plaintiffs' damages expert calculated alleged

15  damages for the Location Targeting Class to be $626,233,039 under the partial refund model and

16  $439,167,146 under the net profits model, and alleged damages for the Search Bundled Clicks Class

17  to be $93,825,861. Thus, total alleged damages across both Classes range from $532,993,007 to

18  $720,058,900, depending on the damages model used for the Location Targeting Class—

19  representing a recovery of approximately 13.9% to 18.8% of the Classes' total claimed damages. *Id.*

20    The "adequacy of this amount is reinforced by the fact that the amount was originally

21  recommended by [Judge Demarchi], an objective and informed third-party during the mediation

22  process." *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *4 (C.D. Cal. Dec. 8, 2015); *see also In re*

23  *3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 (E.D.N.Y. Jan. 4, 2024) ("Based on the substantial

24  litigation risks [], and because the settlement here was reached with the assistance of an experienced

25  mediator, the Court concludes that the settlement amount is within a reasonable range."). Considered

26  against the extensive risks involved with prosecuting this Action further, the amount provided by

27  the Settlement is fair, reasonable, and adequate.

28

2.      The Strengths and Weaknesses of Plaintiffs' Case

Courts evaluating proposed class action settlements consider the strengths and the weaknesses of the plaintiff's case and the risks of further litigation. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). To determine whether the Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of [a] recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

While Plaintiffs and Class Counsel believe they had substantial evidence to support their claims and were fully prepared to try this case in February 2025, they acknowledge that doing so posed major challenges and considerable risks. ¶¶ 86-99. They also recognize that there have been many cases where plaintiffs believed their claims were meritorious, only to lose at trial or on appeal. *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (noting that, although "[p]laintiff's claim has survived a motion to dismiss, success is not guaranteed if this matter were to proceed to jury trial"); *see, e.g., In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988, at *1 (9th Cir. June 23, 2010) (granting judgment to defendants and nullifying jury verdict for plaintiff following trial).

With respect to the Location Targeting claim under the UCL, Plaintiffs faced challenges to establishing both liability and damages.

*First*, Google claimed throughout the Action that it disclosed its use of "query parsing"— i.e., the placement of ads based on search terms, not the actual location of the internet user—and, therefore, Class Members were not actually misled with respect to query-parsed clicks. If Google had prevailed on this defense, the Location Targeting Class's damages could have been reduced substantially, as Plaintiffs' experts determined that the out-of-area clicks associated with a significant portion of Class Members' damages were query-parsed clicks. ¶ 89.

*Second*, Google raised a materiality defense, asserting that advertisers were not concerned with the origin of the internet users who click on their ads, but rather were primarily concerned with their return-on-investment. In support of this defense, Google's expert provided various metrics

1  purporting to establish that advertisers place more value on targeting potential business through

2  "area-of-interest" query-matching as opposed to location. ¶ 90.

3  *Third*, Google challenged Plaintiffs' damages models for the UCL claim: (i) the "partial

4  refund" model, which provided a refund for every click charged by Google on an ad placed outside

5  an advertiser's designated geographic location(s); and (ii) the "net profits" model, which awarded

6  the amount Google profited on each out-of-area click. Google's damages expert, on the other hand,

7  contended that damages should be assessed using a third model, the "smart pricing restitution"

8  model, which utilizes the scores generated by Google's smart pricing algorithm to compute damages

9  for the Location Targeting Class and generates a substantially lower damages figure than the figures

10  generated using the other two models. Google further asserted that its proposed model was the most

11  appropriate measure of damages because out-of-area clicks provided *some* value to advertisers, even

12  if advertisers had not elected to pay for clicks originating from beyond their selected areas, and the

13  smart pricing restitution model (unlike Plaintiffs' models) accounted for that value. ¶¶ 91-92. If the

14  Court had accepted Google's arguments, finding that the smart pricing restitution model was the

15  most appropriate measure of damages, the Location Targeting Class's damages would have

16  decreased substantially.

17  Plaintiffs also would have faced considerable opposition at trial establishing the breach of

18  contract claim for the Search Bundled Clicks Class.

