**KESSLER TOPAZ**
**MELTZER & CHECK. LLP**
Stacey M. Kaplan (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

Joseph H. Meltzer (*Pro Hac Vice*)
Matthew L. Mustokoff (*Pro Hac Vice*)
Margaret E. Mazzeo (*Pro Hac Vice*)
Dylan Isenberg (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Plaintiffs and the Classes*

**NIX PATTERSON, LLP**
Jeffrey J. Angelovich (*Pro Hac Vice*)
Michael G. Angelovich (*Pro Hac Vice*)
Bradley E. Beckworth (*Pro Hac Vice*)
Andrew G. Pate (*Pro Hac Vice*)
Jessica Underwood (*Pro Hac Vice*)
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

RENE CABRERA and RM CABRERA
COMPANY, INC., Individually and On Behalf
of All Others Similarly Situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 11-cv-1263-EJD

**CLASS COUNSEL'S NOTICE OF
MOTION AND MOTION FOR
ATTORNEYS' FEES, LITIGATION
EXPENSES AND SERVICE AWARD AND
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Date: August 21, 2025
Time: 9:00 a.m.
Place: Courtroom 4, 5th Floor
Judge: Hon.  Edward J. Davila

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 2

I.     INTRODUCTION ........................................................................................................ 2

II.    THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD ..................... 5

     A.    Plaintiffs' Counsel Are Entitled to a Reasonable Fee from the Common Fund Created by the Settlement ................................................................................. 5

     B.    The Court Should Calculate the Fee as a Percentage of the Common Fund .............. 6

     C.    Class Counsel's 33% Fee Request is Warranted ........................................................ 7

           1.    Class Counsel Achieved an Excellent Result for the Classes ........................ 8

           2.    Class Counsel Undertook Substantial Risk in this Action ............................. 9

           3.    Successfully Prosecuting the Case Against Google Required Skill and High-Quality Work .................................................................................. 11

           4.    Class Counsel Litigated the Case on a Fully Contingent Basis to the Eve of Trial .............................................................................................. 13

           5.    The Requested Fee Is In Line With Fee Awards in this Circuit ................... 14

           6.    No Class Members Have Objected to the Requested Fees ........................... 15

     D.    A Lodestar Cross-Check Confirms Reasonableness of the Requested Fee ............. 16

           1.    The Number of Hours Devoted to the Action Was Reasonable ................... 16

            2.    Class Counsel's Hourly Rates Are Reasonable ............................................ 17

            3.    The Multiplier Is Justified Given the Results Obtained and the Contingent Nature of the Representation ...................................................... 18

III.   PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ........................................................................................ 19

IV.   THE REQUESTED SERVICE AWARD TO PLAINTIFF CABRERA IS WARRENTED AND SHOULD BE APPROVED ......................................................... 21

V.    CONCLUSION ......................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
 723 F. Supp. 1373 (N.D. Cal. 1989)...............................................................................6

*AdTrader, Inc. v. Google LLC*,
 2022 WL 16579324 (N.D. Cal. Nov. 1, 2022) ...............................................................9

*In re American Apparel, Inc. Shareholder Litig.*,
 2014 WL 10212865 (C.D. Cal. July 28, 2014) .............................................................12

*In re Amgen Inc. Sec. Litig.*,
 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ........................................................ 6-7

*Anixter v. Home-Stake Prod. Co.*,
 77 F.3d 1215 (10th Cir. 1996) ......................................................................................13

*In re Apple Inc. Device Performance Litig.*,
 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ........................................................6, 13

*In re Apple Inc. Device Performance Litig.*,
 50 F.4th 769 (9th Cir. 2022) .......................................................................................6, 21

*Atlas v. Accredited Home Lenders Holding Co.*,
 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)..................................................................7

*Beaver et al. v. Tarsadia Hotels*,
 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ................................................14, 19, 23

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) ........................................................................................................5

*Cabot East Broward 2 LLC v. Cabot*,
 2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) ................................................................15

*In re Charles Schwab Sec. Litig.*,
 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011).................................................................6

*Ching v. Siemens Indus., Inc.*,
 2014 WL 2926210 (N.D. Cal. June 27, 2014)...............................................................13

*In re Comverse Tech., Inc. Secs. Litig.*,
 2010 WL 2653354 (E.D.N.Y. June 24, 2010)................................................................9

*Destefano v. Zynga, Inc.*,
 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..................................................... *passim*

ii

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ............................................................15

*In re Extreme Networks, Inc. Secs. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ...........................................................16

*In re Facebook Internet Tracking Litig.*,
2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) ...................................................18, 19

*Fleming v. Impax Labs. Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) .......................................................18, 19

*In re Flonase Antitrust Litig.*,
951 F. Supp. 2d 739 (E.D. Pa. June 14, 2013) ........................................................15

*Fowler v. Wells Fargo Bank, N.A.*,
2019 WL 330910 (N.D. Cal. Jan. 25, 2019) ...........................................................17

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. April 22, 2010) ........................................................22

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ...........................................................................6

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ..................................................................................6

*Hale v. State Farm Mut. Auto Ins. Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ...........................................................15

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ....................................................................................19

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..............................................................................................8

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................12

*Hernandez v. Dutton Ranch Corp.*,
2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ................................................3-4, 7-8

*In re High-Tech Empl. Antitrust Litig.*,
2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..........................................................23

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
2019 WL 4737396 (S.D.N.Y. Sept. 23, 2019) ........................................................15

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
2018 WL 2183253 (N.D. Cal. May 11, 2018) .........................................................22

*Knight v. Red Door Salon, Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................................................................15

*In re Lidoderm Antitrust Litig.*,
    2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ..........................................................8, 14

*In re Ligado Networks LLC, at al.*,
    No. 25-10006 (TMH) (Del. Br. May 5, 2025) ...........................................................18

*In re MacBook Keyboard Litig.*,
    2023 WL 3688452 (N.D. Cal. May 25, 2023) ............................................................18

*Martinelli v. Johnson & Johnson*,
    2022 WL 4123874 (E.D. Cal. Sept. 9, 2022) .............................................................13

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ...................................................................................................17

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir.
    2019)...........................................................................................................................23

*In re Neurontin Antitrust Litig.*,
    2014 WL 12962880 (D.N.J. Aug. 6, 2014) ...............................................................15

*Nitsch v. DreamWorks Animation SKG Inc.*,
    2017 WL 2423161 (N.D. Cal. June 5, 2017)......................................................... 21-22

*Oliveira v. Language Line Srvs., Inc.*,
    2025 WL 586589 (N.D. Cal. Feb. 24, 2025) ...............................................................8

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)..................................................................7, 16

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ....................................................................................7, 23

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009)...........................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ......................................................................................7

*Peace Officers' Annuity & Ben. Fund of Georgia v. Davita, Inc.*,
    2021 WL 2981970 (D. Colo. July 21, 2021) .............................................................14

