UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| RENE CABRERA and RM CABRERA COMPANY, INC, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 11-cv-1263-EJD <br><br> DECLARATION OF STEVEN WEISBROT |

Case No. 11-CV-1263-EJD

I, **Steven Weisbrot, Esq.**, declare under penalty of perjury and state as follows:

1. I am the President and Chief Executive Officer of the class action notice and settlement administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, unbiased legal notification and settlement administration plans. This declaration is based upon my personal knowledge and information gathered through the collaborative efforts of my team at Angeion.

2. My personal credentials (as well as the credentials and administration experience of Angeion) were provided in my prior declaration outlining the proposed Notice Plan for the Settlement filed with the Court on March 27, 2025 ("Notice Plan Declaration") (Dkt. No. 877-3).

3. This declaration responds to questions the Court raised during the August 21, 2025 final approval hearing concerning a number of issues relating to the prepaid digital payment cards (also known as "E-Mastercards") offered as a payment option in this Settlement[1] and the business relationship between Angeion and the pre-paid digital payment solutions vendor, Blackhawk Engagement Solutions ("Blackhawk"),[2] that makes the pre-paid digital payment card option available to the Settlement Class at no charge to the Settlement Account apart from that disclosed by Angeion.

4. Below I set forth the background of Angeion's role in this case, more information regarding the prepaid digital payment cards (including Angeion's relationship with Blackhawk), and additional information requested by the Court.

5. As explained further below, Angeion was able to provide a competitive, and cost-effective bid for the administration services in this case, in part, as a result of its arrangement with Blackhawk. Thus, the arrangement set forth below ultimately saves the Class money by reducing the overall administrative costs, thereby preserving more of the Settlement Account for the Class.

**A.    Background**

6. The Settlement achieved by the Parties will involve the distribution of a non-reversionary cash settlement common fund in the amount of $100,000,000.

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as in the Class Action Settlement and Release Agreement (ECF No. 877-1).
[2] https://blackhawknetwork.com/solutions/payments.

7. As part of the Court's April 16, 2025 Preliminary Approval Order (ECF No. 882), the Court appointed Angeion to serve as the Settlement Administrator.

8. As Settlement Administrator, Angeion was directed to effectuate the Court-approved Notice, process claims, and otherwise administer the Settlement in coordination with Class Counsel and Google's Counsel and pursuant to the terms of the Settlement Agreement.

9. In consultation with counsel for the Parties and pursuant to the Notice Plan approved by the Parties and the Court, Angeion provided comprehensive notice to the Settlement Class and has been evaluating and processing claims, including approving claims for payment, notifying claimants of deficient claims, denying invalid claims and detecting fraudulent claims.

10. Angeion has complied, and is complying, with all requirements of the Court's Preliminary Approval Order.

B. **The Pre-Paid Digital Payment Card Option Presented to Settlement Class Members**

11. Pursuant to the settlement agreement adopted and ordered by the Court, the Class Members are able to select from a variety of payment options for distribution, including paper checks and a number of different digital payment options, including Venmo, Direct Deposit, and a virtual pre-paid Mastercard.

12. The Court-approved Notice identified each option at Paragraph 32:

> **WHAT DO I NEED TO DO TO RECEIVE A PAYMENT?**
>
> 32. You are eligible to receive a Settlement Payment, if the proposed Allocation Methodology set forth below entitles you to a potential Settlement Payment of at least $1.00. You must submit a completed Payment Form to the Settlement Administrator to receive a Settlement Payment. You can fill out the Payment Form online at www.AdWordsClicksClassAction.com. You can also print out the Payment Form at www.AdWordsClicksClassAction.com and mail your completed form to the Settlement Administrator. **Payment Forms must be completed and submitted by July 20, 2025.** You may elect to receive your Settlement Payment by physical check, virtual prepaid MasterCard, Venmo, or ACH transfer (direct deposit). ACH transfer (direct deposit) may only be requested via online submission. If you are eligible for a Settlement Payment and do not select a payment method on the Payment Form, you will receive the default payment method (i.e., the virtual prepaid MasterCard).

