1

2

3

4                  UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                        SAN JOSE DIVISION

7

8    RENE CABRERA, et al.,                  Case No.  5:11-cv-01263-EJD

9                  Plaintiffs,               **ORDER GRANTING MOTION FOR**
                                             **FINAL SETTLEMENT APPROVAL;**
10            v.                             **GRANTING IN PART MOTION FOR**
                                             **ATTORNEYS' FEES, EXPENSES,**
11   GOOGLE LLC,                             **AND SERVICE AWARD**

12                  Defendant.               Re: Dkt. Nos. 889, 890

13          Before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement and

14   Motion for Attorney Fees, Expenses, and Service Awards.  Mot. for Final Approval, ECF No. 889;

15   Mot. for Fees, ECF No. 890.  The Court held a Fairness Hearing on August 21, 2025, where all

16   parties were heard.  ECF No. 895.  The Court received no written objections, and no objectors

17   appeared at the Fairness Hearing.  The Court also held a status conference on August 25, 2025, to

18   discuss new information discovered regarding financial arrangements with the Class Administrator

19   and the company managing the pre-paid Mastercard payment option.  ECF No. 903.  The Court

20   will discuss this issue in detail below.

21          Having considered the motions briefing, the terms of the Settlement Agreement, the

22   arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the Motion

23   for Final Settlement Approval.  The Court finds the Settlement Agreement to be fair, adequate, and

24   reasonable.  The Court also **GRANTS IN PART** Class Counsel's Motion for Attorney Fees,

25   Expenses, and Service Awards.

26

27
     ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL; GRANTING IN
28   PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
                                          1

I.    **BACKGROUND**

A.    **Procedural History**

This fourteen-year-old case arises from Google's alleged failure to apply its Smart Pricing discounts to AdWords advertisers' click costs and charging advertisers for clicks originating from outside of their designated geographic areas.  Fifth Am. Compl., ECF No. 567; *see also* Order Granting in Part and Den. in Part Class Cert. Mot., Den. Daubert Mot., and Den. Mot. for Summ. J., ECF No. 675.

The original class representative, Woods, filed the first complaint on March 15, 2011. Compl., ECF No. 1.  After extensive motions practice, including several motions to dismiss and a motion for summary judgment, the Court granted Google's motion to deny class certification on August 23, 2018.  Order Den. Class Cert., ECF No. 366.  The Court found that Woods's business entanglement with Class Counsel raised a conflict that rendered him inadequate.  *Id.*  Specifically, the Court found that Woods was an equity partner in his firm and that his firm referred this case to Class Counsel with an interest in securing significant fees for Class Counsel and to maintain positive working relationships between the firms in other cases. *Id.*  The Court provided Plaintiffs leave to file an amended complaint, and Cabrera substituted in as the new Class Representative the next day.  Third Am. Compl., ECF No. 368.

Google soon after filed a motion to dismiss the new complaint, which the Court granted in part on February 26, 2019.  Order Granting Mot. to Dismiss, ECF No. 480.  The Ninth Circuit reversed the Court's order and remanded the matter on January 4, 2021.  USCA Memo., ECF No. 533.  Upon return, Cabrera joined his company RMC as a named plaintiff on June 7, 2021.  Order Granting Leave to Am., ECF No. 565.  Several new motions were filed after that time, which the Court resolved on August 15, 2023, granting in part and denying in part class certification, and denying *Daubert* motions and a motion for summary judgment.  Order Granting in Part and Den. in Part Class Cert. Mot., Den. Daubert Mot., and Den. Mot. for Summ. J.

Over the following year, the parties appeared before Judge DeMarchi to resolve four additional discovery disputes.  ECF Nos. 710, 727, 744, 849.  During this time, Google also filed a

United States District Court
Northern District of California

1   motion alleging that Plaintiffs and their experts mishandled Google's proprietary data and source

2   code between November 2017 and March 2024.  Mot. Re Mishandling of Proprietary Data, ECF

3   No. 825.  Though the Court briefly discussed Google's allegations during a different hearing on

4   November 19, 2024, the parties settled this case prior to the Court formally hearing the matter.

5   ECF No. 831.  Plaintiffs had also filed a motion to strike Google's expert report which was

6   pending when the parties reached settlement.  Mot. to Strike, ECF No. 818.

7   **B.    Reaching Settlement**

8        At different stages in this litigation, the parties participated in six unsuccessful mediation

9   sessions facilitated by four different mediators.  Mot. for Final Approval 3.  The parties finally

10  reached settlement after attending two settlement conferences with Judge DeMarchi in 2024.  ECF

11  Nos. 771, 861.  Following these conferences, the parties accepted Judge DeMarchi's double-blind

12  mediator's proposal on December 24, 2024, seven weeks before trial.  Status Report, ECF No.

13  866.  The Court thereafter granted preliminary approval on April 16, 2025.  Order Granting

14  Prelim. Approval, ECF No. 822.

15  **C.    Terms of the Settlement Agreement**

16       **1.    Class Definition**

17       Under the Settlement Agreement, and in accordance with the Court's order granting class

18  certification, there are two Settlement Classes (together, the "Classes" or "Class"):

19       First, the "Location Targeting Class" is defined as:

20       All persons and entities located in the United States who, between
     January 1, 2004 and March 22, 2011, advertised through Google's
21       AdWords Program and paid for clicks on their Google AdWords
     advertisement(s), where such clicks did not originate from the
22       location selected by the advertiser. Excluded from the Location
     Targeting Class are Google and its affiliates, officers, and directors,
23       as well as members of the judiciary, their staff and jurors in this case.
     Also excluded are (i) the individuals and entities who requested
24       exclusion from the Location Targeting Class pursuant to Class Notice
     (as listed on Appendix 1 hereto) and do not opt back into the Location
25       Targeting Class in connection with the Settlement; and (ii) the
     individuals and entities who submit timely and valid request.