19  *First*, Google contended that Plaintiffs were unable to accurately identify damaged search-

20  bundled advertisers using Google's archived data. Google asserted throughout the Action that

21  because the ad auctions underlying the AdWords advertising platform were conducted years ago and

22  Google was thus unable to recreate the dynamics of a given auction, it would be impossible for

23  Plaintiffs to prove whether a given search-bundled advertiser was actually damaged by the alleged

24  6% overcharge. More specifically, Google maintained that because the auctions could not be

25  recreated, it was possible that the second-place bid in a given auction was smart-priced properly and,

26  thus, the advertiser who won the auction and paid just $0.01 more than the second-place bid was not

27  actually damaged by the alleged 6% overcharge. ¶ 94.

28  *Second*, Google challenged the assumption underlying Plaintiffs' damages theory that the

alleged 6% overcharge was applied uniformly to all clicks on ads from search-bundled ad campaigns. ¶ 96.

*Third*, the presentation of evidence at trial for the Smart Pricing claim would have been difficult given that all of the principal fact witnesses Plaintiffs intended to put on at trial reside outside of the jurisdiction and thus beyond the Court's subpoena power. Consequently, Plaintiffs would have had to rely primarily on video deposition testimony. Plaintiffs' inability to cross examine live witnesses at trial could have been a significant impediment to their ultimate success. ¶ 98.

Class Counsel carefully analyzed each of Google's arguments and related risks prior to agreeing to the Settlement. If realized, any of these risks could have resulted in no recovery for Class Members. By resolving the Action through the Settlement, in contrast, Plaintiffs guaranteed the Classes a cash recovery of $100 million. This factor strongly supports the Settlement.

### 3. The Complexity, Expense, and Duration of Continued Litigation

In addition to the risk of continued litigation, in evaluating the Settlement's fairness, the "expense, complexity, and likely duration of further litigation," *Churchill*, 361 F.3d at 576, or "delay of trial and appeal" should be taken into account. Fed. R. Civ. P. 23(e)(2)(C)(i). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015); *see also Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *5 (N.D. Cal. July 15, 2022) ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case."). The lengthy procedural history of this Action and pitched legal battles at every stage of the case are a testament to the complexity of the factual and legal issues litigated, including those litigated through class certification, summary judgment, and *Daubert* briefing.

Over its 14-year pendency, this Action also involved considerable expense, which would have increased significantly had the case not settled. In addition to the costs of trial, had Plaintiffs succeeded at trial, they would have faced post-trial motion practice and appeals—adding to the costs and delaying any recovery for years with the possibility of eliminating it entirely. The Settlement, which provides a $100 million cash payment for the benefit of the Classes now, avoids those further

costs, delays, and uncertainties. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."). This factor supports final approval of the Settlement.

### 4.    Risk of Maintaining Class Action Status

The Court certified the Classes on August 15, 2023. *See* Dkt. No. 675 at 49, 69. In light of the strong arguments supporting the appropriateness of class certification in this Action, Plaintiffs believe that the risk of decertification was minimal. Nevertheless, there is always a risk that the Action, or particular claims in the Action, might not have been maintained as a class through trial. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Indeed, Google repeatedly stated its intent to move to decertify the Search Bundled Clicks Class based on Plaintiffs' purported inability to identify Class Members through Google's archived data. ¶ 97. The Settlement removes this uncertainty, and this factor favors the Settlement.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

In assessing a settlement, courts should consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case. *See, e.g.*, *Mego Fin.*, 213 F. 3d at 459; *In re Rambus Inc. Deriv. Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009). Moreover, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *5 (S.D. Cal. Feb. 9, 2018).

As reflected in the nearly 900 docket entries for this matter, the Settlement was reached only after years of protracted, contentious litigation. From the commencement of this Action in 2011 through the Parties' agreement to settle just weeks before trial, Plaintiffs spent substantial time and resources analyzing and zealously litigating the factual and legal issues in the Action. ¶¶ 8, 17-76.

Before reaching the Settlement, they had completed both fact and expert discovery, which included: (i) the review of over 900,000 pages of documents and multiple terabytes of data produced by Google; (ii) serving or responding to numerous written discovery requests; (iii) litigating 14 separate discovery disputes; (iv) preparing and exchanging expert reports; and (v) taking or defending 41 depositions. ¶¶ 8, 34-37, 40-42, 72-75.