*Pearlstein v. BlackBerry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ..........................................................14

*Perez v. Rash Curtis & Assocs.*,
    2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ..................................................14, 19, 23

iv

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..................................................................................13

*Rodman v. Safeway Inc.*,
2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) .............................................................8

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ......................................................................................12

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................................................6

*Std. Iron Works v. ArcelorMittal*,
2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) ..............................................................15

*Thomas v. MagnaChip Semiconductor Corp.*,
2018 WL 2234598 (N.D. Cal. May 15, 2018) .............................................................19

*Uschold v. NSMG Shared Servs., LLC*,
333 F.R.D. 157 (N.D. Cal. 2019) ...............................................................................23

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...........................................................15-6

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ........................................................................................5

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .............................................................................. *passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ......................................................18, 19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ...................................................................................5, 13

*Williamson v. McAfee, Inc.*,
2017 WL 6033070 (N.D. Cal. Feb. 3, 2017) ................................................................6

*Zepada v. PayPal, Inc.*,
2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ............................................................12

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on August 21, 2025 at 9:00 a.m., before the Honorable Edward J. Davila, Class Counsel Kessler Topaz Meltzer & Check, LLP ("KTMC") and Nix Patterson, LLP ("NP" and, together with KTMC, "Class Counsel"), counsel for Plaintiffs Rene Cabrera ("Cabrera") and RM Cabrera Company, Inc. ("RMC," and together with Cabrera, "Plaintiffs") and the Court-certified Classes, will and hereby do move pursuant to Rule 23(h) of the Federal Rules of Civil Procedure ("Rules") for an order awarding attorneys' fees, litigation expenses and service award in the above-captioned action ("Action").

Class Counsel's motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities that follows, the accompanying declarations, including the Joint Declaration of Matthew L. Mustokoff and Andrew G. Pate in Support of (I) Plaintiffs' Motion for Final Approval of Settlement and Allocation Methodology; and (II) Class Counsel's Motion for Attorneys' Fees, Litigation Expenses and Service Award ("Joint Declaration" or "Joint Decl."), the Class Action Settlement and Release Agreement dated March 27, 2025 (Dkt. No. 877-1) ("Settlement Agreement"), the papers and pleadings filed in the Action, the arguments of counsel, and any other matters properly before the Court. The Joint Declaration is an integral part of this submission and, for the sake of brevity in the Memorandum of Points and Authorities, Plaintiffs refer the Court to the Joint Declaration for a detailed description of the history of the Action and Class Counsel's litigation efforts (¶¶ 17-76); the settlement negotiations (¶¶ 77-83); and the risks of continued litigation (¶¶ 86-101).[1]

Class Counsel are not aware of any opposition to the motion. Pursuant to the Court's Order Preliminarily Approving Settlement and Authorizing Notice of Settlement (Dkt. No. 882) ("Preliminary Approval Order"), any objections to the requests for attorneys' fees, Litigation

---

[1] Citations to "¶ _" and "Ex. _" refer respectively to paragraphs in and exhibits to the Joint Declaration. All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Settlement Agreement or in the Joint Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

1

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

Expenses and/or Service Award to Plaintiffs must be filed by July 20, 2025, and will be addressed in Class Counsel's reply submission to be filed with the Court on August 6, 2025. A proposed order granting the relief requested herein will be submitted with Class Counsel's reply, after the objection deadline has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court should approve Class Counsel's request for attorneys' fees in the amount of 33% of the non-reversionary Settlement Fund.

2.    Whether the Court should approve Class Counsel's request for payment of Litigation Expenses reasonably and necessarily incurred by Class Counsel and Plaintiffs' appellate counsel, Joseph Hage Aaronson LLC ("JHA"), in prosecuting and resolving the Action in the amount of $3,859,836.34, plus interest, from the Settlement Fund.

3.    Whether the Court should approve the requested Service Award to Plaintiffs in the amount of $20,000 for their efforts in representing the Classes in the Action.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Subject to Court approval, Plaintiffs have agreed to settle all claims asserted in this Action against Google LLC ("Google") for $100,000,000 in cash. The Parties reached this Settlement after *14 years* of highly contentious litigation—and just seven weeks before trial. The Settlement is the product of protracted negotiations and, ultimately, the Parties' acceptance of Judge Virginia K. DeMarchi's recommendation as Court-appointed mediator to resolve the Action on Christmas Eve 2024. The Settlement eliminates the substantial risks Plaintiffs faced in taking this complex case to trial and recovers a significant portion—between 13.9% and 18.8%—of the Classes' total claimed damages. By any measure, the Settlement is an excellent result for the Classes.

As set forth in the Joint Declaration, Class Counsel vigorously pursued this Action on behalf of the Classes for 14 years and were fully prepared to go to trial when the Settlement was reached. Among their efforts, Class Counsel investigated the claims from inception, withstood five motions to dismiss and two motions for summary judgment, successfully appealed the Court's dismissal of the

Action to the Ninth Circuit, completed full fact and expert discovery which included 41 depositions, and obtained class certification of two advertiser Classes. ¶¶ 8, 17-75. Class Counsel also undertook extensive preparations for trial, including preparing a pretrial order complete with exhibit list, witness list, and deposition designations, proposed jury instructions for Plaintiffs' breach of contract claim, and proposed findings of fact and conclusions of law for Plaintiffs' claim under the California Unfair Competition Law ("UCL") (which Class Counsel anticipated would be tried to the Court as a bench trial in light of the equitable nature of the claim). ¶ 76. In addition to these efforts, Class Counsel issued trial subpoenas to several witnesses and began preparing witness examinations outlines. *Id.* In the midst of their pre-trial efforts, the Parties made a final push to resolve the Action which occurred just seven weeks before the first day of trial. ¶¶ 81-82.

Achieving the Settlement was no small feat. Google was represented by highly skilled and determined litigators at Mayer Brown LLP who fervently defended the claims at every stage of the litigation. Class Counsel faced numerous obstacles from the outset, including the high out-of-pocket costs of experts and consultants required to litigate this complex case, and a substantial risk of non-payment. In assuming these risks, Class Counsel deployed a dedicated group of professionals to develop, support, and aggressively pursue the Action, including not only skilled class-action litigators, but also highly experienced investigators, paralegals, administrative staff, and others. In total, counsel devoted more than 39,000 hours over 14 years to this case and outlaid nearly $4 million of their own money, with no guarantee of it ever being recovered. Of course, a class action litigated on contingency is fundamentally different from a case where litigation expenses are funded by the client and attorneys are continuously paid, even if they lose. As such, counsel is entitled to compensation that "reflect[s] the risk of non-payment in [these] cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002).