13. The various digital payment options are reliable, secure, and meet evolving claimant preferences and contemporary payment methodologies.

14. Consistent with the Notice, the Settlement Website offers three digital distribution methods from which Class Members may choose—a pre-paid Mastercard, Venmo, and Direct Deposit. The options are presented to Class Members on the "Payment Selection" page of the on-line claim submission portal portion of the Settlement Website as follows:

**PAYMENT SELECTION**

IMPORTANT: Only one payment will be issued per Customer ID/Account Number.
To the extent multiple Payment Forms are submitted for the same Customer ID/Account Number, the Settlement Administrator will take reasonable steps to determine the primary Payment Form and ensure that only one payment is issued.

**Payment Options**

mastercard.
Most widely accepted virtual prepaid card
Use with Apple Pay, Google Pay, Samsung Pay
**GET A PREPAID MASTERCARD**

venmo
No bank account required
**USE VENMO**

DIRECT DEPOSIT via ACH
Direct to your bank account
**USE DIRECT DEPOSIT**

If you prefer to receive a paper check instead of a faster and more convenient option listed above, click this link.

15. Though the claim period does not close until October 15, 2025, over 48,000 claims have been submitted as of today with regard to a class period that goes back from January 1, 2004 through March 22, 2011 for the Location Targeting Class and June 1, 2009 through December 13, 2012 for the Search Bundled Clicks Class. Paper checks have proven to be the most popular choice so far, with approximately 65% of claimants selecting the payment method, followed by approximately 21% selecting the pre-paid Mastercard, approximately 8% selecting Venmo, and approximately 6% selecting Direct Deposit.

16. A pre-paid digital payment card option provides an important alternative to other payment options because, among other things, it serves the interests of the unbanked and underbanked members of the Settlement Class. According to a 2023 report by the Federal Reserve,

4.2 percent of U.S. households, representing about 5.6 million households, were "unbanked," meaning no one in the household had a checking or savings account at a bank or credit union.[3]

17. A household is considered "underbanked" if it had a checking or savings account at a bank or credit union but in the past 12 months had used at least one of eight nonbank financial services. In 2023, 14.2 percent of adults, representing about 19 million households, were "underbanked," in that they have a bank account but also, and more often or more easily, use an alternative financial service product.

18. The unbanked and underbanked rates are higher among lower-income households; less-educated households; Black, Hispanic, and American Indian or Alaska Native households; working-age households with a disability; households with income that varied a lot from month to month; and single-parent households.

19. The pre-paid digital payment card product is also the easiest to request by Class Members. To request a pre-paid digital payment card, Class Members must provide an email address. No bank information or other digital payment account information is required. Moreover, the card option makes funds available to Class Members more promptly than paper checks (which must be sent via U.S. mail). Even though this means of funds delivery is easiest for class members, Angeion's robust fraud-detection procedures are applicable to all claims, regardless of the choice of payment mechanism selected by the claimant.

20. The pre-paid digital payment card product offered to Class Members in this case has many of the features of pre-paid digital payment cards offered outside the class action context, but also includes certain additional consumer-friendly features designed specifically for class action usage, including:

    a. No activation or load fees;

    b. The ability of the cardholder to transfer balances at any time and at no cost to the cardholder; and

    c. No inactivity fees to the cardholder until after 12 consecutive months of

---

[3] Federal Deposit Insurance Corporation, 2023 FDIC National Survey of Unbanked and Underbanked Households, https://www.fdic.gov/analysis/household-survey/index.html (last visited August 22, 2025).

inactivity; and,

    d. Refund of inactivity fees if the cardholder re-engages through a use of value on the card following service fee assessment.

21. According to the 2025 Annual Report on Digital Payments in Class Actions and Mass Torts, pre-paid digital payment card products like the one offered to Settlement Class Members were the most popular digital payment methods chosen by class members across class actions and mass torts in 2024.[4]

**C.  Inactivity and Other Fees Were Disclosed to Class Members, Once Loaded the Funds Belong to Class Members and Angeion Receives No Portion of Inactivity Fees or Unused Card Balances**

22. Angeion directs the distribution of funds from the Settlement Account to Class Members via digital payment options through enterprise-wide agreements with two vendors: Digital Disbursements[5] and Blackhawk.