26

27  Settlement Agreement § 1.21, ECF No. 877-1.

    Case No.: 5:11-cv-01263-EJD
28  ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL; GRANTING IN
    PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Second, the "Search Bundled Clicks Class" is defined as:

> All persons and entities located in the United States who, between June 1, 2009 and December 13, 2012, advertised through Google's AdWords Program and paid for clicks on ads on Google's Display Network where the advertiser's settings allowed its ads to show on both the Search and Display Networks and did not set a Display Network bid different from the Search Network bid. Excluded from the Search Bundled Clicks Class are Google and its affiliates, officers, and directors, as well as members of the judiciary, their staff and jurors in this case. Also excluded are (i) the individuals and entities who requested exclusion from the Search Bundled Clicks Class pursuant to Class Notice (as listed on Appendix 1 hereto) and do not opt back into the Search Bundled Clicks Class in connection with the Settlement; and (ii) the individuals and entities who submit timely and valid requests for exclusion from the Search Bundled Clicks Class in connection with the Settlement.

*Id.* § 1.38.

### 2. Class Relief

Google agrees to a non-reversionary $100 million common settlement fund to cover all costs associated with the Notice Plan, monetary benefits to Settlement Class Members, incentive awards for the Class Representatives, and Class Counsel's attorneys' fees and expenses. *Id.* § 2.1.1. Should a balance remain after payment of these costs, Class Counsel may redistribute the settlement funds to Class Members who claimed their previous settlement payments. *Id.* § 2.3. If unused settlement funds are not economically feasible to redistribute, the funds will be given in substantially equal amounts to *cy pres* recipients Consumer Federation of America, National Consumer Law Center, and The Public Justice Foundation, or another organization mutually agreed to by the parties and approved by the Court. *Id.* In consideration of the Class Relief, the Settlement Class releases all claims against Google arising from the facts of this case and dismisses this case with prejudice. *Id.*, at 3.

### 3. Attorneys' Fees and Expenses

The Settlement Agreement provides that Class Counsel will submit an application for fees and expenses to the Court for approval, and the amount awarded will be paid from the gross settlement fund. *Id.* § 7. It also provides that Class Counsel will similarly seek a service award for the Class Representative in consideration for their service and participation in the litigation.

United States District Court
Northern District of California

1    *Id.* § 8.1.  Google explicitly reserved the right to oppose any request for attorneys' fees or service

2    awards.  *Id.* §§ 7, 8.

3    ### D.    Class Notice and Claims Administration

4    The Settlement Agreement is being administered by Angeion.  *Id.* § 1.41.  Following the

5    Court's Preliminary Approval Order, Angeion implemented the Court-approved Settlement Notice

6    Plan.  Weisenbrot Decl., ECF No. 891-2.  The Notice Plan included a Settlement website with

7    English and Spanish notices and toll-free number; email notices to all potential Class Members

8    whose data was contained in Google's February 2025 data production; direct mail notice to Class

9    Members with an available physical address; and settlement notice ads posted to various media

10   platforms for thirty days.  *See id.*

11   The Notice Plan reached approximately 87.79% of the estimated 6.6 million Settlement

12   Class Members.  Supp. Weisenbrot Decl., ECF No. 892-1.  The deadline for Class Members to

13   submit a Payment Form and be eligible to receive a Settlement Payment was July 20, 2025.  *Id.* ¶

14   28.  The final claims rate is 0.75%, representing $24,271,448.47 in damages.  *Id.* ¶¶ 28, 30.

15   ### E.    Objections

16   The Court received no written objections to the Settlement Agreement, and no objectors

17   appeared at the Fairness Hearing.  Prior to the July 20, 2025, deadline to opt out or object, Angeion

18   received 600 requests for exclusion, 518 of which were submitted by the same individual.  *Id.* ¶ 25.

19   There were also an additional 73 requests submitted by non-class member advertisers.  *Id.* ¶ 25 n.5.

20   Th individuals who opted out from the terms of the Settlement Agreement are listed in Exhibit 1.

21   ### F.    Financial Relationship with Angeion and Blackhawk

22   During the final approval process, the Court learned of a financial relationship between the

23   Settlement Administrator, Angeion, and Blackhawk Engagement Solutions ("Blackhawk").

24   Blackhawk is a third-party vendor responsible for facilitating the pre-paid digital payment card

25   option for Class Members who participate in the Settlement.  The Court will discuss this issue

26   further in is analysis below.

27
28

## II.     FINAL APPROVAL OF SETTLEMENT

### A.     Legal Standard

At final approval, the Court must first conduct a "rigorous" analysis to confirm that the requirements for class certification under Rule 23(a) and 23(b)(3) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted). A court may then approve a proposed class action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, courts generally must consider the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

### B.     Discussion

For the reasons explained below, the Court finds that sufficient notice was provided to the Class, and the terms of the Settlement Agreement are fair, adequate, and reasonable.