In addition, Plaintiffs litigated five motions to dismiss, two summary judgment motions, multiple *Daubert* motions, and an appeal to the Ninth Circuit; successfully obtained certification of two advertiser Classes; and geared up for trial, including the preparation of a complete pretrial order with exhibit and witness lists and deposition designations, proposed jury instructions for the breach of contract claim, proposed findings of fact and conclusions of law for the UCL claim, and witness examination outlines. *See generally* ¶¶ 8, 17-76.

This substantial record demonstrates that, when the Settlement was reached just weeks from trial, Plaintiffs and Class Counsel had more than "enough information to make an informed decision about settlement based on the strengths and weaknesses" of their case. *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016) (finding "in favor of granting final approval" where discovery was complete and "case was on the verge of trial").

### 6. The Experience and Views of Counsel

The informed opinion of experienced Class Counsel that the Settlement is in the best interest of the Classes should be afforded significant weight. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel . . . because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."); *Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). As detailed above, Class Counsel had a thorough understanding of the merits and risks of the Action prior to agreeing to the Settlement. Class Counsel also have extensive prior experience in complex class action litigation (*see* Joint Decl., Ex. 3A-5 and Ex. 3B-4 (firm resumes)). Therefore, Class Counsel's belief that the Settlement represents an excellent

outcome for the Classes favors approval of the Settlement.

### 7.    Existence of a Governmental Investigation

Plaintiffs and Class Counsel are unaware of any governmental investigation regarding the conduct at issue in this Action. As such, the Settlement is the *only* recovery for the Classes related to the allegations in this case. This factor supports final approval.

Likewise, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), Defendants provided notice of the Settlement to appropriate state and federal officials (Dkt. No. 879, ¶¶ 3-4) and, to date, there have been no objections. Courts have found this factor to weigh in favor of final approval where no state or federal officials have objected after receiving notice pursuant to CAFA. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.").

### 8.    The Reaction of Class Members to Date

"In addition to the enumerated fairness factors of Rule 23(e)(2), courts within the Ninth Circuit typically consider the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020); *see also Churchill*, 361 F.3d at 577. Moreover, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc.*, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021). Here, as of this filing, there have been no objections to the Settlement. ¶ 106. Plaintiffs support the Settlement as well. *Id.*, ¶ 11; *see also* Cabrera Decl., ¶ 16.

### D.    The Remaining Rule 23(e)(2) Factors Also Support Final Approval

In evaluating the Settlement, Rule 23(e)(2) instructs courts to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees,

including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These additional factors also weigh in favor of the Court's approval of the Settlement.

*First*, the proposed method of distribution and claims processing ensures equitable treatment of Class Members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D). Class Members' Payment Forms will be processed and the Net Settlement Fund will be distributed *pro rata* pursuant to the proposed Allocation Methodology which was developed by Plaintiffs' damages expert. Specifically, Participating Class Members (i.e., Class Members who are eligible to receive a payment under the Settlement based on an assessment by Plaintiffs' experts of data produced by Google in this Action, submit a completed Payment Form, and are not Opt Outs) will be issued a Settlement Payment by the Court-authorized Settlement Administrator in accordance with the Allocation Methodology set forth in the Settlement Notice, or other allocation method ultimately approved by the Court. *See infra* Part III. Importantly, the Settlement is non-reversionary, i.e., if approved, Google will have no right to the return of any portion of the Settlement Fund based on the amounts to be paid to Participating Class Members. *See* Agreement ¶ 2.1.11.

*Second*, the relief provided by the Settlement remains adequate upon consideration of the terms of the proposed award of attorneys' fees and Litigation Expenses incurred in prosecuting this Action, including the timing of any such Court-approved payments. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Importantly, approval of attorneys' fees is entirely separate from approval of the Settlement and neither Plaintiffs nor Class Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Settlement Agreement ¶¶ 7.1, 7.11. In all events, as established in the Fee and Expense Motion, the requested attorneys' fees of 33% of the Settlement Fund are reasonable in light of Class Counsel's efforts in prosecuting this Action for the past 14 years and obtaining a $100 million cash recovery, as well as the significant

risks shouldered by Class Counsel.[5] Additionally, the 33% request is supported by other fee awards in this Circuit and throughout the country. *See* Fee and Expense Memorandum, § II.C.5.