In light of the foregoing, as compensation for their considerable efforts on behalf of the Classes and the significant risk of prosecuting and funding this Action with no guarantee of recovery, Class Counsel seek attorneys' fees in the amount of 33% of the Settlement Fund. "District Courts within this circuit . . . routinely award attorneys' fees that are one-third of the total settlement fund,"

3

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

and "[s]uch awards are routinely upheld by the Ninth Circuit." *Hernandez v. Dutton Ranch Corp.*, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021).

While the requested fee exceeds the 25% "benchmark" used as a "starting point" by courts in this Circuit, *Vizcaino*, 290 F.3d at 1047-48, Class Counsel's labors here—in the face of great opposition by Google—warrant an upward deviation. As the Ninth Circuit has observed, the 25% benchmark "may be inappropriate in some cases." *Id.* at 1048. This is not a case where counsel simply went through the motions. In contrast to the majority of settlement fee awards approved at the 25% benchmark, Class Counsel ardently prosecuted the Classes' claims for 14 years—right to the brink of trial—after successfully pursuing an appeal to the Ninth Circuit. As a result of that steadfastness, Class Counsel achieved a substantial recovery for the Classes while avoiding the real risk of recovering less than the Settlement Amount, or nothing at all, following a trial and post-trial appeals.

Importantly, the requested fee represents a multiplier of approximately 1.48 on counsel's lodestar, which is on the lower end of the multiplier range commonly awarded in class actions with significant contingency risk. *See id.* at 1051 n.6 (noting multipliers ranging from 1 to 4 are common).

Class Counsel also request payment from the Settlement Fund of $3,859,836.34 for counsel's Litigation Expenses and a Service Award to Plaintiffs in the amount of $20,000.

Plaintiff Rene Cabrera—who closely supervised the prosecution of the litigation for seven years—has evaluated Class Counsel's fee and expense request and endorsed it as fair and reasonable. *See* Declaration of Rene Cabrera (Ex. 1) ("Cabrera Decl."), ¶¶ 18-20. The reaction of the Classes to date has also been positive and supports the requested fee. Pursuant to the Court's Preliminary Approval Order, nearly eight million Email Notices have been disseminated to potential Class Members. *See* Declaration of Steven Weisbrot of the Angeion Group LLC ("Angeion") (Ex. 2) ("Weisbrot Decl."), ¶ 10. The Email Notices, along with the detailed Settlement Notice posted on the case website (www.AdWordsClicksClassAction.com), advise recipients that Class Counsel would request attorneys' fees in an amount not to exceed 33% of the Settlement Fund and reimbursement/payment of Litigation Expenses in an amount not to exceed $4.2 million, plus interest. *See* Weisbrot Decl., Exs. A, B & D. While the July 20, 2025 deadline to object to Class Counsel's

4

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

fee and expense request has not yet passed, to date, there have been no objections to the maximum fee and expense amounts set forth in the notices. ¶ 133.[2]

For the reasons below, Class Counsel respectfully submit that the requested fee is fair and reasonable under the applicable legal standards. Class Counsel also respectfully submit that the expenses for which they seek payment were reasonable and necessary for the successful prosecution of the Action and that the requested Service Award to Plaintiffs for the efforts they undertook on behalf of the Classes is likewise reasonable and appropriate. Accordingly, Class Counsel request that their Motion for Attorneys' Fees, Litigation Expenses and Service Award be granted in full.

## II.    THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD

Class Counsel vigorously pursued this Action for 14 years in the face of significant risks and negotiated a resolution that provides a non-reversionary Settlement Fund of $100 million for the benefit of the Classes. In consideration of those efforts, Class Counsel respectfully submit that an award of attorneys' fees in the amount of 33% of the Settlement Fund—which represents a 1.48 multiplier on counsel's lodestar—is fair and reasonable and warrants the Court's approval.

### A.    Plaintiffs' Counsel Are Entitled to a Reasonable Fee from the Common Fund Created by the Settlement

Courts have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees"). The policy rationale for awarding attorneys' fees from a common fund is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). In addition to providing just compensation,

---

[2]    If any objections are received after this submission, Class Counsel will address them in their reply to be filed on August 6, 2025.

5

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

an award of fair attorneys' fees from a common fund ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

### B.    The Court Should Calculate the Fee as a Percentage of the Common Fund

In awarding fees, "a court must ensure that attorney's fees [] awarded to class counsel are fair, reasonable and adequate." *In re Charles Schwab Sec. Litig.*, 2011 WL 1481424, at *7 (N.D. Cal. Apr. 19, 2011); *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003). Courts in this Circuit have discretion to employ either the percentage-of-recovery method or the lodestar method in awarding attorneys' fees. *See Vizcaino*, 290 F.3d at 1047; *Williamson v. McAfee, Inc.*, 2017 WL 6033070, at *1 (N.D. Cal. Feb. 3, 2017). Notwithstanding that discretion, the percentage-of-recovery method has become the prevailing method used in this Circuit. *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage-of-recovery method in awarding fees); *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) (finding "use of the percentage-of-the-fund method in common-fund cases [to be] the prevailing practice in the Ninth Circuit for awarding attorneys' fees"); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *16 (N.D. Cal. Feb. 11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys' fees using the percentage method.").

Additionally, courts have found the percentage-of-recovery method to be preferable in cases with a common fund because it: (i) parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; (ii) aligns the lawyers' interests with those of the class in achieving the maximum possible recovery; and (iii) reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See, e.g.*, *Apple*, 2021 WL 1022866, at *2; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of percentage method over lodestar method). When awarding a percentage fee, however, courts often cross-check the requested fee with counsel's lodestar to ensure its reasonableness. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022); *In*

6

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

1    *re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that a "cross-

2    check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness");

3    *see also* § II.D, *infra* (for Lodestar Analysis).

### C.   Class Counsel's 33% Fee Request is Warranted

5    In the Ninth Circuit, the "starting point" for calculating attorneys' fees is 25% of the common

6    fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino*, 290 F.3d

7    at 1048. As the Circuit has observed, "[t]he 25% benchmark rate, although a starting point for

8    analysis, may be inappropriate in some cases" and "[s]election of the benchmark or any other rate

9    must be supported by findings that take into account all of the circumstances of the case." *Id.*

10   Here, Class Counsel's fee request is above the 25% benchmark, but is well justified. Courts

11   in this Circuit routinely grant fee awards above 25% when supported by: (i) the results achieved; (ii)

12   the risk of litigation; (iii) the skill required and the quality of work; (iv) the contingent nature of the

13   fee and the financial burden carried by the plaintiffs; and (v) awards made in similar cases (commonly

14   referred to as the "*Vizcaino* factors"). *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-*

15   *Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (in assessing an upward adjustment to

16   benchmark, courts consider "the extent to which class counsel achieved exceptional results for the

17   class, whether the case was risky for class counsel, whether counsel's performance generated benefits

18   beyond the cash settlement fund, the market rate for the particular field of law (in some

19   circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration,

20   foregoing other work), and whether the case was handled on a contingency basis"). "The relative

21   degree of importance to be attached to any particular [*Vizcaino*] factor will depend upon . . . the nature

22   of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

23   presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL

24   3698393, at *3 (S.D. Cal. Nov. 4, 2009).