23. Digital Disbursements is responsible for establishing and implementing the payment election feature on the Settlement Website that allows Class Members to select their preferred payment method from the menu of digital payment options. At the time of distribution, Digital Disbursements will facilitate digital payments to Settlement Class Members through Venmo and Direct Deposit.

24. Blackhawk is the digital payment solutions vendor engaged to facilitate and manage pre-paid digital payment cards issued by the bank to Class Members.

25. I am aware that issues have been raised about the type of pre-paid digital payment cards made available to Class Members in this case, including because of recently filed litigation and press reports concerning whether digital payment card issuers may take unused balances into revenue and share some portion of that alleged revenue with settlement administrators.

26. Angeion does not receive any portion of unused digital payment card balances from the digital payment card issuer or any other source.

---

[4] https://www.westernalliancebankcorporation.com/sites/default/files/2025-04/2025-digital-payments-research-report.pdf, at 18.
[5] https://www.digitaldisbursements.com/.

27. During the August 21, 2025, hearing, the Court mentioned the term "breakage," which from context relates to unused funds on a digital payment card or gift card. It is my understanding that, under the current distribution plan approved by the Court, once funds are withdrawn from the class Settlement Account and the cardholder is successfully notified that a pre-paid digital payment card in the name of that cardholder is available for use, the funds belong to the cardholder. Upon receipt, Class Members can use their digital payment card to complete purchases wherever virtual Mastercard is accepted. Class Members also can choose to transfer the existing balance loaded to their digital payment card to another account at any time (via Zelle, ACH, Venmo, or PayPal) for no fee.

28. It is my further understanding that Class Members retain the full value of their balances at all times, apart from the potential imposition of certain fully disclosed fees and the state-law-required escheatment process described below.

29. In accordance with my understanding of generally applicable laws and regulations, the Settlement Website disclosed to Class Members that after a 12-month period of inactivity on a digital payment card, the digital payment card will incur inactivity service fees from the card issuer on any remaining balance until activity resumes.

30. The Settlement Website describes information relating to the E-Mastercard, including the following information concerning inactivity and other fees:

**Prepaid Mastercard® Fee Disclosure and FAQs**

DISCLOSURE                                    FAQ

| Monthly fee | Per Purchase | ATM Withdrawal | Cash Reload |
|---|---|---|---|
| $0.00 | $0.00 | NA | NA |

| | |
|---|---|
| ATM Balance Inquiry (in network or out-of-network) | NA |
| Customer service (automated or live agent) | $0.00 |
| Inactivity (after 12 months with no transactions) | $0.95 per month |

**We charge 3 other types of fees.** Here are some of them

| | |
|---|---|
| Foreign Transaction Fee | 2% |
| Card Replacement Fee, standard delivery | $6.95 |

No overdraft/credit feature.

Register your card for FDIC insurance eligibility and other protections. For general information about prepaid accounts visit *cfpb.gov/prepaid*. For details and conditions for all fees and services call **844-340-1929**

CLOSE

31.  Class Members who elect to receive a digital payment card can avoid inactivity service fees simply by using the value of the card at least once every twelve months or by transferring all or part of the value of the card to another account via Zelle, ACH, Venmo, or PayPal.

32.  A "Card Replacement Fee" only would be incurred by Class Members who choose to request a physical card as opposed to using the virtual card provided by email. A "Foreign Transaction Fee" only would be incurred by Class Members who choose to use the card for foreign transactions.

33.  It is also my understanding that any inactivity service fees charged against the balance on a dormant pre-paid digital payment card will be restored and added back to the value of the card if Blackhawk determines, through a periodic review of account activity, that the Class Member re-engages through a use of value on the card following service fee assessment. This will be done automatically by Blackhawk. This feature, in addition to those noted above, makes the pre-paid digital card offered as a payment option to Class Members more consumer-friendly than other types of payment or gift cards available on the market.