#### 1.     Angeion and Blackhawk's Financial Relationship

Before the Court examines the sufficiency of notice and fairness factors, however, the Court first addresses Angeion's financial relationship with Blackhawk, which the Court and Class Counsel recently discovered during the final approval process. Blackhawk is Angeion's third-party vendor responsible for facilitating the pre-paid digital payment card option for Settlement Class Members. It was disclosed in supplemental filings submitted on August 22, 2025, that Angeion and Blackhawk have an agreement whereby Angeion receives a percentage of revenue from Blackhawk based on the dollar amount of the claims when Class Members select the pre-

United States District Court
Northern District of California

United States District Court
Northern District of California

1  paid digital payment card option.  The Court reviewed this contract and material under seal and

2  further discussed the matter with the parties during a status conference held on August 26, 2025.

3        The timing of this recent discovery is disappointing for several reasons, most importantly

4  transparency.  Transparency in a class action is crucial to not only the Class, but to the public's

5  trust in the judicial system and to preserving the spirit of Rule 23.   It is always critical that Class

6  Members have all the relevant information to make an informed decision about how they would

7  like to participate options for financial recovery.  This includes knowledge that, should they select

8  the pre-paid card option, Angeion will profit off that choice.  Class Counsel should also have this

9  information prior to selecting the Administrator so they will be fully informed during negotiations

10  with the Administrator to assist in evaluating the cost of the Administrator's services, always with

11  focus on the best interests of their clients. Class Counsel and the Court, as fiduciaries of the Class,

12  should have been aware of this arrangement earlier in the proceedings to permit review of any

13  potential conflicts of interest in advance of preliminary approval.  The Court and counsel are now

14  informed that Angeion has a financial interest in Class Members who select the pre-paid card

15  administered by Blackhawk.  Initially, it appeared the pre-paid card option was the default for

16  payment, but this has been further explained as not the case in a subsequent report from Angeion. [1]

17        The issue then becomes, what should the Court now do with the lack of transparency?  The

18  Court has concerns with Angeion's failure to disclose its relationship with Blackhawk.  But the

19  Court is also cognizant of the fact that the parties have engaged fourteen years for resolution of

20  their case.  The significant fact is that Angeion's agreement with Blackhawk will not impact the

21  value of the Settlement Fund.  Most importantly, Class Members will still receive 100% of their

22  damages.

23        After careful consideration of these facts and circumstances of this case, the Court finds it

24  is in the best interest of the Class to approve the Settlement Agreement, with the following

---

[1] The Class Notice indicates that the pre-paid card is the "default" choice.  ECF No. 891-2, at 9, 13, 18.  Despite this language, Angeion revealed at the status conference that the Settlement Website does not allow Class Members to proceed without selecting a payment method, so there is no "default" option.

Case No.: 5:11-cv-01263-EJD

ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL; GRANTING IN PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

corrective measures:

(1) Angeion shall post the disclosure attached as Exhibit 2 on the Settlement Website's "Home" and "Submit Payment Form" pages within two business days of this Order. This disclosure will inform the Class of Angeion's relationship with Blackhawk, as well as emphasize certain terms of the cards, including inactivity fees, termination deadlines, and the escheatment process. [2]

(2) Angeion shall send the additional email notice attached as Exhibit 3 to all Settlement Class Members who elected the pre-paid card at the time of distribution. This email will disclose the nature of Angeion's arrangement with Blackhawk, and importantly, will afford Class Members the option to elect a different payment method if preferred. This email will also include the additional terms regarding inactivity fees, termination deadlines, and the escheatment process.

(3) As agreed by Class Counsel, the Court will reduce Class Counsel's expense award by $260,000, the maximum amount Angeion will receive from Blackhawk in connection with the administration of the pre-paid cards in this matter. The Court finds that the Class has not suffered additional costs or penalties because of this undisclosed information at this time. However, as discussed above, perhaps Class Counsel would have chosen a different administrator, or perhaps Angeion could have offered a pre-paid card with a different company who might have been more favorable to the class. Given the late stage of this discovery and the severity of the recent disclosure, the Court finds the $260,000 deduction appropriate to ensure beyond reasonable doubt that

---

[2] The Settlement Website informs Class Members that the account incurs a $0.95 fee after 12 months of no use. However, during the fairness hearing, Class Counsel indicated that the cards would expire after 12 months, after which time the remaining funds would be escheated to the state. The Court has now learned that, indeed, remaining funds are returned to the state, but the amount of time that will pass before the card is terminated depends on the escheatment laws of the Class Members' state. Class Counsel also clarified at the status conference that any late fees accrued will be reimbursed to Class Members if they use the card at any point before the remaining funds are escheated to the state. The Court finds this is information the Class should be made aware of when deciding on their method of payment.

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL; GRANTING IN PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

1    the Class has not been harmed.

2        Going forward, where any party proposes the appointment of an administrator in other

3    cases in this Court, the Court will require the administrator to make a full disclosure of all

4    financial arrangements the administrator has with third parties that are related to the administration

5    of the class action.