*Third*, as part of the Settlement Agreement, the Parties agreed to a standard, confidential provision that gives Google the option to terminate the Settlement in the event that Opt Outs exceed certain agreed-upon conditions. *See* Fed. R. Civ. P. 23(a)(3), Settlement Agreement ¶ 4.2.7.6. This type of agreement has no negative impact on the fairness of the Settlement. *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

For the reasons set forth above and in the Joint Declaration, the Settlement is fair, reasonable, and adequate when evaluated under any standard, and, therefore, warrants the Court's final approval.

## III.  THE ALLOCATION METHODOLOGY IS FAIR AND REASONABLE AND WARRANTS FINAL APPROVAL

In considering the proposed Settlement, the Court must also determine whether the Allocation Methodology is fair and reasonable to the Classes. A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re PFA Ins. Mktg. Litig.*, 2024 WL 1145209, at *12 (N.D. Cal. Feb. 5, 2024). Moreover, "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

---

[5]     In connection with their fee request, Class Counsel also seek payment of Litigation Expenses in an amount of $3,859,836.34. ¶¶ 16, 134. Class Counsel's application for attorneys' fees and Litigation Expenses also includes a request for a Service Award for $20,000 as compensation for Plaintiffs' involvement in the Action and their service on behalf of the Classes.

1    Here, the Allocation Methodology will result in a fair and equitable distribution of the

2    Settlement proceeds among Class Members who suffered losses as a result of Google's alleged

3    conduct. The Allocation Methodology (contained in the Settlement Notice) was developed in

4    consultation with Plaintiffs' damages expert. ¶ 109. As set forth in the Allocation Methodology,

5    alleged damages for Location Targeting clicks (identified in the data produced by Google) are equal

6    to the cost of those clicks, and alleged damages for Search Bundled clicks (also identified in the data

7    produced by Google) are calculated using the formula: Click Cost – (Click Cost / 1.06 * 1) =

8    Damages, which quantifies the portion of the click cost that is attributable to the 6% overcharge

9    Google allegedly applied to the cost for the Search Bundled clicks. *Id.*, *see also* Settlement Notice

10   ¶ 36. To the extent that a Search Bundled click is also a Location Targeting click, alleged damages

11   will only be calculated for the Location Targeting click so as to avoid a double recovery for the same

12   allegedly damaged click. *See id.*

13   The notices instruct Class Members to submit a completed Payment Form to be eligible to

14   receive a Settlement Payment. *See* Agreement Ex. A-4. The Payment Form requests Class Members

15   to affirm whether they were a U.S.-based advertiser during the relevant time period and to choose a

16   method of payment. *See* Payment Form §§ 1 & 3. The percentage of total damages (calculated as set

17   forth above) associated with each Class Member (with a Customer ID/Account Number) will then

18   be applied to the amount of the Net Settlement Fund and Settlement Payments will be calculated

19   based on these percentages.[6] *See* Settlement Notice ¶ 36. To the extent that a Class Member is

20   entitled to recover less than $1.00, such Class Member will be excluded from recovering a payment

21   and amounts initially allocated to Class Members recovering less than $1.00 will be redistributed

22   across the remaining eligible Class Members (i.e., Participating Class Members recovering $1.00 or

23   more) on a *pro rata* basis. *Pro rata* distributions based on each class member's damages relative to

24

25   [6]    To the extent there is more than one email address associated with a single Customer

26   ID/Account Number and multiple Payment Forms are submitted for the same Customer/Account

27   Number, the Settlement Administrator will take steps to determine the primary Payment Form and

28   ensure that only one payment is issued. *See* Settlement Notice ¶ 36; Payment Form § 3.

that of the class as a whole have "frequently been determined to be fair, adequate, and reasonable." *Hefler*, 2018 WL 6619983, at *12. Preliminary Settlement Payment amounts can be viewed on the Settlement Website when available.

Settlement Payments will be issued to Participating Class Members following the Effective Date. Agreement ¶ 2.2.5. If any funds remain after an initial distribution, as a result of uncashed or returned checks or other reasons, subsequent distributions to eligible Participating Class Members will be conducted as long as they are cost effective. *See* Settlement Notice ¶ 36. Any amounts that are not cost effective to redistribute to Participating Class Members will be contributed in substantially equal amounts to Consumer Federation of America, National Consumer Law Center, and The Public Justice Foundation, or another organization(s) mutually agreed to by the Parties and approved by the Court. Agreement ¶ 2.3. These organizations were chosen as *cy pres* recipients because they support the protection of consumers through the enforcement of consumer fraud laws, an endeavor that relates directly to the subject matter of this Action. The Parties do not have a relationship with these organizations. *See* N.D. Cal. Guid. ¶ 8.