25   Courts in the Ninth Circuit award fees that exceed the benchmark "in most common fund

26   cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see Hernandez*,

27   2021 WL 5053476, at *6 ("District courts within this circuit . . . routinely award attorneys' fees that

28

7

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

are one-third of the total settlement fund," and "[s]uch awards are routinely upheld by the Ninth Circuit"); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (awarding 33⅓% of $104,750,000 settlement and noting "a fee award of one-third is within the range of awards in this Circuit").[3]

As detailed below, each *Vizcaino* factor weighs strongly in favor of Class Counsel's fee request. Additionally, and as demonstrated by a lodestar cross-check (*see* § II.D below), the requested 33% fee would not constitute a windfall to Class Counsel as it results in a 1.48 lodestar multiplier (based on historical hourly rates), and that multiplier will decrease given the work Class Counsel will continue to perform on behalf of the Classes leading up to the Final Fairness Hearing and through the completion of the case. *See Lidoderm*, 2018 WL 4620695, at *4 (noting in awarding 33% fee that "rationales for awarding fees at or below the 25% benchmark in some cases—*i.e.* to avoid a windfall for class counsel—do not apply here" given the 1.37 multiplier).

### 1.    Class Counsel Achieved an Excellent Result for the Classes

The benefit counsel secured for the class is an important factor in evaluating the reasonableness of a requested fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 (noting "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees). Courts recognize that "the law appropriately provides for some upward adjustment [from the 25% benchmark] where the results achieved are significantly better than the norm." *Rodman v. Safeway Inc.*, 2018 WL 4030558, at *3 n.3 (N.D. Cal. Aug. 22, 2018).

That is precisely the case here. Class Counsel have secured $100 million for the Classes—a recovery that was highly improbable following the Court's dismissal of the Fourth Amended Complaint on standing grounds in 2019 after eight years of litigation. ¶ 53. Class Counsel persevered, resurrected the case through a successful appeal to the Ninth Circuit, and spent four more years

---

[3]    Notably (in light of Plaintiffs' UCL and California breach of contract claims), the typical common-fund fee award in California state court is approximately one third. *See Oliveira v. Language Line Srvs., Inc.*, 2025 WL 586589, at *5 (N.D. Cal. Feb. 24, 2025).

prosecuting the Classes' claims against Google—through full fact and expert discovery, summary judgment, and class certification. ¶¶ 55-75. The fact that Class Counsel secured this recovery just weeks before trial further underscores its significance.

The Settlement Amount also represents a substantial portion of the Classes' total claimed damages if Plaintiffs had fully prevailed at trial. Based on Plaintiffs' expert's calculations, alleged damages for the Location Targeting Class are $626,233,039 under the partial refund model and $439,167,146 under the net profits model, and alleged damages for the Search Bundled Clicks Class are $93,825,861. Thus, the Classes' total alleged damages range from $532,993,007 to $720,058,900, depending on the damages model used for the Location Targeting claims. ¶ 100. The $100 million Settlement represents 13.9% to 18.8% of total claimed damages. This is a significant recovery in any case, but it is particularly significant given the age of the claims and the gauntlet of defenses to both liability and damages that Plaintiffs faced at every stage of the litigation, as detailed in the next section.

### 2. Class Counsel Undertook Substantial Risk in this Action

The risk of the litigation is another key factor in determining a reasonable fee. *See Vizcaino*, 290 F.3d at 1048; *Destefano*, 2016 WL 537946, at *17 (approving requested fee, in part, because the "risks associated with [the] case were substantial"); *AdTrader, Inc. v. Google LLC*, 2022 WL 16579324, at *7 (N.D. Cal. Nov. 1, 2022) (33% fee award justified by "substantial risk" and results).

Nothing about this Action was certain or guaranteed. Beyond the dismissal of Plaintiffs' claims in 2019, there were many other occasions for dismissal which Plaintiffs weathered. The Court could have dismissed the case at summary judgment, or it could have denied Plaintiffs' motion to certify the Classes. *See generally In re Comverse Tech., Inc. Secs. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

With respect to the Location Targeting claim under the UCL, Plaintiffs faced challenges to establishing both liability and damages.

*First*, Google claimed throughout the Action that it disclosed its use of "query parsing"—i.e.,

the placement of ads based on search terms, not the actual location of the internet user—and, therefore, Location Targeting Class Members were not actually misled with respect to query-parsed clicks. ¶ 89. If Google had prevailed on this defense, the Location Targeting Class's damages could have been substantially reduced, as Plaintiffs' experts determined that a significant portion of the Location Targeting Class's damages were associated with query-parsed clicks. *Id.*

*Second*, Google raised a materiality defense, asserting that advertisers were not concerned with the origin of the internet users who clicked on their ads, but rather their return-on-investment. ¶ 90. In support of this defense, Google's expert provided various metrics purporting to establish that advertisers place more value on targeting potential business through "area-of-interest" query-matching as opposed to user location. Although Plaintiffs had arguments and evidence to present regarding the materiality of Google's Settings Screen statements, Google would have likely mounted a formidable defense. *Id.* Finally, Google challenged Plaintiffs' damages models for the UCL claim. ¶ 91.

Plaintiffs also faced significant hurdles at trial with respect to the Smart Pricing breach of contract claim for the Search Bundled Clicks Class.

*First*, Google's primary contention throughout the Action was that Plaintiffs could not accurately identify damaged search-bundled advertisers using Google's archived data, as the ad auctions underlying the AdWords advertising platform were conducted years ago and Google was thus unable to recreate the dynamics of these auctions. ¶ 94. More specifically, Google argued at both summary judgment and class certification that because the auctions could not be recreated, it was possible that the second-place bid in a given auction was smart-priced properly and, thus, the advertiser who won the auction and paid just $0.01 more than the second-place bid was not actually damaged by the alleged 6% overcharge. *Id.*

*Second*, Google challenged the assumption underlying Plaintiffs' damages theory that the alleged 6% overcharge was applied uniformly to all clicks on ads within search-bundled ad campaigns. ¶ 96. Google's damages expert opined that the evidence Plaintiffs proffered to show that

the overcharge was applied across the board did not establish a systemic application of the 6% boost. *Id.*

*Finally*, the presentation of evidence at trial for the Smart Pricing claim would have been difficult given that all of the principal fact witnesses Plaintiffs intended to put on at trial now reside outside of the jurisdiction and are thus beyond the Court's subpoena power. Consequently, Plaintiffs would have had to rely primarily on video deposition testimony. ¶ 98. Plaintiffs' inability to cross examine live witnesses at trial could have been a significant impediment to their ultimate success.