34.  In any case, no portion of any inactivity or other service fee applied to any Class Member's card is paid to Angeion.

35. Blackhawk is responsible for managing any unspent balances at the conclusion of any applicable dormancy period under state law. It is my understanding that any such balances escheat to the applicable state to the extent required under the state's unclaimed property laws, in the name of the cardholder (and thus subject to recovery from the state by that cardholder) and are not retained by Blackhawk.

36. In other words, it is my understanding that unused funds remaining on any digital payment card will always remain the property of the cardholder and will at no time revert to the Settlement Account, to Blackhawk, or to Angeion. The Class Members thus have access to the full value of their pre-paid digital payment card subject to the disclosed inactivity and other fees.

37. Moreover, because the funds on the pre-paid digital payment cards remain the property of the receiving Class Member, there is no unused balance to revert to a *cy pres* recipient.

38. Under the current distribution program approved by the Court, at the time of distribution, Class Members who have elected the digital payment card option will receive an email with additional information about their digital payment cards. That email can be customized consistent with any updated communications plan that counsel for the Parties and the Court may direct, including basic information about the use of their card, such as a reminder that balances on their card can be transferred as described above and that balances will be subject to inactivity fees if they do not use their card for more than a year.

39. The timing and/or extent to which Class Members use their funds received on a prepaid card or by any other payment method has no impact on Angeion's revenue or the compensation from the Settlement Account in this Settlement.

  **D.**   **Angeion Accurately Disclosed All Charges to the Settlement Account**

40. Following a competitive bidding process among four potential administrators, Class Counsel proposed Angeion as the Settlement Administrator. ECF No. 877 at 20.

41. In the Motion for Preliminary Approval (ECF No. 1096), Class Counsel stated that they "have found Angeion to be a reliable administrator for these types of cases, with competitive pricing compared to similar administration firms." ECF No. 877 at 20.

42. As part of the bid process, Angeion provided various Schedules of Fees and Charges

reflecting its estimates of the approximate cost to the Settlement Account to provide notice and administration services for the Settlement based on certain core assumptions.

43. In my Notice Plan Declaration, I addressed the anticipated charges for the cost of administration, stating: "the cost to provide notice to the Classes in accordance with the Notice Plan outlined herein, and to provide Settlement administration services pursuant to the terms of the Settlement will be approximately $897,972.10. The pricing details comprising this estimate are competitively sensitive. I am attaching these details to this Declaration as Exhibit 1. Because it contains extremely sensitive proprietary, financial, and business information, the disclosure of which would create a substantial risk of serious harm that could not be avoided by less restrictive means, Angeion is designating the documents and information as "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY" under the terms of the Stipulated Protective Order in this matter, ECF 103, and providing them for the Court's review under seal.

44. In the Motion for Preliminary Approval (ECF No. 877), Class Counsel stated that the anticipated charges for issuing notice and administering the settlement were "necessary to effectuate the Settlement and are reasonable in relation to the value of the Settlement (the estimated Notice and Administrative Costs represent less than 1% of the Settlement Amount)." ECF No. 877 at 23.

E. **Angeion's Preexisting Contract with Blackhawk**

45. Blackhawk is a California-based distributor of third-party branded payment cards, gift cards, and other payment solutions. Its website reports that Blackhawk processes annual transactions in excess of $28 billion.[6]

46. Angeion has found Blackhawk to be a proven, established, and reliable vendor for large, complex class distributions. Using established companies with strong operational abilities like Blackhawk is important to maximize the privacy and financial information of Class Members and for the smooth distribution of settlement funds.

47. Prior to Angeion's engagement as Settlement Administrator for this case, Angeion and Blackhawk negotiated an arm's length master service contract intended to set out the general

---

[6] https://blackhawknetwork.com/company.

terms for future engagements in which Angeion subcontracts with Blackhawk to provide a pre-paid digital payment card option. Blackhawk and Angeion have since executed amendments to the master services agreement (the agreement, as amended, the "Statement of Work").