6                    **2.    Adequacy of Notice**

7        Moving to its examination of the Settlement Agreement, the Court must first ensure that

8    the Class Administrator has "direct[ed] notice [of the proposed class settlement] in a reasonable

9    manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

10   "[T]he class must be notified of a proposed settlement in a manner that does not systematically

11   leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San*

12   *Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires the best notice

13   practicable, whereby the notice must be reasonably calculated to apprise the Settlement Class

14   members of the proposed settlement and of their right to object or to exclude themselves; must

15   constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and must

16   meet all applicable requirements of due process and any other applicable requirements under

17   federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires

18   "notice reasonably calculated, under all the circumstances, to apprise interested parties of the

19   pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

20   *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

21       The Court finds that the Notice Plan provided the best notice practicable. Pursuant to the

22   procedures approved by the Court in its Preliminary Approval Order, Angeion carried out the

23   Notice Plan and reached 87.79% of potential Settlement Class Members, resulting in a 0.75%

24   claims rate. The Notice Plan employed methods including email, direct mail, publication notices,

25   a settlement website, and a toll-free telephone number. The settlement website address was

26   prominently displayed in all notice documents, and the website contained relevant documents and

27

28

*United States District Court*
*Northern District of California*

information including the Class Notice, Complaint, Settlement Agreement, the Preliminary Approval Order, and the Motion for Attorneys' Fees, Expenses, and Service Awards. The settlement website also included answers to frequently asked questions, instructions for how Settlement Class Members could opt out or object, instructions for how to obtain other case-related information, and contact information for the Settlement Administrator. Given the lengths that Angeion took to notify the Settlement Class and the resulting expansive reach of the Class Notice, the Court finds that the Court-approved Notice Plan has been fully and properly implemented and the Settlement Class has been provided adequate notice of the pendency of this action and the opportunity to opt out or present their objections.

### 3.    Settlement is Fair, Adequate, and Reasonable

The Court finds that the Settlement Agreement is fair, adequate, and reasonable under the *Churchill* factors and Federal Rule of Civil Procedure 23(e)(2).

### a.    Strength of the Case

To assess strength of the case, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). There is no "particular formula by which that outcome must be tested," *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), and the district court is not required to render specific findings on the strength of all claims. *Lane*, 696 F.3d at 823. The Court finds that the Settlement Agreement adequately reflects the strength of Plaintiffs' case, as well as Google's position. The survival of this case past multiple motions to dismiss, *Daubert* motions, motions for summary judgment, and motions on class certification reflects the strength of this case, and the Court finds that the relief achieved in the Settlement Agreement adequately reflects these strengths.

### b.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Settlement Agreement reflects a fair result considering the potential trial recovery, numerous dispositive risks, costs of continuing litigation, and delay in payment to the Class. The

Case No.: 5:11-cv-01263-EJD
ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL; GRANTING IN PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

1    parties reached this Settlement Agreement while two motions were pending before the Court:

2    Plaintiff's motion to strike Google's expert report, and Google's motion regarding Plaintiffs'

3    alleged mishandling of its proprietary source code.  Google also indicated that it would move to

4    de-certify the class because of new evidence regarding damages.  Continued litigation posed

5    particular risks and challenges given these pending and anticipated motions.  Google also

6    continued to hold the position that a sizeable portion of the clicks on class members' ads clicks

7    were inactionable considering disclosures Google posted on its website regarding its use of

8    "query-parsing" (i.e., non-location-based targeting) to match ads with consumers.  Absent

9    settlement, these risks could have resulted in no or significantly less relief for the Settlement

10   Class.

### c.    Amount Offered

12   The Settlement Agreement provides substantial monetary relief—a $100 million non-

13   reversionary fund.  The $100 million settlement fund lies within Plaintiffs' damages estimate and

14   represents between approximately 13.9% to 18.8% of total claimed damages.  *See, e.g.*, *In re*

15   *Lithium Ion Batteries Antitrust Litigation*, 2020 WL 7264559, at *20 (granting final approval of

16   the settlement representing 11.7% of damages and describing the result for the class as

17   "excellent").  "[I]t is well-settled law that a proposed settlement may be acceptable even though it

18   amounts to only a fraction of the potential recovery that might be available to the class members at

19   trial."  *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2023 WL 3688452, at *9 (N.D.

20   Cal. May 25, 2023).  Further, there is no reversion of unused funds to Google.  Should a balance

21   remain after distribution to the Settlement Class, and unused settlement funds are not economically

22   feasible to redistribute, Class Counsel may donate the funds to *cy pres* recipients Consumer

23   Federation of America, National Consumer Law Center, and The Public Justice Foundation.  The

24   Court finds that a *cy pres* distribution of remaining funds, if any, to the organizations identified is

25   appropriate for this case.

### d.    Extent of Discovery

27   Case No.: 5:11-cv-01263-EJD
28   ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL; GRANTING IN
     PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Prior to reaching the Settlement Agreement, the parties engaged in years of particularly

2    contentious discovery, requiring participation in regular discovery motion practice and

3    conferences with Magistrate Judge DeMarchi.  The Court finds that the amount of investigation,

4    discovery, and litigation reflects that the parties had thoroughly developed a perspective on the

5    strengths and weaknesses of their respective cases to "make an informed decision about

6    settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended*

7    (June 19, 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

8                        **e.    Reaction of Class Members**

9    "[T]he absence of a large number of objections to a proposed class action settlement raises

10    a strong presumption that the terms of a proposed class settlement action are favorable to the class

11    members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation

12    omitted); *see also Churchill Village, L.L.C.*, 361 F.3d at 577 (holding that approval of a settlement

13    that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 settlement class

14    members was proper).  Here, the *de minimis* number of 82 opt-outs, excluding the one person who

15    submitted 518 opt-outs, and the lack of objections further support approval of the Settlement

16    Agreement.  *See Cmty. Res. for Indep. Living v. Mobility Works of California*, *LLC*, 533 F. Supp.

17    3d 881, 889 (N.D. Cal. 2020) ("The absence of a negative reaction weighs in favor of approval.")

18    (quotation omitted); *In re Nexus 6P Prods. Liab. Litig.*, No. 17-CV-02185-BLF, 2019 WL

19    6622842, at *10 (N.D. Cal. Nov. 12, 2019) (granting approval and holding that zero objections and

20    31 opt-outs in a class of approximately 511,000 "confirms that the settlement is fair and

21    reasonable").

22                        **f.    Plan of Allocation**

23    The Court also approves the plan to distribute the proceeds of the settlement fund on a *pro*

24    *rata* basis to Settlement Class Members.  A *pro rata* allocation treats all Settlement Class Members

25    fairly because their recovery is tied to their purchases, the number of other qualified Settlement

26    Class Members making claims against the settlement fund, and the size of the overall fund.  *Pro*

27

28
Case No.: 5:11-cv-01263-EJD
ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL; GRANTING IN
PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

*rata* distributions based on each class member's damages relative to that of the class as a whole have "frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018).

### g.    Collusion

The Ninth Circuit has articulated the following "subtle signs" of collusion of which a court should be "particularly vigilant" when scrutinizing settlements achieved prior to class certification: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "clear sailing" arrangements; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted).

The Court finds that there is no evidence of conflicts of interest among counsel, nor are there "subtle signs" of collusion. After years of litigation and extensive discovery, the parties finally reached an agreement to resolve this matter by accepting Judge DeMarchi's mediator's proposal. Judge DeMarchi's involvement and oversight are favorable factors to finding fairness and a lack of collusion between the parties. *See Bluetooth*, 654 F.3d at 948 (participation of mediator is not dispositive but is "a factor weighing in favor of a finding of non-collusiveness").

## III.    ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

The Court now turns to Class Counsel's requests for attorneys' fees, expenses, and service awards. Class Counsel seek attorneys' fees in the amount of $33,000,000; reimbursement of $3,859,836.34 in litigation costs; and a service award of $20,000 for Class Representative Cabrera. The Court will discuss each request in turn.

### A.    Attorneys' Fees

Attorneys' fees may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To

United States District Court
Northern District of California

1   "avoid abdicating its responsibility to review the agreement for the protection of the class, a

2   district court must carefully assess the reasonableness of a fee amount spelled out in a class action

3   settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that

4   the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a

5   likely indicator that the class has obtained less monetary or injunctive relief than they might

6   otherwise. *Id.* at 964.

7           Courts analyze attorneys' fee requests based on either the "lodestar" method or a

8   percentage of the total settlement fund made available to the class, including costs, fees, and

9   injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth

10  Circuit encourages courts to use the lodestar method as a cross-check in order to avoid a

11  "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*

12  *Headset Products Liability Litigation*, 654 F.3d at 944–45 (citing *Vizcaino*, 290 F.3d at 1050–51).

### 1.    Percentage of the Fund

14          When using the percentage of the fund method, courts consider a number of factors,

15  including the results achieved, the risk, counsel's performance, the burdens of litigation, and

16  whether the case was handled on a contingency basis. *In re Online DVD-Rental Antitrust Litig.*,

17  779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047–50). "[T]he most

18  critical factor [in determining appropriate attorney's fee awards] is the degree of success

19  obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Under the percentage of the fund

20  method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a

21  reasonable fee award, providing adequate explanation in the record of any 'special circumstances'

22  justifying a departure." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 942

23  (citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

24  The benchmark should be adjusted when the percentage recovery would be "either too small or

25  too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican*

26  *Workers*, 904 F.2d at 1311.

27

28

Here, Class Counsel seek attorneys' fees in the amount of $33,000,000, which represents 33% of the $100,000,000 common settlement fund. The Court finds that the $100 million in relief to the Class, the substantial risk of litigating this case on a contingency basis for fourteen years, and the skill and labor required to defeat the number of complex motions filed in this case warrants *some* upward adjustment from the 25% benchmark. *See Durham v. Sachs Elec. Co.*, No. 18-CV-04506-BLF, 2022 WL 2307202, at *8 (N.D. Cal. June 27, 2022) (approving upward adjustment based on factors including the risk and difficulty of the case).

However, the Court also observes that Class Counsel could have litigated this case with greater efficiency. For the first seven years, Class Counsel proceeded with Woods as the class representative. While the Court found no bad faith and credited Class Counsel for diligently seeking another representative when it received notice that Google would challenge Woods' adequacy, its failure to examine this conflict sooner contributed to a significant delay in this case. The Court also notes that Class Counsel's alleged protective order violations further impacted this case, requiring the parties' additional time briefing the dispute and discussing the issue with the Court.

Based on these considerations, the Court will award an upward adjustment of 30%. The Court finds this $30 million award to be a fair and reasonable compensation for Class Counsel's efforts in this matter.

### 2. Lodestar

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). A reasonable hourly rate is typically the prevailing market rate in the relevant community. *Id.* Since a 25% benchmark award might be reasonable in some cases but arbitrary in cases involving an extremely large settlement fund, the purpose of the comparison with the lodestar is to ensure counsel is not overcompensated.

Here, Class Counsel calculate a lodestar figure of $22,243,931.75 for 39,673 hours in the

United States District Court
Northern District of California

investigation, prosecution, and resolution of the Action from its inception through April 17, 2025. Counsel's rates were as high as $1,300/hour for partners, $750/hour for other attorneys, $495/hour for paralegals, and $450/hour for in-house investigators. Pursuant to a lodestar "cross-check," the Court's award of 30% of the Settlement Fund would yield a 1.35% lodestar.

The Court finds that Class Counsel's hourly rates are within the relevant prevailing market rates, and the number of hours attributed to this case are reasonable—particularly given that the timesheets do not include any work completed past April 17, 2025. Accordingly, the Court finds that the resulting 1.35 lodestar confirms the reasonableness of a $30 million award.

## B. Expenses

Class Counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Federal Rule of Civil Procedure 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Here, Class Counsel seek compensation for total expenses of $3,859,836.34. The Court finds Class Counsel's request supported by the record and fair, adequate, and reasonable considering the length of this litigation and the extensive motions practice over the years. As discussed above, Class Counsel have also agreed to deduct their total requested expenses by $260,000.00, the maximum amount Angeion will receive from Blackhawk in connection with the distribution of the pre-paid digital payment cards in this matter. Accordingly, the Court approves payment of expenses in the amount of $3,599,836.34.

## C. Service Awards

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 943 (internal quotation marks and citation omitted). The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the

United States District Court
Northern District of California

plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (internal citation omitted). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

Here, Cabrera requests a service award of $20,000 for his time and effort sitting for three depositions, traveling from Florida to California two times, participating in mediation, and responding to document requests, interrogatories, and requests for admission. The presumptively reasonable amount for service awards in the Ninth Circuit is $5,000. The Court recognizes Cabrera's great efforts and time expended to this case but finds that Cabrera's participation does not justify a service award four times that of the presumptively reasonable amount. Instead, the Court finds a service award of $9,000 fair, adequate, and reasonable. *See, e.g., Allagas v. BP Solar Int'l, Inc.*, No. 314CV00560SIEDL, 2016 WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (awarding $7,500 to named plaintiffs who were deposed and $3,500 to one named plaintiff who was not deposed).

## IV.    CONCLUSION

Based on the preceding discussion, the Court finds that the terms of the Settlement Agreement are fair, adequate, and reasonable; that Federal Rule of Civil Procedure 23(e) and the Ninth Circuit's fairness and adequacy factors are satisfied; and that the Settlement Agreement should be approved and implemented. The Motion for Final Approval is accordingly **GRANTED**.

Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards is also

United States District Court
Northern District of California

1   **GRANTED IN PART**.  Class Counsel is awarded $30,000,000 in attorneys' fees and

2   $3,599,836.34 in litigation expenses.  Cabrera is granted a service award of $9,000.

3        Without affecting the finality of this Order in any way, the Court retains jurisdiction of all

4   matters relating to the interpretation, administration, implementation, effectuation, and

5   enforcement of this Order and the Settlement Agreement.

6        The parties shall file a post-distribution accounting in accordance with this District's

7   Procedural Guidance for Class Action Settlements no later than **May 18, 2026**.  The parties'

8   statement shall include information regarding the number of claims Angeion found fraudulent as

9   of that date.  The Court sets a compliance deadline on **May 28, 2026**, on the Court's 9:00 a.m.

10  calendar to verify timely filing of the post-distribution accounting.

11       **IT IS SO ORDERED.**

12  Dated: August 29, 2025

13

14  _____

15  EDWARD J. DAVILA
    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28  Case No.: 5:11-cv-01263-EJD
    ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL; GRANTING IN
    PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

# Exhibit 1

**Requests for Exclusion received in Class Notice Phase**

| Number | First Name | Last Name |
|---|---|---|
| 1 | Thomas | Arnesen |
| 2 | Raphael | Barini |
| 3 | Jennie | Bolas |
| 4 | Jonathan | Bowles |
| 5-6 | Martin | Caparrotta* |
| 7 | Ben | Cheng |
| 8 | Davide | Colona |
| 9 | Paula | Couto Rodrigues Saldanha |
| 10 | Allen | Davey |
| 11 | Rosanna | De Paola |
| 12-15 | Robert | Delong* |
| 16 | Jennifer | Dew |
| 17 | Massimo | Discepoli |
| 18 | Gale | Duval |
| 19 | Mohamed Achraf | Elmimouni |
| 20 | Pascal | Faucompre |
| 21-22 | Luca | Fratini* |
| 23 | Karin | Freedman |
| 24 | James | Fry |
| 25 | Hella Karin | Fuchs (Balchunas) |
| 26-27 | Andrew | Gegg* |
| 28 | Michelle | Greenleaf |
| 29 | Renee | Griffith |
| 30-31 | Joseph | Haverty* |
| 32 | Paula | Henderson |
| 33 | Philip | Henderson |
| 34 | Andrew | Hercules |
| 35 | Kathryn | Hoather |
| 36 | Kyle | Hufford |
| 37 | Vishal | Jain |
| 38 | Josh | Kaner |
| 39 | Peter | Koryaka |
| 40 | Maggie | Lee |
| 41 | Jose | Luiz |
| 42 | Paul | Marshall |
| 43 | Joel | May |
| 44 | Melissa | Mcgovern |
| 45 | Jennifer | Meyer |
| 46 | Rajko | Milinic |
| 47 | Denis | Miquel |
| 48 | Paula | Muran |
| 49 | Ivan | Murray-Smith |

| 50 | Ian | Nelson |
| 51 | Lukasz | Osiak |
| 52 | Dan | Price |
| 53 | Soeren | Ramspeck |
| 54 | Mike | Rapoport |
| 55 | Daniel | Reitz |
| 56-57 | Hotel Wilerbad Ag | Renate Stocker* |
| 58 | Karsten | Rosenloecher |
| 59 | Christopher | Saunders |
| 60 | Nickolas | Simard |
| 61 | Jeff | Stein |
| 62 | Amri | Tarsis |
| 63 | Giovanni | Tomaselli |
| 64 | Donald | Triplett |
| 65-66 | Ramon | Valentim* |
| 67 | Jennifer | Vallieres |
| 68 | Heather | Varsho |
| 69 | Louis | Voellmy |
| 70 | Mark | Wainwright |
| 71 | Emily | Walton |
| 72 | Chen Yuling | Wenbi |
| 73 | Mignolet | Xavier |

**These individuals submitted exclusion requests for multiple unique Customer IDs.

**Requests for Exclusion received in Settlement Phase**

| Number | First Name | Last Name |
|---|---|---|
| 1 | Aleksei | Aleinikov |
| 2 | Chris | Algra |
| 3 | Natalie | Amecke |
| 4-5 | Thomas | Andersson** |
| 6 | Alana | Anoskey |
| 7 | Saner | Apaydin |
| 8 | Emily | Barracano |
| 9 | Silvio | Biaggi |
| 10 | Mark | Borrington |
| 11 | Andy | Brabec |
| 12 | Lukas | Cholasta |
| 13 | Richie | Church |
| 14 | Nã Lio | Codices |
| 15 | Alex | Crossman |
| 16 | Chris | Cuciurean |
| 17 | Sean | Daugherty |
| 18 | Vasileios | Dertilis |
| 19 | Markus | Eichler |
| 20 | Rafael Navas Da | Fonseca |
| 21 | Valorie | Fougeres |
| 22 | Sabrina | Frank |
| 23 | Fuckoff | Fuckoff |
| 24 | Shannon | Glover |
| 25 | Magdalena | Gurgacz |
| 26-27 | Renata | Gurgel** |
| 28 | Brendan | Gurrie |
| 29 | Piia | HãNninen |
| 30 | Lars | Hansson |
| 31 | Aries | Hilton |
| 32 | Kaori | Hirukawa |
| 33 | Victor | Honorio De Lima |
| 34 | Michael | Hu |
| 35 | Phil | Huff |
| 36 | Devin | Hull |
| 37 | Steve | Hutchinson |
| 38 | Kuhn | Istvã¡n |
| 39 | B | J |
| 40 | Jasmine | Jus |
| 41 | Janet | Kassell |
| 42 | Seth | Kinkaid |
| 43 | Mareike | Knie |
| 44 | John Smith | Kristiansen |

| 45 | Saifuddin | Lahorewala |
| 46 | Philip | Lyons |
| 47 | Sharon | Maricle |
| 48 | Glanville | Martin |
| 49 | | Merkur Publishing Inc. |
| 50 | Jenny | Mevers |
| 51-54 | Daniel | Milkie** |
| 55 | Wim | Mirer |
| 56 | Yasuhiro | Moriizumi |
| 57 | Kees | Mudde |
| 58 | Michael | Murray |
| 59 | Alok | Narayana |
| 60 | Francesco | Nieddu |
| 61 | Stone | Ning |
| 62 | Astrid | Nolde-Gallasch |
| 63 | Gabriele | Omini |
| 64 | Prathan | Phakdeephon |
| 65 | Jannes | Pockelã |
| 66 | Daniel | Procter |
| 67-68 | Graziela | Rainatto** |
| 69 | John Smith | Riedel |
| 70 | Jackie | Robinson |
| 71 | Mirjam | Rosman |
| 72 | Luã-s Miguel | Sequeira |
| 73 | Darrell | Shand |
| 74-592 | Greg | Supan* |
| 593 | Erickson | Swift |
| 594 | Scott | Tyburski |
| 595 | Pentti | Vataja |
| 596 | Roger | Vilanou Valles |
| 597 | Christophe | Vlaminck |
| 598 | Yoshihiro | Wada |
| 599 | Stephen | Weber |
| 600 | Tim | Wright |

*Greg Supan submitted 518 exclusion requests on behalf of numerous third parties.
**These individuals submitted exclusion requests for multiple unique Customer IDs.

# Exhibit 2

**Website Notice**

<u>**IMPORTANT – PLEASE READ**</u>

**Information Regarding Pre-Paid Digital Payment Cards**

- The Settlement Administrator will direct distribution of the Settlement proceeds to Class Members who selected the pre-paid digital payment card option through a digital payment solutions vendor, Blackhawk Engagement Solutions ("Blackhawk"). *See* https://blackhawknetwork.com/solutions/payments. Angeion and Blackhawk have a contract that sets forth general terms for engagements in which Angeion subcontracts with Blackhawk to provide a pre-paid digital payment card option. Angeion receives income from Blackhawk when Blackhawk issues a pre-paid card to a Class Member. The income Angeion receives from Blackhawk will not diminish or otherwise impact any of the Settlement proceeds available for or distributed to Class Members in this case.

- Balances on pre-paid digital payment cards will be subject to inactivity service fees of $0.95 per month after twelve (12) consecutive months after issuance.
    - Class Members can avoid inactivity service fees by using their card at least once every twelve (12) months or by transferring their card's existing balance to another account via Zelle, ACH transfer (direct deposit), Venmo or PayPal for no fee.
    - Any inactivity service fees charged against the balance of a dormant pre-paid digital payment card will be restored and added back to the value of the card if the Class Member uses their card following the service fee assessment and a balance remains on the card at the time of the annual restoration review process and prior to **the reversion of property to the Class Member's state (referred to as "escheatment").**
    - If a Class Member's card becomes eligible for escheatment under applicable state law, any remaining balance on the card will be transferred to that state's unclaimed property fund and the funds will remain available to be claimed by the Class Member under applicable state law.
    - No portion of any inactivity or other service fee applied to any Class Member's card is paid to Angeion.

- A "Convert to Plastic Fee" of $3.00 only will be incurred by Class Members who choose to request a physical card as opposed to using the pre-paid digital payment card provided by email. A "Card Replacement Fee" of $6.95 only will be incurred by Class Members who have a physical card and need a physical card replacement.

- A "Foreign Transaction Fee" of 2% only will be incurred by Class Members who choose to use the card for foreign transactions.

- Prior to redemption, Class Members who elected to receive payment from the Settlement proceeds via a pre-paid digital payment card will receive an email setting forth the full terms and conditions of the card. At that time, the Class Member will have the option to elect a different form of payment (e.g., paper check, ACH transfer (direct deposit) or Venmo) prior to redemption of the Settlement proceeds.

# Exhibit 3

You've Received a Virtual Prepaid Card!
[AMOUNT]

[CLASS MEMBER],

You have received a Virtual Prepaid Mastercard® in the amount of [AMOUNT] as your Cabrera v. Google settlement payment.

Prior to activating and using your card, **please review the information below**.

The Court has ordered additional information be provided to you regarding the relationship between the Settlement Administrator Angeion Group, LLC ("Angeion") and Blackhawk Engagement Solutions ("Blackhawk"), the company providing your Prepaid Mastercard.

Angeion and Blackhawk have a contract that sets forth general terms for engagements in which Angeion subcontracts with Blackhawk to provide a pre-paid digital payment card option. Angeion receives income from Blackhawk when Blackhawk issues a pre-paid card to a Class Member. The income Angeion receives from Blackhawk will not diminish or otherwise impact any of the Settlement proceeds available for or distributed to Class Members in this case.

Balances on pre-paid digital payment cards will be subject to inactivity service fees of $0.95 per month after twelve (12) consecutive months after issuance. You can avoid inactivity service fees by using your card at least once every twelve (12) months or by transferring your card's existing balance to another account via Zelle, ACH transfer (direct deposit), Venmo or PayPal for no fee. Any inactivity service fees charged against the balance of a dormant pre-paid digital payment card will be restored and added back to the value of the card if you use the card following the service fee assessment and a balance remains on the card at the time of the annual restoration review process and prior to escheatment. If your card becomes eligible for escheatment under applicable state law, any remaining balance on the card will be transferred to that state's unclaimed property fund and the funds will remain available to be claimed by you under applicable state law. No portion of any inactivity or other service fee applied to your card is paid to Angeion.

A "Convert to Plastic Fee" of $3.00 only will be incurred by you if you choose to request a physical card as opposed to using the pre-paid digital payment card provided by email. A "Card Replacement Fee" of $6.95 only will be incurred by you if you have a physical card and need a physical card replacement. A "Foreign Transaction Fee" of 2% only will be incurred by you if you choose to use the card for foreign transactions.

You have the option to elect a different payment method if you prefer.  If you would like to review the terms and conditions for the pre-paid card before you choose your payment method, please visit [link].  **If you prefer to elect a different payment method, please click [here]**.

To activate and use your card, please click the REDEEM VIRTUAL CARD button below. When you redeem your card, you will have another opportunity to review the full terms and conditions.

After you redeem your Prepaid Mastercard, you have the following options:

> o You can spend these funds online anywhere Mastercard is accepted.

> o You can add these funds to a mobile wallet (Apple Pay, Samsung Pay, etc.) and spend the card in-store at any merchant that accepts mobile wallet transactions (and accepts Mastercard).

> o You can spend the card in-store at merchants who will allow you to present an image of your virtual Mastercard and that will key in your 16-digit card number, expiration date, and the 3-4 digit CVV code.

> o You can request a physical card for a $3.00 fee.

If you have any remaining balance after 24 months, you may request that a new card with the remaining balance be re-issued to you at no charge.

You can transfer the unused card balance to another payment method at any time (before or after you redeem your card) by visiting choice.digitaldisbursements.com.  Please note that this will lead to the cancellation of your card.

If you have any questions regarding your card, contact us at 1-844-340-1929.

**REREDEMPTION INSTRUCTIONS**

1. Click the **Redeem Virtual Card** button below or visit the redemption site by clicking this URL: **https://www.myprepaidcenter.com/redeem?ecode=xxxxxxxxxxxx**
2. Enter the redemption code: **xxxxxxxxxxxx**
3. Follow the onscreen instructions.

**TIPS:**

- Click the link above or copy and paste the address into your browser to navigate to the activation site.
- To avoid being sent to a fraudulent website, do not search online for the site.

### REDEEM VIRTUAL CARD

Redemption Code

**xxxxxxxxxxxx**

You received this email from Cabrera v. Google, 1650 Arch Street Suite 2210, Philadelphia, PA 19103
If you do not wish to receive further emails from Cabrera v. Google, contact us at www.AdWordsClicksClassAction.com.