The Settlement Administrator has conducted an extensive notice campaign advising Class Members of the Allocation Methodology and their right to object to the Allocation Methodology. To date, there have been no objections to the Allocation Methodology. *Id.*, ¶ 113. Accordingly, Class Counsel and Plaintiffs believe the Allocation Methodology is fair, reasonable, and adequate and warrants approval. Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D).

## IV.  NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Plaintiffs have provided the Classes with adequate notice of the Settlement. Here, notice satisfied both: (i) Rule 23, as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement, Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); and (ii) due process, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*,

18 F.3d 1449, 1454 (9th Cir. 1994). Further, the notice campaign here resulted in direct notice to 87.5% of potential Class members. Weisbrot Decl. ¶ 13; *see also Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *3 (N.D. Cal. Mar. 21, 2019) (notice adequate where 80% of class received direct notice, a settlement website was established, and a press release issued).

In accordance with the Preliminary Approval Order, on April 30, 2025, the Settlement Administrator began providing notice to the potential Class Members whose data was contained in Google's February 2025 data production. To date, Angeion has disseminated nearly eight million Email Notices and roughly 10,000 notices by First-Class mail (where a mailing address was provided). Weisbrot Decl. ¶¶ 10, 15. In connection with the emailing/mailing of notice, Angeion updated the website created for the case, www.AdWordsClicksClassAction.com, with Settlement-related information and deadlines, and posted downloadable copies of the Settlement Notice and the Payment Form (in English and Spanish). *Id.* at ¶ 18. Angeion has also caused the Settlement Notice Ads to be transmitted over various media platforms such as X, Facebook and Instagram, which efforts will continue until at least June 15, 2025. *See* Weisbrot Decl., ¶ 16. Angeion, at Google's direction, also caused notice to be issued pursuant to CAFA. *See* Dkt. No. 879, ¶¶ 3-4.

Collectively, the notices apprise Class Members of: (i) the Settlement Amount; (ii) the reasons for the Settlement; (iii) the maximum amount of attorneys' fees and expenses to be sought by Class Counsel; (iv) the identity and contact information for Class Counsel to answer questions concerning the Settlement; (v) the right of Class Members to object to the Settlement; (vi) the right of Class Members to request exclusion from the Classes (or opt back into the Classes if the Class Member previously excluded themselves in connection with Class Notice); (vii) the binding effect of a judgment on Class Members; (viii) the dates and deadlines for certain Settlement-related events; and (ix) the opportunity to obtain additional information about the Action and the Settlement by contacting Class Counsel, the Settlement Administrator, or visiting the Settlement Website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Settlement Notice also contains the proposed Allocation Methodology and provides information on how to submit a Payment Form in order to be potentially eligible to receive a Settlement Payment. *See* Weisbrot Decl., Ex. D. The content disseminated through this notice campaign was more than adequate, as it "generally describe[d] the

terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) ("Settlement notices must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

In sum, the notices provide sufficient information for Class Members to make informed decisions regarding the Settlement, fairly apprises them of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Rule 23, and due process.

## V.    CONCLUSION

For the reasons set forth herein and in the Joint Declaration, Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Allocation Methodology.

Dated:  June 13, 2025

Respectfully Submitted,

/s/ Matthew L. Mustokoff
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Joseph H. Meltzer (*Pro Hac Vice*)
Matthew L. Mustokoff (*Pro Hac Vice*)
Margaret E. Mazzeo (*Pro Hac Vice*)
Dylan Isenberg (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Stacey M. Kaplan (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

**NIX PATTERSON, LLP**
Jeffrey J. Angelovich (*Pro Hac Vice*)
Michael G. Angelovich (*Pro Hac Vice*)
Bradley E. Beckworth (*Pro Hac Vice*)

Andrew G. Pate (*Pro Hac Vice*)
Jessica Underwood (*Pro Hac Vice*)
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

*Counsel for Plaintiffs and the Classes*

1

## CERTIFICATE OF SERVICE

2
3

      I hereby certify that on June 13, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

4
5

      I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 13, 2025.

6
7

                                */s/ Matthew L. Mustokoff*

8

                                  Matthew L. Mustokoff

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28