Plaintiffs also faced the risk that a jury would have sided with Google on the merits, and/or that an appellate court would have either terminated or reduced a damages award. While those factors are of course significant to approval of the Settlement itself, *see* Fed. R. Civ. P. 23(e)(2)(C)(i), they are similarly reflective of the risk that Class Counsel took on by devoting tens of thousands of hours of time—not to mention millions of dollars of their own money—in pursuing relief for the Classes. Class Counsel respectfully submit that this risk is appropriately compensated by an upward adjustment to the 25% benchmark. *See, e.g.*, *Vizcaino*, 290 F.3d at 1048 (explaining that "[r]isk is a relevant circumstance" to consider in deciding whether to depart from the benchmark). This factor further supports the requested fee.

### 3. Successfully Prosecuting the Case Against Google Required Skill and High-Quality Work

The quality of Class Counsel's representation is another important factor that supports the reasonableness of a 33% fee. This Action involved unique and complex issues that were successfully prosecuted and managed by Class Counsel. *See Destefano*, 2016 WL 537946, at *17 ("[P]rosecution and management of a complex national class action requires unique legal skills and abilities."). KTMC and NP are nationally recognized firms specializing in complex class action litigation and have long and successful track records in these types of cases throughout the country, including within this Circuit. *See* Exs. 3A-5 & 3B-4. Likewise, JHA, who assisted Class Counsel in appealing the Court's dismissal of the Fourth Amended Complaint, is also a highly experienced litigation firm. *See* Ex. 3C.

11

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

Class Counsel's experience and skill was demonstrated by the effective prosecution of this Action and the record is replete with examples of counsel's high-quality work. As detailed in the Joint Declaration, the Settlement did not come easily. Over the 14 years preceding settlement, Class Counsel prosecuted the Classes' claims against a vigorous defense. In addition to litigating five motions to dismiss and two motions for summary judgment, Class Counsel and JHA successfully appealed the dismissal of the entire case with prejudice. ¶¶ 22-33, 38-39, 48-55, 62-67. Class Counsel also succeeded in obtaining certification of two advertiser Classes over Google's robust opposition and subsequent Rule 23(f) petition to appeal the Court's class certification order. ¶ 68. *See Zepada v. PayPal, Inc.*, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (finding counsel's expertise allowed for result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the case). Moreover, Class Counsel secured relief for the Classes through their efforts alone and were not aided by any related investigations or government enforcement actions. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (justifying multiplier based in part on finding that "counsel faced substantial risk in prosecuting this action" and "did not have the benefit of fruits from underlying government actions"). These extensive efforts put Class Counsel in the best possible position to negotiate a favorable resolution for the Classes.

The quality of opposing counsel is also important in evaluating the services rendered by Class Counsel. *See In re American Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully."). Google, a defendant with virtually unlimited resources, was represented in this Action by Mayer Brown LLP, a nationally prominent defense firm with substantial experience defending consumer class actions. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("[P]laintiffs were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients."). Notwithstanding this formidable opposition, Class Counsel's ability to present a strong case and to

demonstrate their willingness to prosecute the Action through trial helped secure the Settlement. Accordingly, this factor supports Class Counsel's fee request.

### 4. Class Counsel Litigated the Case on a Fully Contingent Basis to the Eve of Trial

The significant risks that Class Counsel shouldered for the benefit of the Classes in prosecuting this Action on a fully contingent basis—*for 14 years*—further support the requested fee award. "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Apple*, 2021 WL 1022866, at *6; *see also Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *In re Washington Pub. Power*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

The risk of no recovery for a class and its counsel in complex cases of this type is very real. There are many examples of plaintiffs' counsel taking on the risk of pursuing claims on contingency, expending thousands of hours and millions of dollars, and receiving no remuneration despite their diligence and expertise. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict after two decades of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation).

Here, for 14 years, Class Counsel committed significant resources, time, and money to prosecute this Action against Google up to the eve of trial, without any payment or any guarantee of a fee. *See Martinelli v. Johnson & Johnson*, 2022 WL 4123874, at *9 (E.D. Cal. Sept. 9, 2022) (33.3% award justified based on contingent risk assumed by counsel in case involving "extensive discovery" and "contested motion practice"). Class Counsel's fees and expenses have always been at risk—this

13

risk was amplified with the Court's dismissal of the Action after eight years of litigation—and contingent on the result achieved and on this Court's approval. If Class Counsel had been unsuccessful in their appeal of the Court's dismissal of the Fourth Amended Complaint, or were unable to overcome Google's challenges to Plaintiffs' claims at summary judgment or class certification, they would have received nothing for their many years of diligent advocacy on behalf of the Classes. The significant contingency-fee risk here supports the 33% fee requested by Class Counsel.

### 5.    The Requested Fee Is In Line With Fee Awards in this Circuit

A review of fee awards in other common fund cases in the Ninth Circuit underscores the reasonableness of the fee requested here. In this Circuit, courts presiding over common fund settlements of comparable size that are reached on the eve of trial or later routinely award 33% (or more) of the class recovery. *See, e.g.*, *Lidoderm*, 2018 WL 4620695, at *4 (awarding 33⅓% of $104,750,000 settlement reached months before trial and noting "a fee award of one-third is within the range of awards in this Circuit"); *Brown et al. v. Wal-Mart Store, Inc.*, No. 5:09-cv-03339-EJD, Dkt. No. 302 at 4-5 (N.D. Cal. Mar. 28, 2019) (Davila, J.) (awarding 33% of $65 million settlement reached one month before trial); *Perez v. Rash Curtis & Assocs.*, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021) (awarding 37% of $75.6 million settlement reached at close of trial); *see also Beaver et al. v. Tarsadia Hotels*, 2017 WL 4310707, at *13, 17 (S.D. Cal. Sept. 28, 2017) (awarding 33% of $51.2 million settlement reached while class certification motion was pending); *Ferris, et al. v. Wynn Resorts Ltd., et al.*, No. 2:18-CV-00479-CDS-BNW, Dkt. No. 442, at 2 (D. Nev. Jan. 31, 2025) (awarding 33⅓% of $70 million settlement reached following class certification).

A 33% fee award is also consistent with awards in other circuits. *See, e.g., Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *11 (S.D.N.Y. Sept. 29, 2022) (awarding 33% of $165 million settlement reached while parties were preparing for trial); *Howard v. Arconic Inc.*, No. 2:17-cv-01057-MRH, Dkt. No. 253 at 2 (W.D. Pa. Aug. 9, 2023) (awarding 33⅓% of $74 million settlement reached at class certification stage); *Peace Officers' Annuity & Ben. Fund of Georgia v. Davita, Inc.*, 2021 WL 2981970, at *2-3 (D. Colo. July 21, 2021) (awarding 33.33% of $135 million settlement

14

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

reached as class certification motion was pending); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4737396, at *1, 4 (S.D.N.Y. Sept. 23, 2019) (awarding 33.33% of $75 million settlement following ruling on summary judgment); *Hale v. State Farm Mut. Auto Ins. Co.*, 2018 WL 6606079, at *16 (S.D. Ill. Dec. 16, 2018) (awarding 33.33% of $250 million settlement following commencement of trial); *Cabot East Broward 2 LLC v. Cabot*, 2018 WL 5905415 at *8 & Dkt. No. 295-1 (S.D. Fla. Nov. 9, 2018) (awarding 33.33% of $100 million settlement following ruling on summary judgment); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12-13 (N.D. Tex. Apr. 25, 2018) (awarding 33.33% of $100 million settlement while parties were preparing for trial); *Haddock v. Nationwide Life Ins. Co.*, No. 01-cv-01552, Dkt. Nos. 598, 601 (D. Conn. Apr. 9, 2015) (awarding 35% of $140 million settlement following ruling on summary judgment); *Std. Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *1-2 (N.D. Ill. Oct. 22, 2014) (awarding 33% of $163.9 million while class certification motion pending); *In re Neurontin Antitrust Litig.*, 2014 WL 12962880, at *5 (D.N.J. Aug. 6, 2014) (awarding 33.33% of $191 million settlement following summary judgment ruling); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 746 (E.D. Pa. June 14, 2013) (awarding 33.33% of $150 million settlement while parties were preparing for trial).

A 33% award is appropriate here given the advanced stage of the proceedings at which the case settled. In contrast to cases that settle either prior to, or in conjunction with, the class certification motion, Class Counsel diligently pursued relief for the Classes for over a year beyond the Court's class certification order and were in full trial preparation mode when the case settled. As noted above, at the time of settlement, Class Counsel had prepared a pretrial order with full exhibit and witness lists and deposition designations, proposed jury instructions, and proposed findings of fact and conclusions of law, and were preparing for witness examinations in earnest. ¶ 76. Class Counsel's resolve to see the case to trial undoubtedly positioned the Classes' claims for a meaningful settlement.

### 6.    No Class Members Have Objected to the Requested Fees

Although not specifically articulated in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding a fee award. *See Knight v. Red Door Salon, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *see also Vataj v. Johnson*, 2021 WL 5161927, at

*7 (N.D. Cal. Nov. 5, 2021) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (alteration in original). Although this motion is, by design, being filed and made available to Class Members prior to the July 20, 2025 objection deadline, the Email Notices advise Class Members (or, in the case of the Settlement Notice Ads, direct recipients to the Settlement Website that advises Class Members) of Class Counsel's intent to apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Fund. *See* Weisbrot Decl., Exs. A-D. The notices further advise Class Members of their right to object to this request. To date, no objections have been received. ¶ 133.

In addition, Plaintiff Cabrera, who took an active role in the Action and closely supervised the work of Class Counsel for nearly seven years, fully supports approval of the requested fee based on the result obtained for the Classes, the work performed by Class Counsel, and the risks and challenges undertaken by Class Counsel in litigating the Action. *See* Cabrera Decl., ¶¶ 17-18.

### D.    A Lodestar Cross-Check Confirms Reasonableness of the Requested Fee

As noted above, "[a]s a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Extreme Networks, Inc. Secs. Litig.*, 2019 WL 3290770, at *10 (N.D. Cal. July 22, 2019) (noting that "lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Under the lodestar method, courts routinely award positive multipliers to account for the contingent nature or risk involved in a case and the quality of the attorneys' work. *See Vizcaino*, 290 F.3d at 1051 (noting "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases").

#### 1.    The Number of Hours Devoted to the Action Was Reasonable

As detailed in the Joint Declaration and supporting declarations, Class Counsel performed a significant amount of work in this Action. Over the course of this 14-year-old case, Class Counsel, among other things: (i) diligently investigated the legal claims alleged in the Action; (ii) filed six complaints and opposed five motions to dismiss; (iii) completed fact and expert discovery, including

16

the review of more than 900,000 pages of documents and multiple terabytes of data produced by Google, and taking or defending 41 fact and expert depositions; (iv) briefed two motions for summary judgment and two motions to exclude expert opinions under *Daubert*; (v) successfully appealed the dismissal of this Action to the Ninth Circuit; (vi) procured class certification for two Classes of advertisers following two rounds of briefing and a full-day hearing; (vii) oversaw the extensive Class Notice campaign; (viii) prepared in earnest for trial; and (ix) engaged in extensive settlement negotiations, including six mediations with four different mediators. ¶¶ 8, 17-82. In total, through April 17, 2025, Class Counsel and JHA have devoted more than 39,000 hours of attorney and other professional support staff time to the Action for the benefit of the Classes. ¶¶ 120, 124.[4] The total lodestar, derived by multiplying the hours each attorney and professional support staff employee spent on the Action by their historical hourly rates, is $22,243,931.75. *See id.*[5]

### 2. Class Counsel's Hourly Rates Are Reasonable

A reasonable hourly rate is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Fowler v. Wells Fargo Bank, N.A.*, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019).The hourly rates used in calculating Class Counsel's lodestar are the firms' historical hourly rates and span the course of 14 years. While counsel have submitted rates as high as $1,300 per hour for partners, $750 per hour for other attorneys, $495 per hour for paralegals, and $450 per hour for in-house investigators, most of the hourly rates fall well below these amounts. ¶ 123 n.9; *see also* Exs. 3A-1, 3B-1 & 3C-1. Counsel's hourly rates are within

---

[4]    Since April 17, 2025, Class Counsel have spent an additional 135 hours on this case (*see* Exs. 3A & 3B) and will continue to perform work on behalf of the Classes overseeing the Settlement Administrator and the distribution of Settlement Payments to Participating Class Members. No additional attorneys' fees will be sought for this work.

[5]    Although appropriate to calculate lodestar based on current hourly rates (*see Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)), counsel have utilized historical rates in calculating their lodestar here given the length of time that has passed since the Action's inception in 2011.

the range of reasonable rates for attorneys and other professionals working on complex class action litigation in this District. *See, e.g.*, *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving rates of up to $1,195 for partners and $850 for associates); *In re Facebook Internet Tracking Litig.*, 2022 WL 16902426, at *12 (N.D. Cal. Nov. 10, 2022) (finding rates up to $1,200 "reasonable and commensurate with those charged by attorneys with similar experience in the market"); *Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding rates of $760 to $1,325 for partners to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee using "billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").

By way of comparison, Google's Counsel, Mayer Brown LLP, reported hourly rates of $850 to $1,200 for associates and $1,685 to $1,970 for partners in a recent fee application. *See In re Ligado Networks LLC, at al.*, No. 25-10006 (TMH) (Del. Br. May 5, 2025). These rates exceed Class Counsel's hourly rates.

### 3.    The Multiplier Is Justified Given the Results Obtained and the Contingent Nature of the Representation

Under the lodestar method, courts routinely award positive multipliers to account for the contingent nature or risk involved in a case and the quality of the attorneys' work. *See Destefano*, 2016 WL 537946, at *18 ("Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented."); *Vizcaino*, 290 F.3d at 1051 (noting "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases").

Based on their collective hours and historical hourly rates, Class Counsel's and JHA's total lodestar amounts to $22,243,931.75. ¶ 124. Accordingly, the requested fee of 33% of the Settlement Fund, which equates to $33 million (before interest), represents a multiplier of approximately 1.48 on counsel's lodestar. *Id.* Such a multiplier is well within the range of multipliers regularly approved

18

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

by courts in this Circuit. *See Vizcaino*, 290 F.3d at 1043, 1051 (noting "most" multipliers are in the range of 1 to 4, but citing numerous examples of higher multipliers); *Volkswagen*, 2017 WL 1047834, at *5 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Destefano*, 2016 WL 537946, at *21 (approved 1.7 multiplier was "towards the lower end of the Ninth Circuit's scale"); *Ferris, et al. v. Wynn Resorts Ltd., et al.*, No. 2:18-CV-00479-CDS-BNW, Dkt. No. 438 (D. Nev. Dec. 23, 2024) (awarding 33⅓% of $70 million settlement, representing 1.98 multiplier); *Facebook Internet Tracking*, 2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) (Davila, J.), *aff'd sub nom. In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985 (9th Cir. Feb. 21, 2024) (awarding 29% of $90 million settlement, representing 3.28 multiplier); *Brown*, No. 5:09-cv-03339- EJD, Dkt. No. 302 at 4-5 (awarding 33% of $65 million settlement, representing 2.2 multiplier); *Perez*, 2021 WL 4503314, at *5 (awarding 37% of $75.6 million settlement, representing 4.8 multiplier); *Tarsadia Hotels*, 2017 WL 4310707, at *13, 17 (awarding 33% of $51.2 million settlement, representing 2.89 multiplier).

Here, given the extensive effort required to prosecute this Action for the past 14 years, the risks and complexity of the issues litigated, and the excellent result obtained for the Classes through the Settlement, the lodestar cross-check and resulting multiplier are more than reasonable, fully justified and should be approved.

## III. PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Class Counsel also request payment of $3,859,836.34 from the Settlement Fund for expenses reasonably incurred in prosecuting the Action. These expenses are properly recovered by counsel. *See Fleming*, 2022 WL 2789496, at *9 ("Attorneys who create a common fund for a class are entitled to reimbursement of reasonable litigation costs from that fund."); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel may recover "those out-of-pocket expenses that would normally be charged to a fee paying client"); *Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) (granting requests for costs consisting of "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation

19

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

charges, and travel costs"). A breakdown of Class Counsel's and JHA's Litigation Expenses by category is set forth in Exhibit 5 to the Joint Declaration.[6]

The largest component of Class Counsel's expenses by far (i.e., $2,769,009.49, or approximately 72% of total expenses) was the cost of Plaintiffs' experts and consultants, including Saul Solomon (of Berkeley Research Group, LLC) and Dr. James L. Gibson (Professor at Washington University in St. Louis), and their support staff. ¶ 138. As detailed in the Joint Declaration, Class Counsel worked extensively with these experts and their retention and work was critical to the prosecution and resolution of the Action, as their expertise allowed Class Counsel to fully frame the issues, make a realistic assessment of provable damages, structure resolution of the claims, and develop a fair and reasonable method for allocating the settlement proceeds to the Classes. ¶¶ 139-140.

More specifically, Class Counsel consulted with Mr. Solomon regarding the calculation of damages. ¶ 139. During the course of the Action, Mr. Solomon prepared damages reports in connection with class certification and merits discovery and was deposed three times (twice in 2018 and once in 2024). *Id.* Class Counsel also consulted with Mr. Solomon in preparation for settlement negotiations, and Mr. Solomon and his associates assisted Class Counsel in developing the proposed Allocation Methodology for calculating Class Member damages based on the data produced by Google in this Action. *Id.* Class Counsel consulted with Dr. Gibson regarding the analysis of Google's click data. ¶ 140. Dr. Gibson prepared reports on this data, both in connection with class certification and merits discovery and was deposed three times (twice in 2018 and once in 2024). Class Counsel also consulted with Dr. Gibson in preparation for settlement negotiations. *Id.*

The second largest component of Class Counsel's expenses (i.e., $377,535.64, or approximately 10% of total expenses) was incurred for travel. ¶ 141. During the 14 years this Action was pending, Class Counsel incurred out-of-town travel-related expenses (e.g., transportation, lodging and meals) in connection with attendance at Court hearings, depositions and mediations. *Id.*

---

[6]     These expenses are also set forth in the individual firm declarations attached as Exhibits 3A, 3B and 3C to the Joint Declaration.

For example, depositions in this Action took place in Palo Alto, California; Boston, Massachusetts; Cape Coral, Florida; Fayetteville, Arkansas; Houston, Texas; New York, New York; Pittsburgh, Pennsylvania; Kitchener, Ontario, Canada; and London, England. *Id.* Another large component of Class Counsel's expenses ($87,676.84) was incurred for the Class Notice campaign conducted following the Court's certification of the Classes. ¶ 142. Class Counsel and JHA also incurred a total of $154,364.50, or approximately 4% of their expenses, for the costs of online legal and factual research, which was necessary to, among other things, conduct the factual investigation and identify potential witnesses, prepare the six complaints, research the law pertaining to the claims asserted in the Action, oppose Defendants' five motions to dismiss and two summary judgment motions, prepare Plaintiffs' motion for class certification, and prepare Plaintiffs' appellate briefs. *Id.*

In addition to the foregoing expenses, counsel also incurred: (i) $55,362.50 for Plaintiffs' share of the charges related to the sessions with three private mediators, Mr. Wulff, Judge Phillips, and Judge Folsom; (ii) $15,410.36 for copying/printing; and (iii) $172,673.84 for court reporters, videographers, and transcripts in connection with the numerous depositions/hearings in the Action. ¶¶ 143-144; *see also* Exs. 3A, 3B & 3C. The other expenses for which Class Counsel seek payment are the types of expenses necessarily incurred in litigation and routinely charged to clients billed by the hour, including, among others, court fees, process servers and delivery expenses. ¶ 144.

The notices inform recipients that Class Counsel would seek Litigation Expenses in an amount not to exceed $4.2 million. ¶ 103; Weisbrot Decl., Exs. A, B & D. The total amount of expenses requested is below the maximum expense amount set forth in the notices and, to date, there have been no objections. ¶ 134. As such, counsel's expenses are reasonable and should be approved.

## IV.   THE REQUESTED SERVICE AWARD TO PLAINTIFF CABRERA IS WARRENTED AND SHOULD BE APPROVED

Finally, Class Counsel request that the Court authorize a service award in the amount of $20,000 to Plaintiff Cabrera. The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted." *Apple*, 50 F.4th at 785-87. Indeed, "[s]ervice awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities and risks of representing the class and recognize the time and effort spent in the case." *Nitsch v.*

21

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES & SERVICE AWARD CASE NO. 11-CV-1263-EJD

*DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *14 (N.D. Cal. June 5, 2017). In determining the amount of a service payment, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . and the amount of time and effort the plaintiff expended in pursuing the litigation." *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *8 (N.D. Cal. May 11, 2018).

Here, Mr. Cabrera was willing to step forward to represent and protect the interests of the Classes. Over the past seven years, Mr. Cabrera: (i) received and reviewed periodic updates and other correspondence from Class Counsel regarding developments in the Action; (ii) reviewed significant Court submissions and other case documents, including three amended complaints; (iii) participated in discovery efforts, including responding to 62 separate document requests, 5 interrogatories, and 27 requests for admission; (iv) prepared for and testified at three depositions, totaling more than 12.5 hours on the record; and (v) traveled from Florida to California in August 2018 and July 2022 to attend class certification hearings. *See* Ex. 1 ¶¶ 7-13. In addition, Mr. Cabrera consulted with Class Counsel regarding the possible resolution of the Action at various times throughout the case and attended three of the Parties' mediation sessions—the April 22, 2021 mediation with Judge Folsom and the May 16, 2024 and December 19, 2024 settlement conferences with Judge DeMarchi—and reviewed the Settlement Agreement and supporting documents. *Id.* ¶ 14. Mr. Cabrera conservatively estimates spending 150 hours on these efforts. *Id.* ¶ 21.

It is also worth noting that Mr. Cabrera (along with his company, RMC) is the only representative plaintiff for the Classes in this Action. *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *17 & n.8 (N.D. Cal. April 22, 2010) (approving $20,000 service award to class representative and noting, "unlike many class actions, where there are several class representatives, each of whom are entitled to incentive awards, here there was just one"). Mr. Cabrera's commitment to hold Google accountable to all Class Members was essential to the successful prosecution of this Action. Because of his efforts, numerous Class Members will be able to recoup a portion of their losses resulting from the conduct alleged in the Action.

For the foregoing reasons, a service award of $20,000 is reasonable here, and courts in this Circuit have approved similarly-sized awards in cases where class representatives have participated in ways comparable to Mr. Cabrera's efforts. *See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) ("Awards of $20,000 each" for assisting in litigation, preparing for and having their depositions taken, searching for and producing documents spanning many years, and conferring with counsel throughout the litigation are justified and "consistent with service awards in other cases."); *see also Brown*, No. 5:09-cv-03339-EJD, Dkt. No. 302 at *4 (approving $25,000 service award to named plaintiff); *Perez*, 2021 WL 4503314, at *3 (same); *Tarsadia Hotels*, 2017 WL 4310707, at *8 (approving four $50,000 service awards); *In re High-Tech Empl. Antitrust Litig.*, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (approving service awards of $80,000 and $120,000, in addition to $20,000 award to each for prior settlement). Moreover, if approved by the Court, the $20,000 service award to Mr. Cabrera would constitute a mere 0.0002% of the Settlement Amount and will have a minimal impact on the amount of Settlement proceeds available for distribution to Class Members. *See Online DVD-Rental*, 779 F.3d at 947-48 (approving service awards in part because they amounted to 0.17% of settlement amount); *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (approving service awards amounting to 0.36% of settlement amount).

The notices advise Class Members that Plaintiffs may seek a Service Award in consideration of their representation of the Classes in a total amount not to exceed $20,000. To date, there have been no objections to this request. ¶ 146. Class Counsel thus respectfully request that the Court approve a $20,000 service award to Plaintiff Cabrera for the time and effort he devoted in prosecuting the Classes' claims and achieving the substantial Settlement for the Classes.

## V.    CONCLUSION

For the reasons stated herein and in the Joint Declaration, Class Counsel respectfully request the Court award attorneys' fees in the amount of 33% of the Settlement Fund, approve payment of

23

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

1   Class Counsel's Litigation Expenses in the amount of $3,859,836.34, and approve a Service Award

2   to Plaintiffs in the amount of $20,000.

3   Dated: June 13, 2025                          Respectfully submitted,

4                                                 */s/ Matthew L. Mustokoff*

5                                                 **KESSLER TOPAZ**
                                                   **MELTZER & CHECK, LLP**

6                                                 Joseph H. Meltzer (*Pro Hac Vice*)
                                                  Matthew L. Mustokoff (*Pro Hac Vice*)
7                                                 Margaret E. Mazzeo (*Pro Hac Vice*)
                                                  Dylan Isenberg (*Pro Hac Vice*)
8                                                 280 King of Prussia Road
                                                  Radnor, PA 19087
9                                                 Telephone: (610) 667-7706
                                                  Facsimile: (610) 667-7056
10

11                                                -and-

12                                                Stacey M. Kaplan (Bar No. 241989)
                                                  One Sansome Street, Suite 1850
13                                                San Francisco, CA 94104
                                                  Telephone: (415) 400-3000
14                                                Facsimile: (415) 400-3001

15

16                                                **NIX PATTERSON, LLP**
                                                  Jeffrey J. Angelovich (*Pro Hac Vice*)
17                                                Michael G. Angelovich (*Pro Hac Vice*)
                                                  Bradley E. Beckworth (*Pro Hac Vice*)
18                                                Andrew G. Pate (*Pro Hac Vice*)
                                                  Jessica Underwood (*Pro Hac Vice*)
19                                                8701 Bee Cave Road
                                                  Building 1, Suite 500
20                                                Austin, TX 78746
                                                  Telephone: (512) 328-5333
21                                                Facsimile: (512) 328-5335

22

23                                                *Counsel for Plaintiffs and the Classes*

24

25

26

27

28

24

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
LITIGATION EXPENSES & SERVICE AWARD
CASE NO. 11-CV-1263-EJD

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on June 13, 2025, I electronically filed the foregoing with the Clerk of

3

the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

4

I certify under penalty of perjury under the laws of the United States of America that the

5

foregoing is true and correct. Executed on June 13, 2025.

6

7

*/s/ Matthew L. Mustokoff*

8

Matthew L. Mustokoff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28