48. Among other terms, the Statement of Work includes a representation by Blackhawk warranting that it is responsible for compliance with all applicable statutes, rules, laws, and regulations governing: (i) the assessment of fees associated with such pre-paid digital payment cards; and (ii) any unclaimed property laws applicable to balances remaining on such cards.

49. Without Angeion's enterprise-level arrangements with Blackhawk and other vendors, Angeion would incur higher costs and enjoy less flexibility to offer competitive pricing for its services and tailored solutions meeting the unique needs of a given settlement (including this Settlement), to the detriment of settlement class members. Angeion would also not be able to negotiate for more pro-consumer pre-paid card features. These types of master service contracts are common in the financial-services industry.

50. Angeion continuously surveys the market to identify alternative providers for its vendor needs, including digital payment cards. This includes assessment of potential vendors' reliability in, among other things, meeting settlement deadlines, making successful distributions to class members, safeguarding class member data, and providing competitive pricing. Angeion has not identified any provider able to offer a similarly reliable and consumer-friendly product on terms that are as competitive as those offered by Blackhawk. For these reasons, we recommended and continue to recommend using Blackhawk in this Settlement.

51. Because Angeion and Blackhawk deal with each other at arm's length, I do not have personal knowledge of the details of Blackhawk's underlying business model. However, Angeion's ongoing business relationship with Blackhawk and the volume of repeat business between them has allowed Angeion to negotiate favorable terms to provide efficient and cost-effective distribution services. In particular, pursuant to its preexisting Statement of Work with Angeion, Blackhawk makes its sophisticated digital payment card option available to Class Members at no charge to the Settlement Account, and without charging for certain other costs and services Blackhawk would potentially otherwise charge.

52. Pursuant to the Statement of Work, Angeion generates revenue in connection with the settlements for which Blackhawk acts as Angeion's subcontractor. That agreement applies to the Settlement in this case. The revenue generated by Angeion does not result in any increased cost to the Settlement Account and does not reduce the funds available to be distributed to the Class Members.

53. The timing and/or extent to which Class Members who elect the digital payment card actually use the funds on the card has no impact on Angeion's compensation from Blackhawk. In other words, Angeion's remuneration from Blackhawk is in no way dependent on Class Members using the digital payment cards they receive as part of the Settlement, and Angeion intends to work with the Parties to ensure that as many Class Members as possible who have already elected to receive digital payment cards use them.

54. The applicable agreement between Angeion and Blackhawk for this Settlement is one in a series of successive agreements that have been amended over time. In order to provide the Court with historical information about the terms of agreements between Blackhawk and Angeion, I summarize the terms of those agreements and explain the chronology of successive amendments in the Appendix Declaration of Steven Weisbrot, attached hereto as Appendix A. The successive agreements between Angeion and Blackhawk, including the currently operative agreement, are attached to Appendix A as exhibits.



[Redacted table and paragraphs 1–24]

**F.    Angeion's Bids for This Settlement**

60.    Angeion's bid to provide settlement administration services for this Settlement was submitted in January 2025.

61.    One of the assumptions underlying Angeion's bid and pricing model was that its

estimates and pricing were premised upon proceeding with the current specified menu of payment options.

62. One of the reasons for this is that Angeion is able to offer many of its highly labor and cost-intensive administration services in this Settlement (such as the comprehensive notice program that the Court approved and the management of all claims) at a more competitive or discounted price based on Angeion's expectation that the Settlement would be approved and that some percentage of class members would elect the pre-paid MasterCard, at which point Angeion's business relationship with Blackhawk would allow it to generate additional revenue from Blackhawk at no additional cost to the Settlement Account.



64. Anticipated revenue to Angeion from Blackhawk thus enabled Angeion to offer and deliver administrative services for the charges Angeion has described in its bid and other communications regarding charges to the Settlement Account.

I declare under penalty of perjury that the foregoing is true and correct.

                                                                                             _____
                                                                                             Steven Weisbrot, Esq.

Dated: August 22, 2025

# EXHIBIT 1

# HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED